UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION<br><br>This Document Relates to:<br>  0:17-cv-02832    0:17-cv-04622<br>  0:17-cv-04613    0:17-cv-04943<br>  0:17-cv-04614    0:17-cv-04944<br>  0:17-cv-04615    0:17-cv-04945<br>  0:17-cv-04616    0:17-cv-04947<br>  0:17-cv-04617    0:17-cv-05001<br>  0:17-cv-04618    0:17-cv-05046<br>  0:17-cv-04619 | MDL No. 17-2795 (MJD/KMM)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S AFFILIATES' MOTION TO INTERVENE FOR THE LIMITED PURPOSES OF MOVING TO COMPEL ARBITRATION AND ENFORCE CLASS-ACTION WAIVERS AND TO JOIN IN DEFENDANT CENTURYLINK, INC.'S MOTION FOR TEMPORARY STAY OF DISCOVERY** |

Douglas P. Lobel (VA Bar No. 42329)
David A. Vogel (VA Bar No. 48971)
COOLEY LLP
11951 Freedom Drive
Reston, Virginia 20190
Tel.: (703) 456-8000
Fax: (703) 456-8100
dlobel@cooley.com
dvogel@cooley.com

Martin S. Schenker (CA Bar No. 109828)
Jeffrey M. Gutkin (CA Bar No. 216083)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Tel.: (415) 693-2000
Fax: (415) 693-2222
mschenker@cooley.com
jgutkin@cooley.com

William A. McNab (MN Bar No. 320924)
David M. Aafedt (MN Bar No. 27561X)
WINTHROP & WEINSTINE, P.A.
Capella Tower, Suite 3500
225 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 604-6400
Fax: (612) 604-6800
wmcnab@winthrop.com
daafedt@winthrop.com

*Attorneys for Defendant* CenturyLink, Inc.
*and Intervenors* Qwest Corporation;
Embarq Florida, Inc.; Embarq Missouri,
Inc.; Carolina Telephone and Telegraph
Company LLC; Central Telephone
Company; CenturyTel of Idaho, Inc.;
CenturyTel of Larsen-Readfield, LLC;
CenturyTel of Washington, Inc.;
CenturyTel Broadband Services, LLC;
*and* Qwest Broadband Services, Inc.

In their Consolidated Class Action Complaint, Plaintiffs inexplicably sued only CenturyLink, Inc., even though that parent holding company never contracted with any Plaintiff, or provided the services about which Plaintiffs complain.  To cure this defect, and avoid months of wrangling over whether Plaintiffs have sued the correct entities, Defendant urged Plaintiffs' counsel to add as defendants the "operating companies" that contracted with their clients, provided the services at issue, and with whom Plaintiffs agreed to arbitrate.  Several times Plaintiffs' counsel has refused.  Defendant therefore moves to correct the pleadings and place the following proper parties before the Court: Qwest Corporation; Embarq Florida, Inc.; Embarq Missouri, Inc.; Carolina Telephone and Telegraph Company LLC; Central Telephone Company; CenturyTel of Idaho, Inc.; CenturyTel of Larsen-Readfield, LLC; CenturyTel of Washington, Inc.; CenturyTel Broadband Services, LLC; and Qwest Broadband Services, Inc. (the "Operating Companies").[1]

Plaintiffs have made a fundamental error by choosing to sue the wrong defendant – a company that had no role whatsoever in the predicate acts underlying their claims. That sole defendant, CenturyLink, Inc. ("Defendant"), is a parent holding company that has *no* customers, provides *no* services, and engaged in *none* of the acts or transactions about which Plaintiffs complain.  There is no valid basis for Defendant to be a party in this Proceeding:  Plaintiffs contracted with the Operating Companies to purchase, use, and pay for the services at issue, not with CenturyLink, Inc.; and the claims in the

---

[1]     Movants reserve their rights to raise any procedural and substantive defenses to Plaintiffs' claims, including, for example, defenses based on lack of personal jurisdiction.

Consolidated Class Action Complaint attack either the quality of the Operating Companies' services or the amounts the Operating Companies billed to Plaintiffs.

To cure this procedural defect, Defendant has repeatedly asked Plaintiffs to add these Operating Companies as defendants.  But Plaintiffs have refused, perhaps as part of a strategy to avoid the arbitration and class-action waivers in the Operating Companies' contracts, or an attempt to sweep together a larger potential class.  Whatever their motives, Plaintiffs' strategic decision to avoid involving the Operating Companies does not outweigh the Operating Companies' rights to protect their legal interests.

The Court should permit the ten operating companies that sold, served, and billed the Plaintiffs, and that seek to enforce Plaintiffs' agreements to arbitration and class-action waiver clauses, to intervene, because they have a mandatory right to intervene under Rule 24(a).  First, the Operating Companies have numerous, legally-recognized interests in the subject-matter of the lawsuit:

- Plaintiffs' claims directly relate to the Operating Companies' contractual interests;

- The Operating Companies have a recognized interest in defending the factual allegations against them; and

- The Plaintiffs seek injunctive relief that would directly affect the Operating Companies' contracts and business operations.

Second, under black-letter law in this Circuit, the interests of the Operating Companies "may be impaired" by resolution of the lawsuits.  Plaintiffs seek to invalidate contracts, obtain injunctive relief, and establish negative precedent about the Operating

Companies' contracts and conduct that potentially undermines future arbitration or litigation.

Finally, under clear rules drawn from precedent, the Court should find that sole named Defendant might not "adequately" represent the Operating Companies.  Where a corporate parent is the named defendant, its subsidiary has a right to intervene where – as here – the transactions and conduct at issue relates primarily to the subsidiaries, not the parent.

But even if the Court were to conclude that the Operating Companies do not have a *right* to intervene, the Court should allow them to intervene permissively.  The Operating Companies have a clear interest in the matter, their request to intervene is timely, and intervention will not prejudice any party – but, instead, will allow for more efficient resolution of all claims.

At this early stage of the Proceeding, the Operating Companies only seek to intervene for the limited purposes of moving to compel the Plaintiffs' claims to arbitration, to enforce class-action waivers, and to join in a motion for temporary stay of discovery while the Court considers the motion to compel.  Plaintiffs agreed to contracts with the Operating Companies that contain unambiguous arbitration and class-action waiver provisions.  Courts routinely allow parties to intervene for the limited purpose of enforcing these types of provisions.

**RELEVANT FACTS**

I.  **PLAINTIFFS CONTRACTED WITH THE OPERATING COMPANIES TO PURCHASE INTERNET, PHONE AND TELEVISION SERVICES**

All of the services at issue in this Proceeding (internet, phone and television), and all of the alleged events in the Consolidated Class Action Complaint (sales, providing, and billing services), relate to the Operating Companies.  In addition, each named Plaintiff entered into contracts with one or more of these Operating Companies before they received the services at issue.

A family of companies using the name "CenturyLink" provide a variety of communication services to businesses and residential customers worldwide.  Declaration of Kiran Seshagiri ("Seshagiri Decl."), ¶¶ 1, 3-4, filed contemporaneously herewith.[2] The Operating Companies are ten of these companies.

Eight of the Operating Companies are phone companies that provide traditional local phone services, and sometimes internet or television services too, in one or more states:

- **Qwest Corporation** provides phone service and, in some places, internet or television service in 14 Western and Rocky Mountain states.  It provides (or provided) these services to 27 of the named Plaintiffs.

- **Embarq Florida, Inc.** provides phone and internet services in Florida.  It provides (or provided) these services to three of the named Plaintiffs.

- **Embarq Missouri, Inc.** provides phone and internet services in Missouri.  It provides (or provided) internet and phone service to one of the named Plaintiffs.

---

[2]    When reviewing a Rule 24 motion, the Court may examine supporting evidence submitted by declaration, and is not limited to the contents of the pleadings as it might be under Rule 12(b)(6).  *Stadin v. Union Elec. Co*., 309 F.2d 912, 917 (8th Cir. 1962).

- **Carolina Telephone and Telegraph Company LLC** provides internet and phone services in North Carolina. It provides (or provided) these service to one of the named Plaintiffs.

- **Central Telephone Company** provides phone and internet services in a number of states. It provides (or provided) these services to two of the named Plaintiffs.

- **CenturyTel of Idaho, Inc.** provides phone services in Idaho. It provides (or provided) phone service to one of the named plaintiffs.

- **CenturyTel of Larsen-Readfield, LLC** provides phone services in Wisconsin. It provides (or provided) phone service to one of the named Plaintiffs.

- **CenturyTel of Washington, Inc.** provides phone services in Washington state. It provides (or provided) phone service to one of the named Plaintiffs.

Seshagiri Decl. ¶¶ 15-22.[3]

Two other Operating Companies are not phone companies, but provide television and, sometimes, internet service, including to nine of the named Plaintiffs:

- **CenturyTel Broadband Services, LLC** provides television and/or internet services in many states. It provides (or provided) its services to six of the named Plaintiffs.

- **Qwest Broadband Services, Inc.** provides television services in many states. It provides (or provided) its services to four of the named Plaintiffs.

*Id.* ¶¶ 23-24.

In providing the above-listed services, each Operating Company is responsible for all aspects of its customer relationships, including contracting with customers, providing

---

[3]     These eight phone companies are among a several dozen different phone companies in the family of CenturyLink entities. The company's use of multiple affiliates is largely historical and driven by regulatory requirements and specifically, differences among states' regulated-utilities laws.

(or arranging for) the purchased services and ancillary functions such as sales and customer care, and providing and collecting monthly bills:

*Customer Contracts.*   To provide HSI and television services to customers, each Operating Company requires that its customers agree to subscription or customer agreements (the "Customer Contracts"). *Id.* ¶ 27.  The Operating Company – not CenturyLink, Inc. – is the party to these Customer Contracts. *Id* and Exh. 1, attached thereto.

*Service Provisioning and other Functions.*   Each of the Operating Companies typically provides its services using its own network facilities and other resources. *Id.* ¶ 26.  Sometimes, an Operating Company might contract with vendors or affiliates (but not its parent company) to provide various functions. *Id*.  An as example, sometimes the customer representatives who handle phone calls with customers – for sales or customer care, such as technical or billing issues – are employees of other affiliates or of vendors. *Id*.  In those instances, however, the affiliates or vendors would be acting as agents on behalf of the respective Operating Company. *Id*.

*Monthly Billing.*   Each of the Operating Companies also typically provides the monthly bills to its customers, including the billing to the named Plaintiffs. *Id.* ¶ 25.[4] Customers' payments are made to the Operating Companies, and revenues from the customers are recorded on the books of the respective Operating Companies. *Id*.

---

[4]     Sometimes, as is the case for three of the named Plaintiffs, monthly bills for internet service are rendered by an affiliate (Qwest Corporation, one of the ten Operating Companies here) on behalf of the Operating Company. *Id*.

## II.    PLAINTIFFS CLAIMS ARISING DIRECTLY FROM SERVICES THAT THE OPERATING COMPANIES PROVIDED

Each of the Plaintiffs' causes of action, as well as the facts relating to those claims, arise from or are related to the Operating Companies' selling, provisioning and billing of internet, phone and television services.

Each named Plaintiff alleges that he or she purchased internet and, in some cases, phone and/or television services from "CenturyLink."  Consolidated Class Action Complaint, filed February 15, 2018 (ECF No. 38) ("CCAC"), at ¶¶ 129-413.  Each Plaintiff offers a unique claim about some type of dispute in the sales, quality or billing of these services, but the claims run the gamut of typical disputes that consumers have with utilities or Operating Companies.

The types of claims alleged include:

*Quality of Service Disputes*.  Some of the named Plaintiffs allege that the internet services they obtained were not of the quality that was promised.  Specifically, they allege that they purchased high-speed internet services at certain "bandwidth" (speed) rates, but that the internet speeds they actually received were below that rate.  CCAC ¶¶ 380, 390.

*Charges for Returned Equipment*.  One Plaintiff alleges that she was billed monthly charges for renting a modem for internet service, even after she allegedly returned the modem to "CenturyLink."  CCAC ¶ 322.

*Unauthorized Charges*.  Some Plaintiffs allege that their bills from "CenturyLink" contained line-item charges that they did not authorize.  For example, some complain that

their monthly bills for internet service included a line item for an "Internet Cost Recovery" fee.  CCAC ¶¶ 145, 254, 256, 263, 409.

***Charges for Equipment Rental***.  Some Plaintiffs allege that they were billed for renting a modem when they owned their own modem.  CCAC ¶¶ 214, 306.

***Early Termination Fees***.  Some Plaintiffs allege that they were improperly billed early termination fees when they cancelled their services.  CCAC ¶¶ 272, 298, 412.

***Billing for Services After Cancellation***.  Some Plaintiffs allege that they were improperly billed after cancelling their services.  CCAC ¶¶ 160, 167, 307.

***Prorated Charges***.  One Plaintiff alleges that she was improperly billed for partial month or prorated charges.  CCAC ¶ 153.

***Technician or Installation Disputes***.  Two Plaintiffs allege that technicians did not arrive on time or that the installation of their services was delayed.  CCAC ¶¶ 152, 247.

***Auto-Debit Disputes***.  Some Plaintiffs allege that improper amounts were debited from their accounts or that amounts were debited on the wrong dates.  CCAC ¶¶ 235, 243, 253, 296, 299.

***Each of these disputes directly implicates conduct of the Operating Companies***. None of the widely varied claims implicates CenturyLink, Inc.'s conduct.  Rather, they implicate different Operating Companies affiliates offering different services across the country.  Plaintiffs cannot deny that their allegations put the conduct of the Operating Companies squarely at issue.  Claims that internet services were below the contracted speed is a direct attack on the quality of the Operating Companies' services, as are claims

that their technicians did not show up on time.  Claims that bills were incorrect – for including incorrect prices, unauthorized charges, and so forth – directly challenge the bills rendered and collected by the Operating Companies.  Thus, it is the Operating Companies' performance of their contracts with the named Plaintiffs that is directly attacked in these claims.

## III.   PLAINTIFFS' CLAIMS FALL WITHIN THE ARBITRATION AND CLASS-ACTION WAIVER CLAUSES IN THEIR CONTRACTS WITH THE OPERATING COMPANIES

As Defendant (and, if permitted, the Operating Companies) will demonstrate in a forthcoming Motion to Compel Arbitration and Enforce Class-Action Waivers ("Motion to Compel"), all 38 of the named Plaintiffs agreed to class-action waivers in their contracts with the Operating Companies.  The class-action waiver is a standard provision contained in each of the Operating Companies' internet and television service contracts, as well as the online enrollment contract.  Defendant and Operating Companies preview this forthcoming argument in more detail in their Motion for Temporary Stay of Discovery, being filed contemporaneously with this Motion to Intervene.  *See* Memorandum of Law in Support of Defendant's Motion to Temporarily Stay Discovery Pending Resolution of Forthcoming Motion to Compel Arbitration and Enforce Class-Action Waivers ("Mem. re Mo. to Stay"), at 3-14.

In addition, 37 of the named Plaintiffs agreed to arbitrate their disputes with the Operating Companies.  The arbitration clauses are broad and govern all acts related to the Plaintiffs accounts:  "any and all claims, controversies or disputes of any kind" or "any dispute or claim arising out of or relating to the Services, Equipment, Software, or

this Agreement." *Id.* at 4-6.  Defendant and the Operating Companies will demonstrate that each of the claims and causes of action alleged by these 37 named Plaintiffs squarely falls within the scope of the arbitration clauses, and therefore this Court should compel arbitration of all of those claims.  *Id.* at 14-15.

The Operating Companies' Motion to Compel will be supported by evidence that the Plaintiffs consented to these terms before they received services.  *Id.* at 12-14.

## IV.   THE NAMED DEFENDANT IS THE PARENT HOLDING COMPANY THAT HAD NO ROLE IN THE ACTS ALLEGED IN THE COMPLAINTS

The CCAC does *not* name the Operating Companies with which the Plaintiffs contracted for phone, internet, and/or television services.  Instead, the CCAC names only one defendant, CenturyLink Inc., but Plaintiffs did not enter into any contracts or receive any services from CenturyLink, Inc.  In a nutshell, it had had *no role* in any of the events at issue in this Proceeding.

CenturyLink, Inc. is a publicly-traded parent holding company that owns the Operating Companies.  Seshagiri Decl. ¶ 5.  CenturyLink, Inc. and its subsidiaries scrupulously adhere to all corporate formalities, and carefully maintain the corporate separateness of the different legal entities.  *Id.* ¶ 6.

CenturyLink had no involvement in the predicate acts underlying Plaintiffs' claims.  CenturyLink, Inc. does not provide phone, internet or television services – or any other services.  *Id.* ¶¶ 7, 11-12.  CenturyLink, Inc. therefore does not have any customers. *Id.* ¶ 7.  CenturyLink, Inc., has no employees that engage in any customer-related activities – no sales, customer care, billing, or provision of services.  *Id.* ¶ 8.

CenturyLink, Inc. was not involved in selling, providing or billing services to the named Plaintiffs.  *Id.* ¶ 9.  It is not a signatory to any contract with any of the named Plaintiffs.  *Id*.  No Plaintiff paid any bills to CenturyLink, Inc.  *Id*.

## V.   PLAINTIFFS HAVE REPEATEDLY REFUSED DEFENDANT'S REQUESTS THAT THE OPERATING COMPANIES BE ADDED BY AMENDMENT

This Motion attempts to correct the following issue:  The CCAC named only one party – Defendant CenturyLink, Inc. – that neither entered into contracts with the Plaintiffs nor provided services.  It may be that Plaintiffs are hoping to avoid the arbitration and class-action waiver provisions by not naming as defendants the parties to those contracts.  To cure this defect, Defendant has repeatedly requested that Plaintiffs amend their complaints, and then the CCAC, to include the Operating Companies as defendants.

Virtually none of the original complaints in the fifteen actions included the appropriate Operating Company(ies) as defendant(s).  Before Plaintiffs filed the CCAC, Defendant's counsel sent Plaintiffs' counsel a list of the Operating Companies associated with each of the original named plaintiffs.  *See* Declaration of Douglas P. Lobel ("Lobel Decl."), ¶¶ 2-4 & Exh. 1, attached thereto, filed contemporaneously herewith.  Plaintiffs ignored this information and filed their CCAC without including the Operating Companies as defendants.  In fact, whereas some of the original complaints included multiple affiliates as defendants, the CCAC named the parent holding entity as ***the only defendant.***

Defendant tried again.  Following its receipt of the CCAC, Defendant promptly began to investigate the names of the relevant Operating Companies for the newly named Plaintiffs.  Defendant wrote Plaintiffs, asking them to "amend the Consolidated Complaint within ten days of the date on which [Defendant] suppl[ies] the entity names . . . so that the pleadings are appropriately framed before motions to compel arbitration and to dismiss will be filed."  *Id.* ¶ 5 & Exh. 2, attached thereto.

On March 16, 2018, after receiving the new roster of named Plaintiffs in the CCAC, Defendant sent a list of the relevant Operating Companies to Plaintiffs, identifying the specific companies and services that provided the phone, internet and television services to the 38 named Plaintiffs.  *Id.* ¶ 6 & Exh. 3, attached thereto. Contemporaneously, the Operating Companies were in the process of producing (in informal discovery) the relevant contracts between Plaintiffs and the Operating Companies.  Defendant again asked that Plaintiffs "amend the Consolidated Complaint within ten days . . . so that the pleadings are appropriately framed before motions to compel arbitration and to dismiss will be filed." *Id.*

Plaintiffs once again refused, this time because, they claim, they were "provided with no information on which entities are responsible for which allegations, or why the proposed defendants are more appropriately named defendants than CenturyLink, Inc." *Id.* ¶ 7 & Exh. 4, attached thereto.  Despite having received their contracts with the Operating Companies, Plaintiffs remain unwilling to add as defendants the Operating Companies, even though they contracted with the Operating Companies, and those

companies provided services to, rendered bills to and collected monies from the

Plaintiffs.  *Id.*

## STANDARD FOR INTERVENTION

Rule 24 provides for intervention by mandatory right (Rule 24(a)) or permissively

at the discretion of the Court (Rule 24(b)).  To intervene as of right, the movant must

meet three criteria:

> (a) INTERVENTION OF RIGHT. On timely motion, the court
> must permit anyone to intervene who:
>
> * * * *
>
> (2) claims an interest relating to the property or transaction
> that is the subject of the action, and is so situated that
> disposing of the action may as a practical matter impair or
> impede the movant's ability to protect its interest, unless
> existing parties adequately represent that interest.

*Accord South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir.

2003).  "The intervenor must satisfy all three parts of the test.  The motion to intervene

must also be timely."  *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997).

In deciding whether to grant a motion to intervene as a matter of right, the court

liberally construes Rule 24 with all "doubts resolved in favor of the proposed intervenor."

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999);

*Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) (intervention "serves the

judicial system's interest in resolving all related controversies in a single action").

## ARGUMENT

## I.   THE OPERATING COMPANIES HAVE A RIGHT TO INTERVENE TO PROTECT THEIR DIRECT INTERESTS

The Operating Companies easily meet the three conditions for mandatory

intervention.

### A.   The Operating Companies Have Recognized Interests at Stake

The Plaintiffs' claims arise from, and directly challenge, the Operating

Companies' contracts with, communications with, and services rendered to the named

Plaintiffs.  Thus, the Operating Companies have substantial interests in the subject matter

of the litigation that satisfy Rule 24(a)(2).  These interests are not merely tangential or

collateral, but are "direct," "substantial" and "legally protectable."  *United States v.*

*Union Elec. Co*., 64 F.3d 1152, 1161 (8th Cir. 1995).

### *1.   The Plaintiffs' Claims Directly Relate to the Operating Companies' Contractual Interests*

The named Plaintiffs directly challenge their contracts with the Operating

Companies.  The named Plaintiffs allege breach of contract claims.  CCAC ¶¶ 432-445.

The Plaintiffs and the Operating Companies are the parties to those contracts.  Seshagiri

Decl. ¶¶ 11-12, 27 & Exh 1.  In addition, the named Plaintiffs directly attack the

Operating Companies' performance of their contracts with the named Plaintiffs,

including the quality of their services and the amounts of monthly bills.

The Operating Companies' contracts with the Plaintiffs alone give the Operating

Companies a mandatory right to intervene.  *E.g.*, *Turn Key Gaming*, 164 F.3d at 1081

(intervenor "easily satisfi[ed]" Rule 24(a) where its contract rights may be impacted by

the litigation); *see also Union Elec. Co.*, 64 F.3d at 1162 (citing with approval *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994), which permitted intervention where applicant had contract rights that may be impacted by the resolution of the litigation); *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987) ("Courts thus have found that an applicant has a sufficient interest to intervene when the action will have a significant stare decisis effect on the applicant's rights, or where the contractual rights of the applicant may be affected by a proposed remedy.").

Applying this rule to the parent/subsidiary context, courts repeatedly hold that a subsidiary of a named party in a lawsuit has a mandatory right to intervene if the lawsuit concerns the subsidiary's contract. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) (subsidiary of the defendant, who was the owner, operator, and permit holder for the pipeline, had a recognized interest in defending the suit because the plaintiffs sought to invalidate contracts related to the development of the pipeline.); *Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity, Inc.*, No. 12-CV-03163-LHK, 2012 WL 6001098, at *7 (N.D. Cal. Nov. 29, 2012) (subsidiary of the defendant had a recognized interest in the suit where it was a party to the client service agreement underlying the suit); *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 543 (1st Cir. 2006) (subsidiary of the defendant had a recognized interest where the suit's resolution could impact the subsidiary's rights under a servicing agreement with the plaintiff).

Further, Plaintiffs' claims challenge the legality of the Operating Companies' contracts with them – which, alone, provides ground for mandatory intervention.

Plaintiffs claim that, "Defendant used illegal, deceptive, and unfair business practices to induce or otherwise mislead customers to open, purchase, and/or retain Defendant's products and services." CCAC ¶ 535. Such an allegation calls into question the validity of the Operating Companies' contracts with plaintiffs, which is a recognized legal interest under Rule 24(a). *Cf. United States ex rel. Hall v. Creative Games Tech., Inc.*, 27 F.3d 572 (8th Cir. 1994) (finding party to challenged contract necessary under Rule 19 because their interest "in the validity of the contracts would be directly affected by a judgment declaring the contracts void and unlawful, which is the relief sought by the plaintiffs"); *Nw. Airlines, Inc. v. Filipas*, No. 07-CV-4803 (JNE/JJG), 2008 WL 11375436, at *1 (D. Minn. Jan. 25, 2008) (finding intervenor had a recognized interest in defending the "legality" of an agreement that it negotiated and crafted).

### 2. *The Operating Companies Have a Legally-Protectable Interest in Defending the Factual Allegations Against Them*

In addition to protecting their contractual interests, the Operating Companies have a mandatory right to intervene to defeat the Plaintiffs' factual allegations against the conduct of the Operating Companies. Virtually each page of the CCAC is infused with allegations about the Operating Companies' alleged communications (such as representations during phone calls) and actions (such as providing particular qualities of service, or rendering and collecting bills). Indeed, it is impossible to conceive how the Plaintiffs could litigate this case without addressing the actions of the Operating Companies.

Under similar circumstances, courts regularly find that parties like the Operating Companies have a right to intervene under Rule 24(a).  For instance:

- *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582 (9th Cir. 1987) (intervenor prepared the defendant's financial statements, and "the gravamen of plaintiffs' claims [was] that [the defendant's] financial statements were inaccurate");

- *C.S. ex rel. Struble v. Cal. Dep't of Educ.*, 08-CV-0226-W(AJB), 2008 WL 962159, at *4 (S.D. Cal. Apr. 8, 2008) ("because plaintiff premise[d] [defendant's] liability nearly entirely on [the intervenor's] acts and omissions" under the agreement, the intervenor "has a legally protectable interest sufficiently related to [p]laintiff's claims to entitle" intervention as a right); and

- *ABS Glob., Inc. v. Inguran, LLC*, 14-CV-503-WMC, 2015 WL 1486647, at *2 (W.D. Wis. Mar. 31, 2015) plaintiff alleged that the intervenor had colluded with the defendant and had engaged in conduct that violates antitrust laws, and the intervenor had "its own defense to assert against" plaintiff's claims of exclusionary conduct).

### 3. *The Plaintiffs Demand Injunctive Relief That Would Directly Affect the Operating Companies*

The Operating Companies also have a legally-protectable interest in the injunctive relief that Plaintiffs seek, as it would directly affect them.  CCAC ¶ 482.

Courts have found that parties – including the subsidiary of a named party – that would be directly affected by an injunction have a legally-protectable interest that supports mandatory intervention.  *See South Dakota v. Ubbelohde*, 330 F.3d 1014, 1024 (8th Cir. 2003) (intervenors had sufficient interest in litigation where plaintiff sought injunction and injunction would impair intervenors' interests in operation of a river); *B. Fernandez & Hnos., Inc.*, 440 F.3d at 546 (subsidiary of defendant had sufficient interest in the litigation because the "proposed remedy - an injunction requiring specific

performance of the agreements – obviously would affect the [subsidiary's] contractual rights" ); *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, No. 13-2262 (JRT/LIB) 2015 WL 4136160, at *1 (D. Minn. July 8, 2015) (granting intervention where injunction barred construction of various real estate projects in which intervenor had an interest).

### B.     These Lawsuits Will "Impair" the Operating Companies' Interests

Satisfying the second element of intervention under Rule 24(a), these lawsuits undoubtedly may "impair" the Operating Companies' interests.  The test does not require certainty:  "Impair" does not necessarily mean "that, but for its intervention, its interest 'would be' impaired by the operation of res judicata, collateral estoppel, or stare decisis, but rather only that its interest 'may be' so impaired."  *Union Elec. Co.*, 64 F.3d at 1161. The "impairment" test ensures that the intervenor have a "necessary stake" in the litigation.  *J & N Logging Co. v. Rockwood Ins. Co.*, 848 F.2d 1438 (8th Cir. 1988).

This litigation could irreparably impair the Operating Companies' interests.  For instance, invalidation of the Customer Contracts – or any portion of them, such as the arbitration agreement or the class-action waivers – would constitute impairment; even interference with their business operations (here, their interactions with their customers) would impair their interests.  *E.g., Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 ("[A]n invalidation of the [contract] would both legally and practically affect Applicants' interests."); *Richland/Wilkin Joint Powers Auth.*, 2015 WL 4136160, at *1 (finding sufficient impairment where injunction directly affected intervenor's business operations).

In addition, their interests may be further impaired by potential judgments in these lawsuits against their corporate parent that would create negative precedent potentially undermining any future arbitrations or litigation involving the Operating Companies and these named Plaintiffs or class members.  In the Eighth Circuit, that is a sufficient basis to constitute "impairment" of interests.  *Turn Key Gaming, Inc.*, 164 F.3d at 1082 ("It is enough under Rule 24(a) that Miller & Schroeder could be prejudiced by an unfavorable resolution in later litigation."); *CRI, Inc. v. Watson*, 608 F.2d 1137, 1140 n.2 (8th Cir. 1979) (finding intervener risked, "as a practical matter, impairment of its ability to protect its interests by disposition of the suit" because a "judgment in Watson's favor would clearly have been compelling precedent adverse to its own cause of action."); *Corby Recreation, Inc. v. Gen. Elec. Co.*, 581 F.2d 175, 177 (8th Cir. 1978) (finding sufficient impairment where intervenor "could well be disadvantaged in a practical sense by the stare decisis effect of a determination on the issues" of liability).

### C.     The Defendant is Not "Adequate" to Protect the Interests of the Operating Companies

To establish the final element of intervention as of right under Rule 24(a), inadequate representation, the movant "need only carry a 'minimal' burden of showing that their interests are inadequately represented by the existing parties." *Union Elec. Co.*, 64 F.3d at 1168 (citation omitted).  "If the representation 'may be' inadequate, that itself is enough." *Stadin*, 309 F.2d at 919 (citation omitted).  Defendant's representation of the Operating Companies "may be" inadequate for *two* independent reasons, either of which alone is sufficient to mandate intervention.

### 1. The Primary Conduct Challenged by Plaintiffs Involved Primarily the Operating Companies, Not Their Parent Entity

Courts regularly recognize that the parent defendant is not an adequate representative for litigating conduct primarily conducted by their subsidiaries. A subsidiary has a right to intervene under Rule 24(a) where it "actively participated" in the transactions underlying the lawsuit, but the named defendant, the parent entity, was at most tangentially involved. *See, e.g.*, *B. Fernandez & Hnos., Inc.*, 440 F.3d at 547 (finding sister-defendant did not adequately represent sister-intervenor where sister-defendant had "no involvement in the events underlying [plaintiff's] complaint"); *Travelsource Corp. v. Old Republic Int'l Corp.*, No. 85 C 8116, 1986 WL 3848, at *2 (N.D. Ill. Mar. 14, 1986) (subsidiary met "its minimal burden of establishing the inadequacy of representation by its parent" where the subsidiary, not the parent, was a party to the contract underlying the suit); *S2 Automation LLC v. Micron Tech., Inc.*, No. CIV 11-0884 JB/WDS, 2012 WL 3656462, at *15 (D.N.M. Aug. 14, 2012) (finding parent company did not adequately represent subsidiary where subsidiary submitted evidence that it, not the parent, was a party to the contracts underlying the suit).[5]

---

[5] Conversely, where the complaint challenges conduct by the defendant-parent, rather than its subsidiary, courts generally deny a subsidiary's request to intervene as of right (but typically allow intervention permissively under Rule 24(b)). *See, e.g.*, *ABS Glob., Inc.*, 2015 WL 1486647, at *4 (parent company allegedly engaged in illegal patent-acquisition scheme and subsidiary merely had rights in patents at issue); *Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-cv-0957 (ADS) (AKT) 2017 WL 6459464, at *2 (E.D.N.Y. Dec. 15, 2017) (parent company allegedly infringed trademark and breached its contract with plaintiff and subsidiary simply claimed an interest in the intellectual property at issue).

The parallel rule regarding indispensable parties under Rule 19 supports the conclusion that the subsidiary is not adequately represented by its parent entity, where the subsidiary was the primary participant in the transaction.[6]  When determining whether a subsidiary is a necessary party in an action brought against its parent, courts similarly draw the same clear line based on whether the conduct at issue principally involved the parent or its subsidiary:

> [W]here the subsidiary is the primary participant in a dispute involving both the parent and the subsidiary, the subsidiary is an indispensable party.

*Dou Yee Enters. (S) PTE, Ltd. v. Advantek, Inc.*, 149 F.R.D. 185, 188 (D. Minn. 1993) (quoting *Lopez v. Shearson Am. Express, Inc.*, 684 F. Supp. 1144, 1147 (D.P.R. 1988)); *accord Gay v. AVCO Fin. Servs., Inc.*, 769 F. Supp. 51, 56 (D.P.R. 1991) (subsidiary not a necessary party "where the facts to be proven 'against' the subsidiary are not the ultimate facts needed to make the plaintiff's case," but where the subsidiary is an "active participant in the activity alleged as the basis for recovery, the subsidiary should be a party to the action").  The case law "uniformly supports the proposition that joinder of the subsidiary is required in such a situation."  *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) (collecting cases).

---

[6]     The intervention standards in Rule 24 should be read closely with Rule 19. *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 541 n.2 (8th Cir. 1970) ("One of the purposes of the 1966 amendment of Rule 24 was to make intervention as a matter of right complimentary to Rule 19."); *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 825 (5th Cir. 1967) ("[T]he question of whether an intervention as a matter of right exists often turns on the unstated question of whether joinder of the intervenor was called for under new Rule 19.").

Here, all of Plaintiffs' claims directly arise out of or relate to the Operating

Companies' actions.  As an "active participant in the activity alleged as the basis for

recovery," the Operating Companies "should be a party to the action."  *See Dou Yee*

*Enters.*, 149 F.R.D. at 188.

> ### 2.    *Plaintiffs Might Argue That the Parent Defendant, Which Is Not a Party to Plaintiffs' Contracts, Cannot Compel Arbitration*

Separately, the parent Defendant might not adequately represent the interests of

the Operating Companies, if Plaintiffs were to successfully argue that the parent

Defendant cannot compel the arbitration clauses in the contracts between Plaintiffs and

the Operating Companies.

As Defendant argues in its contemporaneously-filed Motion to Temporarily Stay

Discovery, Defendant can still move to compel arbitration even though it is not a party to

the contracts between Plaintiffs and the Operating Companies.  *See* Mem. re Mo. to Stay,

at 20-21.  For instance, some of the Plaintiffs agreed to arbitrate claims not only with the

Operating Companies but also their "affiliates."  *Id.* at 20.  A parent entity also is entitled

to rely on a subsidiary's arbitration clause if the factual nexus of the claims are

"inherently inseparable."  *Id.* at 21.  Plaintiffs also are equitably estopped from denying

the applicability of their arbitration agreements to their claims against Defendant.  *Id*.

Plaintiffs are likely to oppose these arguments.  If the Court were to agree with

Plaintiffs that Defendant – not being a party to the contracts between Plaintiffs and the

Operating Companies – cannot compel arbitration based on the provisions of those

contracts, then *a fortiori* Defendant would not be an "adequate" representative for the

- 22 -

Operating companies.  *Cf. Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th

Cir. 1997) (defendant might be inadequate if it "will not make all of the prospective

intervenor's arguments"); *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th

Cir. 1996) (determination of adequacy includes "whether the present party is capable" of

making intervenor's intended arguments).

The Court does not need to determine at this time whether Defendant will be able

to assert the arbitration provisions of the Plaintiffs' contracts with the Operating

Companies.  It is the mere possibility that Plaintiffs might oppose and prevail on this

argument that creates the potential for inadequate representation, which is all that is

necessary to meet the low threshold for intervention as of right under Rule 24(a).  *Sierra*

*Club*, 960 F.2d at 85-86 (possibility of inadequacy of representation sufficient to give

right to intervene); *Michigan State AFL-CIO v. Miller*, 103 F.3d at 1247 ("One is not

required to show that the representation will in fact be inadequate.  For example, it may

be enough to show that the existing party who purports to seek the same outcome will not

make all of the prospective intervenor's arguments.").

## II.   ALTERNATIVELY, THE COURT SHOULD ALLOW THE OPERATING COMPANIES TO INTERVENE PERMISSIVELY

Even if the Court were to conclude that the Operating Companies lack a

mandatory right to intervene under Rule 24(a), the Court should permissively grant their

motion to intervene under Rule 24(b).  Plaintiffs' stubborn refusal to sue the parties from

whom they received the services about which they complain is inexplicable and

prejudicial, particularly since Defendant both identified the Operating Companies and provided their contracts to Plaintiffs.

Rule 24(b) alternatively gives this Court discretion to permit the Operating Companies to intervene:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

The "first requirement" under Rule 24(b) is that the motion to intervene must be "timely." *In re Baycol Prods. Litig.*, 214 F.R.D. 542, 543 (D. Minn. 2003).  Clearly, that is the case here.  The Operating Companies have been asking Plaintiffs to name them to the pleadings since before Plaintiffs filed the Consolidated Class Action Complaint, and are bringing this motion before the Rule 16(b) status conference and before discovery has started.  No one could possibly claim the motion is untimely.

The "second requirement" for permissive intervention is the existence of "a question of law or fact in common with the underlying action." *In re Baycol Prods. Litig.*, 214 F.R.D. at 543.  Literally, every factual allegation and legal contention about the merits of the Plaintiffs' claims relates directly to the Operating Companies, as the named Defendant, CenturyLink, Inc., had no factual involvement in any of the predicate events.  This second requirement is more than easily satisfied.

Finally, the Court should grant intervention permissively because it would not "unduly delay or prejudice adjudication of the original parties' rights." *In re Guidant*

*Corp. Implantable Defibrillators Prods. Liab. Litig.*, 245 F.R.D. 632, 635 (D. Minn. 2007).  The Operating Companies are attempting to move the case forward on a proper footing, while the Plaintiffs are attempting to defeat Defendants' rights by refusing to name the Operating Companies.  Furthermore, if the Court agrees that Plaintiffs' claims should be compelled to arbitration, than the intervention "mitigate[s]" and does not "exacerbate[ ]" any potential for delayed justice.  *United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934 (D. Md. 2004).

## III.   AT THIS TIME, THE COURT SHOULD ALLOW INTERVENTION FOR THE LIMITED PURPOSES OF COMPELLING ARBITRATION AND JOINING THE MOTION TO TEMPORARILY STAY DISCOVERY

The Operating Companies request intervention at this time for only a ***limited purpose*** – moving to enforce their Customer Contracts with the named Plaintiffs to compel arbitration and effectuate the class-action waivers (and, necessarily, stay discovery temporarily until the Court rules on that motion).[7]

In general, Rule 24 permits intervention for limited purposes other than to participate as a full plaintiff or defendant.  *E.g.*, *WaterLegacy v. U.S. E.P.A.*, 300 F.R.D. 332, 339 (D. Minn. 2014) (permitting intervention for a limited purpose to delay entry of unopposed motion to remand and other collateral issues).  Examples of limited intervention have included:  (1) challenging a protective order, *In re Baycol Prods. Litig.*, 214 F.R.D. at 543-44 (allowing intervention for limited purpose of seeking modification

---

[7]     In the unlikely event that any named Plaintiffs' claims survive the clear and express terms of the arbitration and class-action waiver agreements in their contracts, the Operating Companies will request to intervene for all purposes as co-defendants.  That scope of intervention is not ripe until the Court resolves the forthcoming motion on arbitration and class-action waivers.

of a protective order); (2) objecting to the production of certain discovery, *see Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 17 (E.D.N.Y. 1996) (considering motions to intervene "for the limited purpose" of objecting to an order regarding the discovery of certain documents); (3) challenging a settlement, *United States v. Carpenter*, 298 F.3d 1122, 1125-26 (9th Cir. 2002); and (4) lifting a stay, *United States v. Petters*, No. 08-5348 AMD/JSM, 2008 WL 5234527, at *1 (D. Minn. Dec. 12, 2008).

Courts regularly permit parties to intervene under Rule 24(a) to compel arbitration of the claims. *Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010) (permitting party to intervene to compel arbitration); *see also Clean Earth, Inc. v. Endurance Am. Ins.*, No. 15-6111 (FLW), 2016 WL 5422063, at *5 (D.N.J. Sept. 28, 2016) (permitting intervention on limited basis to move to compel arbitration); *Tech. & Intellectual Prop. Strategies Grp. PC*, 2012 WL 6001098, at *7 (permitting intervention so that intervenor could "assert its right to enforcement of [] arbitration provision"); *Bagne v. JP Morgan Chase Bank, N.A.*, No. 08-CV-13646, 2008 WL 11355527, at *3 (E.D. Mich. Dec. 31, 2008) (permitting intervention as of right where intervenor sought to compel arbitration). Courts also regularly allow intervention permissively under Rule 24(b), to allow third parties to move to compel arbitration. *E.g.*, *United States ex rel. Frank M. Sheesley Co. v. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 415 (W.D. Pa. 2006) ("notions of judicial economy suggest aggregating them in a single proceeding"); *MPA Constr., Inc.*, 349 F. Supp. 2d at 939 ("Any potential for undue delay is likely to be mitigated, not exacerbated, by arbitration . . . .").

Finally, the Court should allow the Operating Companies to intervene because it may be that the Plaintiffs refuse to name them as co-defendants based on the improper purpose of attempting to skirt their arbitration and class-action waiver agreements. *See Pro Lawns, Inc. v. Fid. & Deposit Co. of Md.*, 3:14-CV-408-WKW, 2015 WL 350637, at *2 (M.D. Ala. Jan. 23, 2015) (plaintiff not prejudiced by allowing intervention by party seeking a stay pending arbitration; if plaintiff did not name intervenor as a defendant in order to avoid the arbitration agreement, that would not be a "a legitimate goal to be protected when weight the impact of prejudice to the existing parties under Rule 24(b)").[8]

## CONCLUSION

For these reasons, Qwest Corporation *et al.* respectfully request that the Court grant their motion and permit these ten Operating Companies to intervene for the limited purposes of moving to compel arbitration and to enforce class-action waivers and joining in Defendant CenturyLink Inc.'s motion for temporary stay of discovery.

Date:  April 2, 2018                    Respectfully submitted,

                                        */s/ Douglas P. Lobel*
                                        Douglas P. Lobel (VA Bar No. 42329)
                                        David A. Vogel (VA Bar No. 48971)

---

[8]     By moving to intervene for the limited purpose of compelling arbitration, the Operating Companies are intending to avoid any potential argument that their intervention for all purposes could be deemed a waiver of their right to arbitrate. *Cf. Hall-Williams v. Law Office of Paul C. Miniclier, PLC*, 360 F. App'x 574, 579 (5th Cir. 2010) (reversing lower court's finding that intervention waived arbitration right, where intervenor filed motion to arbitration six weeks after intervening); *U.S. ex rel. McAllister Const. Co., LLC v. Diversified Maint. Sys. Inc.*, No. 5:11-CV-100/RS-CJK, 2011 WL 6112903, at *2 (N.D. Fla. Dec. 8, 2011) (rejecting argument that intervention under Rule 24 waived right to arbitrate, where intervenor made clear its purpose of intervention was to effectuate its arbitration rights).

COOLEY LLP
11951 Freedom Drive
Reston, Virginia 20190
Tel.: (703) 456-8000
Fax: (703) 456-8100
dlobel@cooley.com
dvogel@cooley.com

Martin S. Schenker (CA Bar No. 109828)
Jeffrey M. Gutkin (CA Bar No. 216083)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Tel.: (415) 693-2000
Fax: (415) 693-2222
mschenker@cooley.com
jgutkin@cooley.com

William A. McNab (MN Bar No. 320924)
David M. Aafedt (MN Bar No. 27561X)
WINTHROP & WEINSTINE, P.A.
Capella Tower, Suite 3500
225 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 604-6400
Fax: (612) 604-6800
wmcnab@winthrop.com
daafedt@winthrop.com

*Attorneys for Defendant CenturyLink, Inc. and Intervenors* Qwest Corporation; Embarq Florida, Inc.; Embarq Missouri, Inc.; Carolina Telephone and Telegraph Company LLC; Central Telephone Company; CenturyTel of Idaho, Inc.; CenturyTel of Larsen-Readfield, LLC; CenturyTel of Washington, Inc.; CenturyTel Broadband Services, LLC; *and* Qwest Broadband Services, Inc.

171258974

- 28 -