UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION | MDL No. 17-2795 (MJD/KMM) |
| This Document Relates to: | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TEMPORARILY STAY DISCOVERY PENDING RESOLUTION OF FORTHCOMING MOTION TO COMPEL ARBITRATION AND ENFORCE CLASS-ACTION WAIVERS** |

This Document Relates to:

| | |
|---|---|
| 0:17-cv-02832 | 0:17-cv-04622 |
| 0:17-cv-04613 | 0:17-cv-04943 |
| 0:17-cv-04614 | 0:17-cv-04944 |
| 0:17-cv-04615 | 0:17-cv-04945 |
| 0:17-cv-04616 | 0:17-cv-04947 |
| 0:17-cv-04617 | 0:17-cv-05001 |
| 0:17-cv-04618 | 0:17-cv-05046 |
| 0:17-cv-04619 | |

Douglas P. Lobel (VA Bar No. 42329)
David A. Vogel (VA Bar No. 48971)
COOLEY LLP
11951 Freedom Drive
Reston, Virginia 20190
Tel.: (703) 456-8000
Fax: (703) 456-8100
dlobel@cooley.com
dvogel@cooley.com

Martin S. Schenker (CA Bar No. 109828)
Jeffrey M. Gutkin (CA Bar No. 216083)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Tel.: (415) 693-2000
Fax: (415) 693-2222
mschenker@cooley.com
jgutkin@cooley.com

William A. McNab (MN Bar No. 320924)
David M. Aafedt (MN Bar No. 27561X)
WINTHROP & WEINSTINE, P.A.
Capella Tower, Suite 3500
225 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 604-6400
Fax: (612) 604-6800
wmcnab@winthrop.com
daafedt@winthrop.com

*Attorneys for Defendant CenturyLink, Inc.*

170024893

Thirty-seven of the 38 named Plaintiffs agreed to arbitrate their claims, and all 38 named Plaintiffs agreed to waive their right to participate in class action litigation.  As a result, Defendant CenturyLink, Inc., and certain of its affiliates (if allowed to intervene) (collectively "Defendants"), will shortly file a Motion to Compel Arbitration and Enforce Class-Action Waivers ("Motion to Compel").[1]  Under well-established nationwide precedent, the Court should temporarily stay discovery while it considers that motion.

Defendants will demonstrate in its Motion to Compel that 37 of the 38 named Plaintiffs agreed to extremely broad arbitration provisions, which (1) cover all claims "arising under or related to" billing and service issues, and (2) apply both to the contracting party (the "Operating Companies," which sold, provided and billed services to Plaintiffs) and to its affiliates (including Defendant, their parent entity).  Based upon a consistent string of Supreme Court opinions enforcing arbitration agreements in consumer contracts, the Court should enforce these agreements and compel Plaintiffs' cases to arbitration.

Because there are substantial grounds to arbitrate, the Court should temporarily stay discovery until it rules on the Motion to Compel, for these reasons:

*1.*    ***Prejudice.***  Defendants would be severely prejudiced if Plaintiffs are permitted to seek class-wide discovery in this proceeding before they are compelled to arbitration.  First, because the parties (and the Operating Companies) agreed to arbitrate,

---

[1]    Certain of Defendant's affiliates will file a Motion to Intervene for the Limited Purpose of Compelling Arbitration and Enforcing Class-Action Waivers and will join in this Motion, if the Court permits.

this Court has no jurisdiction over the cases or the scope of discovery.  Second, Plaintiffs contractually agreed to limit disputes to their individual claims and not to bring or participate in class-wide litigation.  If discovery is not temporarily stayed, Defendants would be deprived of its contractual rights; Plaintiffs will obtain class-wide discovery that is inconsistent with and beyond the scope of their contractual agreements; and the Court would supplant the authority of arbitrators' to determine the scope of discovery for arbitrable claims.  Once discovery commences, these harms cannot be undone, but Plaintiffs would not suffer any prejudice from a temporary stay.  In fact, Defendants have already informally produced over 7,200 pages of documents relating to Plaintiffs' individual claims.

> **2.  *Avoiding Excessive Burdens and Costs.*** If the Court does not temporarily stay discovery, the Court and parties will undertake enormous and costly efforts that will be wasted when the claims are compelled to arbitration.  Plaintiffs are seeking far-reaching, class-wide discovery that will impose substantial costs on the parties – to search for and produce responsive information and documents, and to litigate privilege, work product, and other disputes that are already on the horizon.  No reason exists for the parties and Court to bear this burden in light of the Plaintiffs' agreement to arbitrate their claims.

> **3.  *Discovery Tailored for Any Remaining Claims.*** The Court's resolution of the Motion to Compel will likely substantially change the focus and scope of this proceeding.  The Motion will be resolved shortly.  It would be premature to start massive, class-wide discovery before the Court resolves the Motion to Compel.  In the unlikely

event that any Plaintiff's class-wide claims survive the express contractual remedies, the scope of discovery for those remaining claims (if any) will be far narrower than the massive discovery Plaintiffs currently seek.  Logically, *before* allowing discovery to start on a much larger scale, the Court should *first* determine what discovery ultimately will be necessary for the remaining claims, and particularly whether any class-wide discovery is appropriate in light of the class-action waivers.

For these reasons, the Court should temporarily stay discovery until it rules on Defendants' forthcoming Motion to Compel.[2]

## BACKGROUND

## I.     THE OPERATING COMPANIES HAVE A LONGSTANDING POLICY OF REQUIRING CUSTOMERS TO AGREE TO ARBITRATION AND CLASS-ACTION WAIVERS

In their forthcoming Motion to Compel, Defendants will show (through Plaintiffs' account records) that 37 of the named Plaintiffs in this case – 35 residential customers and two small businesses – agreed to broad, all-compassing arbitration and class-action waiver clauses in their service contracts with the Operating Companies.  These clauses appear in the standard terms applicable to the Operating Companies' (1) high-speed internet services (called "HSI"); (2) television services (called "Prism"); and (3) automatic and/or online payment features (called "Autopay," "Quick Bill Pay" and "My Account").  Similarly, the records show that the 38th Plaintiff, Michael Maguire (a small business), agreed to a class-action waiver.

---

[2]      Defendants reserve their rights to raise any procedural and substantive defenses to Plaintiffs' claims, including, for example, defenses based on lack of personal jurisdiction.

170024893

### A.   <u>Internet Services</u>

Each of the Plaintiffs is (or was) a customer of an Operating Company's HSI services.  Declaration of Travis Beard ("Beard Decl."), ¶ 3, filed contemporaneously herewith.  Before this past fall, the Operating Companies had two variations of these standard contracts for HSI services; the Operating Companies rolled out a nationwide, standardized contract in fall 2017.  *Id.* ¶ 7.  Each of the 37 Plaintiffs is bound to one of these three contracts.

### 1.   *Residential HSI Contract*

The HSI services of seven of the 37 Plaintiffs are governed by a standard contract called the "High-Speed Internet and Internet Access Services Residential Terms and Conditions" (the "Residential HSI Contract").  *Id.* ¶¶ 8-9 & Exh. 1 attached thereto.  The Residential HSI Contract sets forth a provision entitled "Mandatory Arbitration of Disputes," which provides in part:

> INSTEAD OF SUING IN COURT, YOU AND COMPANY ***AGREE TO ARBITRATE ANY AND ALL CLAIMS, CONTROVERSIES OR DISPUTES OF ANY KIND ("CLAIMS") AGAINST EACH OTHER***.  THIS INCLUDES BUT IS NOT LIMITED TO ***CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT***, AS WELL AS CLAIMS ARISING OUT OF OR RELATING TO COMPANY'S SERVICES OR SOFTWARE, BILLING OR ADVERTISING, OR ARISING OUT OF OR RELATING TO EQUIPMENT YOU OR COMPANY MAY USE IN CONNECTION WITH COMPANY'S SERVICES.  THE REQUIREMENT TO ARBITRATE APPLIES EVEN IF A CLAIM ARISES AFTER YOUR SERVICES HAVE TERMINATED; ***APPLIES TO ALL CLAIMS YOU MAY BRING AGAINST COMPANY'S*** EMPLOYEES, AGENTS, ***AFFILIATES*** OR OTHER REPRESENTATIVES; AND APPLIES TO ALL CLAIMS THAT COMPANY MAY

BRING AGAINST YOU.

Beard Decl. ¶ 10 & Exh. 1 ¶ 15(B) (emphases added).[3]  The same clause sets forth the

customer's agreement to waive participation in a class-action lawsuit, either as a

representative or a class member:

> YOU AND COMPANY FURTHER AGREE THAT
> ***NEITHER COMPANY NOR YOU WILL JOIN ANY***
> ***CLAIM WITH A CLAIM OR CLAIMS OF ANY OTHER***
> ***PERSON(S)*** OR ENTITY(IES), WHETHER IN A
> LAWSUIT, ARBITRATION, OR ANY OTHER
> PROCEEDING.  YOU AND COMPANY AGREE THAT
> ***NO CLAIMS WILL BE ASSERTED IN ANY***
> ***REPRESENTATIVE CAPACITY*** ON BEHALF OF
> ANYONE ELSE, THAT ***NO CLAIMS WILL BE***
> ***RESOLVED ON A CLASS-WIDE OR COLLECTIVE***
> ***BASIS***, THAT NO ARBITRATOR OR ARBITRATION
> FORUM WILL HAVE JURISDICTION TO ACCEPT OR
> DETERMINE ANY CLAIMS ON A CLASS-WIDE OR
> COLLECTIVE BASIS, AND THAT ***NO RULES FOR***
> ***CLASS-WIDE OR COLLECTIVE ARBITRATION WILL***
> ***APPLY***. . . .

*Id*. (emphases added).

### 2.   *High-Speed Internet Subscriber Agreement*

The HSI services of other customers, including 28 of the 37 Plaintiffs, are

governed by the "High-Speed Internet Subscriber Agreement," also sometimes called the

"Combined Modem & Subscriber Agreement" (the "HSI Subscriber Agreement").  Beard

Decl. ¶¶ 12-13 & Exh. 2 attached thereto.  The HSI Subscriber Agreement also contains a

"Dispute Resolution and Arbitration" provision that states, in part:

---

[3]     The Residential HSI Contract contains numerous other arbitration-related terms
including selection of the CPR Institute for Dispute Resolution as the forum and
applicable rules.

**17. Dispute Resolution and Arbitration; Governing Law.**
PLEASE READ THIS SECTION CAREFULLY. IT
AFFECTS RIGHTS THAT YOU MAY OTHERWISE
HAVE. IT PROVIDES FOR RESOLUTION OF DISPUTES
THROUGH MANDATORY ARBITRATION WITH A
FAIR HEARING BEFORE A NEUTRAL ARBITRATOR
INSTEAD OF IN A COURT BY A JUDGE OR JURY OR
THROUGH A CLASS ACTION.

(a) Arbitration Terms. You agree that any dispute or claim
arising out of or relating to the Services, Equipment,
Software, or this Agreement (whether based in contract,
tort, statute, fraud, misrepresentation or any other legal
theory) will be resolved by binding arbitration. The sole
exceptions to arbitration are that either party may pursue
claims: (1) in small claims court that are within the scope of
its jurisdiction, provided the matter remains in such court
and advances only individual (non-class, non-representative,
non- consolidated) claims; and (2) in court if they relate
solely to the collection of any debts you owe to CenturyLink.

Beard Decl. ¶ 14 & Exh. 2 ¶¶ 17 & 17(a).[4]  As does the Residential HSI Agreement, the

HSI Subscriber Agreement also contains a "Waiver of Jury and Class Action" clause:

(b) Waiver of Jury and Class Action. By this Agreement,
both you and CenturyLink are waiving rights to litigate
claims or disputes in court (except small claims court as set
forth in paragraph (a) above). Both you and CenturyLink
also waive the right to a jury trial on your respective claims,
and waive any right to pursue any claims on a class or
consolidated basis or in a representative capacity.

*Id.* Exh. 2 ¶ 17(b).

---

[4]     The HSI Subscriber Agreement also provides detailed procedure (including
selection of the AAA as the forum) and allocation of costs of the arbitration.

170024893

3.    *2017 HSI Agreement*

In August 2017, the Operating Companies standardized their contracts for HSI services by rolling out a new version of the "CenturyLink High-Speed Internet Subscriber Agreement" ("2017 HSI Agreement"), which replaced the Residential HSI Agreement or the HSI Subscriber Agreement for affected customers.  For legal reasons Defendants will explain in the Motion to Compel, the 2017 HSI Agreement does <u>not</u> govern customers in this case who were either named plaintiffs or putative class members in these lawsuits that had already been filed at the time of the rollout of the 2017 HSI Agreement. Applying that rule to the 37 Plaintiffs, the 2017 HSI Agreement governs the Operating Companies' services to at least two Plaintiffs in these lawsuits.

The 2017 HSI Agreement includes an equally broad arbitration provision:

> **17. Dispute Resolution and Arbitration; Governing Law.**
> PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE. IT PROVIDES FOR RESOLUTION OF DISPUTES THROUGH MANDATORY ARBITRATION WITH A FAIR HEARING BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY OR THROUGH A CLASS ACTION. THE ARBITRATION PROVISION IS SET FORTH BELOW IN PARAGRAPH (a) ("ARBITRATION TERMS"). YOU MAY REJECT THE ARBITRATION TERMS PROVISION BY SENDING US WRITTEN NOTICE TO THE ARBITRATION NOTICE ADDRESS PROVIDED BELOW WITHIN 30 DAYS AFTER YOU BEGIN RECEIVING THE SERVICES. YOUR REJECTION NOTICE MUST STATE THAT YOU REJECT THE ARBITRATION TERMS PROVISION AND INCLUDE YOUR NAME, ADDRESS, ACCOUNT NUMBER, AND PERSONAL SIGNATURE.
>
> (a) <u>Arbitration Terms</u>. You agree that any dispute or claim arising out of or relating in any way to the Services,

> Equipment, Software or this Agreement (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory), will be resolved by binding arbitration. This means that the arbitrator, and not any court, shall have exclusive authority to resolve any dispute or claim arising under or relating to (among other subjects) the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any dispute or claim that all of this Agreement, or any part of this Agreement other than this arbitration, provision, is void, voidable, lacking in consideration, illusory, invalid, unconscionable, or for any reason unenforceable. The sole exceptions to arbitration are that either party may pursue claims: (1) in small claims court that are within the scope of its jurisdiction, provided the matter remains in such court and advances only individual (non-class, non-representative, nonconsolidated) claims; and (2) in court if they relate solely to the collection of any debts you owe to CenturyLink.

Beard Decl. ¶¶ 16-17 & Exh. 3 ¶¶ 17 & 17(a) attached thereto. It also includes a class-action waiver:

> (b) <u>Waiver of Jury and Class Action</u>. By this Agreement, both you and CenturyLink are waiving rights to litigate claims or disputes in court (except small claims court as set forth in paragraph (a) above). Both you and CenturyLink also waive the right to a jury trial on your respective claims, and waive any right to pursue any claims on a class or consolidated basis or in a representative capacity.

*Id.* Exh. 3 ¶ 17(b).

## B.  **Prism TV Services Subscriber Agreement**

Seven of the 37 Plaintiffs also subscribed to an Operating Company's television services (branded "Prism"). Beard Decl. ¶¶ 18-19. Each Prism customer must agree to the "Prism TV Services Subscriber Agreement" (the "Prism Subscriber Agreement"), which similarly contains a broad "Mandatory Arbitration of Disputes":

170024893

> YOU AND CENTURYLINK AGREE TO ARBITRATE
> ANY AND ALL CLAIMS, CONTROVERSIES OR
> DISPUTES OF ANY KIND ("CLAIMS") AGAINST EACH
> OTHER, INCLUDING BUT NOT LIMITED TO CLAIMS
> ARISING OUT OF OR RELATING TO THIS
> AGREEMENT, OR CENTURYLINK'S SERVICES,
> SOFTWARE, BILLINGS, ADVERTISINGS, OR
> EQUIPMENT.  THIS AGREEMENT TO ARBITRATE IS
> INTENDED TO BE BROADLY INTERPRETED AND
> APPLIES TO, AMONG OTHERS: ALL CLAIMS
> REGARDLESS OF WHETHER THEY ARE BASED IN
> CONTRACT, TORT, STATUTE, FRAUD,
> MISREPRESENTATION OR ANY OTHER LEGAL
> THEORY; ALL CLAIMS THAT AROSE PRIOR TO YOUR
> RECEIPT OF SERVICES FROM CENTURYLINK (SUCH
> AS FROM ADVERTISINGS) OR PRIOR TO THIS
> AGREEMENT; ALL CLAIMS THAT ARISE AFTER THE
> TERMINATION OF CENTURYLINK'S SERVICES TO
> YOU OR AFTER THE TERMINATION OF THIS
> AGREEMENT; ALL CLAIMS YOU MAY BRING
> AGAINST CENTURYLINK'S EMPLOYEES, AGENTS,
> AFFILIATES OR OTHER REPRESENTATIVES; AND
> ALL CLAIMS THAT CENTURYLINK MAY BRING
> AGAINST YOU.

Beard Decl. ¶¶ 18, 20 & Exh. 4 ¶ 7(B) attached thereto.  This same clause also contains a

class-action waiver:

> YOU AND CENTURYLINK AGREE, HOWEVER, THAT
> NEITHER CENTURYLINK NOR YOU WILL JOIN ANY
> CLAM WITH A CLAIM OR CLAIMS OF ANY OTHER
> PERSON(S) OR ENTITY(IES), WHETHER IN A
> LAWSUIT, ARBITRATION, OR ANY OTHER
> PROCEEDING.  YOU AND CENTURYLINK AGREE
> THAT NO CLAIMS WILL BE ASSERTED IN ANY
> REPRESENTATIVE CAPACITY ON BEHALF OF
> ANYONE ELSE, THAT NO CLAIMS WILL BE
> RESOLVED ON A CLASS-WIDE OR COLLECTIVE
> BASIS, THAT NO ARBITRATOR OR ARBITRATION
> FORUM WILL HAVE JURISDICTION TO ADJUDICATE
> OR DETERMINE ANY CLAIMS ON A CLASS-WIDE OR
> COLLECTIVE BASIS, AND THAT NO RULES FOR

170024893

CLASS-WIDE OR COLLECTIVE ARBITRATION WILL
APPLY.

*Id.*

### C.  <u>Electronic and Online Payment Terms and Conditions</u>

The Operating Companies also offer customers various methods for accessing

their account information and conveniently paying their bills.  Three of these methods

include:  (1) the ability to sign up for automatic deductions from their bank accounts (a

feature called "Autopay"); (2) the ability to make payments over the internet (a feature

called "Quick Bill Pay"); and (3) the ability to create an online account ("My Account").

Beard Decl. ¶ 21.  Several of the 37 Plaintiffs used one or more of these features.  *Id.*

¶ 22.

A customer who enrolls in Autopay online, uses the Quick Bill Pay feature, or

creates a My Account profile has to affirmatively agree to a contract called the

"Electronic and Online Payment Terms and Conditions" (the "Electronic/Online

Agreement").  *Id.* ¶ 23 & Exh. 5 attached thereto.  This contract includes a mandatory

arbitration clause that governs all disputes about any services or billing issues:

> **You and CenturyLink agree to arbitrate any and all
> claims, controversies or disputes of any kind ("<u>Claims</u>")
> against each other, including but not limited to Claims
> arising out of or relating to this Agreement, or any
> CenturyLink Products, billings, or advertisings.**  This
> agreement to arbitrate is intended to be broadly interpreted
> and applies to, among others: all Claims regardless of
> whether they are based in contract, tort, statute, fraud,
> misrepresentation or any other legal theory; all Claims that
> arose prior to your receipt of CenturyLink Products (such as
> from advertisings) or prior to this Agreement; all Claims that
> arise after the termination of CenturyLink Products to your or

- 10 -

> after the termination of this Agreement; all Claims you may
> bring against CenturyLink's employees, agents, affiliates or
> other representatives; and all Claims that CenturyLink may
> bring against you.

Beard Decl. ¶ 24 & Exh. 5 ¶ 12(B).  As with all the other contracts, in the

Electronic/Online Agreement, the customer waives any right to proceed on a class-wide

basis:

> You and CenturyLink agree, however, that neither
> CenturyLink nor you will join any Claim with a claim or
> claims of any other person(s) or entity(ies), whether in a
> lawsuit, arbitration, or any other proceeding.  You and
> CenturyLink agree that no Claims will be asserted in any
> representative capacity on behalf of anyone else, that no
> Claims will be asserted in any representative capacity on
> behalf of anyone else, that no Claims will be resolved on a
> classwide or collective basis, that no arbitrator or arbitration
> forum will have jurisdiction to adjudicate or determine any
> Claims on a class-wide or collective basis, and that no rules
> for class-wide or collective arbitration will apply.

*Id.*

### D.  Business HSI Agreement

Plaintiff Michael Maguire agreed to a contract called the "CenturyLink Business-

Class High-Speed Internet Services Annex," along with the "Standard Terms and

Conditions for Communications Services" (the "Business HSI Agreement").  Beard Decl.

¶ 25 & Exhs. 6 & 7 attached thereto.  The Business HSI Agreement contains a waiver of

jury trial; and, in the event that clause is found unenforceable, the contract requires

arbitration.  Beard Decl. ¶ 26 & Exh. 7 ¶ 17.4.C & D.  Like each of the foregoing

agreements, the Business HSI Agreement contains a class-action waiver:

> **Waiver of Jury Trial and Class Action.** Each party, to the extent permitted by law, knowingly, voluntarily, and intentionally waives its right to a jury trial and any right to pursue any claim or action relating to the Agreement on a class or consolidated basis or in a representative capacity.

*Id.* & Exh. 7 ¶ 17.4.C.

## II.   THE 37 PLAINTIFFS AFFIRMATIVELY ACCEPTED THESE ARBITRATION AND CLASS-ACTION WAIVER CLAUSES

In their forthcoming Motion to Compel, Defendants will demonstrate with Plaintiffs' account records that each of the 37 Plaintiffs affirmatively accepted one or more of the arbitration clauses and class-action waivers quoted above, in a number of different ways.

1.     At installation of HSI services, the Operating Company's network automatically directs a customer with a company-provided modem to a website, which (after the customer's identity is confirmed) displays the entirety of the relevant HSI contract – *and* the Prism Subscriber Agreement, if the customer had purchased that too. Beard Decl. ¶ 27.  The customer cannot use the internet until the customer affirmatively clicks "I agree" when presented with the terms of the contracts.  *Id.* ¶ 28.  If the customer does not click "I agree," then the customer is prompted to call the Operating Company to cancel the internet service.  *Id*.  The Operating Companies have ***affirmative records*** of many of the Plaintiffs clicking on the "I agree" button.  *See, e.g.*, *id.* ¶ 29 & Exh. 8 attached thereto.

2.     The Plaintiffs who chose to enroll in Autopay online, create a My Account profile, or use the Quick Bill Pay feature also were required to affirmatively assent to the

170024893

Electronic/Online Payment Agreement, which contained the arbitration clause and class-action waiver.  When enrolling in or using these online features, a customer must check a box indicating that he or she has read and accepts the Agreement.  There is a link to the full text of the agreement just above or next to the acceptance box.  Beard Decl. ¶ 30.  The Operating Companies have affirmative records of some Plaintiffs using these services in which they would have agreed to the Electronic/Online Payment Agreement.  *See, e.g.*, *id.* ¶ 31 & Exh. 8.

3.     After a customer orders a service, the customer typically receives a "Confirmation of Service" ("COS") letter that describes the services that the customer just ordered.  Beard Decl. ¶ 32.  Many of the COS letters expressly state that the customer's use of the services would be contingent upon their acceptance of a contract containing an arbitration provision.  *Id.* ¶ 33.  As but one example, one of the Plaintiffs received a COS letter that said:

> Your CenturyLink® High-Speed Internet Service and related products are offered under the High-Speed Internet Subscriber Agreement terms, which are located at centurylink.com/legal/highspeedinternetsubscriberagreement. Please review the terms, which include late fees, arbitration and limits on CenturyLink liability. If you do not agree, call CenturyLink to cancel your service within 30 days. CenturyLink updates the Subscriber Agreement from time to time and your continued use of the service(s) constitutes your acceptance of any changes.

*Id.* & Exh. 9, attached thereto.  Defendants will show that many of the 37 Plaintiffs received COS letters identical or similar to this one.  Many of the COS letters received by Plaintiffs also expressly provided the customer with ***a 30-day period to cancel the order***.

- 13 -

Beard Decl. ¶ 34 & Exh. 9.  After receiving these COS letters informing them of the arbitration agreements, or being informed that they have 30-days to cancel the order, ***none*** of the Plaintiffs cancelled their order within this 30-day period.  Beard Decl. ¶ 35.

In sum, each of the 37 Plaintiffs affirmatively clicked "I agree" to one or more express, mandatory arbitration agreements, and/or chose not to cancel his or her service order after being informed that the services would be governed by mandatory arbitration agreements.

## III. PLAINTIFFS RAISE A WIDE VARIETY OF DISPUTES THAT ARE SUBJECT TO ARBITRATION

In their Consolidated Class Action Complaint filed February 15, 2018 (ECF No. 38) ("CCAC"), the Plaintiffs allege a disparate variety of grievances with their services and bills, loosely bundled under the umbrella of "sales practices."  Each Plaintiff states a different kind of claim; no two have the same kind of dispute.  For instance:

- Plaintiff Luke Allison, who subscribed to CenturyLink's high-speed internet service, alleges that he did not receive promised discounts and that his bill included undisclosed fees.  (CCAC ¶¶ 143-48.)

- Plaintiff Jubilee Lawhead, alleges that her high-speed internet and telephone services were initiated three weeks later than promised, that she was billed for services she did not receive, and that she received lower-than-promised internet speeds.  (CCAC ¶¶ 387-93.)

- Plaintiff Richard Lucero, who subscribed to high-speed internet service, alleges that unauthorized accounts were opened in his name, and that he was improperly billed for a modem he did not use.  (CCAC ¶¶ 301-08.)

Based on their widely-varying claims against different Operating Companies, Plaintiffs seek a nationwide class of, "All persons or entities in the United States who, during the Class Period, had an account for telephone or internet services with Defendant."  CCAC

170024893

¶ 415.  Additionally, they seek to certify fifteen state subclasses.  CCAC ¶ 416.[5]  But each of these claims falls squarely within the broad language of the arbitration agreements and class-action waivers.

Based on agreement with Plaintiffs, Defendant will respond to the CCAC by April 27, 2018.  Defendant's response will include filing a Motion to Compel Arbitration and Enforce Class-Action Waivers, which the Operating Companies will join with the permission of the Court.

## IV. PLAINTIFFS IMMEDIATELY INTEND TO SEEK MASSIVE, NATIONWIDE DISCOVERY ON A CLASS-WIDE BASIS

Defendant met and conferred with Plaintiffs numerous times in the Rule 26(f) process.  Defendant raised the issue of staying discovery pending a ruling on the Motion to Compel in the very first discussion, and several times thereafter.  In a number of discussions between counsel, Plaintiffs rejected the notion of staying discovery, and further, have indicated they intend to ask the Court for immediate discovery on a class-wide basis.  The sheer size of that discovery, if permitted, will be massive.

In the Rule 26(f) conference, Plaintiffs refused to agree to a stay of discovery.  Declaration of Douglas P. Lobel ("Lobel Decl.") ¶ 2, filed contemporaneously herewith.  They indicated they expect discovery to start immediately after the April 5 conference.

---

[5]     Plaintiffs assert causes of action for (1) violation of Federal Communications Act and Truth-in-Billing Requirements, (2) breach of contract, (3) breach of duty of good faith and fair dealing, (4) violation of state consumer protection statutes, (5) violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, (6) negligent misrepresentation, (7) fraudulent inducement, and (8) unjust enrichment.  (CCAC ¶¶ 422-431, 432-445, 446-456, 457-482, 483-506, 507-518, 519-529, 530-544.)

170024893

*Id.* Plaintiffs also said they want discovery to be "class-wide" – meaning, discovery will address all documents and witnesses concerning Defendant's and its affiliates' nationwide sales and billing practices concerning "all customers." *Id.* ¶ 3. That necessarily implicates sales and bills to about 5.6 million internet customers and about a quarter of a million Prism customers. Beard Decl. ¶ 4.

Given the nationwide scope and large number of customers, the amount of discovery Plaintiffs seek is enormous. Plaintiffs demanded, and Defendant agreed, that Plaintiffs may take 300 hours of ***deposition testimony*** (including both fact and corporate witnesses, but excluding expert depositions) for their class-action claims. Depositions are likely to include Plaintiffs, current employees, former employees, and probably third parties (such as the Operating Companies' affiliates and vendors). Lobel Decl. ¶ 4.

In addition, Plaintiffs will ask Defendant to produce a staggering number of documents. Already, Plaintiffs "informally" have asked Defendant to produce ***9.7 million*** pages of documents – and that is even before serving a single document request on Defendant or any of the Operating Companies. Lobel Decl. ¶ 5.

The Court is certain to have to resolve numerous discovery disputes. For instance, as part of the informal exchange of information before discovery, Plaintiffs asked Defendant to produce: (1) all materials related to a privileged and work-product investigation, done by a major national law firm to assist a special committee of independent members of Defendant's Board of Directors, and (2) every document Defendant or its affiliates have provided to various state investigators. *Id.* ¶ 6. Defendant objected, stating that it has significant objections to these improper requests, so these

- 16 -

requests should be made through formal discovery so that Defendant can lodge formal objections and the Court has a proper record for any motions. *Id.* ¶ 7.  If Plaintiffs repeat these requests in formal discovery, as they are likely to do, the Court will need to adjudicate motions on all these matters.  Defendant anticipates the Court also will have to resolve numerous other discovery disputes that typically occur in complex litigation. *Id.* ¶ 8.

## DISCOVERY STAYS PENDING
## MOTION TO COMPEL ARBITRATION

When considering whether claims should be heard by an arbitrator, courts recognize the wisdom of staying significant discovery for a temporary period. *E.g.*, *Wells Fargo Ins. Servs. USA, Inc. v. Kyle King & Sherman Ins. Agency, Inc.*, No. 15-cv-4378 (PJS/HB), 2016 WL 6892108, at *4 (D. Minn. July 29, 2016) ("[C]ourts have regularly stayed discovery while the court considers whether a case must instead proceed in arbitration."); *Stiener v. Apple Comput., Inc.*, No. C 07-4486 SBA, 2007 WL 4219388, at *1 (N.D. Cal. Nov. 29, 2007) (recognizing that short stays of discovery are "a common practice while motions to compel are pending.") *Intertec Contracting Turner Steiner Int'l, S.A.*, No. 98 CIV. 9116 (CSH), 2001 WL 812224, at *7 (S.D.N.Y. July 18, 2001) ("As is the general practice of district courts, a stay of discovery was imposed in this case while the motion to compel arbitration was pending before the Court.").

Moreover, where a pending motion, if granted, would dispose of all or substantially all of the case and it "appears to have substantial grounds" and is "not unfounded in the law," discovery should be stayed during the pendency of the motion.

170024893

*Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94Civ.2120 (LMM)(AJP), 1996 WL 101277, at *4 (S.D.N.Y. Mar. 7, 1996); *see also TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. 13-1356 ADM/FLN, 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013).

In deciding to issue a stay, Courts also "consider, among other things, whether a stay would unduly prejudice or give a clear tactical advantage to one party, whether a stay will simplify the issues in question and the trial of the case, and whether discovery is complete and a trial date has been set." *Wells Fargo*, 2016 WL 6892108, at *3.

## ARGUMENT

Because Defendant's forthcoming arbitration motion is based on "substantial grounds" and is well-founded, and a stay will conserve resources and not prejudice Plaintiffs, the Court should temporarily stay discovery until it determines whether any claims should be litigated in this Court.

## I.   THERE ARE SUBSTANTIAL GROUNDS FOR THE MOTION TO COMPEL ARBITRATION THAT ARE WELL FOUNDED

Based upon the plain language of the above-quoted contract provisions, there are substantial grounds on which the Court should compel arbitration of Plaintiffs' individual claims.  The salient grounds and well-settled law are:

1.   The Operating Companies' policy and practice is that all residential customers must agree to such terms before they can receive services; small business customers must do so as well.  Beard Decl. ¶ 6.  Effectuating this policy and practice, the internet and television contracts governing Plaintiffs' agreements with the Operating

170024893

Companies include clear, express arbitration and class-action waiver clauses.  Federal

courts have a strong policy of enforcing arbitration agreements to the maximum extent

possible, including in consumer contracts.  *E.g.*, *DIRECTV, Inc. v. Imburgia*, 136 S. Ct.

463, 471 (2015); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).  Federal

courts have compelled arbitration under some of these specific contracts.  *E.g.*, *Numrich*

*v. Qwest Corp.*, 3:14-CV-01864-BR, 2015 WL 1883917, at *7 (D. Or. Apr. 23, 2015);

*Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1195 (D. Colo. 2013).

2.      Plaintiffs affirmatively assented to these contracts, including by either

(1) clicking "I Agree" before initiating service, or (2) using the service and not cancelling

after being informed of the arbitration clauses.  *Cf. Heath v. Travelers Cos.*, No. 08-6055

(JRT/JJG), 2009 U.S. Dist. LEXIS 131422, at *8-10 (D. Minn. May 18, 2009)

("[C]licking a hyperlink can constitute valid assent to a contract, including an agreement

to arbitrate."); *Wagner v. Discover Bank*, No. 12-cv-02786-MSK-BNB, 2014 U.S. Dist.

LEXIS 3682, at *7-9 (D. Colo. Jan. 13, 2014) (plaintiff bound to arbitration clause where

contract was mailed to him, and then plaintiff used the service).

3.      The arbitration clauses are extremely broad and encompass the different

types of sales and billing claims in this Proceeding.  Each clause requires the Plaintiffs to

arbitrate all claims "arising out of or relating to" the Operating Companies' "services,"

"billings," and/or "advertisings."  This language creates a binding obligation to arbitrate a

broad range of possible disputes.  *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*,

118 F.3d 619, 621, & 621 n.2 (8th Cir. 1997) (indicating that the language "arising out of

or relating to" constitutes "the broadest language the parties could reasonably use to

- 19 -

subject their disputes" to arbitration).  Courts routinely hold that such language extends to

claims like those raised by Plaintiffs here.  For example:

- In *Hamilton-Warwick v. Verizon Wireless*, the court found that plaintiff's action "center[ing] around a billing dispute" fell within the scope of a broad arbitration agreement.  No. 16-3461 (JRT/BRT), 2017 U.S. Dist. LEXIS 68532, at *12-13 (D. Minn. Apr. 12, 2017).

- In *Schreiner v. Credit Advisors, Inc.*, the court found that a Nebraska Consumer Protection Act claim fell within the scope of an arbitration clause requiring the parties to arbitrate "any controversy or claim arising out of or relating to th[e] contract."  No. 8:07cv78, 2007 U.S. Dist. LEXIS 74014, at *23-24 (D. Neb. Oct. 2, 2007).

- In *Ambrose v. Comcast Corp.*, the court compelled arbitration of Truth-in-Billing claims pursuant to a broad arbitration agreement.  No. 3:09-cv-182, 2010 U.S. Dist. LEXIS 31767, at *11 (E.D. Tenn. Mar. 31, 2010).

- In *N&D Fashions, Inc. v. DHJ Indus., Inc.*, the court held that, though plaintiff's claim was "nominally based on fraud and misrepresentation rather than breach of contract, it plainly ar[ose] 'in relation to' the contract, and so [wa]s within the scope of th[e] broad arbitration clause."  548 F.2d 722, 728 (8th Cir. 1976).

4.    Defendant, as the parent holding company that Plaintiffs improperly named

as the sole Defendant, is entitled to avail itself of the Operating Companies' arbitration

clause for these reasons:

- Plaintiffs agreed to arbitrate their claims not only against the Operating Companies – their service providers – but also against any "affiliates," which include Defendant.  *E.g.*, *Torres v. Simpatico, Inc.*, 781 F.3d 963, 971 (8th Cir. 2015) (nonsignatory could enforce an arbitration clause where arbitration clause covered claims involving the signatories' "affiliates").[6]

---

[6]    Plaintiffs' claims against three of the Operating Companies, which provided only phone services, fall within the ambit of this same provision of the Residential HSI Contract because they too are "affiliates" of the Operating Company that provided internet services.

170024893

- Under the circumstances of the Plaintiffs' claims, Defendant can invoke the arbitration clause even though Defendant is not a party to the contracts.[7]

- Plaintiffs have sued Defendant for breach of contract (*e.g.*, CCAC ¶¶ 432-445). Plaintiffs cannot have it both ways – if they allege Defendant is the party to their contracts, then Defendant is entitled to invoke the arbitration and class-action waiver classes in those contracts.

At this time, the Court is not ruling on the Motion to Compel, and does not need to be convinced that Defendants will prevail on the Motion. Instead, the Court need only to determine that the Motion has "substantial grounds" and is "not unfounded in the law." The applicable contract language and related evidence present a powerful record on which to conclude the Motion to Compel has "substantial grounds" and an extremely well-founded basis in the law.

---

[7]     *E.g.*, *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005) ("A nonsignatory can enforce an arbitration clause against a signatory to the agreement . . . 'when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.'" (citation omitted)); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement."); *Sec. Life Ins. Co. of Am. v. Sw. Reinsure, Inc.*, No. CIV. 11-1358 (MJD/JJK), 2013 WL 500362, at *6 (D. Minn. Feb. 11, 2013) (Davis, J.) ("'This equitable estoppel rule may compel arbitration for nonsignatories when (a) a signatory's claim makes reference to or presumes the existence of the written agreement containing the arbitration clause; or (b) the claim involves a close relationship between signatory and non-signatory parties, raising allegations of substantially interdependent and concerted misconduct.'" (citation omitted)).

170024893

## II.     THE COURT SHOULD TEMPORARILY STAY DISCOVERY UNTIL IT RULES ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

Because the Plaintiffs agreed to arbitrate their disputes and waive proceeding on a class-wide basis, Defendants would incur both prejudice and unnecessary expenses of class-wide discovery that Plaintiffs contractually agreed not to seek.

### A.     Plaintiffs Will Obtain Class-Wide Discovery That They Contractually Agreed Not to Seek

If the parties agreed to arbitrate their disputes, this Court lacks jurisdiction over the matter, including authorizing discovery under the Federal Rules of Civil Procedure on those disputes. *Corpman v. Prudential-Bache Sec., Inc*., 907 F.2d 29, 31 (3d Cir. 1990), *quoting Suarez-Valdez v. Shearson Lehman/American Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) ("An agreement to arbitrate is an agreement to proceed under arbitration and not under court rules."). Instead, it is the arbitrator who determines the proper scope of discovery for an arbitration. 9 U.S.C. § 7; *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 855 (7th Cir. 2002) ("If a dispute is arbitrable, responsibility for the conduct of discovery lies with the arbitrators . . . ."); *Wells Fargo*, 2016 WL 6892108, at *5 ("if arbitration is ordered, determination of the proper scope of discovery will be up to the arbitrator"). If discovery starts before any claims are compelled to arbitration, the arbitrator's authority to manage discovery would be usurped. *CIGNA HealthCare*, 294 at 855 (permitting "discovery on the merits" before "the issue of [the] arbitrability [of the dispute] is resolved puts the cart before the horse").

Proceeding with discovery ***before*** determining which claims are arbitrable (or subject to class-action waivers) creates two problems. First, it would enable Plaintiffs to

170024893

obtain discovery that they are legally and contractually barred from taking.  Second, it

would impose significant expenses that will be wasted.

      **1.**    ***A Temporary Stay Would Avoid Discovery
To Which Plaintiffs Might Not Be Entitled***

If the Court does not temporarily stay discovery, Plaintiffs will seek and obtain

extensive discovery on class-wide issues, involving company-wide systems and policies,

thousands of putative class members, and other information Plaintiffs deem relevant to

their Rule 23 arguments and to litigation of absent class members' claims.  Virtually none

of this information will be relevant to the arbitrations, which by agreement will involve

only individual claims and not any class-wide claims.

Thus, without a temporary stay, Plaintiffs will have effectively negated

Defendants' rights to have an arbitrator manage discovery pursuant to the tribunal's rules.

*See Wells Fargo*, 2016 WL 6892108, at *5 (where the scope of discovery in arbitration

was "likely to be more limited than would otherwise be permitted in federal court

litigation," "to permit broader discovery on all issues to proceed before [the decision on

the motion to compel arbitration] would deprive [the parties] of one of the significant

benefits of arbitration"); *NBC v. Bear Stearns & Co.*, 165 F.3d 184, 190-91 (2d Cir.

1999) ("Opening the door to the type of discovery sought . . . in this case likely would

undermine one of the significant advantages of arbitration, and thus arguably conflict

with the strong federal policy favoring arbitration as an alternative means of dispute

resolution.").  Plaintiffs will also have effectively negated their agreements to arbitrate

individual disputes and refrain from engaging in class-wide litigation.  This prejudice cannot be undone if the disputes are later found to be arbitrable.

By contrast, Plaintiffs would not be prejudiced by a temporary stay of discovery. For claims compelled to arbitration, those Plaintiffs can hardly claim prejudice by not being able to take discovery to which they are not contractually entitled.  Defendants have already informally produced ***thousands*** of pages of documents concerning Plaintiffs' individual claims – likely the very documents an arbitrator would require to be produced.  What additional discovery these Plaintiffs are entitled to seek on their individual claims is a matter for the arbitrators to decide.  Furthermore, waiting to see what discovery is appropriate for the claims remaining in the case avoids wasted expense and effort.  A brief delay to sort out which claims are arbitrable is not prejudicial.  *E.g.*, *Roadbuilders Mach. Supply Co. v. Sennebogen, Inc.*, No. 11-2681-KHV-DJW, 2012 WL 1253265, at *2 (D. Kan. Apr. 13, 2012) (finding that plaintiffs would not be unduly prejudiced by a stay of discovery in the beginning of the discovery process).

>    **2.**    ***A Temporary Stay of Discovery Would***
>    ***Avoid Excessive Burdens and Expenses***

Furthermore, because any class-wide discovery would be irrelevant to the arbitration proceedings, a temporary stay of discovery would avoid the extensive burdens and costs of Plaintiffs' massive, class-wide discovery, which will be irrelevant to their claims when compelled to arbitration.

Because the arbitrations will not involve class-wide claims, any class-wide discovery Plaintiffs obtain prior to being compelled to arbitration would be wasted.

Without a temporary stay of discovery, the parties are exposed "to the very complexities, inconveniences and expenses of litigation that [the parties] determined to avoid [by agreeing to arbitrate]." *Suarez-Valdez*, 858 F.2d at 649-50 (Tjoflat, J., concurring); *accord Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984) (without a temporary stay of discovery while considering a motion to compel arbitration, "the advantages of arbitration—speed and economy—[would be] lost forever"); *Wells Fargo*, 2016 WL 6892108, at *5 ("[T]o permit broader discovery on all issues to proceed before [the decision on the motion to compel arbitration] would deprive [the parties] of one of the significant benefits of arbitration.").

The Judicial Panel on Multidistrict Litigation created this Proceeding to avoid wasting the Court's and parties' time and resources. Transfer Order at 2 (ECF No. 1) (ordering centralization to, *inter alia*, "conserve the resources of the parties, their counsel, and the judiciary"). It would not "conserve resources" for the parties to conduct extensive, class-wide discovery when that discovery will likely be made irrelevant by the Court's decision on the Motion to Compel. *Cf. Mahamedi IP Law, LLP v. Paradice & Li, LLP*, No. 5:16-cv-02805-EJD, 2017 WL 2727874, at *2 (N.D. Cal. Feb. 14, 2017) (staying discovery pending resolution of the motion to compel arbitration and noting that "a stay of discovery promotes the 'just, speedy, and inexpensive' resolution of this case" (citation omitted)); *Miceli*, 2016 WL 1170994, at *2 ("It is in the interest of conserving the resources of the parties and the court to stay discovery in this action pending a determination of the motion to compel arbitration.").

170024893

**B.    A Temporary Stay of Discovery Would Allow the Court to Determine the More Limited Scope of Discovery for Any Non-Arbitrable Claims**

While it is likely that no class-wide claim will remain in this Proceeding, if any claims were to survive the Motion to Compel, a temporary stay of discovery would allow the Court to fashion an appropriate discovery plan for any remaining class-wide claims. If for some reason other Plaintiffs' claims are not compelled to arbitration, the scope of discovery for those claims would be limited to each Plaintiffs' standing to assert class-wide claims (recognizing, for example, limitations on claims about different types of services or conduct, or regarding customers of different affiliates).

Logically, the Court cannot determine the scope of discovery for this Proceeding until *after* it first determines whether any non-arbitrable, class-wide claims remain in the Proceeding, and the scope of those claims as to conduct, injuries and defendants. *Wells Fargo*, 2016 WL 6892108, at *5 (staying discovery where motion to compel would "significantly simplify" the claims against the remaining defendant in the litigation). The Court should therefore temporarily stay discovery, determine what claims are not arbitrable, and *then* allow discovery that is appropriate for only those remaining, non-arbitrable claims. To do otherwise would put the cart before the horse.

Even the one Plaintiff not subject to an arbitration agreement, Plaintiff Maguire, agreed to a class-action waiver. If the Court ultimately determines that his case is the only non-arbitrable claim, then class-wide discovery is inappropriate for his case.

170024893

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay discovery in these proceedings until it resolves Defendants' forthcoming Motion to Compel Arbitration and Enforce Class-Action Waivers.

Date: April 2, 2018                                   Respectfully submitted,

                                                      */s/ Douglas P. Lobel*
                                                      Douglas P. Lobel (VA Bar No. 42329)
                                                      David A. Vogel (VA Bar No. 48971)
                                                      COOLEY LLP
                                                      11951 Freedom Drive
                                                      Reston, Virginia 20190
                                                      Tel.: (703) 456-8000
                                                      Fax: (703) 456-8100
                                                      dlobel@cooley.com
                                                      dvogel@cooley.com

                                                      Martin S. Schenker (CA Bar No. 109828)
                                                      Jeffrey M. Gutkin (CA Bar No. 216083)
                                                      COOLEY LLP
                                                      101 California Street, 5th Floor
                                                      San Francisco, CA 94111
                                                      Tel.: (415) 693-2000
                                                      Fax: (415) 693-2222
                                                      mschenker@cooley.com
                                                      jgutkin@cooley.com

                                                      William A. McNab (MN Bar No. 320924)
                                                      David M. Aafedt (MN Bar No. 27561X)
                                                      WINTHROP & WEINSTINE, P.A.
                                                      Capella Tower, Suite 3500
                                                      225 South Sixth Street
                                                      Minneapolis, MN 55402
                                                      Tel: (612) 604-6400
                                                      Fax: (612) 604-6800
                                                      wmcnab@winthrop.com
                                                      daafedt@winthrop.com

                                                      *Attorneys for Defendant CenturyLink, Inc.*

- 27 -

170024893