# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION | MDL No. 17-2795 (MJD/KMM) |

**This Document Relates to:**

| | |
|---|---|
| 0:17-cv-02832 | 0:17-cv-04622 |
| 0:17-cv-04613 | 0:17-cv-04943 |
| 0:17-cv-04614 | 0:17-cv-04944 |
| 0:17-cv-04615 | 0:17-cv-04945 |
| 0:17-cv-04616 | 0:17-cv-04947 |
| 0:17-cv-04617 | 0:17-cv-05001 |
| 0:17-cv-04618 | 0:17-cv-05046 |
| 0:17-cv-04619 | |

**CENTURYLINK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS ALTERNATIVE MOTION TO DISMISS UNDER RULES 12(b)(2) AND 12(b)(6)**

Douglas P. Lobel (VA Bar No. 42329)
David A. Vogel (VA Bar No. 48971)
COOLEY LLP
11951 Freedom Drive
Reston, Virginia 20190
Tel.: (703) 456-8000
Fax: (703) 456-8100
dlobel@cooley.com
dvogel@cooley.com

Martin S. Schenker (CA Bar No. 109828)
Jeffrey M. Gutkin (CA Bar No. 216083)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Tel.: (415) 693-2000
Fax: (415) 693-2222
mschenker@cooley.com
jgutkin@cooley.com

William A. McNab (MN Bar No. 320924)
David M. Aafedt (MN Bar No. 27561X)
WINTHROP & WEINSTINE, P.A.
Capella Tower, Suite 3500
225 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 604-6400
Fax: (612) 604-6800
wmcnab@winthrop.com
daafedt@winthrop.com

*Attorneys for Defendant CenturyLink, Inc.*

# TABLE OF CONTENTS

RELEVANT FACTS .................................................................................................. 3

I.     CENTURYLINK, INC. IS A PARENT HOLDING COMPANY THAT
       PROVIDES NO COMMUNICATIONS SERVICES ............................................. 3

II.    PLAINTIFFS ALLEGE A WIDE VARIETY OF COMMON
       COMPLAINTS ABOUT THE QUALITY, SALES AND BILLING OF
       THEIR SERVICES .............................................................................................. 5

III.   CENTURYLINK, INC. HAD NO INTERACTIONS WITH PLAINTIFFS ......... 6

IV.    PLAINTIFFS ALLEGE THAT CENTURYLINK, INC. IS LIABLE TO
       THEM BECAUSE IT USES THE SAME TRADE NAME AS THE
       OPERATING COMPANIES THAT PROVIDED SERVICES ............................. 8

MOTIONS TO DISMISS UNDER RULES 12(B)(2) AND 12(B)(6) .............................. 9

ARGUMENT ............................................................................................................ 10

I.     THE PARENT HOLDING COMPANY CENTURYLINK, INC. IS AN
       IMPROPER DEFENDANT AND SHOULD BE DISMISSED ........................... 10

       A.    No Transferor Court Has Personal Jurisdiction over CenturyLink,
             Inc. for Any of These Claims .................................................................. 11

             1.    CenturyLink, Inc. Is Neither Incorporated nor Headquartered
                   in Any Transferor Forum ............................................................... 11

             2.    CenturyLink, Inc. Took No Actions in or Directed to Any
                   Transferor Forum Regarding  Any Plaintiff's Specific
                   Transactions .................................................................................. 12

       B.    Plaintiffs Have Not Stated a Valid Claim Against CenturyLink, Inc.
             Because They Have Not Alleged a  Legally-Cognizable Theory to
             Pierce the Corporate Veil ....................................................................... 14

             1.    Plaintiffs Fail to Allege Any Legally-Recognized Basis for
                   Piercing the Corporate Veil Between CenturyLink, Inc. and
                   Its Subsidiaries ............................................................................. 15

             2.    Courts Do Not Ignore Corporate Separateness Even if
                   Affiliates Share the Same Trade Name and Hold Themselves
                   out as a Single "Company" ............................................................ 17

             3.    Piercing the Corporate Veil Due to Use of a Common Trade
                   Name Would Dramatically Affect Corporations and Alter
                   Legal Precedent ............................................................................. 20

II.  THE COURT SHOULD DISMISS COUNT ONE UNDER FEDERAL
     TRUTH-IN-BILLING RULES ............................................................................ 22

     A.  Truth-in-Billing Rules Only Apply to Bills Containing Phone
         Charges, so Eight Plaintiffs Cannot State a Claim Under Those
         Rules ................................................................................................. 22

     B.  Plaintiffs' Claims About Unauthorized Charges Are Not Governed
         by the Truth-in-Billing Rules ................................................................ 23

CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accuride Int'l, Inc. v. Accuride Corp.*,
871 F.2d 1531 (9th Cir. 1989) ........................................................................ 17

*Al Sayegh Bros. Trading (LLC) v. Doral Trading & Exp., Inc.*,
219 F. Supp. 2d 285 (E.D.N.Y. 2002) ........................................................... 19

*In re Appropriate Framework for Broadband Access to the Internet*,
20 FCC Rcd. 14853 (2005) ............................................................................. 22

*Arnold v. AT&T, Inc.*,
874 F. Supp. 2d 825 (E.D. Mo. 2012) ........................................................... 13

*Atkins v. JAD Hosiery, Inc.*,
19 F. App'x 414 (7th Cir. 2001) .................................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................... 10

*Bellomo v. Pa. Life Co.*,
488 F. Supp. 744 (S.D.N.Y. 1980) ............................................................. 21-22

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ................................................................................. 11, 21

*DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*,
540 F.2d 681 (4th Cir. 1976) .................................................................... 16, 20

*Doberstein v. G-P Indus., Inc.*,
2015 WL 6606484 (Del. Ch. Oct. 30, 2015) ................................................ 16

*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*,
735 F. Supp. 2d 277 (W.D. Pa. 2010) ........................................................... 19

*Epps v. Stewart*,
327 F.3d 642 (8th. Cir. 2003) ................................................................... 10, 11

*Fastpath, Inc. v. Arbela Tech. Corp.*,
760 F.3d 816 (8th Cir. 2014) ........................................................................... 9

*Griffith v. SSC Pueblo Belmont Operating Co.*,
381 P.3d 308 (Colo. 2016) ............................................................................. 16

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ................................................................................. 11

*Hinkle v. Cont'l Motors, Inc.*,
  2017 WL 4574794 (D.S.C. Oct. 12, 2017) ............................................. 12

*HOK Sport, Inc. v. FC Des Moines, L.C.*,
  495 F.3d 927 (8th Cir. 2007) ................................................................. 15

*Hudock v. LG Elecs. U.S.A., Inc.*,
  2017 WL 1157098 (D. Minn. Mar. 27, 2017) ........................................ 15

*Janik v. City of Dallas*,
  1997 WL 452732 (N.D. Tex. July 31, 1997) ........................................... 19

*Johnson v. Arden*,
  614 F.3d 785 (8th Cir. 2010) ................................................................. 12

*Johnson v. SmithKline Beecham Corp.*,
  724 F.3d 337 (3d Cir. 2013) .................................................................. 20

*K–V Pharm. Co. v. J. Uriach & CIA, S.A.*,
  648 F.3d 588 (8th Cir. 2011) ................................................................. 10

*In re Lernout & Hauspie Sec. Litig.*,
  230 F. Supp. 2d 152 (D. Mass. 2002) .................................................... 19

*Madison Cty. Commc'ns Dist. v. CenturyLink, Inc.*,
  No. 5:12-cv-01768-IPJ, Mem. Op., (N.D. Ala. Dec. 20, 2012) .............. 3, 13

*Manasher v. NECC Telecom*,
  2008 WL 2622956 (E.D. Mich. July 2, 2008) ........................................ 24

*Matson Logistics, LLC v. Smiens*,
  2012 WL 2005607 (D. Minn. June 5, 2012) ........................................... 16

*Maurice Sunderland Architecture, Inc. v. Simon*,
  1994 WL 1091851 (D. Minn. Apr. 6, 1994) ........................................... 15

*McPeak v. S-L Distribution Co.*,
  2012 WL 6652764 (D.N.J. Dec. 19, 2012) ............................................. 18

*Mick v. Raines,*
883 F.3d 1075 (8th Cir. 2018) ...................................................................... 24

*Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark.,*
758 F.3d 1038 (8th Cir. 2014) ...................................................................... 10

*Myers v. Casino Queen, Inc.,*
689 F.3d 904 (8th Cir. 2012) ........................................................................ 12

*N. Cent. EMS Corp. v. Bound Tree Med., LLC,*
2016 WL 544472 (D. Minn. Feb. 10, 2016) ................................................. 17

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC,*
537 F.3d 168 (2d Cir. 2008) .......................................................................... 20

*NLRB v. Bolivar–Tees, Inc.,*
551 F.3d 722 (8th Cir. 2008) ........................................................................ 15

*NLRB v. Greater Kan. City Roofing,*
2 F.3d 1047 (10th Cir.1993) ......................................................................... 15

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP,*
2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ................................................. 19

*Numrich v. Qwest Corp.,*
2015 WL 1883917 (D. Or. Apr. 23, 2015) .............................................. 3, 13

*In re Protecting Consumers from Unauthorized Carrier Changes & Related
Unauthorized Charges,*
32 FCC Rcd. 6022 (2017) .............................................................................. 23

*Que Sera Promotions, Inc. v. Poughkeepsie Ford, Inc.,*
2005 WL 2896703 (N.D. Ind. Nov. 2, 2005) ............................................... 19

*Rankin v. Glob. Tel*Link Corp.,*
2013 WL 3456949 (N.D. Cal. July 9, 2013) ................................................ 24

*U.S. ex rel. Raynor v. Nat'l Rural Utils. Co-op. Fin., Corp.,*
690 F.3d 951 (8th Cir. 2012) ........................................................................ 10

*Riggins v. Dixie Shoring Co.,*
590 So. 2d 1164 (La. 1991) ........................................................................... 16

*SICK, Inc. v. Mot. Control Corp.*,
  2003 WL 21448864 (D. Minn. June 19, 2003).........................17

*In re Ski Train Fire in Kaprun, Austria*,
  230 F. Supp. 2d 403 (S.D.N.Y. 2002)...................................21

*United States v. Bestfoods*,
  524 U.S. 51 (1998)..........................................................14, 15

*Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co.*,
  646 F.3d 589 (8th. Cir. 2011) ...........................................10

*Von Grabe v. Sprint PCS*,
  312 F. Supp. 2d 1285 (S.D. Cal. 2003)................................21

*Warnaco Inc. v. VF Corp.*,
  844 F. Supp. 940 (S.D.N.Y. 1994).....................................18

*Wells Dairy, Inc. v. Food Movers Int'l, Inc.*,
  607 F.3d 515 (8th Cir. 2010) ..............................................3

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
  2016 WL 2349105 (D. Mass. May 4, 2016)..........................11

## Other Authorities

47 C.F.R. § 64.2401.............................................................22, 23

Fed. R. Civ. Proc. 12(b) ...................................................... *passim*

Plaintiffs have sued the wrong company. If the Court declines to compel arbitration, the proper defendants should be before the Court. Thus, the Court should dismiss CenturyLink, Inc. and allow the real parties in interest to intervene.

CenturyLink, Inc., the only named Defendant, is a parent holding company that owns stock in (and derives all of its revenue from) multiple operating subsidiaries – including the "Operating Companies" that provided service to Plaintiffs and have moved to intervene. As a holding company, CenturyLink, Inc., itself has no customers of its own and provides no services to customers. It took no actions towards Plaintiffs, including those alleged in the Consolidated Class Action Complaint (ECF No. 38) ("Complaint"). The Operating Companies, not CenturyLink, Inc., took the actions alleged in the Complaint. It is the Operating Companies, not CenturyLink, Inc., that contract with and provide communications services to customers, including the named Plaintiffs in these lawsuits. These facts are indisputable.

Undeterred, Plaintiffs have stubbornly named only CenturyLink, Inc., likely in an effort to avoid broad arbitration agreements in their contracts with the Operating Companies. But Plaintiffs' strategy cannot get past "Go" because of a fundamental defect: this Court has no personal jurisdiction over CenturyLink, Inc.:

- There is no ***general personal jurisdiction*** because no transfer forum is CenturyLink, Inc.'s headquarters or place of incorporation.

- There is no ***specific personal jurisdiction*** because CenturyLink, Inc. took no action in (or directed to) the transferor forums that damaged Plaintiffs.

Pursuant to Rule 12(b)(2), the Court should dismiss CenturyLink, Inc. for lack of personal jurisdiction.

Alternatively, the Court should dismiss CenturyLink, Inc. for Plaintiffs' failure to state a claim under Rule 12(b)(6). In a misguided salvo at veil-piercing, Plaintiffs seek to hold CenturyLink, Inc. – a New York Stock Exchange traded, public holding company – exclusively liable for the alleged acts of its many operating subsidiaries. Plaintiffs fail to allege any facts justifying piercing the corporate veil, and instead attempt to blur the well-established divisions between parent and subsidiary, on the theory that the CenturyLink family of companies use a common trade name (on bills, on vans and even on an NFL stadium) that purportedly confused Plaintiffs. This strategy also fails: case after case holds that alleged customer confusion is ***not*** a valid basis to ignore well-established corporate separation. Plaintiffs have alleged no facts, or legal theory, that makes CenturyLink, Inc. liable for the acts of its Operating Companies.

Separately, the Court should dismiss Plaintiffs' cause of action (Count I) under the "Truth-in-Billing Rules" of the Federal Communications Commission ("FCC"). Those Rules apply only to bills including charges for telephone services. Eight Plaintiffs did not receive telephone service, so the Rules do not apply to their bills. Of the other 30 Plaintiffs, ***none*** allege facts that constitute a violation of those Rules. The Rules regulate the language of telephone bills but do not regulate either the amount of charges or allegedly unauthorized charges.

To the extent any claims are not arbitrable, the Court should dismiss CenturyLink, Inc. as a Defendant, allow the Operating Companies to proceed as the proper defendants, and dismiss Count I of the Complaint.

## RELEVANT FACTS

## I.  CENTURYLINK, INC. IS A PARENT HOLDING COMPANY THAT PROVIDES NO COMMUNICATIONS SERVICES

Defendant CenturyLink, Inc. is a publicly traded holding company, incorporated under Louisiana law, with headquarters in Monroe, Louisiana. Declaration of Kiran Seshagiri ("Seshagiri Decl.") ¶ 5.[1] CenturyLink, Inc. makes regular public filings with the SEC on behalf of itself and its family of consolidated subsidiaries. *Id.* ¶ 10. Federal courts have acknowledged CenturyLink, Inc.'s status as a publicly traded parent holding company. *Numrich v. Qwest Corp.*, 2015 WL 1883917, at *1 (D. Or. Apr. 23, 2015) ("CenturyLink[, Inc.] is a holding company"); *Madison Cty. Commc'ns Dist. v. CenturyLink, Inc.*, No. 5:12-cv-01768-IPJ, Mem. Op., at 3-4 (N.D. Ala. Dec. 20, 2012), ECF No. 57 ("CenturyLink, Inc., a publicly traded company, is a holding company").

As a holding company, CenturyLink, Inc. invests in and owns various subsidiaries, with the goal of earning returns for its shareholders. Seshagiri Decl. ¶ 6. CenturyLink, Inc. owns many domestic and foreign subsidiary companies that provide communication services to consumer, business, and government customers. *Id.* CenturyLink, Inc.'s ownership of many subsidiaries is largely historical, and is driven by regulatory requirements and, specifically, differences among states' regulated-utilities laws. These subsidiary companies collectively provide their services under the trade name "CenturyLink." *Id.* ¶ 8.

---

[1]  On a Rule 12(b)(2) motion, the Court can consider evidence outside the pleadings. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010).

Because it is a holding company, CenturyLink, Inc.'s only material assets are the stock it owns in its subsidiaries or affiliates. *Id.* ¶ 10. CenturyLink, Inc. provides no services to customers and, in fact, has no customers of its own. *Id.* ¶ 7. CenturyLink, Inc. itself has no employees who provide services to customers, and it has no employees who handle sales, customer care, billing, or the provision of services. *Id.* It does not enter into contracts with customers to provide communications services. *Id.* It does not engage in advertising, render bills to customers, receive payments from customers, or engage in collection activities. *Id.*

Instead, customer-related activities are performed by certain subsidiaries of CenturyLink, Inc., including the ten Operating Companies that have moved to intervene. *Id.* ¶ 9; Motion to Intervene (ECF No. 80). In providing communication services domestically to consumers, the subsidiaries – not CenturyLink, Inc. – are responsible for handling the customer relationships, including:

- Entering into contracts with their customers;

- Providing service using network facilities and other resources, or arranging for services through vendors or other subsidiaries;

- Engaging in customer sales and care, such as technical or billing issues, either through employees of the subsidiaries or through vendor or other subsidiaries' employees; and

- Rendering bills to customers and collecting payments, the revenues from which are recorded on the books of the subsidiaries and not CenturyLink, Inc.

Seshagiri Decl. ¶¶ 9, 13, 18.

The above-described corporate structure and CenturyLink, Inc.'s relationship with its subsidiaries (such as the ten Operating Companies), is described in CenturyLink, Inc.'s public SEC filings:

> **As a holding company**, we [CenturyLink, Inc.] rely on payments from our operating companies to meet our obligations.
>
> As a holding company, substantially all of our income and operating cash flow is dependent upon the earnings of our subsidiaries and their distribution of those earnings to us in the form of dividends, loans or other payments…. **Our subsidiaries are separate and distinct legal entities** and have no obligation to pay any amounts owed by us ….
>
> ….
>
> … **[W]e [CenturyLink, Inc.] are a holding company with no material assets other than the stock of our subsidiaries** ….

*Id.* ¶ 10 & Exhibit 1 (Form 10-K, Dec. 31, 2017), at 42 (emphasis added).

## II. PLAINTIFFS ALLEGE A WIDE VARIETY OF COMMON COMPLAINTS ABOUT THE QUALITY, SALES AND BILLING OF THEIR SERVICES

Each Plaintiff alleges that he or she purchased internet services from the entity "CenturyLink" (*i.e.*, the trade name). Complaint ¶¶ 129-413. Thirty Plaintiffs also allege that they purchased phone services from "CenturyLink." *Id.* Seven Plaintiffs allege they purchased "CenturyLink" television services too, as well as some others who purchased third-party television services of DirecTV. *Id.*

Each Plaintiff makes unique claims about various disputes that allegedly arose from the sales, quality or billing of these services. These garden-variety claims involve diverse issues that individual consumers might often experience with phone, cable or internet providers, such as:

- **Quality of Service Disputes**.  Some Plaintiffs allege they purchased high-speed internet services at certain "bandwidth" (speed) rates, but received slower rates.  *Id.* ¶¶ 380, 390.

- **Charges for Returned Equipment**.  One Plaintiff alleges she was billed monthly charges for renting a modem for internet service, even after she allegedly returned the modem.  *Id.* ¶ 322.

- **Technician or Installation Disputes**.  Two Plaintiffs allege that technicians arrived late or that their installation was delayed.  *Id.* ¶¶ 152, 247.

- **Auto-Debit Disputes**.  Some Plaintiffs allege that monies were debited in the wrong amount or on the wrong date.  *Id.* ¶¶ 235, 243, 253, 296, 299.

- **Unauthorized Charges**.  Some Plaintiffs allege that their bills contained line-item charges that they did not authorize.  *Id.* ¶¶ 145, 254, 256, 263, 409.

- **Charges for Equipment Rental**.  Some Plaintiffs allege that they were billed for renting a modem when they owned their own modem.  *Id.* ¶¶ 214, 306.

- **Early Termination Fees**.  Some Plaintiffs allege that they were improperly billed early termination fees when they cancelled their services.  *Id.* ¶¶ 272, 298, 412.

- **Billing for Services After Cancellation**.  Some Plaintiffs allege that they were improperly billed after cancelling their services.  *Id.* ¶¶ 160, 167, 307.

- **Prorated Charges**.  One Plaintiff alleges that she was improperly billed for partial month or prorated charges.  *Id.* ¶ 153.

## III.    CENTURYLINK, INC. HAD NO INTERACTIONS WITH PLAINTIFFS

None of the widely-varied consumer claims described above implicate

CenturyLink, Inc.  CenturyLink, Inc. did not engage in the conduct alleged in the

Complaint:

- It did not have any phone calls with any Plaintiff;

- It did not enter into contracts with any Plaintiff;

- It did not provide services to any Plaintiff;

- It did not impose charges on any Plaintiff, whether for monthly services, equipment rentals or returns, or early termination;

- It did not render bills to any Plaintiff;

- It did not arrange for installation technicians to visit any Plaintiff; and

- It did not auto-debit any Plaintiff's account.

Seshagiri Decl. ¶ 7. The Complaint nowhere alleges any actions taken towards any Plaintiff by CenturyLink, Inc., and Plaintiffs know they cannot support such allegations.

Rather, Plaintiffs' claims directly implicate the conduct of CenturyLink, Inc.'s ten Operating Companies, which offer communications services across the country. Each of the 38 Plaintiffs contracted with, ordered and received services from, and received and paid bills, from one or more distinct legal entities, these ten Operating Companies:

- Qwest Corporation;

- Embarq Florida, Inc.;

- Embarq Missouri, Inc.;

- Carolina Telephone and Telegraph Company LLC;

- Central Telephone Company;

- CenturyTel of Idaho, Inc.;

- CenturyTel of Larsen-Readfield, LLC;

- CenturyTel of Washington, Inc.;

- CenturyTel Broadband Services, LLC; and

- Qwest Broadband Services, Inc.

*Id.* ¶ 16.

**IV. PLAINTIFFS ALLEGE THAT CENTURYLINK, INC. IS LIABLE TO THEM BECAUSE IT USES THE SAME TRADE NAME AS THE OPERATING COMPANIES THAT PROVIDED SERVICES**

In the preamble to the Complaint, Plaintiffs define "CenturyLink" as "CenturyLink, Inc.," and then allege actions by "CenturyLink" throughout the Complaint, apparently hoping to confuse the parent's actions with those of its subsidiaries. The Court should be wary of this tactical oversimplification. Plaintiffs never specifically state (nor could they) that CenturyLink, Inc. (as opposed to "CenturyLink") engaged in *any* alleged conduct. Instead, Plaintiffs make the preposterous suggestion that each act by one of the Operating Companies should be deemed an act of the parent, CenturyLink, Inc. Even a minimal investigation of CenturyLink's corporate structure, surely done by counsel, would disprove that baseless notion – particularly after CenturyLink's counsel provided information about the Operating Companies to Plaintiffs *before* they filed the Complaint.

Putting aside this contrived attempt at sleight of hand, Plaintiffs are effectively asserting an *alter ego* theory to hold CenturyLink, Inc. liable for the acts of its subsidiaries. The basis of this *alter ego* theory is the alleged subjective confusion Plaintiffs experienced when CenturyLink, Inc. and its subsidiaries use a common trade name, purportedly arising from two allegations.

First, Plaintiffs allege that they saw or heard the trade name "CenturyLink" in their communications and transactions. Complaint ¶ 13 ("Plaintiff and the Class only communicated to and did business with an entity that represented itself as CenturyLink") & ¶ 19 (plaintiffs heard or saw the name "CenturyLink" in calls, and wrote it on their

checks).  But Plaintiffs do ***not*** allege that CenturyLink, Inc. ***itself*** undertook these actions – meaning, they do not expressly allege that CenturyLink, Inc. (as opposed to the Operating Companies) made calls, sent invoices, or received Plaintiffs' checks and deposited monies.  Nor do they allege that anyone specifically told them they were dealing with "CenturyLink, Inc." in their transactions.  All they allege is that they dealt with an enterprise using the trade name "CenturyLink."

Second, Plaintiffs allege that CenturyLink, Inc. refers to itself as "CenturyLink" – going so far as to say the "Company [CenturyLink, Inc.] equates *'CenturyLink' with 'CenturyLink, Inc.'"  Id.* ¶ 16.  For support, Plaintiffs note that the name *"CenturyLink"* is used on CenturyLink, Inc.'s website, in public press releases, in SEC filings, and  "on every uniform, truck, envelope, [and] an NFL Stadium."  *Id.* ¶¶ 15-19.

Based on nothing more than the common use of this trade name, Plaintiffs claim they "reasonably believed" that they received "representations, promises and services" from parent ***CenturyLink, Inc***.  *Id.* ¶¶ 19, 20.  Simply put, even though Plaintiffs were customers of distinct legal entities (the Operating Companies), they want to hold CenturyLink, Inc. liable for the alleged acts of those Operating Companies because Plaintiffs were allegedly confused when multiple companies used the same trade name.

**MOTIONS TO DISMISS**
**UNDER RULES 12(b)(2) AND 12(b)(6)**

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), plaintiff bears the burden of making a prima facie showing that personal jurisdiction exists.  *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir.

2014).  A plaintiff's prima facie showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion."  *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (internal quotation marks and citation omitted).  Plaintiffs carry the burden of proof and that "burden does not shift to the party challenging jurisdiction."  *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 592 (8th. Cir. 2011); *Epps v. Stewart*, 327 F.3d 642, 647 (8th. Cir. 2003).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark.*, 758 F.3d 1038, 1042 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'"  *U.S. ex rel. Raynor v. Nat'l Rural Utils. Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

## **ARGUMENT**

## I.  **THE PARENT HOLDING COMPANY CENTURYLINK, INC. IS AN IMPROPER DEFENDANT AND SHOULD BE DISMISSED**

Plaintiffs' made a tactical decision to sue only the parent holding company, CenturyLink, Inc., even though it did not contract with or provide any of the services that Plaintiffs purchased from the Operating Companies.  The Court should dismiss CenturyLink, Inc. from the case for either of two reasons:  (1) under Rule 12(b)(2), the

Court lacks personal jurisdiction over CenturyLink, Inc., or (2) under Rule 12(b)(6),

Plaintiffs allege no legally-recognized basis to "pierce the corporate veil" between

CenturyLink, Inc. and the subsidiaries that engaged in these transactions.

**A.      No Transferor Court Has Personal Jurisdiction
over CenturyLink, Inc. for Any of These Claims**

Personal jurisdiction can be either general or specific.  *Epps*, 327 F.3d at 648.

Neither is present here.[2]

### 1.      *CenturyLink, Inc. Is Neither Incorporated nor Headquartered in Any Transferor Forum*

"General personal jurisdiction," where it exists, gives the Court personal

jurisdiction to hear any claim against the defendant, regardless of whether the claim

relates to a transaction in the forum.  *Id.*  The general jurisdiction rules changed four

years ago in a significant way relevant to this case.

In *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court stated that a

forum has general personal jurisdiction over a corporation only if the forum is the state of

the defendant's (1) incorporation or (2) principal place of business.  *Id.* at 137.

CenturyLink, Inc., incorporated in Louisiana, maintains its principal place of business in

Monroe, Louisiana.  Seshagiri Decl. ¶ 5; *cf. Hertz Corp. v. Friend*, 559 U.S. 77, 92-93

(2010) ("'Principal place of business' is best read as referring to the place where a

corporation's officers direct, control, and coordinate the corporation's activities.").  Thus,

---

[2]      In an MDL proceeding such as this one, this Court (as the transferee forum) takes
the personal jurisdiction of the transferor forum over Defendant.  *E.g.*, *In re Zofran
(Ondansetron) Prods. Liab. Litig.*, 2016 WL 2349105, at *3 (D. Mass. May 4, 2016).

Louisiana is the only state with general personal jurisdiction over CenturyLink, Inc., but no consumer action was filed in Louisiana.

### 2. CenturyLink, Inc. Took No Actions in or Directed to Any Transferor Forum Regarding Any Plaintiff's Specific Transactions

Specific personal jurisdiction is based on actions directed towards the forum. Because CenturyLink, Inc. did not take any action in or directed at any transferor forum regarding any transactions with any Plaintiff, no transferor forum has *specific* personal jurisdiction over CenturyLink, Inc.

Specific personal jurisdiction requires a direct causal nexus between each Plaintiff's claims and CenturyLink, Inc.'s conduct in the forum state. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912 (8th Cir. 2012) ("Specific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant."). It arises only if "the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities," such that "the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010).

Courts regularly dismiss claims for lack of personal jurisdiction against companies – especially against parent holding companies – that were not involved in the transactions at issue. *E.g.*, *Arnold v. AT&T, Inc.*, 874 F. Supp. 2d 825, 834 (E.D. Mo. 2012) (parent entity, a "passive holding company" that had no sales in the forum state, not subject to personal jurisdiction); *see also Hinkle v. Cont'l Motors, Inc.*, 2017 WL 4574794, at *3

(D.S.C. Oct. 12, 2017) (dismissing where defendant "conducts no activities in [the state]").

Here, the evidence attached to this Motion demonstrates that CenturyLink, Inc. took **no actions** in any transferor forum, giving rise to any Plaintiff's claim. It engaged in no sales efforts; it made no agreements; it provided no services; it sent no bills; and it collected no money from Plaintiffs. *See* Seshagiri Decl. ¶¶ 7, 13, 16. It did **nothing** with respect to these Plaintiffs. Plaintiffs make no factual allegations to the contrary. No matter how much discovery Plaintiffs may take, they will **never** establish a basis for specific personal jurisdiction over CenturyLink, Inc. in any of their lawsuits. Plaintiffs have not alleged anything to the contrary.

For this very reason – because CenturyLink, Inc. had no direct role in the transactions at issue – other courts have dismissed CenturyLink, Inc. from similar lawsuits for lack of specific personal jurisdiction. *E.g.*, *Numrich*, 2015 WL 1883917, at *1 (dismissing CenturyLink, Inc. for lack of jurisdiction because it was not involved in customer transaction); *Madison Cty.*, Mem. Op. at 4 (same). This Court should do the same; indeed no basis exists to reach a different conclusion.[3]

---

[3]    The Minnesota Attorney General sued certain of the Operating Companies based on similar sales related claims, but chose not to name CenturyLink, Inc. This further supports the conclusion that CenturyLink, Inc. is an inappropriate defendant because it was not involved in the underlying transactions.

**B.     Plaintiffs Have Not Stated a Valid Claim Against CenturyLink, Inc. Because They Have Not Alleged a Legally-Cognizable Theory to Pierce the Corporate Veil**

Alternatively, if the Court finds that the transferor forums have personal jurisdiction over CenturyLink, Inc., this Court should dismiss all claims against CenturyLink, Inc. under Fed. R. Civ. P. 12(b)(6), because Plaintiffs have failed to allege a legally cognizable theory to hold it liable for their claims.

Plaintiffs make an extreme assertion:  that based on Plaintiffs' subjective confusion as to their alleged service provider, the Court should disregard the extensive corporate structure of a NYSE listed, Fortune 250 public company, and treat the parent holding company as legally indistinguishable from its many operating subsidiaries.  The basis for this remarkable suggestion is that each time they heard or saw the trade name "CenturyLink," Plaintiffs subjectively believed that the name could only be referring to parent CenturyLink, Inc.  Complaint ¶ 19.  Nowhere, however, did (or could) the Complaint allege that CenturyLink, Inc. employees engaged in any of the alleged conduct.

Plaintiffs are clearly attempting to *pierce the corporate veil* and hold CenturyLink, Inc. liable for the alleged acts of its subsidiaries based on nothing more than the act of affiliates using the same trade name in a way that allegedly confused Plaintiffs.  *See United States v. Bestfoods*, 524 U.S. 51, 61–63 (1998) (an argument to hold parent liable for acts of subsidiary requires corporate veil to be pierced).  Plaintiffs' theory has no legal basis – and courts routinely reject customer confusion as a basis to ignore well-established corporate separations.

**1.  Plaintiffs Fail to Allege Any Legally-Recognized Basis for Piercing the Corporate Veil Between CenturyLink, Inc. and Its Subsidiaries**

Piercing the corporate veil "is an extraordinary measure that should be reserved for exceptional circumstances." *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007); *see also Bestfoods*, 524 U.S. at 61–62 ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation … is not liable for the acts of its subsidiaries.").

It is an extraordinary measure because respecting the separateness of corporate entities is a fundamental pillar of corporate law. Maintaining separation serves the necessary purpose of incentivizing investments in business enterprises by controlling risks. *E.g.*, *NLRB v. Bolivar–Tees, Inc.*, 551 F.3d 722, 727 (8th Cir. 2008) (quoting *NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047, 1051 (10th Cir. 1993) ("'The corporate structure is an artificial construct of the law, a substantial purpose of which is to create an incentive for investment by limiting [a shareholder's] exposure to personal liability' for the corporation's debts and obligations.").

Plaintiff's contention that the Court should disregard corporate divisions and hold the parent liable for the acts of its subsidiaries is a legal conclusion, not a factual one – so it must be supported by allegations of specific facts supporting the legal conclusion. *Cf. Hudock v. LG Elecs. U.S.A., Inc.*, 2017 WL 1157098, at *3 (D. Minn. Mar. 27, 2017) (dismissing claim that one company was liable for other company's acts, where plaintiff grouped entities together without factual support); *Maurice Sunderland Architecture, Inc. v. Simon*, 1994 WL 1091851, at *2 (D. Minn. Apr. 6, 1994) (granting motion to dismiss,

- 15 -

where plaintiff "[did] not allege any of the factors [the] law requires in order to pierce the corporate veil").

Plaintiffs have not alleged facts necessary to disregard the separateness between CenturyLink, Inc. and the Operating Companies.  The same core factors for piercing the corporate veil appear repeatedly in each state's law[4] and typically include:

- Gross undercapitalization of one entity;

- Failure to observe corporate formalities;

- Nonpayment of dividends;

- Insolvency of debtor corporation at time of incurring a debt;

- Siphoning funds of the corporation by the dominant stockholder;

- Non-functioning of other officers or directors;

- Absence of corporate records; or

- One corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co*., 540 F.2d 681, 685–87 (4th Cir. 1976); *cf. Griffith v. SSC Pueblo Belmont Operating Co*., 381 P.3d 308, 313 (Colo. 2016) (similar factors under Colorado law); *Doberstein v. G-P Indus., Inc*., 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015) (Delaware law); *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1168 (La. 1991) (Louisiana law).

---

[4]    Under the "internal affairs" doctrine, the law of the state of incorporation of the subsidiary controls whether to pierce the corporate veil.  *Matson Logistics, LLC v. Smiens*, 2012 WL 2005607, at *5 (D. Minn. June 5, 2012).  The Operating Companies are incorporated in Colorado, Delaware, Florida, Louisiana, Missouri, North Carolina, and Washington.

Plaintiffs do not allege facts supporting a ***single*** one of these factors to support their extraordinary assertion that CenturyLink, Inc. – a Fortune 250, NYSE-traded company, whose financial statements are audited by a public accounting firm – is the alter ego of the Operating Companies. In the absence of allegations addressing ***these recognized factors***, this Court can readily reject Plaintiffs' veil-piercing claim. *Cf. N. Cent. EMS Corp. v. Bound Tree Med., LLC*, 2016 WL 544472, at *5 (D. Minn. Feb. 10, 2016) (dismissing claims against parent entity, because complaint lacked allegations of any recognized factors that would support disregard for corporate separateness); *SICK, Inc. v. Mot. Control Corp.*, 2003 WL 21448864, at *9 (D. Minn. June 19, 2003) (holding that complaint failed to allege any of the traditional veil-piercing factors).

### 2. *Courts Do Not Ignore Corporate Separateness Even if Affiliates Share the Same Trade Name and Hold Themselves out as a Single "Company"*

Plaintiffs are improperly trying to turn a factual issue (whether CenturyLink, Inc. and its entities appeared to consumers to be a single "company" with the name "CenturyLink") into a legal issue (whether multiple entities using the same trade name is a basis to ignore corporate formalities). Their theory is flawed – the law simply does not pierce the corporate veil (and hold a parent liable for acts of its subsidiaries) based on the common use of a trade name.

A trade name like "CenturyLink" is not merely a moniker for the corporate entity; a trade name is used to represent products and services – and to distinguish them from competitors' products and services. *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. 1989) ("[T]rade names, trademarks and service marks all serve the

same basic purposes—to identify a business and its products or services, to create demand for those products or services, and to protect the company's good will."). Trademarks are commonly used by multiple companies to commonly market their products and services. *E.g.*, *McPeak v. S-L Distribution Co.*, 2012 WL 6652764, at *4 (D.N.J. Dec. 19, 2012) (explaining importance of trade names to franchises); *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 943 (S.D.N.Y. 1994) (trade name used on apparel sold by multiple companies). "CenturyLink" denotes the wide range of services offered by the family of CenturyLink companies; it is not a synonym for the corporate parent. Seshagiri Decl. ¶ 8. For instance, seeing the name "CenturyLink" on a truck (Complaint ¶ 19) does not mean the parent CenturyLink, Inc. owns the truck.

Because trade names do not establish corporate identity, the fact that affiliated entities share a similar trade name in commerce is ***not*** a recognized factor for ignoring their corporate separateness – even if customers are uncertain of the specific entity with which they are dealing. As the Seventh Circuit once bluntly concluded,

> In an effort to show that creditors were misled, Ms. Atkins repeats the unsupported assertion she made in the district court that one of JAD's customers did not always know that it was dealing with JAD. ***But customer confusion is not a traditional basis for piercing the corporate veil.***

*Atkins v. JAD Hosiery, Inc.*, 19 F. App'x 414, 415 (7th Cir. 2001) (emphasis added). Applying the same logic, numerous courts have ***rejected the same theory Plaintiffs assert here*** – that a court should pierce the corporate veil because a shared trade name caused customer confusion over which entity engaged in a transaction:

- In *Que Sera Promotions, Inc. v. Poughkeepsie Ford, Inc.*, 2005 WL 2896703, at *5 (N.D. Ind. Nov. 2, 2005), customers claimed confusion as to which affiliate provided them cable service, based on multiple companies using the trade name "Time Warner Cable." The court found no basis to pierce the corporate veil: "[A] potential for confusion, does not justify piercing the corporate veil. . . . Thus, TWE's and TWCCA's use of the name "Time Warner Cable" does not provide us with any reason to 'pierce the corporate veil.'"

- In *Al Sayegh Bros. Trading (LLC) v. Doral Trading & Exp., Inc.*, 219 F. Supp. 2d 285, 294–95 (E.D.N.Y. 2002), plaintiffs claimed they were lead "to believe they were dealing with one entity" because two companies shared a trade name and allegedly "acted as one corporation." The court found no authority supported this attempt to pierce the corporate veil and rejected plaintiffs' argument.

- In *Janik v. City of Dallas*, 1997 WL 452732, at *2 (N.D. Tex. July 31, 1997), plaintiffs attempted to pierce the corporate veil because they were confused as to which entity entered into their insurance contract, due to multiple affiliates sharing a trade name. The court rejected that argument: "Confusion regarding the identity of the party operating under an assumed name does not of itself warrant piercing the corporate veil."

Those are only a few of the many opinions recognizing this well-established principle.[5]

All of these cases demonstrate that Plaintiffs' veil-piercing theory fails.

But even if customer confusion were one factor in piercing the corporate veil,

Plaintiffs still have not alleged a sufficient basis to pierce the veil. Courts do not pierce

---

[5] *E.g.*, *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004) ("[C]ourts have declined to treat different firms as a single entity, holding them liable for one another's acts, simply because they shared an associational name and/or collaborated on certain aspects of a transaction."); *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 323 (W.D. Pa. 2010) ("The common marketing image and joint use of trademarked logos fail to render ERAC–Pittsburgh an alter ego of ERAC–Missouri. Enterprise Rent–A–Car is portrayed as a single brand to the public, but this evidence does not demonstrate the necessary control by defendant parent over the subsidiaries."); *see generally In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 170-71 (D. Mass. 2002) (collecting cases).

the corporate veil based on just one factor; they consistently require proof of multiple traditional factors. *E.g.*, *DeWitt*, 540 F.2d at 687 ("The conclusion to disregard the corporate entity may not, however, rest on a single factor . . . ."); *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (citation omitted) ("No single factor can justify a decision to disregard the corporate entity . . . ."). Lacking any other traditional factor to pierce the veil, Plaintiffs have not stated a valid claim against CenturyLink, Inc.

### 3. *Piercing the Corporate Veil Due to Use of a Common Trade Name Would Dramatically Affect Corporations and Alter Legal Precedent*

Plaintiffs' basis for holding CenturyLink, Inc. liable for the acts of its subsidiaries, if accepted, would have dramatic effects in disrupting the well-entrenched business structures of numerous, major companies nationwide. Public holding companies like CenturyLink, Inc., typically own (and operate through) ***many*** subsidiaries, and often use a common trade name for their subsidiaries – including household names like AT&T, General Electric, Bank of America, Verizon, and General Motors.[6] If the use of common trade names alone imposed liability on the corporate parent for the acts of its subsidiaries, investment-based, risk-mitigation strategies throughout the entire economy would need to be revisited. Surely, parent holding company AT&T Inc. would not expect to be liable

---

[6] *See, e.g.*, *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 343 (3d Cir. 2013) (recognizing "appealing" reasons for corporate structure of a parent holding company that owns stock in subsidiaries with "widespread and complex operations"; citing source that this structure "'is a very, very common thing'") (citation omitted).

for all claims against its many far-flung operating subsidiaries merely because it placed its trade name on its installation trucks or on the Cowboys' stadium in Dallas.

In addition, allowing a claim against the parent holding company, based on its subsidiary's use of a common trade name in the forum, would transgress clear jurisdictional rules. It is black-letter law that a forum state does not have personal jurisdiction over a parent entity based on the acts of its subsidiary in the forum. *Daimler*, 571 U.S. at 134-37. Courts therefore refuse to find personal jurisdiction over one corporate entity based on its affiliate's use of a common trade name. For instance, in *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1297, 1301 (S.D. Cal. 2003), plaintiffs sought to establish personal jurisdiction over the parent telephone company based on its subsidiary's use of the common "Sprint" name. The court rejected that argument:

> Here, Plaintiff seeks to establish that, through the use of a common trade name, Sprint Corporation has held itself out as the entity doing telecommunications business in California and entering into service contracts with people in California, including Plaintiff. However, Plaintiff does not provide evidence that Plaintiff entered into any such contracts with Sprint Corporation; rather the contracts in issue are in the name of Sprint PCS and use the trade name "Sprint PCS" and the common diamond logo. As in similar cases involving use of a common trade name, Plaintiff's subjective interpretation and/or assumption or conclusion, without more, is not sufficient to establish personal jurisdiction over Sprint Corporation.

*Id.* at 1301. Other courts agree. *E.g.*, *In re Ski Train Fire in Kaprun, Austria*, 230 F. Supp. 2d 403, 411 (S.D.N.Y. 2002) (rejecting the argument that personal jurisdiction over the parent based on the subsidiary's contacts is proper merely "because the two companies hold themselves out to the world as a single entity"); *Bellomo v. Pa. Life Co.*,

488 F. Supp. 744, 745 (S.D.N.Y. 1980) ("Nor does the parent subject itself to jurisdiction merely by holding the affiliate group out to the public as a unitary enterprise."). Allowing Plaintiffs' claims against CenturyLink, Inc. to proceed would require the Court to reject this well-established law.

The Court should dismiss all claims against CenturyLink, Inc. with prejudice.

## II. THE COURT SHOULD DISMISS COUNT ONE UNDER FEDERAL TRUTH-IN-BILLING RULES

Plaintiffs' Count I asserts violations of the FCC's "Truth-in-Billing Rules," promulgated at 47 C.F.R. Subpt. 64.2401. The Court should dismiss this count because Plaintiffs' claims do not fall within those Rules.

### A. Truth-in-Billing Rules Only Apply to Bills Containing Phone Charges, so Eight Plaintiffs Cannot State a Claim Under Those Rules

The Truth-in-Billing Rules apply only to *bills* that contain charges for *phone service* (with two exceptions not applicable here). 47 C.F.R. § 64.2401 ("telephone bills"). The FCC has said that these regulations do *not* apply to bills for internet service that lack phone charges. *In re Appropriate Framework for Broadband Access to the Internet*, 20 FCC Rcd. 14853, 14946 (2005) (Truth-in-Billing Rules "cover only providers of … voice services" and not "broadband Internet access service").

Eight Plaintiffs allege they received only internet service and not phone service: Allison, Dahib, Denniston, Fitch, Jeske, Landahl, O'Donnell, and Stucker. Thus, the Truth-in-Billing Rules do not apply to the claims of these Plaintiffs. The Court therefore should dismiss Count I with respect to these eight Plaintiffs.

**B.** **Plaintiffs' Claims About Unauthorized Charges
Are Not Governed by the Truth-in-Billing Rules**

The other 30 Plaintiffs fail to state claims within the scope of the Truth-in-Billing

Rules.

The Truth-in-Billing Rules establish requirements for the ***organization*** and

***content*** of "telephone bills." 47 C.F.R. § 64.2401. Telephone bills must:

- be clearly organized;

- contain clear and non-misleading descriptions of charges;

- distinguish between charges for which non-payment will and will not result
  in disconnection;

- contain clear and conspicuous disclosure of information on how to inquire
  about or contest charges on the bill; and

- provide notice of an option to block third-party charges.

*Id.* Absent from the list are any rules regarding services and the amount charged for

telephone service. The Truth-in-Billing Rules do ***not*** regulate the services and charges

themselves – for example, they do not regulate whether charges appearing on a bill must

be authorized by the customer. *See id.*; *see also In re Protecting Consumers from*

*Unauthorized Carrier Changes & Related Unauthorized Charges*, 32 FCC Rcd. 6022,

6023 (2017) ("The truth-in-billing rules regulate the format and content of information

about third-party charges on consumers' bills but do not explicitly address the imposition

of unauthorized charges on consumers' telephone bills.").

For the 30 Plaintiffs who purchased internet and phone service, ***none*** allege facts

that describe a violation of the prohibitions of the Truth-in-Billing Rules – instead, they

allege facts supporting claims about unexpected or unauthorized services or charges, or poor quality of service. The Truth-in-Billing Rules simply have no application to this lawsuit.

While their claims lack any specific factual allegations, Plaintiffs make the conclusory allegation (only in the causes of action) that their bills lacked a "clear, non-misleading, plain language description of the service rendered," or "information that the subscriber may need to make inquiries about, or contest, charges on the bill." Complaint ¶ 428. However, none of the 30 individual Plaintiffs' claims who obtained phone service actually allege facts supporting these generic allegations. The Court is not bound to accept such conclusory allegations. *Cf. Mick v. Raines*, 883 F.3d 1075, 1078 (8th Cir. 2018) (affirming dismissal of claim with "conclusory" statements "not supported by factual allegations").

The Court should therefore dismiss Count I because none of the alleged facts establish an actionable violation of the Truth-in-Billing Rules.[7]

## CONCLUSION

For these reasons, CenturyLink, Inc. respectfully submits that – to the extent the Court does not stay any claims pending arbitration – the Court should grant this motion,

---

[7] Some courts have also held that no private right of action exists to enforce the Truth-in-Billing Rules, because FCC regulations are generally not enforceable by private citizens. *E.g.*, *Rankin v. Glob. Tel\*Link Corp.*, 2013 WL 3456949, at \*15 (N.D. Cal. July 9, 2013); *Manasher v. NECC Telecom*, 2008 WL 2622956, at \*4 (E.D. Mich. July 2, 2008).

dismiss CenturyLink, Inc. as a Defendant, and dismiss various causes of action for certain

Plaintiffs as described herein.

Dated:  April 27, 2018                 Respectfully submitted,

                                        */s/ Douglas P. Lobel*
                                        Douglas P. Lobel (VA Bar No. 42329)
                                        David A. Vogel (VA Bar No. 48971)
                                        COOLEY LLP
                                        11951 Freedom Drive
                                        Reston, Virginia 20190
                                        Tel.: (703) 456-8000
                                        Fax: (703) 456-8100
                                        dlobel@cooley.com
                                        dvogel@cooley.com

                                        Martin S. Schenker (CA Bar No. 109828)
                                        Jeffrey M. Gutkin (CA Bar No. 216083)
                                        COOLEY LLP
                                        101 California Street, 5th Floor
                                        San Francisco, CA 94111
                                        Tel.: (415) 693-2000
                                        Fax: (415) 693-2222
                                        mschenker@cooley.com
                                        jgutkin@cooley.com

                                        William A. McNab (MN Bar No. 320924)
                                        David M. Aafedt (MN Bar No. 27561X)
                                        WINTHROP & WEINSTINE, P.A.
                                        Capella Tower, Suite 3500
                                        225 South Sixth Street
                                        Minneapolis, MN 55402
                                        Tel: (612) 604-6400
                                        Fax: (612) 604-6800
                                        wmcnab@winthrop.com
                                        daafedt@winthrop.com

                                        *Attorneys for Defendant CenturyLink, Inc.*

174296893