**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION**

This document relates to:
0:17-cv-02832, 0:17-cv-04613,
0:17-cv-04614, 0:17-cv-04615,
0:17-cv-04616, 0:17-cv-04617,
0:17-cv-04618, 0:17-cv-04619,
0:17-cv-04622, 0:17-cv-04943,
0:17-cv-04944, 0:17-cv-04945,
0:17-cv-04947, 0:17-cv-05001,
0:17-cv-05046

**MDL No. 17-2795 (MJD/KMM)**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

---

**TABLE OF CONTENTS**

I.     INTRODUCTION ......................................................................................... 1

II.    BACKGROUND ........................................................................................... 3

   A.    CenturyLink, Inc. Already Conceded It Is The Proper Defendant. ...................... 3

   B.    The Discovery Is Directly Tied to the Pending Motions. ...................... 6

III.   ARGUMENT ............................................................................................... 8

   A.    Standard of Review ................................................................................ 8

   B.    First Area of Impasse: Plaintiffs First RPDs Directed to the OMM Documents. 10

      1.    OMM Requests 1-4 Are Highly Relevant to the Issues In All Three Pending
            Motions. ................................................................................................ 11

      2.    Defendant Waived Any Privilege Covering the OMM Investigation. ............ 13

         a. Defendant waived the attorney-client privilege.................................... 14

         b. The work product doctrine is inapplicable here ................................... 18

            i. The OMM Investigation was not prepared "in anticipation of litigation" .... 19

            ii. Plaintiffs havea a substantial need and cannot obtain the OMM
            Investigation's substantial equilvalent by other means without undue
            hardship ..................................................................................................... 22

         c. Regardless, any work product protection was waived ...................................... 24

   C.    Second Area of Impasse: First RPDs Request No. 5. .......................................... 24

   D.    Third Area of Impasse:  The Intervenor Requests. ............................................ 26

      1.    Impasse Area:  Information Related to the Proposed Intervenors Formal
            Business Structures' and Operations ............................................................... 27

      2.    Impasse Area: Business Cards Showing Who the Proposed Intervenors' Key
            Employees Actually Work For ........................................................................ 30

      3.    Impasse Area: Documents Showing Positions Held by Proposed Intervenors'
            Executives With Other Entities........................................................................ 32

      4.    Impasse Area: Organizational Charts .............................................................. 33

      5.    Impasse Area: Documents Regarding Branding and Intellectual Property. ..... 34

      6.    Impasse Area: Documents Regarding Employee Judgments ............................ 35

IV.    CONCLUSION ......................................................................................... 36

## I.     INTRODUCTION

Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure, Plaintiffs submit this Memorandum in support of their Motion to Compel the Production of Documents responsive to Plaintiffs' Request for Production of Documents, Set One ("First RPD's") and Plaintiffs' subpoenas *duces tecum* to the proposed intervenors ("Intervenor Requests").  Over the course of three telephone conferences, counsel for Plaintiffs, Defendant CenturyLink, Inc. ("Defendant"), and proposed intervenors Qwest Corporation, Embarq Florida, Inc., Embarq Missouri, Inc., Carolina Telephone and Telegraph Company LLC, Central Telephone Company, CenturyTel of Idaho, Inc., CenturyTel of Larsen-Readfield, LLC, CenturyTel of Washington, Inc., CenturyTel Broadband Services, LLC, and Qwest Broadband Services, Inc. ("Proposed Intervenors") met and conferred to eliminate some of their initial disputes regarding Plaintiffs' First RPD's and Intervenor Requests.  However, several issues remain that require the Court's guidance.   A ruling as to the appropriateness of CenturyLink's and the Proposed Intervenor's objections should assist the parties as future disputes arise over the scope of permissible discovery.

At base, these disputes highlight the divergent narratives of this case that Plaintiffs and Defendant/Proposed Intervenors have presented to this Court, and these narratives naturally drive the scope of discovery.   It should then be unsurprising that Defendant/Proposed Intervenors would have the Court believe this case relates only to conduct carried out by Defendant's CenturyLink, Inc.'s subsidiaries (when allegedly providing the services CenturyLink, Inc. contracted to provide Plaintiffs).  Consistent

1

with this narrative, the Proposed Intervenors filed a Motion to Intervene (Dkt. No. 80), and Defendant filed a Motion to Compel Arbitration (Dkt. No. 122), and a Motion to Dismiss (Dkt. No. 132) which all aim for Defendant's subsidiaries—the Proposed Intervenors—to enter this MDL, compel arbitration, and dismiss CenturyLink, Inc. for lack of personal jurisdiction.  Under that theory, Defendant/Proposed Intervenors contend that the document requests over which the parties have reached an impasse seek impermissible class-wide discovery.

Plaintiffs' allegations, however, have always targeted CenturyLink's *centralized sales and billing policies, practices, and procedures*—and *CenturyLink, Inc.*, by its own public admissions, was the central commander of that enterprise.  These sales and billing practices by CenturyLink, Inc. are at the very heart of this lawsuit.  So, it is immaterial whether CenturyLink, Inc. later contracted (or sub-contracted) with some other entity to act as the anonymous *service provider* to Plaintiffs.  Any such delegation of certain obligations to faceless entities certainly does not absolve CenturyLink, Inc. of its conduct, which is what caused the damages suffered by the Plaintiffs.

The discovery Plaintiffs seek here is focused squarely and exclusively on the discrete areas needed to address Defendant's Motion to Intervene, Motion to Compel Arbitration, and Motion to Dismiss, each of which put at issue the question of whether it was CenturyLink, Inc. or the "intervenors" that engaged in the subject conduct.  The discovery sought is intended to assist Plaintiffs in demonstrating that: (1) the Proposed Intervenors need not enter this case for any purpose; (2) that the MDL may proceed before this Court, not an arbitrator; and (3) that this Court has personal jurisdiction over

CenturyLink, Inc.  For instance, Plaintiffs attempt to procure documents regarding the "independent" investigation of CenturyLink, Inc., conducted by O'Melveny & Myers, are plainly relevant to the issues of:

- Intervention – *CenturyLink, Inc.* commissioned the investigation into its own sales, service, and billing practices, which establishes the relationship between CenturyLink, Inc. and the subject conduct.

- Arbitrability - The investigation concluded that the bills and confirmation of service letters—which Defendant claims binds the Plaintiffs to sweeping arbitration clauses—were deficient.

- Jurisdiction - The investigation shows the location, nature of operations, and degree of control by CenturyLink Inc. over the subject conduct, which occurred all over the country, including at least where every Plaintiff resides.

Each of the other discovery requests that are the subject of this Motion are equally related to the pending motions, and this Motion explains exactly why Plaintiffs need this information to oppose the pending motions.

## II.    BACKGROUND

### A.    CENTURYLINK, INC. ALREADY CONCEDED IT IS THE PROPER DEFENDANT.

On July 31, 2017, Defendant filed a Memorandum of Law in Support of Transferring Actions Pursuant to 28 U.S.C. § 1407 with the Judicial Panel on Multidistrict Litigation (Doc. 1-1) (J.P.M.L. 2795) ("Def. MDL Mem.").  In its briefing, Defendant asserted that "CenturyLink uses centralized management and policies for its sales and billing operations—and the core issue presented by each action is whether such uniform, nationwide sales or billing practices existed that caused the alleged disputes at

issue."[1]  Def. MDL Mem., at 15.  Moreover, when arguing to the JPML, Defendant's (and Proposed Intervenors') counsel, Douglas Lobel, asserted: (1) "the corporate decisions were all made in Monroe, Louisiana . . . at the headquarters of the company," Tr. of Oral Argument at 4:18-20, In re: CenturyLink Residential Customer Billing Disputes Litig., (Sept. 28, 2017) (MDL No. 2795) (Ex. A to Decl. of Brian C. Gudmundson ("Gudmundson Decl."); (2) "the documents, the discovery . . . the decision-makers are in Monroe;" and (3) that "there are no policies made at the 18 CenturyLink call centers; they just implement the policies from Louisiana."  *Id.* at 19:1-3; 19:22-24. Defendant also submitted a Declaration in support of its MDL petition, swearing that "[a]t all times relevant to these lawsuits, the consumer sales and billing channels at CenturyLink have all reported to common management, and have all been subject to common sales and billing policies and practices that apply across all consumer channels." Decl. of Guy E. Miller III in support of CenturyLink, Inc. and its subsidiaries' motion to transfer pursuant to 28 U.S.C. § 1407(a) at 2.  Ex. B to Gudmundson Decl.

These representations were not mere posturing for the JPML.  For instance, on June 28, 2017, Defendant's board of directors hired the law firm O'Melveny & Myers to conduct an independent investigation and review of Defendant ***CenturyLink, Inc.'s*** "policies, procedures and practices relating to consumer sales, service and billing," (hereinafter referred to as the "OMM Investigation," and any reports generated thereto, the "OMM Investigation Report").  *See*  http://news.centurylink.com/2017-12-07-

---

[1] In its petition, CenturyLink defined itself as and moved the JPML to create an MDL on behalf of "CenturyLink, Inc. and its subsidiaries" but did not identify any specific entity other than CenturyLink, Inc. as having a role or stake in the litigation.

CenturyLink-announces-conclusion-of-Special-Committee-investigation (last accessed May 23, 2018).  Defendant published the OMM Investigation's finding on December 7, 2017. *Id*.

Predictably, the OMM Investigation was also conducted under a framework where CenturyLink, Inc. was at the center of the subject conduct.  Significantly, Defendant CenturyLink, Inc. touted the OMM Investigation as "independent" and publicized specific findings that ***CenturyLink, Inc.*** had not engaged in fraud or wrongdoing.  *Id.* Defendant's press release elsewhere, however, noted the OMM Investigation found that "[s]ome of the Company's (***defined as "CenturyLink, Inc."***) products, pricing and promotions were complex and caused confusion, and the resulting bills sometimes failed to meet customer expectations" and that "the Company's ordering and billing software made it difficult to provide customers with estimates of their bills and *confirmation of service letters* that reflected all discounts, prorated charges, taxes and fees." *Id*.  As it turns out, whistleblowers and customers alike have confirmed that these were gross understatements.

But that was then and this is now, and Defendant's story has changed dramatically.  Defendant has now decided—for strategic reasons, undoubtedly—that it is better served by imputing any culpable conduct onto a set of previously unknown entities—the "Proposed Intervenors."  For example, at the first status conference in these MDL proceedings, counsel for Defendant/Proposed Intervenors, Mr. Lobel stated "there is no common company-wide conduct here," and that CenturyLink, Inc. "is a parent holding company . . . [that] does not have employees.  It does not offer any services.  It's

5

inappropriately named." Tr. of Status Conference at 27:20-21; 29: 18-24, In re: CenturyLink Sales Practices and Securities Litig., (MDL No. 17-md-2795) (Dec. 14, 2017). This position contrasts starkly with the positions Mr. Lobel and Defendant took before the JPML, described above. And even still, Mr. Lobel continued to tout the OMM Investigation's findings, asserting to the Court at that first status conference that the OMM Investigation found "no evidence of fraud or wrongdoing in the company." *Id*. at 28:7-8.

## B.   THE DISCOVERY IS DIRECTLY TIED TO THE PENDING MOTIONS.

On February 15, 2018, Plaintiffs filed a Consolidated Class Action Complaint ("CCAC") naming Defendant CenturyLink, Inc. as the sole defendant (Dkt. No. 38). In response, Defendant has asserted that CenturyLink, Inc. is improperly named and that the proper defendants should be various subsidiary entities that provided services to Plaintiffs. Consistent with this false narrative, which focuses on the provision of technical services rather than the sales and billing policies, practices, and procedures Plaintiffs allege, ten CenturyLink, Inc. subsidiaries from around the country filed a Motion to Intervene on April 2, 2018. (Dkt. No. 80).

At the April 5, 2018 status conference, the Court authorized Plaintiffs to conduct discovery related to the Motion to Intervene and directed Plaintiffs to serve discovery requests related to the OMM Investigation and documents Defendant has produced to governmental investigators. Tr. of Status Conf. at 16:9-12; 49:5-6 In re: CenturyLink Sales Practices and Securities Litig., (MDL No. 17-md-2795) (Apr. 5, 2018). Plaintiffs served the First RPD's regarding the OMM Investigation and governmental documents

on April 6, 2018 (Ex. C to Gudmundson Decl.,) to which Defendant objected *in toto* on May 7, 2018 (Ex. D to Gudmundson Decl.).  Plaintiffs served Rule 45 subpoenas *duces tecum* containing the 34 Intervenor Requests on April 27, 2018 (*See* Ex. E to Gudmundson Decl.[2])  and served 24 subpoena deposition topics on May 3, 2018 following a discussion between counsel (Ex. F to Gudmundson Decl.).

Also on April 27, 2018, Defendant filed its Motions to Compel Arbitration and to Dismiss.  In both, Defendant again asked the court to allow the Proposed Intervenors to proceed in this case and to dismiss CenturyLink, Inc. for lack of personal jurisdiction. On May 8, 2018, the Court issued an Order temporarily staying classwide discovery, but specifically stated:

> Plaintiffs may conduct reasonable discovery specifically directed to their assertion that their claims are not subject to mandatory arbitration and class-action waiver.  Additionally, Plaintiffs may conduct reasonable discovery related to CenturyLink's Alternative Motion to Dismiss under Rules 12(b)(2) and 12(b)(6), and, as the Court has previously ordered, Plaintiffs may conduct reasonable discovery specifically directed to the Motion to Intervene.

Order on Mot. to Stay Discovery at 7 ("Stay Order") (Dkt. No. 145).

On May 11, May 14, and May 18, 2018, the parties met and conferred on Plaintiffs' First RPD's and Intervenor Requests.  On May 15, 2018, Plaintiffs sent Defendant a meet and confer letter, agreeing to narrow Request Nos. 15-23, 33, and 34, and setting forth the areas of impasse.  Letter from Brian Gudmundson to Douglas Lobel

---

[2] Plaintiffs served identical subpoenas and document requests, save for the time and date of compliance, upon all ten proposed intervenors.  Plaintiffs attach the subpoena to Carolina Telephone and Telegraph Company LLC as an exemplar and can provide others to the Court should it so desire.

(May 15, 2018) (Ex. G to Gudmundson Decl.)  On May 17, 2018, Defendant sent a reply letter clarifying that additional areas of disagreement existed.  *See* Letter from Douglas Lobel to Brian Gudmundson, (May 17, 2018) (Ex. H to Gudmundson Decl.)  Plaintiffs responded that same day, finalizing the areas of impasse.  Email from Brian Gudmundson to Douglas Lobel (May 17, 2018) (Ex. I to Gudmundson Decl.).

At the core of Proposed Intervenors' Motion to Intervene and Defendant's Motion to Compel Arbitration and Motion to Dismiss is a common claim: that CenturyLink, Inc. is an improperly named Defendant in this lawsuit and the Proposed Intervenors are the proper Defendants.[3]  To combat this position, Plaintiffs now request that the Court compel the complete production of documents responsive to First RPD's 1-5 and Intervenor Requests 1, 4-6, 10, 14, 26, 27, 29, and 30.

## III.   ARGUMENT

### A.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1)[4] states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

---

[3] *See, e.g.,* Mem. of Law in Supp. of Defendant's Affiliates' Mot. to Intervene at *1, 4 ("Intervention Mem.") ("Plaintiffs have made a fundamental error by choosing to sue the wrong defendant – a company that had no role in the predicate acts underlying their claims" and "[a]ll of the services at issue in this proceeding . . . relate to the Operating Companies."); CenturyLink, Inc.'s Mem. of Law in Supp. of its Alternative Mot. to Dismiss Under Rules 12(b)(2) and 12(b)(6) at 1 ("Def. MTD Mem.") ("Plaintiffs have sued the wrong company. . . . CenturyLink, Inc. itself has no customers of its own and . . . took no actions towards Plaintiffs, including those alleged in the Consolidated Class Action Complaint."); *see generally* Defendant and Proposed Intervenors' Mem. of Law in Supp. of Mot. to Compel Arbitration and Enforce Class-Action Waivers.

[4] Plaintiffs voluntarily served the Intervenor Subpoenas pursuant to Rule 45 of the Federal Rules of Civil Procedure.  However, because the Proposed Intervenors seek the

defense." Fed. R. Civ. P. 26(b)(1).  Federal Rule of Civil Procedure 45(a)(1)(C) permits parties to command to "produce documents, electronically stored information, or tangible things" in a subpoena commanding attendance at a deposition.   Fed. R. Civ. P. 45(a)(1)(C).  Courts construe Rule 26(b)(1) broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence").  A discovery request seeks relevant information "unless it is clear that the information sought can have no possible bearing on the subject matter of the action."  *Scheffler v. Molin*, No. 11-cv-3279 (JNE/JJK), 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012) (citing *Mead Corp. v. Riverwood Natural Res. Corp.*, 145 F.R.D. 512, 522 (D. Minn. 1992)).  In this District, "relevancy in the discovery context is extremely broad, and a court must consider a discovery request relevant unless it is clear that the information sought has no bearing upon the subject matter of the action."  *Sinco, Inc. v. B & O Mfg., Inc.*, No. 03-5277 (JRT/FLN), 2005 WL 1432202, at *1 (D. Minn. May 23, 2005) (citations omitted).  "The party resisting production bears the burden of establishing lack of relevancy or undue burden."  *Arctic Cat, Inc. v. Bombardier Recreational Products, Inc.*, No. 12–cv–2692 (JRT/LIB), 2014 WL 12610146 at *2 (D. Minn. May 23, 2014).

---

Court's permission to enter this case as parties, Plaintiffs' analysis is undertaken pursuant to Rule 26 of the Federal Rules of Civil Procedure.

B.   **FIRST AREA OF IMPASSE: PLAINTIFFS FIRST RPDS DIRECTED TO THE OMM DOCUMENTS.**

Plaintiffs and Defendant are at an impasse on the following documents requests, which are all targeted toward the OMM Investigation:

> *RPD No. 1:  All documents, including communications, regarding any conclusions or findings by O'Melveny & Myers ("OMM") pursuant to the investigation OMM purports to have undertaken regarding Your sales, servicing, and billing policies, practices, and procedures, which are referenced in Your December 7, 2017 press release regarding the same.*
>
> *RPD No 2:   All documents, including communications, upon which any conclusions or findings referenced in RPD No. 1 relied.*
>
> *RPD No. 3:  All documents, including communications, regarding the scope, process, and methodology of the investigation undertaken by OMM referenced in RPD No. 1.*
>
> *RPD No. 4:  All documents You provided to OMM in its course of the investigation referenced in RPD No. 1.*

Plaintiffs served these Requests in their First RPDs.  Plaintiffs re-served these Requests in their subpoenas *duces tecum* to the Proposed Intervenors to make clear they are relevant to the issues in the Motion to Intervene, the Motion to Compel Arbitration, and the Motion to Dismiss.  Defendant and Proposed Intervenors objected to each of these Requests on the basis of relevancy, burden, proportionality, and attorney-client privilege or work product doctrine.  *See generally* Ex. D.

Plaintiffs first address Defendant's relevancy and burden/ proportionality objections.  Each of these Requests is highly relevant to all three pending Motions, and Defendant/Proposed Intervenors substantiate no burden or issues with proportionality. Plaintiffs next address CenturyLink, Inc.'s privilege and work product objections, which are negated by governing law because CenturyLink, Inc. used the OMM Investigation's

findings to exonerate itself publicly and before this Court.  Defendant should therefore produce documents responsive to these Requests.

### 1.    OMM Requests 1-4 Are Highly Relevant to the Issues In All Three Pending Motions.

The Court's Stay Order (Dkt. No. 145) allows Plaintiffs to engage in reasonable discovery specifically directed at the Motion to Intervene, Motion to Dismiss under Rules 12(b)2 and 12(b)(6), and the Motion to Compel.  With regard to the Motion to Dismiss, Plaintiffs require jurisdictional discovery to address CenturyLink's contention that no court, including this one, has personal jurisdiction over it. "[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."  *Graco, Inc. v. Techtronic Industries N.A., Inc.*, No. 09–1757 (JRT/RLE), 2009 WL 10678525 at *11 (D. Minn. Dec. 11, 2009) (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000)).

Moreover, Plaintiffs must be allowed discovery to rebut CenturyLink, Inc.'s chief defense that Plaintiffs' claims are subject to mandatory arbitration and class-action waiver, and Plaintiffs' opposition implicates issues related to arbitrability, contract formation, and unconscionability.  *See, e.g., Newton v. Clearwire Corp.*, No. 2:11–CV– 00783–WBS–DAD, 2011 WL 4458971 at *6 (E.D. Cal. Sept. 23, 2011) (collecting cases and permitting discovery during motion to compel arbitration relating to unconscionability, arbitrability, and formation issues).

The information First RPD's 1-4 seek will enable Plaintiffs to show: (1) the degree of CenturyLink, Inc.'s involvement in the crafting of the sales and billing practices,

policies, and procedures at issue in this case; (2) the ability of CenturyLink, Inc. to adequately protect the interest of its subsidiaries with respect to sales and billing policies, practices, and procedures; (3) whether CenturyLink, Inc. directly controlled its subsidiaries with respect to the sales and billing policies, practices, and procedures; and (4) the entities that directed and who were the subject of the OMM Investigation.

Such information likely nullifies Defendant's position that it is not a proper party in this case, as the OMM Investigation Report clearly states that ***CenturyLink, Inc.*** was the subject of the investigation into *its* sales and billing practices. Plaintiffs believe the OMM Investigation Report will identify which entity was responsible for devising CenturyLink's sales and billing practices, policies and procedures, disclose how they were implemented, and identify CenturyLink, Inc.'s true role with respect to Plaintiffs' allegations.

This discovery will also help determine, for jurisdictional purposes, whether: (1) CenturyLink Inc.'s corporate distinctions lack merit and that it, in fact, directed all of the sales, service, and billing practices "centrally" as asserted to the JPML; (2) that CenturyLink, Inc. and its subsidiaries are in reality a single enterprise operating at the direction of CenturyLink Inc.; (3) that CenturyLink, Inc. specifically targeted consumers in each relevant jurisdiction through sales and advertising, and that CenturyLink, Inc. otherwise has consented to jurisdiction.

Moreover, this discovery will aid Plaintiffs in establishing that CenturyLink, Inc. can adequately protect the interest (if any) of the Proposed Intervenors. Plaintiffs believe that CenturyLink, Inc. can adequately protect their interests because CenturyLink, Inc.

stated both in its press release regarding the OMM Investigation and to the JPML that it centrally controls the companywide sales and billing policies, practices, and procedures at issue in this case, and by which the operating companies abide.

Regarding Defendant's arbitration motion, Plaintiffs and Defendant disagree over who contracted with Plaintiffs, and which agreements, if any, govern. Plaintiffs maintain that CenturyLink, Inc. is the entity that advertised its services and contracted with consumers to provide telecommunication services. Defendant maintains that Plaintiffs never contracted with CenturyLink, Inc. and instead contracted with its subsidiaries. Here again, this discovery seeks to determine which are the binding agreements in this case and what relationship CenturyLink, Inc. has with the Plaintiffs.

### 2. Defendant Waived Any Privilege Covering the OMM Investigation.

In refusing to produce documents responsive to Plaintiffs' First RPD's 1-4, CenturyLink, Inc. has primarily asserted that the Stay Order moots them. To the extent they relate to the OMM Investigation, Defendant asserts that any responsive documents are protected from disclosure by the attorney-client privilege and work product doctrine because they were created by legal counsel.

Defendant impermissibly attempts to use the OMM Investigation, the attorney-client privilege, and work product doctrine as both a sword and a shield. Defendant wields the OMM Investigation offensively, asserting on the record that it exonerates CenturyLink, Inc. of any wrongdoing with respect to its sales and billing practices, and defensively, arguing it is protected by the attorney-client privileged and work product

13

doctrine to bar Plaintiffs and the Court from any scrutiny of its methods or conclusions. When a party withholds discoverable information on the basis of privilege, that party has the burden to expressly make and support the claim and describe the nature of the documents withheld.  Fed. R. Civ. P. 26(b)(5).

**a.  Defendant waived the attorney-client privilege.**

In the Eighth Circuit, attorney-client privilege applies when a communication is: (1) confidential; (2) between an attorney and client; and (3) for the purposes of obtaining legal services or advice. *United States v. Horvath,* 731 F.2d 557, 561 (8th Cir.1984).  The attorney-client privilege "only protects disclosure of communication; it does not protect disclosure of the underlying facts."  *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981).

Privilege is waived when a communication is disclosed to a third party.  *United States v. Hyles*, 479 F.3d 958, 971 (8th Cir. 2007) (citation omitted); *Kobluk v. Univ. of Minnesota*, 574 N.W.2d 436, 443 (Minn. 1998).  Waiver of the attorney-client privilege is governed by the Federal Rules of Evidence and may be done intentionally, inadvertently or by implication. Fed. R. Evid. 502; *see also Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2014 WL 1309095, at *7 (D. Minn. Apr. 1, 2014). "A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication at issue."  *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000).  [P]arties "may not selectively disclose privileged communications that it considers helpful while claiming privilege on damaging communications relating to the same subject."  *See Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, L.P.*, 210 F.R.D. 673, 675 (D. Minn. 2002).  Moreover,

14

"'[l]itigants cannot hide behind the privilege if they are relying on privileged communications to make the case' or, more simply, cannot use the privilege as 'a shield and a sword.'" *In re United Shore Fin. Servs., LLC*, No. 17-2290, 2018 WL 2283893 at *2 (6th Cir. Jan. 3, 2018) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). "Thus, the privilege may be implicitly waived when defendant asserts a claim that in fairness requires examination of the protected communications." *Id.* (internal citations omitted).

As originally commissioned, the OMM Investigation was ostensibly intended to be an internal document-based "review of the Company's policies procedures and practices relating to consumer sales, service, and billing." *See* http://news.centurylink.com/2017-12-07-CenturyLink-announces-conclusion-of-Special-Committee-investigation (last accessed May 23, 2018). However, in disclosing the results of the OMM Investigation, Defendant chose to disclose the legal and factual conclusions that were contained in the report and, therefore, waived any subsequent, strategic claim of attorney-client privilege attendant to the OMM Investigation Report itself.

"Once waived, the privilege is waived with respect to all communications involving the same subject matter." *Id.* "This implied waiver or subject matter waiver rule arises out of the concern that a party will selectively disclose documents to obtain a tactical advantage." *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 74 (D.D.C. 2017). "Rule 502 provides that a waiver resulting from a disclosure of protected information in a federal proceeding extends to undisclosed, protected material 'only if:

15

(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.'" *Id*. (quoting Fed. R. Evid. 502).

Here, Defendant intentionally, and strategically, waived the attorney-client privilege.  On December 7, 2017, Defendant disclosed the findings of the OMM Investigation to the public, with specificity, via a press release on its website.  *See* http://news.centurylink.com/2017-12-07-CenturyLink-announces-conclusion-of-Special-Committee-investigation (last accessed May 21, 2018).  The press release detailed the conclusions of the OMM Investigation and stated with unimpeachable clarity that: (1) *CenturyLink, Inc.*, and no other entity, retained OMM; (2) OMM investigated *CenturyLink, Inc.'s* "policies, procedures, and practices relating  to consumer sales, service, and billing" and no other entity's; and (3) CenturyLink, Inc. issued the press release via PR Newswire to publicly exonerate itself, quoting CenturyLink CEO Glen Post as saying "The Investigation confirmed my long held belief that there was no fraud or wrongdoing at [CenturyLink, Inc.] and that cramming was neither widespread nor condoned."

In releasing the OMM Investigation's findings, Defendant also waived privilege over the undisclosed documents relied upon in the formulation of the OMM Investigation's conclusions.  Here, the disclosed and undisclosed communications and information that Plaintiffs seek concern the same subject matter: documents and communications relating to a "review of [CenturyLink, Inc.'s] policies, procedures and

16

practices relating to consumer sales, service and billing," which is precisely what the disclosed information (OMM's findings) related to.

Lastly, fairness dictates the disclosed findings and undisclosed communications and reports should be considered together. Defendant has used the OMM Investigation to make broad conclusions disclaiming liability from the fraud or wrongdoing, which is now at the core of Plaintiffs' case. Such untested, conclusory statements inure to the benefit of Defendant in that they suggest to the consuming public that CenturyLink, Inc.' sales and billing practices are honest, while the same entity claims here it does not sell or bill anything to anyone. Notably, the OMM Investigation found that "limitations in [CenturyLink, Inc.'s] ordering and billing software made it difficult to provide customers with estimates of their bills and *confirmation of service letters* that reflected discounts, prorated charges, taxes and fees." This is relevant to the pending arbitration motion here, in that Defendant relies heavily on these same confirmation of service letters to advance its arguments in favor of mandatory arbitration and class action waiver.

Because the Court has authorized discovery on the Motions to Compel Arbitration, to Intervene, and to Dismiss, and Defendant has both offensively and defensively wielded the OMM Investigation, the Court should find that Defendant waived privilege over the OMM Investigation, as well as other documents involving the same subject matter.

To try to avoid waiver, Defendant argues in its Objections to the First RPD's that it has not relied and will not rely on the OMM Investigation or its findings to defend against the allegations in this or any other litigation. *See* Ex. D at 9, 11, and 13. This is

factually incorrect because Defendant has *already* used the OMM Investigation to defend itself here, and elsewhere.

Defendant has asserted the OMM Investigation in these proceedings, on the record, to exculpate itself from liability. *See* Tr. of Status Conference at 27:20-21, In re: CenturyLink Sales Practices and Securities Litig., (MDL No. 17-md-2795) (Dec. 14, 2017). Defendant also disclosed the findings of the OMM Investigation to the public via a PRNewswire press release on its website. Disclosure to a third party alone is sufficient to kill any privilege that could have been asserted. This repeated public disclosure of the OMM Investigation's findings to exonerate itself waive any attorney-client privilege.

### b.    The work product doctrine is inapplicable here.

The work product doctrine protects materials from disclosure if prepared by an attorney in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). There are two kinds of work product: ordinary work product and opinion work product. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000). Ordinary work product, which includes raw factual information, may be discoverable upon a showing that the requesting party has a substantial need and cannot, without undue hardship, obtain their substantial equivalent by other means. *Id.*; *see also* Fed. R. Civ. P. 26(b)(3)(A). Opinion work product, consisting of "mental impressions, conclusions, opinions, or legal theories of a party's attorney," enjoys greater protection. *See* Fed. R. Civ. P. 26(b)(3)(B). In either case, "[w]ork-product privilege is dependent on a finding that the documents were created 'in anticipation of litigation.'" *Banneker Ventures*, 253 F. Supp. 3d at 71.

The OMM Investigation is ordinary work product.  While the OMM Investigation was prepared by counsel, it only reflects counsel's selection of select raw factual information that was provided to OMM by CenturyLink, Inc. during the course of its investigation and does not involve notes, memoranda, personal impressions, or litigation strategies.  *See In re Chrysler Motors Corp. Overnight Evaluation Prod. Litig.*, 860 F.2d 844, 846 (8th Cir. 1988) (finding that information at issue was ordinary work product because it was only a "compendium of relevant evidence prepared by the attorney").  To the extent that there is any disagreement over whether this information is ordinary or opinion work product, Plaintiffs note that the conclusions and opinions of a party's attorney has already been disclosed when Defendant disclosed the results of the OMM Investigation to the public on December 7, 2017, and, as discussed more fully below, has been waived.

### i.      The OMM Investigation was not prepared "in anticipation of litigation."

The work product doctrine does not protect materials prepared in the ordinary course of business. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987).  An investigative report developed during a "routine investigation of a possibly resistible claim" is not sufficient to warrant work product protection.  *Mission Nat. Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986).  The party asserting the work product doctrine bears the burden of establishing its applicability. *Progressive Cas. Ins. Co. v. F.D.I.C.*, 302 F.R.D. 497, 501 (N.D. Iowa), *aff'd*, 49 F. Supp. 3d 545 (N.D. Iowa 2014).

To determine whether documents were prepared "in anticipation of litigation" is a fact-specific determination and is guided as follows:

> Our determination of whether the documents were prepared in anticipation of litigation is clearly a factual determination: [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Columbia Ins. Co. v. Tibbott*, No. 11-cv-1040 (PAM/SER), 2012 WL 13027067 at *5 (D. Minn. June 21, 2012). ). Determining whether documents were created "in anticipation of litigation" also has a temporal component. *Banneker Ventures*, 253 F.Supp.3d at 71.

Here, several factors weigh in favor of finding the OMM Investigation was conducted in the ordinary course of business, rendering the work product doctrine inapplicable. In its Objections and Responses to Plaintiffs' First RPD's, CenturyLink, Inc. stated that it has not relied and will not rely on the OMM Investigation's findings to defend against the allegations in this or any other litigation. *See* Ex. C at 9, 11, and 13. Thus, irrespective of the timing of the OMM Investigation, by Defendant's own admission it was not conducted in anticipation of litigation. The only conclusion, then, is that the OMM Investigation was carried out for other nonlitigation purposes, such as identifying "areas where [CenturyLink, Inc.] can improve the customer experience and . . . [make] significant progress in addressing those areas." http://news.centurylink.com/2017-12-07-CenturyLink-announces-conclusion-of-Special-Committee-investigation (last accessed May 22, 2018).

20

Furthermore, when publishing the OMM Investigation's findings on via a press release on its website, Defendant announced the findings relate to a "*review of the Company's policies, procedures and practices* relating to consumer sales, service and billing." http://news.centurylink.com/2017-12-07-CenturyLink-announces-conclusion-of-Special-Committee-investigation (last accessed May 22, 2018) (emphasis added). Companies routinely review their policies, procedures, and practices without the anticipation of litigation, which CenturyLink, Inc. claims to have done here. "[Not all documents generated from an internal investigation are protected by the work[-]product doctrine simply because an organizations' internal investigation coexists with a present or anticipated lawsuit. Documents that would have been created in the ordinary course of business irrespective of litigation are not protected by the work[-]product doctrine." *Duran v. Andrew*, No. 09-730, 2010 WL 1418344, at *4–5 (D.D.C. April 5, 2010). "Where a document would have been created 'in substantially similar form' regardless of the litigation, work[-]product protection is not available." *FTC v. Boehringer Ingelheim Pharms.*, 778 F.3d 142, 149 (D.C. Cir. 2015). Here, Defendant's own press release casts the OMM Investigation as a review of the CenturyLink, Inc.'s sales and billing practices, perhaps in reaction to numerous consumer complaints to the company, which would have been created in the ordinary course of business, regardless whether any lawsuits actually arose. This weighs against a finding that the OMM Investigation was created in anticipation of litigation, irrespective of its regular business.

Lastly, CenturyLink, Inc. initiated this investigation over one year after various states began investigating its sales and billing practices. *See, e.g.,* Approval of Assurance

of Discontinuance, In the Matter of QWEST Corporation, d/b/a CenturyLink QC (Ariz. Cty. Dist. Ct., Maricopa Cty. Apr. 6, 2016) (entering agreement not to engage in deceptive sales and billing practices in violation of Arizona's consumer fraud act). Such time elapsing suggests that the OMM Investigation was not conducted in anticipation of litigation, as lawsuits had already been pending, and CenturyLink had been under investigation, for at least a year and a half before the OMM Investigation was implemented. *See Banneker Ventures*, 253 F.Supp.3d at 72-73 (finding that two years elapsing between receipt of letter and investigation was too remote a time to be considered preparation in anticipation of litigation).

Defendant has stated in Court documents in this litigation and in its announcement of the OMM Investigation findings itself that it was unrelated to its legal defenses in any litigation. The OMM Investigation was therefore not produced in anticipation of litigation and is not protected by the attorney work product doctrine.

> **ii.    *Plaintiffs have a substantial need and cannot obtain the OMM Investigation's substantial equivalent by other means without undue hardship.***

If Defendant somehow meets its burden of establishing the OMM Investigation was conducted in anticipation of litigation, Plaintiffs may still obtain the materials by showing a substantial need and undue hardship. *Progressive Cas. Ins. Co., 49 F. Supp. at 545*; *see also* Fed. R. Civ. P. 26(b)(3). Plaintiffs may amply demonstrate such substantial need and undue hardship in this situation.

The OMM Investigation is essential to contesting numerous points Defendant has made in its Motions to Intervene, Compel Arbitration, and Dismiss. With respect to the

Motion to Intervene, these documents will likely strike at the core of Defendant's assertion that CenturyLink, Inc. is not a proper party to this lawsuit because it conducts no sales or billing, and that intervention is necessary.  These documents are reasonably calculated to address which entities' sales, service, and billing are being implemented on a company-wide level, which will instruct Plaintiffs and the Court with regards to the necessity of intervention.

With respect to the Motion to Dismiss, these documents are reasonably calculated to address the degree of control that CenturyLink, Inc. exercised over the subsidiaries' ability to set and implement the sales and billing policies Plaintiffs complain of, which supports Plaintiffs single entity theory.  The documents are also calculated to address relevant jurisdictional questions, such as whether CenturyLink, Inc. directly targeted consumers with advertisements and whether personal jurisdiction exists.

Without the materials necessary to challenge the OMM Investigation's process and findings, the only record that will exist with respect to it in this litigation is the unilateral recitations Defendant has chosen to post on its website and recite to the Court. Plaintiffs cannot obtain any information capable of impeaching these statements elsewhere, and would experience an undue hardship should this information not be disclosed.  The OMM Investigation and its underlying materials are within the sole possession of CenturyLink, Inc., locked under claims of privilege and protection, and there is no alternative source to obtain this information which is highly relevant to Plaintiffs' forthcoming oppositions.

### c.    Regardless, any work product protection was waived.

Waiver of work product protection attaches where documents are published to an adverse party in litigation.  *Gundacker v. Unisys Corp.,* 151 F.3d 842, 848 (8th Cir. 1998); *Pittman v. Frazer,* 129 F.3d 983, 987–88 (8th Cir. 1997).  In publishing the OMM Investigation's findings to the public, and again raising them to in Court, Defendant waived the work product doctrine with respect to the documents referenced.

### C.    SECOND AREA OF IMPASSE: FIRST RPDS REQUEST NO. 5.

The second area of impasse concerns the fifth and final of the First RPD's, and information Defendant already turned over to government and law enforcement agencies:

> *RPD No. 5:    All documents You have provided to any governmental or law enforcement entity related to Your sales, servicing, and billing policies, practices, and procedures. This includes documents provided to the Minnesota Attorney General's office, the Arizona Attorney General's office, any other state or federal Attorney General, agency, or law enforcement entity.*

At the April 5, 2018 status conference, Judge Davis authorized Plaintiffs to serve discovery on Defendant relating to the OMM Investigation and documents produced to governmental investigators.  Tr. of Status Conf. at 42:25-49:6, In re: CenturyLink Sales Practices and Securities Litig., (MDL No. 17-md-2795) (Apr. 5, 2018).  Defendant contends that this RPD was stayed by the Court's Stay Order, and is otherwise overly burdensome, irrelevant, and disproportionate.  Ex. D at. 17-18.

To begin, Plaintiffs are mindful of the Court's Stay Order, and its terms.  Plaintiffs are also mindful, however, that Defendant's motion to stay and other pending motions were known to the Court when it authorized Plaintiffs to file their First RPD's.  To the

extent the Court intended to stay Plaintiffs First RPD's through the Stay Order, Plaintiffs will allow the Court to determine the Order's scope, rather than ruling against themselves.

Regarding burden and disproportionality, Defendant has made no attempt to substantiate any such claim. Presumably, responsive documents have already been collected, processed, and reviewed for privilege, making production non-burdensome.

Regarding relevance, documents produced to government investigators are squarely relevant to the motions currently pending.

On May 18, 2018, Plaintiffs and Defendant met and conferred regarding RFP No. 5 prior to placing a call to the Court for scheduling this present motion. Such documents are reasonably calculated to show which entity handled the government investigations, which entities were the subject of the governments inquiries and investigations, how CenturyLink, Inc. represented its subsidiaries during any governmental entity investigations, the degree of protection and control CenturyLink, Inc. exercised over its subsidiaries during any governmental investigations, and the ability of CenturyLink, Inc. to adequately protect the interest of its subsidiaries.

Such information is relevant to the Motion to Intervene, particularly with respect to CenturyLink, Inc.'s ability to adequately protect the interests of the Proposed Intervenors and the frequency in which it represented, or aided in, any governmental investigations of one of its subsidiaries. This information is also relevant to the Motion to Dismiss for largely the same reasons. As discussed above, Plaintiffs intend to prove that CenturyLink, Inc. blurs the corporate distinctions between itself and its subsidiaries,

and information regarding which entities interacted with and were the focus of governmental entities is relevant to this determination.   The Court should compel production of documents responsive to this Request.

### D.   THIRD AREA OF IMPASSE:  THE INTERVENOR REQUESTS

As described at length throughout this memorandum, the pending motions to intervene and to dismiss are based entirely on mischaracterizing Plaintiffs' grievances as claims against regional "service providers" who appear nowhere in the CCAC.   But CenturyLink Inc., from Monroe, Louisiana, is not only the ring master that is liable for the nationwide sales and billing practices at issue in this litigation, it is also the entity who, for purposes of Rule 24's invention analysis, can adequately protect the interests of the Proposed Intervenors. *See* Fed. R. Civ. P. 24.[5]

To address CenturyLink, Inc.'s (false) defense that it has nothing to do with the "central" sales and billing practices it described before the JPML, and that it cannot protect and adequately represent the purported interests of its own subsidiaries, *see* Fed.

---

[5] To obtain intervention as a matter of right, a party must:

> [1] claim[] an interest relating to the property or transaction that is the subject of the action,
> [2] and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,
> [3] unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). All three requirements must be satisfied. *S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003) (citing *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir.1997)).

R. Civ. P. 24(a)(2), Plaintiffs served Rule 45 Subpoenas upon each of the ten intervenors containing 34 document requests and 24 deposition topics.  Exs. D, E to Gudmundson Decl.  Counsel for the Proposed Intervenors (the same lawyers representing CenturyLink, Inc.) did not serve objections or other written responses to the Subpoenas.  Rather, the parties met and conferred informally, whereupon Proposed Intervenor counsel listed their objections and issues with the Intervenor Requests, which the sides discussed.[6]

Following the meet and confer, Plaintiffs' counsel memorialized the sides' positions regarding each of the 34 Intervenor Requests, including Plaintiffs' agreement to narrow 11 Requests and suspend a twelfth.  Ex. G.  Counsel for Proposed Intervenors responded May 17, 2018, clarifying certain points and confirming the sides' impasse on 10 Requests, to which Plaintiffs responded that same day, to finalize the areas of impasse. Exs. H, I.

Notably, Proposed Intervenors have not objected to those Requests that would allow the *Proposed Intervenors* to substantiate their Rule 24 argument.  They have, however, objected to Requests whose responses would further provide Plaintiffs the opportunity to rebut CenturyLink's and Proposed Intervenors' Rule 24 arguments.

### 1.    Impasse Area: Information Related to the Proposed Intervenors' Formal Business Structures' and Operations

Plaintiffs' Intervenor Request No. 1 seeks information to establish whether or not the Proposed Intervenors are actually separate entities with their own interests, or if they are pawns under the central control of CenturyLink, Inc.  The relevant Request states:

---

[6] Counsel for Proposed Intervenors stated no objections to the Subpoenas' Deposition Topics.

27

*Request No. 1:  Documents sufficient to show Your state of incorporation, principal place of business, office locations, telephone numbers, including for each office location, the identity of the entity that owns or leases each office location, the identity of any other CenturyLink, Inc. subsidiary that used the office location, and photos of office location signage.*

During the meet and confer discussions, Proposed Intervenors agreed to produce documents sufficient to show their states of incorporation and principal places of business, but objected to producing anything else sought by the Request, asserting burden and relevance objections.   In particular, the Proposed Intervenors claimed that their business locations were so numerous that it would be either not "proportional" or even impossible to provide the information sought.

Given the Proposed Intervenors' claim that they have an interest in this litigation that will be impaired if they do not intervene (because CenturyLink, Inc. cannot adequately protect their interests), *see* Fed. R. Civ. P. 24(a)(2), these objections are not well-founded.

The information Request No. 1 seeks is relevant to Plaintiffs' oppositions to both the motion to intervene and to dismiss for lack of personal jurisdiction.   Plaintiffs' oppositions will be based substantially on their assertion that CenturyLink, Inc.'s corporate distinctions asserted in this litigation are, in reality, a sham.   The location of corporate offices and the entities using them is not only relevant, but is an actual *factor* in this analysis. *See Flynn v. Thibodeaux Masonry, Inc*., 311 F. Supp. 2d 30, 40 (D.D.C. 2004) ("The use of the same business location by the corporation and its [alleged alter ego] militates in favor of piercing the corporate veil."); *Greater St. Louis Const. Laborers*

28

*Welfare Fund v. Mertens Plumbing & Mech., Inc.,* 552 F. Supp. 2d 952, 956 (E.D. Mo. 2007) (factors include "the ownership and creation of both corporations, the management of the corporations, the physical location of corporate offices, and the transfer of assets, contracts, and employees between the corporations.").

In this context, CenturyLink, Inc.'s burden or "proportionality" objection defies credulity.  Regulated entities such as Proposed Intervenors are likely required to maintain this basic information in the course of business.  To the extent photographs of signage indicating the actual occupants of the buildings are burdensome, counsel for Proposed Intervenors made no distinction in their burden arguments between this and providing office addresses.  The failure to make any inquiry or otherwise substantiate the alleged burden—beyond describing the number of locations as being in the "thousands"—is insufficient. *See, e.g., Kemper v. Equity Ins. Co.*, No. 1:15-cv-2961-TCB, 2016 WL 7428215, at \*4 (N.D. Ga. Apr. 29, 2016) ("The party resisting discovery bears the burden of showing "specifically how the objected-to request is unreasonable or otherwise unduly burdensome.") (quoting *Henderson v. Holiday CVS, L.L.C.,* 269 F.R.D. 682, 686 (S.D. Fla. 2010)).  Merely invoking "proportionality" as a buzzword to avoid discovery without any substantiation falls equally quickly.  *See Carr v. State Farm Mut. Auto. Ins. Co*., 312 F.R.D. 459, 469 (N.D. Tex. 2015)  ("'[T]he amendments to Rule 26(b) and Rule 26(c)(1) do not alter the basic allocation of the burden on the party resisting discovery to . . . specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of proper discovery (as now amended) or that a discovery request would

29

impose an undue burden or expense or is otherwise objectionable.'") (alteration in original).

Proposed Intervenors' and Defendant's refusal to provide this routine, administrative information hampers Plaintiffs' oppositions.   The Court should compel each Proposed Intervenor to produce documents responsive to Intervenor Request No. 1.

### 2.    Impasse Area: Business Cards Showing Who the Proposed Intervenors' Key Employees Actually Work For

Plaintiffs' requests seeking the business cards of key executives and affiants in this case are also relevant and discoverable at this stage.  Intervenor Requests 4 and 5 state:

> *Request No. 4:* *The business cards of Your three top ranking officers, as well as the top ranking marketing employee, the top ranking billing employee, the top ranking sales employee, the top ranking installation or service employee, and the top ranking customer service employee.*

> *Request No. 5:* *The business cards of all of Your employees that have filed papers in the above captioned matter, as well as the business cards of any of Your employees who will be filing papers related to the recently filed Motion to Temporarily Stay Discovery (Docket No. 87) and Motion to Intervene (Docket No. 80).*

The Proposed Intervenors object to these Requests as irrelevant.

As with the other document requests, these requests are directed to determining the extent to which corporate formalities are observed and whether the Proposed Intervenors and Defendant share common management.  Common management is a factor when assessing whether corporate distinctions are legitimate.  *See Graco,* 2009 WL 10678525 at *10 (factors include, "[w]hether the parent and subsidiary corporations have common directors or officers."); *Admiral Ins. Co. v. Arrowood Indem. Co*., 471 B.R.

30

687, 703 (N.D. Tex. 2012) (factors include "common employees; common offices . . . payment of wages by one corporation to another corporation's employees; common business name; services rendered by the employees of one corporation on behalf of another corporation").

Before the JPML, Defendant stated in a sworn declaration that "[a]t all times relevant to these lawsuits, the consumer sales and billing channels at CenturyLink have all reported to common management, and have all been subject to common sales and billing policies and practices that apply across all consumer channels."  Ex. B at 2. Plaintiffs have a right to learn the identity of this "common management" in light of Proposed Intervenors' and their counsel's new claim that there is no central defendant and that ten "service providers" from around the country are the proper defendants.

Similarly, CenturyLink, Inc. has now taken the position that it does not have any employees and does not offer any services or support to customers, despite publishing via press release that OMM investigated *its own* sales practices and personnel.  *Compare* Def. MTD Mem. at 1 ("CenturyLink, Inc. itself has no customers of its own and . . . took no actions towards Plaintiffs, including those alleged in the Consolidated Class Action Complaint.")  *and*  http://news.centurylink.com/2017-12-07-CenturyLink-announces-conclusion-of-Special-Committee-investigation (last accessed May 21, 2018) (OMM Investigation included "review of [CenturyLink, Inc.'s] policies, procedures and practices relating to consumer sales, service and billing" which involved "interview[s of] more than 200 current and former [CenturyLink, Inc.] employees.").

Information regarding who the Proposed Intervenors' key employees work for (or represent they work for) is relevant to Plaintiffs' ability to oppose the pending motions. The Court should compel production of documents responsive to Intervenor Requests 4 and 5.

### 3.   Impasse Area: Documents Showing Positions Held by Proposed Intervenors' Executives With Other Entities

Plaintiffs should also be allowed to discover information related to the positions held by Proposed Intervenors' key employees with other CenturyLink entities, including CenturyLink, Inc.  Intervenor Request No. 6 states:

> *Request No. 6:* *For each director or officer identified in Your response to Request No. 3, Documents identifying any other positions with CenturyLink, Inc. or any subsidiary of CenturyLink, Inc., paid or unpaid, held by that director or officer during the Relevant Time Period.*

While similar to Requests No. 4 and 5 in purpose and relevance, Proposed Intervenors assert a unique, and uniquely abusive, objection to this Request.  Here, Proposed Intervenors assert that information regarding positions their officers and directors concurrently hold with entities *other than other Proposed Intervenors* (i.e., with CenturyLink, Inc.) is beyond their "custody and control."  Proposed Intervenors have asserted Plaintiffs should seek this information directly from CenturyLink, Inc.

Proposed Intervenors' assertion that they have no control over the information in their directors' and officers' own possession--and regarding who these directors and officers hold positions with--is not a viable objection.  This information is plainly relevant for the reasons set forth in the immediately preceding section, and the Court

should compel Proposed Intervenors to produce responsive documents on a "sufficient to show" basis.

### 4.    Impasse Area: Organizational Charts

The parties are also at an impasse with respect to organizational charts.  Intervenor Request No. 10 states:

> *Request No. 10:* *Documents sufficient to show your organizational chart, including any changes made during the Relevant Time Period.*

The Proposed Intervenors object to this Request as irrelevant and disproportionate, asserting certain intervenors, such as Qwest Corporation, are large with constantly changing structures.

Plaintiffs seek this basic information to discover which departments comprise the Proposed Intervenors' operations, whether they employ sales and billing personnel, who they report to, and how they fit into the larger CenturyLink structure.  These inquiries are relevant to assessing nearly every factual assertion Defendant and the Proposed Intervenors make regarding the corporate distinctions and responsible entities in this case.  Organizational charts are also relevant to the issue of whether CenturyLink, Inc. can adequately protect the interests of its subsidiaries by casting light on their relationships.

Proposed Intervenors have deemed production of these basic documents as burdensome and "disproportionate" because some of the Proposed Intervenors are large organizations that change in personnel.   These are not meritorious objections.  Organizational charts are standard, centrally maintained documents, utilized for ongoing personnel and management purposes.   Proposed Intervenors make no attempt to

substantiate any burden, nor can they likely do so.  The Court should compel production

of documents responsive to Intervenor Request No. 10.

> **5.    Impasse Area: Documents Regarding Branding and Intellectual Property**

The parties are also at an impasse regarding Intervenor Requests 14, 26, 27, and

29, which relate to the names and brands the Proposed Intervenors use.  These Requests

state:

> *Request No. 14: All Documents evidencing Your legal right or entitlement for Your external use of the name "CenturyLink," rather than Your registered name, during the regular course of business, including Communications with CenturyLink, granting permission to do so, authority to do so, requiring You to do so, or in any way limiting such use.*
>
> *Request No. 26: Documents sufficient to show what entity owns all intellectual property ("IP") relating to the CenturyLink branding, including, but not limited to, trademarks and copyrights covering the name CenturyLink, in whole or in part, as well as all IP related to CenturyLink's logos, color schemes, tag lines, and any other IP relating to the manner in which Services are marketed to customers under the name CenturyLink.*
>
> *Request No. 27: Documents sufficient to show who owns the IP covering any trade name or trademark under which you did business during the Relevant time period, including, but not limited to, "CenturyLink."*
>
> *Request No. 29: All documents sufficient to show the entity that owns all trademark and copyrights.*

Proposed Intervenors object to each of these Requests as irrelevant.

However, use of a common business name and logo are relevant factors when

analyzing the legitimacy of corporate distinctions. *See, e.g, Admiral Ins. Co.,* 471

B.R. at 703 (common name a factor); *Airbus DS Optronics GmbH v. Nivisys LLC,*

183 F. Supp. 3d 986, 992 (D. Ariz. 2016) ("similarity of logo" a factor).  Each of these Requests seeks information regarding the names and logos through which the Proposed Intervenors allege to have done business with Plaintiffs.  It is relevant to the legitimacy of the asserted corporate distinctions whether the Proposed Intervenors held themselves out as "CenturyLink" in order to use Defendant's goodwill as a large, publicly traded company to entice sales from Plaintiffs and the Class.  The Court should compel production of documents responsive to Intervenor Requests 14, 26, 27, and 29.

### 6.     Impasse   Area:   Documents   Regarding   Employee Judgments

The final area of impasse concerns information regarding orders and judgments resulting from disputes between past and current employees of the Proposed Intervenors and CenturyLink, Inc.  Intervenor Request No. 30 states:

> *Request No. 30:* All Documents evidencing any orders or judgments against CenturyLink, Inc. for compensation (back wages or otherwise) due to any of Your employees.

Proposed Intervenors objected to this Request (lumped together with Requests 14, 26, 27, and 29 related to branding and intellectual property) as irrelevant but offered no separate objections.  Through this Request, Plaintiffs seek further information regarding the employment status and relationships between CenturyLink, Inc. and the Proposed Intervenors.  Such information is relevant to the inquiry regarding the legitimacy of corporate lines. *See Admiral Ins. Co.*, 471 B.R. at 703 (factors include "payment of wages by one corporation to another corporation's employees . . . services rendered by the

employees of one corporation on behalf of another corporation").  It is also relevant to

CenturyLink, Inc.'s contention that it is a mere holding company that has no employees

who perform the services at issue in this litigation.  The Court should compel production

of documents responsive to Intervenor Request No. 30 on a sufficient to show basis.

## IV.   CONCLUSION

For the aforementioned reasons, the Court should grant Plaintiffs' Motion to

Compel in its entirety.

Dated:  May 23, 2018                          Respectfully submitted,

                                              **ZIMMERMAN REED LLP**

                                               *s/ Brian C. Gudmundson*
                                              Carolyn G. Anderson (MN 275712)
                                              Brian C. Gudmundson (MN 336695)
                                              Bryce D. Riddle (MN 398019)
                                              1100 IDS Center
                                              80 South 8th Street
                                              Minneapolis, MN 55402
                                              Telephone: (612) 341-0400
                                              Facsimile: (612) 641-0844
                                              carolyn.anderson@zimmreed.com
                                              brian.gudmundson@zimmreed.com
                                              bryce.riddle@zimmreed.com

                                              **ZIMMERMAN REED LLP**
                                              Hart L. Robinovitch
                                              14646 N. Kierland Blvd., Suite 145
                                              Scottsdale, AZ 85254
                                              Telephone: (480) 348-6400
                                              Facsimile: (480) 348-6415
                                              hart.robinovitch@zimmreed.com

                                              *Plaintiffs' Interim Co- Lead and*
                                              *Liaison Counsel*

**O'MARA LAW GROUP**
Mark M. O'Mara
Alyssa J. Flood
Channa Lloyd
Caitlin H. Reese
221 NE Ivanhoe Blvd., Suite 200
Orlando, FL 32804
Telephone: (407) 898-5151
Facsimile: (407) 898-2468
mark@omaralawgroup.com
alyssa@omaralawgroup.com
channa@omaralawgroup.com
caitlin@omaralawgroup.com

**GERAGOS & GERAGOS, APC**
Mark J. Geragos
Benjamin J. Meiselas
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, CA 90017-3411
Telephone: (231) 625-3900
Facsimile: (231) 232-3255
mark@geragos.com
meiselas@geragos.com

**GERAGOS & GERAGOS, APC**
Lori G. Feldman
7 West 24th Street
New York, NY 10010
Telephone: (917) 388-3121
lori@geragos.com

***Plaintiffs' Interim Co-Lead Counsel***

**GUSTAFSON GLUEK PLLC**
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844

Facsimile: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@ gustafsongluek.com

***Plaintiffs' Executive Committee Chair***

**HELLMUTH & JOHNSON, PLLC**
Richard M. Hagstrom, (MN 039445)
Anne T. Regan, (MN 333852)
Nicholas S. Kuhlmann, (MN 33750)
Jason Raether, (MN 394857)
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Facsimile: (952) 941-2337
rhagstrom@hjlawfirm.com
aregan@hjlawfirm.com
nkuhlmann@hjlawfirm.com
jraether@hjlawfirm.com

**ROXANNE CONLIN &
ASSOCIATES, PC**
Roxanne Barton Conlin
3721 S.W 61st St.
Des Moines, Iowa, 50321
Telephone: (515) 283-1111
roxlaw@aol.com

**HENINGER GARRISON DAVIS,
LLC**
James F. McDonough, III
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Telephone: (404) 996-0869
Facsimile: (205) 326-3332
jmcdonough@hgdlawfirm.com

**HENINGER GARRISON DAVIS,
LLC**
Francois M. Blaudeau
W. Lewis Garrison, Jr.
Christopher B. Hood
2224 1st Ave North

Birmingham, AL 35203
Telephone: (205) 326-3336
Facsimile: (205) 380-0145
francois@southernmedlaw.com
lewis@hgdlawfirm.com
chood@hgdlawfirm.com

*Plaintiffs' Executive Committee*

**HODGE & LANGLEY LAW FIRM, P.C.**
T. Ryan Langley
229 Magnolia St.
Spartanburg, SC 29306
Telephone: (864) 585-3873
Facsimile: (864) 585-6485
rlangley@hodgelawfirm.com

**OLSEN DAINES PC**
Michael Fuller, OSB No. 09357
Olsen Daines PC
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
Telephone: (503) 201-4570
michael@underdoglawyer.com

**FERNALD LAW GROUP LLP**
Brandon C. Fernald
6236 Laredo Street
Las Vegas, NV 89146
Telephone: (702) 410-7500
Facsimile: (702) 410-7520
brandon.fernald@fernaldlawgroup.com

**WALSH PLLC**
Bonner C. Walsh
PO Box 7
Bly, OR 97622
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

**ATTORNEY ALFRED M. SANCHEZ**
Alfred M. Sanchez
400 Gold Ave. SW, #240
Albuquerque, NM 87102
Telephone: (505) 242-1979
lawyeralfredsanchez@gmail.com

**GARDY & NOTIS, LLP**
Orin Kurtz
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Fax: (212) 905-0508
okurtz@gardylaw.com

*Counsel for Plaintiffs and the Proposed Class*