UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION | MDL No. 0:17-md-02795-MJD-KMM |
| This document relates to: 0:17-cv-02832, 0:17-cv-04613, 0:17-cv-04614, 0:17-cv-04615, 0:17-cv-04616, 0:17-cv-04617, 0:17-cv-04618, 0:17-cv-04619, 0:17-cv-04622, 0:17-cv-04943, 0:17-cv-04944, 0:17-cv-04945, 0:17-cv-04947, 0:17-cv-05001, 0:17-cv-05046 | **ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

This matter is before the Court on the Plaintiffs' Motion to Compel Production of Documents. [Pls.' Mot. to Compel, ECF No. 158.] Defendant CenturyLink, Inc. ("CenturyLink"), and the Proposed Intervenors[1] (also referred to here as "the Operating Companies") filed lengthy written arguments in opposition to the motion. [CenturyLink Opp'n, ECF No. 165; Proposed Intervenor Opp'n, ECF No. 168.] The Court held a hearing on the Plaintiffs' motion on June 4, 2018, and, after hearing from counsel, ruled from the bench. This Order captures that ruling.

*Allegations in the Complaint*

The Plaintiffs in this multi-district litigation claim that CenturyLink employed wide-spread deceptive and unlawful sales and billing practices in connection with its telecommunications services. [Consolidated Class Action Compl. ("Compl."), ECF

---

[1] The Proposed Intervenors include Qwest Corporation, Embarq Florida, Inc., Embarq Missouri, Inc., Carolina Telephone and Telegraph Company LLC, Central Telephone Company, CenturyTel of Idaho, Inc., CenturyTel of Larsen-Readfield, LLC, CenturyTel of Washington, Inc., CenturyTel Broadband Services, LLC, and Qwest Broadband Services, Inc.

1

No. 38.] CenturyLink's alleged wrongful conduct included: quoting certain prices but failing to disclose the true amount that would later be billed; promoting or incentivizing representatives to overbill customer accounts with unauthorized charges; and dismissing or denying customer complaints. [*See id.*]

CenturyLink maintains at the outset that it is the wrong defendant for the Plaintiffs to sue because it is only a parent holding company that has no employees and offers no services. Instead, both CenturyLink and its subsidiaries argue that the subsidiaries are the parties who sold and provided the services at issue, and they handled the billing.

Plaintiffs allege that both the corporate reality and CenturyLink's public conduct suggest that it belongs in the case. [*See* Compl. ¶¶ 12–19.] For example, Plaintiffs assert that CenturyLink's involvement with the issues raised in this litigation is proven by a December 7, 2017 press release concerning an internal investigation into certain sales and billing practices. That press release indicates that CenturyLink has: "(1) policies, procedures, and practices relating to customer sales, service, and billing; (2) outside directors; (3) employees and former employees; (4) customers; (5) management; and (6) products, pricing and promotions." [*Id.* ¶ 17.]

In addition, the Plaintiffs assert that CenturyLink is responsible because the Plaintiffs only communicated and did business with entities identifying themselves as CenturyLink. [*Id.* ¶¶ 13–14.] They also assert that CenturyLink's subsidiaries operate under the CenturyLink name to reassure customers. [*Id.* ¶ 18.] For these reasons, the "Plaintiffs and the Class reasonably believed they received representations, promises, and services from CenturyLink and no one else. And that was the Company's intention." [*Id.* ¶ 19.]

### The Defense Motions

CenturyLink and the Operating Companies have filed three significant motions that give rise to the present discovery dispute. Each motions presents some variation on the assertion that CenturyLink is the wrong defendant for this litigation. First, the

Operating Companies filed a Motion to Intervene. [Mot. to Intervene, ECF No. 80.] They assert that they are subsidiaries of CenturyLink and should be allowed to intervene pursuant to Fed. R. Civ. P. 24. The Operating Companies argue that they have arbitration agreements with the Plaintiffs and need to be parties in this lawsuit in order to enforce those arbitration clauses. [*See* Mem. in Supp. of Mot. to Intervene, ECF No. 82.]

Second, the Operating Companies and CenturyLink have jointly filed a Motion to Compel Arbitration and Enforce Class-Action Waivers. [Mot. to Compel Arbitration, ECF No. 122.] They argue that 37 of the 38 Plaintiffs agreed to arbitrate their claims on an individual basis when they formed contracts with the Operating Companies, and the claims leveled at CenturyLink fall within the scope of those arbitration agreements. [Mem. in Supp. of Moti to Compel Arbitration, ECF No. 124.]

Finally, CenturyLink filed a Motion to Dismiss Under Rules 12(b)(2) and 12(b)(6). [Mot. to Dismiss, ECF No. 132.] CenturyLink argues that it is an improper defendant and should be dismissed from the litigation for lack of personal jurisdiction because: (1) it is neither located in this forum or any transferor forum, nor taken actions directed to any such forum; and (2) Plaintiffs have failed allege a basis for piercing the corporate veil between CenturyLink and its subsidiaries. [Mem. in Supp. of Mot. to Dismiss, ECF No. 134.] The Plaintiffs' responses to all three motions are due on July 26, 2018. [Pretrial Order No. 4: Scheduling Order (May 15, 2018), ECF No. 155.]

### *Judge Davis's Partial Stay Order*

After CenturyLink and the Proposed Intervenors filed the motions described above, the parties disagreed about the proper next steps in the litigation. Plaintiffs generally advocated for broad class-wide and merits-focused discovery beginning immediately. CenturyLink and the Proposed Intervenors suggest that they should be required to provide little or no information to the Plaintiffs at this stage, since

arbitration is likely. [*See* Order on Mot. to Stay (May 8, 2018) at 2–3, ECF No. 145.] The District Court found that the proper management of the litigation lies somewhere between these extremes.

On May 8, 2018, the District Court granted CenturyLink's "Motion to Temporarily Stay Discovery Pending Resolution of Forthcoming Motion to Compel Arbitration and Enforce Class-Action Waivers." [Stay Order at 7 ¶ 1; Def.'s Mot. to Stay, ECF No. 87.] In the Stay Order, the District Court observed:

> Proceeding with discovery before determining which claims are arbitrable or subject to class-action waivers would allow Plaintiffs' to obtain extensive discovery on class-wide issues. Yet much of this information will be irrelevant to individual arbitrations. Such voluminous discovery will likely be costly in terms of money and time. Without a temporary stay, CenturyLink's potential right to have an arbitrator manage discovery would be negated.

[Order on Mot. to Stay at 5.]

However, the District Court declined to prohibit all discovery, instead ruling that some discovery about topics directly implicated by the pending defense motions is appropriate. Specifically, Judge Davis Ordered that:

> 2. Plaintiffs may conduct reasonable discovery **specifically directed to their assertion that their claims are not subject to mandatory arbitration and class-action waivers**. Additionally, Plaintiffs may conduct reasonable discovery related to CenturyLink's Alternative Motion to Dismiss under Rules 12(b)(2) and 12(b)(6), and, as the Court has previously ordered, Plaintiffs may conduct reasonable discovery specifically directed to the Motion to Intervene.

[Order on Mot. to Stay at 7 ¶ 2.] The District Court then referred any discovery disputes arising under this paragraph of the Stay Order to the undersigned for resolution. [*Id.*] Due to the very narrow timeframe for motions-related discovery permitted by the briefing schedule, this Court handled the Plaintiffs' Motion to Compel on an expedited basis.

*Discussion And Order*

Plaintiffs served document requests on CenturyLink and on each of the Proposed Intervenors asking for substantial information. CenturyLink and the Proposed Intervenors agreed to produce documents in response to several of the requests, but refused to do so with respect to others. The parties were unable to resolve these disputes, so Plaintiffs brought a Motion to Compel Production of Documents.

Plaintiffs' motion raises eight separate issues. First, Plaintiffs argue that CenturyLink should produce documents concerning the investigation conducted by the law firm of O'Melviney & Myers ("OMM"). Second, Plaintiffs assert that CenturyLink should be required to provide all documents that were produced to various governmental entities investigating CenturyLink's sales and billing practices. Third, Plaintiffs argue that the Proposed Intervenors should produce documents related to their business structures and operations. Fourth, Plaintiffs seek production of business cards for certain specifically-listed key employees of the Proposed Intervenors ad for persons who have or will file declarations in this litigation. Fifth, Plaintiffs seek documents showing positions that the Proposed Intervenors' executives have held with other CenturyLink entities. Sixth, Plaintiffs ask the Court to order production of the organizational charts of each of the Operating Companies. Seventh, Plaintiffs ask the Court to require the Operating Companies to produce a variety of documents relating to the ownership of branding and intellectual property. Finally, Plaintiffs argue that Proposed Intervenors should produce documents showing judgments against CenturyLink for the subsidiaries and their employees.

The Court held a hearing on the motion to compel on June 4, 2018. [Mins. (June 4, 2018), ECF No. 171.] At the hearing, in light of the very short time for discovery relating to the pending defense motions, the Court issued its rulings on these matters from the bench. Consistent with those bench rulings, and as stated below, **IT IS HEREBY ORDERED THAT** Plaintiffs' Motion to Compel

Production of Documents **[ECF No. 158]** is **GRANTED IN PART** and **DENIED IN PART**.

    **1.**    **OMM Documents**. The motion is **DENIED** to the extent that it seeks an order compelling CenturyLink to produce all documents related to the OMM investigation, including the report of the findings and conclusions reached and the millions of documents provided to OMM for review. [Gudmundson Decl., Ex. C at 7 (Request Nos. 1–4), ECF No. 161-3.] Production of the OMM documents would contain an enormous volume of class-wide information largely directed at the merits of the case and an unknown, but perhaps very small, amount of discovery actually relevant to the pending defense motions. This is just the sort of broad that the District Court found should not be produced at this time.[2] [Order on Mot. to Stay at 7 ¶ 2.] The requested OMM documents are in no way essential to resolving the issues that are now before the District Court. *See* Fed. R. Civ. P. 26(b)(1) (requiring the Court to consider "the importance of the discovery in resolving the issues").

The Plaintiffs suggest that documents related to the OMM investigation may help them rebut the argument presented in the pending defense motions that CenturyLink is the wrong defendant. However, there is no indication in the record that the OMM investigation examined CenturyLink's adherence to corporate formalities, its business relationships with subsidiaries, its targeting of specific states for business, or other matters that are reasonably implicated by the defense motions. Even if either documents reviewed during the OMM investigation or any final report might contain information relevant to those defense motions, production of all the

---

[2]    Plaintiffs make several references to the District Court's remarks during the April 4, 2018 status conference instructing Plaintiffs' counsel to serve requests for discovery so that the case could get moving forward. [*See, e.g.*, Hr'g Tr. (Apr. 4, 2018) at 49:6, ECF No. 105.] However, they read too much into that discussion. Judge Davis did not find that any specific proposed request was justified or appropriate, but instead urged Plaintiffs to serve requests so that the process of exchanging and, where appropriate, disagreeing about discovery could get underway.

materials to get at those few that may be helpful is not a targeted way of obtaining the information currently at issue.

Because the Court concludes, at this time, that Plaintiffs' requests for production of all documents related to OMM investigation are not at all targeted to the issues raised by Motion to Intervene, the Motion to Compel Arbitration, or the Motion to Dismiss, it does not make any finding concerning the application of attorney-client privilege, work-product protection, or waiver to the OMM documents. That issue is saved, if necessary, for another day.

2.     **Government Investigation Documents**. The motion is **DENIED** to the extent it seeks an order compelling production of all documents provided by CenturyLink to any government or law enforcement entity that investigated CenturyLink's sales, servicing, and billing policies, practices and procedures. [Gudmundson Decl., Ex. C at 7 (Request No. 5).] The Court reaches this conclusion for the same reasons discussed above with respect to the OMM documents. Request No. 5 to CenturyLink is an indirect and radically overbroad means of seeking those documents that are reasonably necessary to respond to the pending defense motions.

3.     **Proposed Intervenors' Structures and Operations**. The motion is **DENIED** to the extent the Plaintiffs seek to compel production of documents responsive to Plaintiffs' Request No. 1 that have not already been provided. [Gudmundson Decl., Ex. E at 12 (Request No. 1 (served on each of the Proposed Intervenors)).] The Operating Companies have agreed to provide their certificates of incorporation and bylaws. However, they did not agree to provide: each Operating Company's office location; phone numbers; the identity of the entity that owns or leases the office location; the identity of other CenturyLink subsidiaries that used the office location; and photos of the office location's signage. The Court agrees with the Proposed Intervenors that these areas of discovery are not reasonable or proportional under the circumstances. Given the number of offices that are at issue for the Operating Companies, the Court finds that the burden of producing the disputed

documents outweighs their likely benefit in resolving the issues that are implicated by the defense motions.

**4.     Business Cards**. The motion is **GRANTED** to the extent it seeks to compel production of documents responsive to Plaintiffs' Request No. 4, and the motion is **DENIED** to the extent it seeks to compel production of documents responsive to Plaintiffs' Request No. 5 to each of the Proposed Intervenors. [Gudmundson Decl., Ex. E at 12–13 (Request Nos. 4–5).] The Court rejects the Operating Companies' arguments that business cards are altogether irrelevant[3] and disagrees that any production of those cards would be unduly burdensome. Request No. 4 asks for business cards of specifically identified high-ranking management for each of the CenturyLink subsidiaries seeking to intervene. These documents are reasonably likely to reveal information relevant to alter-ego questions implicated by the pending defense motions and there has been no showing that gathering and producing these materials would be significantly burdensome.

By contrast Request No. 5 is not so plainly relevant to the alter-ego questions presented by the defense motions. Here, the Plaintiffs seek business cards of any subsidiary employee for whom an affidavit or declaration has been or may be filed. But the fact that an employee has averred something in this litigation does not make that individual's business card relevant to a veil-piercing issue.

**5.     Executive Positions with Other Entities**. The motion is **GRANTED** to the extent it seeks to compel production of documents responsive to Plaintiffs' Request No. 6 to each of the Proposed Intervenors. [Gudmundson Decl., Ex. E at 13 (Request No. 6).] These documents are reasonably likely to show the extent to which

---

[3]     The Proposed Intervenors are, of course, free to argue to the District Court that any business cards cited by the Plaintiffs in their response to the defense motions are insufficient to show that a veil-piercing factor has been met. But even for purposes of the limited discovery permitted at this stage, the Operating Companies have failed to show that the business cards could have no bearing whatsoever on the defense motions.

CenturyLink and any of the Proposed Intervenors have common management, a fact plainly relevant to the Plaintiffs' argument that the motion to dismiss for lack of personal jurisdiction should be denied based on a veil-piercing theory.

      **6.** **Organizational Charts**. The motion is **GRANTED** to the extent it seeks to compel production of organizational charts in response to Plaintiffs' Request No. 10 to each of the Proposed Intervenors. [Gudmundson Decl., Ex. E. at 13 (Request No. 10).] These organizational charts will provide information about the structure of the Operating Companies' businesses that the Plaintiffs may use to argue that CenturyLink should be subject to personal jurisdiction. The Operating Companies have failed to show why production of this information would be unduly burdensome or so lacking in relevance that it would not be important to the resolution of the issues involved in the pending defense motions.

      **7.** **Branding and Intellectual Property**. The motion is **DENIED** to the extent Plaintiffs seek production of documents showing the right to use the trade name "CenturyLink" and ownership of intellectual property in response to Request Nos. 14, 26, 27, and 29 to each of the Proposed Intervenors. [Gudmundson Decl., Ex. E at 14, 16–17 (Request Nos. 14, 26, 27, and 29).] The Court finds that these requests are significantly overbroad and not narrowly tailored to the discovery permitted at this stage of the litigation.

      **8.** **Employee Judgments**. The motion is **DENIED** to the extent Plaintiffs seek production of documents showing that CenturyLink has paid judgments against the Proposed Intervenors in response to Request No. 30 to each of the Proposed Intervenors. [Gudmundson Decl., Ex. E at 17 (Request No. 30).]

### *Discovery Disputes Going Forward*

During the hearing on the motion to compel, counsel for the parties discussed the potential for additional discovery disputes that might arise during the next several weeks. Counsel for CenturyLink and the Operating Companies expressed concerns that Plaintiffs have served additional discovery requests not addressed by this Order,

including 23 separate deposition topics, numerous document requests, 5 deposition notices, and a Rule 30(b)(6) deposition. It is essential that discovery at this stage of the litigation remains focused on the issues raised by the pending defense motions and that sufficient information is exchanged to allow the Plaintiffs to respond to those motions. This means that both parties must compromise when it comes to the scope of discovery. To provide a little more guidance to the parties, the Court highlights two disputes discussed in this Order where it appears efforts at compromise could have been more robust and obviated the need for Court intervention. For the Plaintiffs, the requests for CenturyLink to produce all documents related to the OMM investigation reveals almost no attempt to seek reasonable discovery specifically directed at the issues raised in the pending defense motions. For the defense, the insistence that it would be unduly burdensome to gather and produce even the business cards of the Proposed Intervenors' high-ranking employees reveals too narrow a view of what discovery is relevant and reasonable at this stage of the litigation.

The Court encourages the parties to make all reasonable efforts to resolve additional discovery disputes on their own without the need for Court intervention. If a resolution cannot be reached, given the compressed timeframe for completion of briefing and discovery related to the pending defense motions, the parties are invited to bring discrete issues to the Court's attention using its informal dispute resolution procedure.

Date: June 7, 2018                                              *s/Katherine Menendez*
                                                                Katherine Menendez
                                                                United States Magistrate Judge