UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION**<br><br>This Document Relates to:<br>17-2832, 17-4613, 17-4614, 17-4615, 17-4616, 17-4617, 17-4618, 17-4619, 17-4622, 17-4943, 17-4944, 17-4945, 17-4947, 17-5001, 17-5046, 18-1573, 18-1572, 18-1565, 18-1562 | **MDL No. 17-2795 (MJD/KMM)**<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE SUR-REPLY TO DEFENDANT AND PROPOSED INTERVENORS' MOTION TO COMPEL ARBITRATION AND ENFORCE CLASS-ACTION WAIVERS** |

## INTRODUCTION

Plaintiffs seek a sur-reply for two reasons: (1) Defendant CenturyLink, Inc. ("CenturyLink") materially changed its Motion to Compel Arbitration and Enforce Class Action Waivers ("MTCA") from one seeking relief under §4 of the Federal Arbitration Act ("FAA") in its motion and opening brief (upon which Plaintiffs based their Opposition) to one exclusively under §3 on Reply; and (2) Defendant based its Reply upon a host of new documents and testimony, which Defendant asserts "supersedes" the record upon which Plaintiffs based their previous opposition and to which Plaintiffs have not had the opportunity to respond. For either, or both, of these reasons, the Court should grant Plaintiffs' motion so that the Court may base its decisions upon a complete and accurate record and set of memoranda.

In its MTCA Reply Brief, Defendant changed the legal and factual basis upon which it moved the Court to compel arbitration. Legally, Defendant changed the statutory basis under which it seeks arbitration pursuant to the FAA. In what appears to be a last-ditch

effort to avoid the jury trial Plaintiffs properly demanded under § 4 of the FAA, Defendant now asserts it "never intended" to move to ***compel*** arbitration under § 4 of the FAA, but instead intended to move only for a "stay pending arbitration" pursuant to § 3. On Reply, Defendant submitted an Amended Proposed Order reflecting its change of mind. Dkt. 303.

Factually, Defendant's MTCA Reply introduced new declarations, testimony, and documents, which were not in the record when Plaintiffs submitted their MTCA Opposition. After Plaintiffs submitted their MTCA Opposition on August 23, 2018, CenturyLink produced many new documents and took 28 Plaintiff depositions, which CenturyLink folded into a record it asserts "supersedes" the record upon which Plaintiffs' based their MTCA Opposition.[1] In an attempt to persuade the Court that each Plaintiff assented to arbitration, Defendant based the entirety of its MTCA Reply upon this "superseding" record.

Plaintiffs have not had the chance to address these new legal and factual issues, or present their position based upon the complete record. Given Defendant's new and fundamental shift in the statutory basis for its MTCA Motion and its reliance on new

---

[1] On Reply, CenturyLink relies on the Second Declaration of Douglas P. Lobel In Support of Defendant and Proposed Intervenors' Motion to Compel Arbitration and Enforce Class-Action Waivers ("Second Lobel Decl.") "to assist the Court in digesting the voluminous record. This declaration . . . supersedes Mr. Lobel's earlier declaration filed with the initial Motion (Dkt. No. 129)." MTCA Reply at 5, fn. 1. The Second Lobel Decl., however, is 35 pages longer than the original. This change in volume is primarily attributable to discovery obtained and relied upon ***after*** Plaintiffs filed their MTCA Opposition. CenturyLink dedicates 28 of 64 pages of the Second Lobel Declaration to establish "proven assents to arbitration and class action waiver" for each Plaintiff by citing to Plaintiff deposition testimony. *See* Second Lobel Declaration at 35-62.

evidence, exhibits, and arguments, Plaintiffs respectfully seek leave to file a sur-reply.[2] Plaintiffs have met and conferred with Defendant regarding the relief they seek in this Motion, and while Defendant agrees a sur-reply is appropriate, the parties have been unable to agree on the scope of the sur-reply, its size, and the timing of its filing.

Regarding areas of agreement, Defendant agrees that Plaintiffs should be permitted to file a sur-reply on the issues of: (1) Defendant's changed bases under the FAA for its MTCA Motion (provided Defendant is allowed to respond to Plaintiffs' sur-reply), (2) to address "evidence of instances of assent CenturyLink produced" after Plaintiffs filed their Opposition Brief; and (3) to address CenturyLink's new declarations filed in support of its MTCA Reply. While the parties agree on these points, a sur-reply requires the Court's permission in the first instance, and certain areas of dispute still exist, requiring the Court's resolution should it grant that permission. Specifically, CenturyLink seeks to bar Plaintiffs from submitting Plaintiff declarations that conform and respond to the new record and new arguments raised in CenturyLink's MTCA Reply.

Accordingly, Plaintiffs now move the Court for an order permitting Plaintiffs to file a sur-reply of up to 8,000 words to address all new factual and legal issues raised since Plaintiffs' opposition. Should the Court grant Plaintiffs' motion, Plaintiffs' request the Court set a deadline of January 18, 2019 to file such sur-reply.

---

[2] Plaintiffs' present motion only seeks leave to file a sur-reply with respect to the pending Motion to Compel Arbitration. It does not seek a sur-reply to Defendant's Motion to Intervene or Motion to Dismiss.

# BASES FOR REQUEST

## I. CenturyLink Changed the Statutory Basis of Its Central Motion and No Longer Seeks to Compel Arbitration.

As this Court well knows, CenturyLink has intended to move to *compel* arbitration from the beginning. CenturyLink, Inc. and the Proposed Intervenors (the "CenturyLink") titled the initial arbitration motion filed with this Court the "Motion to Compel Arbitration and Enforce Class-Action Waivers (Dkt. Nos. 122-131)." The relief CenturyLink sought was explicit: CenturyLink "move[d] this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. for an Order [(1)] compelling arbitration and enforcing class-action waivers, [(2)] staying the arbitrable claims, and [(3)] dismissing all nonarbitrable claims and relief sought under Fed. R. Civ. P. 23."

But in its MTCA Reply on November 21, 2018, CenturyLink told Plaintiffs and this Court that it was no longer moving to compel arbitration. According to CenturyLink, "it recognize[d] that some language in its motion papers inconsistently discussed compelling arbitration. ***For clarity, CenturyLink withdraws any request for an Order compelling arbitration under Section 4***." Dkt. No. 295, p. 40 (emphasis added). Importantly, no provision of the FAA other than section 4 allows a party to "petition to [any] United States court having jurisdiction for order to compel arbitration" (9 U.S.C. § 4). CenturyLink's shift was an extraordinary development meriting a sur-reply, and CenturyLink agrees.

As Plaintiffs hope to further explain in their requested sur-reply, the result of CenturyLink's shift is that it has now waived its ability to obtain a stay under FAA § 3.

By engaging in this tactic with the sole intent to avoid a statutorily permitted jury trial on arbitrability, CenturyLink has slain the foundation of its MTCA Motion, including any request for a stay under FAA §3, for several reasons.

***First***, CenturyLink's decision to withdraw its request to compel arbitration under FAA § 4 means it has also waived the ability to seek a stay under FAA § 3. This is because in the nearly eight months since filing its MTCA Motion, CenturyLink has not initiated a separate arbitration for each class representative and paid its share of each respective arbitration filing fee, required to seek and maintain a § 3 stay. *See* 9 U.S.C. § 3 (permitting relief . . . "providing the applicant for the stay is not in default in proceeding with such arbitration."); *see also Pre-Paid Legal Servs. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015) (refusing to maintain stay under § 3 based upon movant's failure to pay AAA filing fee); *Sink v. Aden Enters.*, 352 F.3d 1197, 1200 (9th Cir. 2003). Consequently, CenturyLink is jurisdictionally barred from seeking relief under FAA § 3 now. Additionally, because the ability to ***compel*** arbitration is now waived (see below), that waiver constitutes a "default" under FAA § 3. A "default" has generally been viewed by courts as including a "waiver." *See, e.g., Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 13 (5th Cir. 2005); *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200, 204-05 (4th Cir. 2004); *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 n.17 (11th Cir. 2002); *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001); *County of Middlesex v. Gevyn Constr. Corp.*, 450 F.2d 53, 56 n.2 (1st Cir. 1971).

Plaintiffs' lawsuits have been pending for over a year and a half, and CenturyLink has yet to initiate arbitration or, as it now stands in light of its Reply, moved to compel it. With the motion to compel arbitration withdrawn, the motion to stay cannot be granted because CenturyLink did not initiate arbitrations or pay any arbitrator fees, and through its failure to move to compel, created a waiver of its ability to compel arbitration, resulting in a clear "default" under FAA § 3. Given the year-and-a-half long record upon which CenturyLink represented to the Court and Plaintiffs that it was moving to *compel* arbitration, Plaintiffs could not have anticipated this in its opposition papers and require a sur-reply to address it.

*Second*, with the motion to compel arbitration now withdrawn, CenturyLink can no longer re-seek an order compelling arbitration under FAA § 4 because the withdrawal constitutes a waiver under FAA § 4. CenturyLink has been threatening to compel arbitration for a year and a half and has used that threat to seek (and in some cases obtain) relief from this Court.[3] Now, if CenturyLink is to be taken at its word, it "never intended to move under § 4," Dkt. No. 295, p. 40, which is the only way it could have compelled arbitration. This represents a clear waiver of CenturyLink's ability to seek relief under FAA § 4, which affects its ability to obtain relief un FAA § 3, and Plaintiffs should be allowed to address this fully.

---

[3] CenturyLink used the specter of its forthcoming motion to compel arbitration to obtain a stay of discovery in this litigation because it alleged there were "substantial grounds on which the Court should compel arbitration of Plaintiffs' individual claims," Dkt. No. 89, p. 18, and as a basis for the Proposed Intervenors to "intervene for the limited purposes of moving to compel arbitration." Dkt. No. 80, p. 1.

6

***Third***, CenturyLink's decision to withdraw its FAA § 4 motion was plainly not the result of any mere "inconsisten[cy]." It was done solely to avoid the consequence of a jury trial on arbitrability, which Plaintiffs demanded as of statutory right under FAA § 4. In backtracking on its clear intent to seek an order compelling arbitration, CenturyLink concedes that "Section 4 of the FAA expressly permits jury trials, but CenturyLink never intended to move under § 4." Dkt. No. 295, p. 40. According to CenturyLink, "[P]laintiffs are not entitled to a jury trial" to resolve factual disputes on arbitrability because the relief it sought under FAA § 4 is now withdrawn. *Id.* Plaintiffs must respond to this argument.

## II. A Sur-reply is Warranted Because CenturyLink Concedes It Created a Superseding Factual Record Using Post-Opposition Discovery.

### A. On Reply, Defendant Submitted New Declarations and Summary "Evidence" Superseding the Record upon which Plaintiffs Responded in their Opposition.

In their MTCA Opposition, Plaintiffs challenged each and every one of Defendant's assertions that Plaintiffs assented to contracts containing arbitration clauses and class action waivers. *See* Dkt. No. 124, at 3; *see also* Decl. of Douglas P. Lobel in Supp. of Motion to Compel Arbitration and Enforce Class-Action Waivers (Dkt. No. 129), at 23. Now, after producing and conducting substantial additional discovery, Defendant has submitted an ***updated and different factual record*** that it asserts "supersedes" the record upon which Plaintiffs submitted all of their current opposition papers. After Plaintiffs filed their MTCA Opposition in August 2018, CenturyLink, from September to November 2018, produced an additional 631 pages of documents over 14 separate document productions. CenturyLink also elicited testimony from 28 Plaintiff

7

depositions, with questions focused on the issue of assent to arbitration and the adhesive form contracts CenturyLink had partially put in the record. Plaintiffs have not had the opportunity to address or respond to this new, "superseding" factual record.

CenturyLink has presented and summarized this new information, including through new charts and factual arguments, in both its MTCA Reply and in the Second Declaration of Douglas P. Lobel ("Second Lobel Decl."). *See* MTCA Reply at 4; *see generally* Second Lobel Decl. (Dkt. No. 296).[4] Plaintiffs should be permitted the opportunity to respond to arguments made in Defendant's Reply Brief based on the new charts, evidence, and arguments.

### i. CenturyLink's MTCA Reply Brief

Defendant's MTCA Reply and Declarations rest in large part upon the discovery conducted after Plaintiffs filed their Opposition. Indeed, that new discovery is the crux of Defendant's factual arguments on Reply, as evidenced by the attention devoted to mischaracterizing Plaintiffs' deposition testimony and the fact that CenturyLink submitted 'superseding' charts and declarations.

For example, CenturyLink devotes approximately ten pages, or 25% of its Reply Brief, to attacking Plaintiffs' existing declarations, claiming Plaintiffs recanted or contradicted their statements—including regarding their assent to various terms and conditions presented at the QuickConnect, My Account, and Quick Bill Pay enrollment screens and about receiving Confirmation of Service ("COS") letters, all of which

---

[4] Defendant states that "CenturyLink relies on [the Second Lobel Declaration] to assist the Court in digesting the voluminous record," Reply Brief at 5, fn. 1, which "supersedes Mr. Lobel's earlier declaration filed with the initial Motion (Dkt. No. 129)." *Id.*

CenturyLink asserts contain arbitration clauses. *See* MTCA Reply at 12-14, 17-22, 26-29. But Plaintiffs did not have the benefit of this new and complete factual record when responding to Defendant's MTCA and, in some instances, Plaintiffs' recollections were refreshed with respect to certain details. CenturyLink also mischaracterizes the new evidence by presenting it out of context, ignoring redirect examinations, and using it as the focal point to support its arguments regarding arbitration.

By way of example only, CenturyLink at deposition and in its MTCA Reply asserted that Plaintiff Deen Dodge agreed to arbitrate through completely new supposed "means of assent" not contained in its opening papers. In its original brief, CenturyLink claimed it possessed records indicating Mr. Dodge: (1) agreed to a combined Qwest Internet Agreement in 2008 and 2009; and (2) received a COS letter on May 16, 2016. *See* Lobel Decl. (Dkt. 129) at ¶¶ 27-28. In its MTCA Reply, after Mr. Dodge had been deposed, CenturyLink claimed Mr. Dodge received four additional COS letters during the time he was a CenturyLink customer. *See* MTCA Reply at 4. CenturyLink also inappropriately relied on and mischaracterized Mr. Dodge's deposition testimony as proof that he reversed his position from his written statements. CenturyLink claimed that Mr. Dodge testified that was "not sure if" he received a COS letter dated May 16, 2016. Second Lobel Decl. at pg. 15. However, Mr. Dodge also testified:

>  [On redirect]
> 21    BY MR. RIDDLE, CONTINUING:
> 22    Q. And back to Exhibit 9, is your testimony here today
> 23    that you never received your order confirmation?
> 24    MR. MCNAB: Objection. Form. Leading.
> BY    MR. RIDDLE, CONTINUING:
> 2 Q.  Is that correct?

9

> 3 A. Yes.
> . . . .
> BY MR. MCNAB, CONTINUING:
> 17 Q. -- already testified that you don't know.
> 18 A. I guess I'm not sure how to answer that. What --
> 19 what's the question again?
> 20 Q. The question is how -- let me ask a different
> 21 question.
> 22 With respect to retaining your mail, you
> 23 testified a few minutes ago that you retained
> 24 correspondence from CenturyLink other than bills.
> 25 What correspondence did you produce other than bills?
> 1 MR. RIDDLE: Objection to form.
> 2 A. I guess that's true. That's all I did produce is
> 3 bills, so I guess the -- the inference is that I
> 4 didn't receive [the COS letter], because I don't have it. I'm --
> 5 BY MR. MCNAB, CONTINUING:
> 6 Q. And you agree that's an inference.
> 7 MR. RIDDLE: Objection to form.
> 8 A. I'm not sure what you would call it, but I -- I guess
> 9 that's the truth of it is if -- if it was sent, I
> 10 don't have it, and I keep everything. So I don't know
> 11 the answer, if that's going to help you, but --

Dodge Tr. 70:22-71:3, 71:16-72:11.

Another example decimates the credibility of CenturyLink's supposedly unassailable "internal computer-generated documents." At deposition, CenturyLink presented Plaintiff Jeff Landahl with an internal computer document, contending it reflected conclusive proof that Mr. Landahl had paid online using a JP Morgan bank account, which CenturyLink asserts could have been done only by clicking through the online payment process. However, Mr. Landahl testified that he has ***never even had*** a JP Morgan bank account. Landahl Tr. at 77:19-79:19. Defendant's MTCA Reply and supporting papers are replete with other attempts to twist the new factual record, which Plaintiffs have not had the opportunity to address in full.

### *ii. CenturyLink's New Declarations and "Superseding" Second Lobel Declaration*

CenturyLink's Second Lobel Declaration cites to six new witness declarations submitted in support of its MTCA Reply that were not presented in its original filing: 1) Travis Beard (second, new declaration); 2) Dyani Galligan (second, new declaration); 3) Kenneth Vicknair Jr. (first, new declaration); 4) Charles Dawson (first, new declaration); 5) Stacey Bales (first, new declaration); and 6) Richard Symbal (first, new declaration). CenturyLink agrees Plaintiffs should be permitted to address these declarations in a sur-reply.

The Second Lobel Declaration, however, goes beyond these new declarations. CenturyLink presents the superseding Second Lobel Declaration "as a convenience to the Court and parties for the purpose of gathering and listing relevant documents and information that is already part of the record, but spread among various fact declarants, deposition transcripts, and other exhibits." Second Lobel Decl. at ¶ 2. In doing so, however, the Second Lobel adds 35 pages to, and "supersedes" the prior Lobel Declaration, which itself sought to summarize the complete, relevant factual record relevant to CenturyLink's motions. The net effect of CenturyLink's effort is that Plaintiffs' existing MTCA Opposition responds to a factual record that no longer exists, and which has been supplemented by more than half. Plaintiffs seek to respond via sur-reply to the motions pending against them based upon the full record, both as a matter of fundamental fairness and for the benefit of allowing the Court a proper briefing record upon which to rule.

### B. Plaintiffs Need to Conform Plaintiff Declarations to the Complete Factual Record

Should the Court grant their present motion, Plaintiffs intend to support their sur-reply with declarations conformed to the complete record. CenturyLink has opposed this, suggesting Plaintiffs must maintain declarations they know to be incomplete. However, not only should Plaintiffs provide conformed declarations, they have a duty to amend them under the Federal Rules to the extent they require amendment to be accurate or complete. Plaintiffs respectfully request that the Court, should it grant Plaintiffs the right to file a sur-reply, not impart any requirement impairing Plaintiffs' right and obligation to present complete and clear declarations.

### CONCLUSION

Plaintiffs respectfully ask the Court for leave to file a sur-reply to address all changed and new legal and factual arguments, evidence, and exhibits contained in Defendant's MTCA Reply. Plaintiffs further respectfully ask the Court to allow Plaintiffs to conform their declarations to the complete factual record, set the word limit for the sur-reply at 8,000, and to order it be filed by January 18, 2019.[5]

---

[5] In light of the extensive revised factual record and legal issues to be addressed in the proposed sur-reply, coupled with holiday travel and plans of Plaintiffs and their attorneys, Plaintiffs respectfully suggest this is a reasonable deadline by which to file the sur-reply.

Dated: December 13, 2018   Respectfully submitted,

*s/ Brian C. Gudmundson*
Carolyn G. Anderson (MN 275712)
Brian C. Gudmundson (MN 336695)
Bryce D. Riddle (MN 398019)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 641-0844
carolyn.anderson@zimmreed.com
brian.gudmundson@zimmreed.com
bryce.riddle@zimmreed.com

**ZIMMERMAN REED LLP**
Hart L. Robinovitch
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
Telephone: (480) 348-6400
Facsimile: (480) 348-6415
hart.robinovitch@zimmreed.com

*Plaintiffs' Interim Co- Lead and Liaison Counsel*

**O'MARA LAW GROUP**
Mark M. O'Mara
Alyssa J. Flood
Channa Lloyd
Caitlin H. Reese
221 NE Ivanhoe Blvd., Suite 200
Orlando, FL 32804
Telephone: (407) 898-5151
Facsimile: (407) 898-2468
mark@omaralawgroup.com
alyssa@omaralawgroup.com
channa@omaralawgroup.com
caitlin@omaralawgroup.com

**GERAGOS & GERAGOS, APC**
Mark J. Geragos
Benjamin J. Meiselas
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, CA 90017-3411
Telephone: (231) 625-3900
Facsimile: (231) 232-3255
mark@geragos.com
meiselas@geragos.com

**GERAGOS & GERAGOS, APC**
Lori G. Feldman
7 West 24th Street
New York, NY 10010
Telephone: (917) 388-3121
lori@geragos.com

*Plaintiffs' Interim Co-Lead Counsel*

**GUSTAFSON GLUEK PLLC**
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@ gustafsongluek.com

*Plaintiffs' Executive Committee Chair*

**HELLMUTH & JOHNSON, PLLC**
Richard M. Hagstrom, (MN 039445)
Anne T. Regan, (MN 333852)
Nicholas S. Kuhlmann, (MN 33750)
Jason Raether, (MN 394857)
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Facsimile: (952) 941-2337
rhagstrom@hjlawfirm.com
aregan@hjlawfirm.com
nkuhlmann@hjlawfirm.com
jraether@hjlawfirm.com

**ROXANNE CONLIN & ASSOCIATES, PC**
Roxanne Barton Conlin
3721 S.W 61st St.
Des Moines, Iowa, 50321
Telephone: (515) 283-1111
roxlaw@aol.com

**HENINGER GARRISON DAVIS, LLC**
James F. McDonough, III
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Telephone: (404) 996-0869
Facsimile: (205) 326-3332
jmcdonough@hgdlawfirm.com

**HENINGER GARRISON DAVIS, LLC**
Francois M. Blaudeau
W. Lewis Garrison, Jr.
Christopher B. Hood
2224 1st Ave North
Birmingham, AL 35203
Telephone: (205) 326-3336
Facsimile: (205) 380-0145
francois@southernmedlaw.com
lewis@hgdlawfirm.com
chood@hgdlawfirm.com

*Plaintiffs' Executive Committee*

**HODGE & LANGLEY LAW FIRM, P.C.**
T. Ryan Langley
229 Magnolia St.
Spartanburg, SC 29306
Telephone: (864) 585-3873
Facsimile: (864) 585-6485
rlangley@hodgelawfirm.com

**FERNALD LAW GROUP LLP**
Brandon C. Fernald
6236 Laredo Street
Las Vegas, NV 89146
Telephone: (702) 410-7500
Facsimile: (702) 410-7520
brandon.fernald@fernaldlawgroup.com

**ATTORNEY ALFRED M. SANCHEZ**
Alfred M. Sanchez
400 Gold Ave. SW, #240
Albuquerque, NM 87102
Telephone: (505) 242-1979
lawyeralfredsanchez@gmail.com

**OLSEN DAINES PC**
Michael Fuller, OSB No. 09357
Olsen Daines PC
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
Telephone: (503) 201-4570
michael@underdoglawyer.com

**WALSH PLLC**
Bonner C. Walsh
PO Box 7
Bly, OR 97622
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

**GARDY & NOTIS, LLP**
Orin Kurtz
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Fax: (212) 905-0508
okurtz@gardylaw.com

*Counsel for Plaintiffs and the Proposed Class*