UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **In re: CenturyLink Sales Practices and Securities Litigation**<br><br>This document relates to:<br><br>17-2832, 17-4613, 17-4614,<br>17-4615, 17-4616, 17-4617,<br>17-4618, 17-4619, 17-4622,<br>17-4943, 17-4944, 17-4945,<br>17-4947, 17-5046, 18-1562,<br>18-1572, 18-1565, 18-1573 | MDL No. 17-2795 (MJD/KMM)<br><br>Case No. 0:17-cv-02832-MJD-KMM |

**REPLY BRIEF IN SUPPORT OF
MOTION FOR STAY PENDING APPEAL**

# TABLE OF CONTENTS

I.      The Order of January 24, 2020, Violates the Federal Arbitration Act .................... 1

   A. CenturyLink's Brief Presents No Argument For How The Preliminary-
       Approval Order Is Permissible Under Section 2 Of The FAA ......................... 2

   B. The Plaintiffs' Brief Presents No Argument For How The Preliminary-
       Approval Order Is Permissible Under Section 2 Of The FAA ......................... 5

II.     The Order of January 24, 2020, Violates the Due Process Clause ........................ 7

III.    Movants Will Suffer Irreparable Harm Absent a Stay ............................................ 9

IV.     The Proposed Class Members Will Not Be Harmed By A Stay ........................... 10

V.      A Stay of the Ex Parte Injunction Is in the Public Interest .................................. 10

Conclusion ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Bank of America, N.A. v. UMB Financial Services, Inc.*,
    618 F.3d 906 (8th Cir. 2010) ................................................................................ 8

*Berman v. Parker*,
    348 U.S. 26 (1954) ........................................................................................... 10

*Busch v. Bluestem Brands, Inc.*,
    2019 WL 1976147 (D. Minn. May 3, 2019) ............................................................ 7

*D.M. by Bao Xiong v. Minnesota State High School League*,
    917 F.3d 994 (8th Cir. 2019) ................................................................................ 9

*In re Diet Drugs*,
    282 F.3d 220 (3d Cir. 2002) .................................................................................. 6

*Fath v. Am. Honda Motor Co., Inc.*,
    2019 WL 6799796 (D. Minn. Dec. 13, 2019) ......................................................... 7

*Hansberry v. Lee*,
    311 U.S. 32 (1940) ......................................................................................... 7, 9

*Liles v. Del Campo*,
    350 F.3d 742 (8th Cir. 2003) ................................................................................ 6

*Martin v. Wilks*,
    490 U.S. 755 (1989) ............................................................................................ 8

*In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litigation*,
    71 F.3d 298 (8th Cir. 1995) ........................................................................*passim*

*In re Uponor, Inc. F1807 Plumbing Fittings Prod. Liab. Litig.*,
    2012 WL 13065005 (D. Minn. Jan. 19, 2012) .................................................... 7, 9

*Waters v. Churchill*,
    511 U.S. 661 (1994) ............................................................................................ 7

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
    2012 WL 5055810 (D. Minn. Oct. 18, 2012).................................................... 7, 9

**Statutes, Rules, and Regulations**      **Page(s)**

9 U.S.C ...................................................................................................................... 4, 6

28 U.S.C. .................................................................................................................. 5, 6

Fed. R. Civ. P. 23 .................................................................................................... 8, 9

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................ 8

U.S. Const. art. VI ..................................................................................................... 5

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR STAY

The movants have requested a stay because the preliminary-approval order of January 24, 2020: (1) violates section 2 of the Federal Arbitration Act and (2) violates the Due Process Clause. Neither of the briefs filed in response says anything that refutes the movants' claims.

## I.     The Order of January 24, 2020, Violates the Federal Arbitration Act

The movants' argument rests on a simple syllogism:

> Major premise: Section 2 of the Federal Arbitration Act provides that agreements to arbitrate "shall be valid, irrevocable, and *enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2 (emphasis added).

> Minor premise: The preliminary-approval order of January 24, 2020, renders the movants' arbitration agreements *unenforceable*, because it enjoins the movants from arbitrating their claims against CenturyLink.

> Conclusion: The preliminary-approval order therefore violates section 2 of the Federal Arbitration Act.

The conclusion is unescapable unless the parties refute either the major premise or the minor premise of the syllogism.

Yet neither of the briefs engages—let alone refutes—the major premise or the minor premise of the movants' argument. Indeed, neither brief even cites Section 2 of the Federal Arbitration Act, and neither brief presents an argument for how this Court's anti-arbitration injunction can be reconciled with the statutory command of Section 2. Instead, the parties think that they can refute the movants' reliance on the FAA by attempting to draw distinctions between the facts of this case and the facts of *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litigation*, 71 F.3d 298, 300 (8th Cir. 1995), as if *Piper* held that Section 2 authorizes courts to issue anti-arbitration injunctions in any situation that departs from the precise fac-

tual pattern of that case. But *Piper* merely confirms the *rule* set forth in Section 2 of the FAA, and that rule prohibits federal courts from issuing *any* order that renders arbitration agreements unenforceable. *See Piper*, 71 F.3d at 303 ("The district court's injunction significantly frustrated Park Nicollet's contractual rights, as protected by the FAA."). The problem for the parties is Section 2 of the FAA, which is the source of *Piper*'s holding, and which the parties do not deign to mention anywhere in their briefing.

### A.  CenturyLink's Brief Presents No Argument For How The Preliminary-Approval Order Is Permissible Under Section 2 Of The FAA

CenturyLink's[1] response ignores the text of the FAA and pretends that the movants' argument rests entirely on the matching the precise facts of *Piper* rather than the requirements of Section 2. *See* ECF No. 560 at 11–16. But none of the distinctions that CenturyLink tries to draw between this case and *Piper* do anything to show that this Court's anti-arbitration order was permissible under Section 2 of the FAA.

Moreover, CenturyLink's discussion of *Piper* is misleading. There were *two* separate issues in the *Piper* appeal flowing from two entirely separate orders that were under review in that case: The first issue was whether the district court erred by entering an order enjoining Park Nicollet from arbitrating its claims with Piper. *See Piper*, 71 F.3d at 302–03. The second issue was whether the district court erred by entering a separate order refusing Park Nicollet's request to opt out of the class. *See id.* at 303–04. The movants are relying only on *Piper*'s holding that the anti-arbitration order violated the FAA. *See* ECF No. 550 at 5–6 (quoting *Piper*,

---

1.  For ease of exposition, we will refer to the defendant and intervenors collectively as "CenturyLink."

71 F.3d at 302–03). The second issue in *Piper* is irrelevant because the movants are not attempting to opt out of the proposed class.

Yet CenturyLink tries to distinguish *Piper* by relying on the opinion's discussion of the *opt-out issue* rather its discussion of the *anti-arbitration injunction*—even though *Piper*'s discussion of the opt-out issue is entirely irrelevant to the plaintiffs' motion. CenturyLink observes, for example, that *Piper* reversed the district court's *refusal to allow Park Nicollet to opt out of the class* only after finding that Park Nicollet:

> (i) was represented by separate counsel; (ii) had a contractual right to arbitrate any claim encompassed by the class action; (iii) had submitted a claim to the NASD along with a declaration under § 12(d)(2) of the NASD Code that it elected not to participate in the class action; and (iv) now elected irrevocably to opt out of the class action.

*Piper*, 71 F.3d at 304. But none of these facts had anything to do with *Piper*'s separate decision to reverse the district court's *anti-arbitration injunction*, which was impermissible under the FAA regardless of whether Park Nicollet had ever attempted to opt out of the class. For CenturyLink to claim that *Piper*'s decision to reverse the district court's anti-arbitration injunction turned in any way on Park Nicollet's efforts to opt out of the class action—or on any of the "*Piper Funds* factors" that CenturyLink touts in its brief—is a misrepresentation of the Court's opinion. *Piper* reversed the anti-arbitration injunction because it violated the clear and unambiguous language of the Federal Arbitration Act. The anti-arbitration injunction in this Court's order of January 24, 2020, warrants reversal for the same reason.

CenturyLink does offer a few policy arguments in defense of this Court's anti-arbitration injunction. *See* ECF No. 560 at 15 (asserting that the anti-arbitration injunction will "protect absent class members and the integrity of these proceedings"). And it claims that the parties "strongly supported" their request for an anti-arbitration injunction, and that CenturyLink had "made a detailed showing of the factual and legal need" for this relief. *Id.* But there was one glaring deficiency in the "showing" that CenturyLink made to this Court: An explanation of how the anti-arbitration injunction could be permissible under Section 2 of the Federal Arbitration Act, which provides in clear and unmistakable language that arbitration agreements:

> *shall be valid, irrevocable, and enforceable*, save upon such grounds
> as exist at law or in equity for the revocation of any contract.

9 U.S.C § 2 (emphasis added). And CenturyLink's most recent filing is equally bereft of any attempt to explain how this Court's injunction can co-exist with the text of Section 2. Naked policy arguments cannot authorize a Court to depart from the unambiguous text of a federal statute. *See Piper*, 71 F.3d at 303 ("Park Nicollet's contractual and statutory right to arbitrate may not be sacrificed on the altar of efficient class action management.").[2]

Finally, CenturyLink suggests that the All Writs Act could authorize the anti-arbitration injunction that appears in the Court's preliminary-approval order. *See* ECF No. 560 at 16. But the All Writs Act says that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions *and agreeable to the*

---

2.   In addition, CenturyLink's claim that the anti-arbitration injunction will "protect absent class members" is demonstrably false. The injunction harms the thousands of absent class members who want to arbitrate rather than litigate their claims with CenturyLink.

*usages and principles of law.*" 28 U.S.C. § 1651 (emphasis). The Federal Arbitration Act is not only "law," but the "supreme Law of the Land,"[3] and any writ issued under 28 U.S.C. § 1651 must be "agreeable to the usages and principles" of the FAA. CenturyLink has not presented any argument for how the FAA allows this Court to issue the anti-arbitration injunction that CenturyLink requested, so it cannot justify the injunction under the All Writs Act.

**B.    The Plaintiffs' Brief Presents No Argument For How The Preliminary-Approval Order Is Permissible Under Section 2 Of The FAA**

The plaintiffs' brief also ignores the language of the Federal Arbitration Act and makes no attempt to engage the syllogism that supports movants' argument. The plaintiffs go so far as to assert that *Piper*

> specifically held such an [anti-arbitration] injunction was valid except to the extent a certain party with separate counsel unequivocally and irrevocably affirmed its desire to opt out of the class action settlement. Movants here, who are represented by separate, sophisticated counsel, have made no such request or attempted to exclude themselves, which is a plainly stated prerequisite to invoking *Piper*.

ECF No. 563 at 2 (citing *Piper*, 71 F.3d at 304). It bears repeating: There were *two* separate and distinct issues in the *Piper* appeal. The first issue was whether the district court erred by entering an order enjoining Park Nicollet from arbitrating its claims with Piper. *See Piper*, 71 F.3d at 302–03. The second issue was whether the district court erred by entering a separate order refusing to allow Park Nicollet to opt out of the class. *See id.* at 303–04. The Eighth Circuit's decision to reverse the anti-arbitration order had nothing to do with whether Park Nicollet had expressed a desire to opt out of the class; the Eighth Circuit reversed the anti-arbitration or-

---

3.   U.S. Const. art. VI.

der because it violated the Federal Arbitration Act. *See id.* at 303 ("The district court's injunction significantly frustrated Park Nicollet's contractual rights, as protected by the FAA."). Plaintiff's position—that *Piper* "specifically held" that anti-arbitration injunctions are "valid" unless the enjoined individual has "irrevocably affirmed its desire to opt out of the class action settlement"—essentially asks that the Court not read Part III.B of the *Piper* decision. ECF No. 563 at 2.

The plaintiffs also claim that the All Writs Act authorizes the anti-arbitration injunction, but an injunction that violates the Federal Arbitration Act is *not* "agreeable to the usages and principles of law" within the meaning of 28 U.S.C. § 1651(a), and the plaintiffs make no attempt to explain how this Court's anti-arbitration injunction can co-exist with Section 2 of the FAA. The plaintiffs, like CenturyLink, have chosen to ignore the language of the FAA, perhaps in the hope that their decision to ignore the relevant statutory text might somehow induce this Court to ignore it as well. But the text of Section 2 is clear and unambiguous: Agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. The anti-arbitration injunction violates Section 2 by rendering the movants' arbitration agreements unenforceable, so it cannot be authorized by the All Writs Act.

Many of the cases that the plaintiffs cite did not even involve anti-arbitration injunctions. *See In re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002); *Liles v. Del Campo*, 350 F.3d 742, 746-47 (8th Cir. 2003). Cases of this sort do nothing to support the issuance of an anti-arbitration injunction in the teeth of a federal statute that makes arbitration agreements "valid, irrevocable, and enforceable." 9 U.S.C.

§ 2. And the unpublished district-court rulings that have issued anti-arbitration in-junctions make no effort to explain how the Federal Arbitration Act could allow an injunction of that sort. *See In re Zurn*, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) (no discussion of FAA); *In re Uponor, Inc. F1807 Plumbing Fittings Prod. Liab. Litig.*, 2012 WL 13065005 (D. Minn. Jan. 19, 2012) (same); *Busch v. Bluestem Brands, Inc.*, 2019 WL 1976147 (D. Minn. May 3, 2019) (same). *Fath v. Am. Honda Motor Co., Inc.*, 2019 WL 6799796 (D. Minn. Dec. 13, 2019) (same). The brute fact that other courts have failed to consider or analyze the FAA when issu-ing anti-arbitration injunction—perhaps because the parties, like those here, never brought the issue to the court's attention—is not a license for this Court do the same. *See Waters v. Churchill*, 511 U.S. 661, 678 (1994) (plurality opinion) ("[C]ases cannot be read as foreclosing an argument that they never dealt with.").

## II.    The Order of January 24, 2020, Violates the Due Process Clause

The plaintiffs and CenturyLink appear to agree that the movants are nonparties to the MDL proceedings. At least, they do not disagree with movants on this point. But they nevertheless claim that the Due Process Clause allowed the district court to issue an *ex parte* injunction that prevents these nonparties from arbitrating their claims. None of their arguments hold water.

CenturyLink begins by asserting that the Due Process Clause allows the mo-vants to be bound as "absent class members" whose "interests are ably represented by class counsel." ECF No. 560 at 16 & n.8; *see also Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940) ("[M]embers of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present" (citations omitted)). But as the movants explained in their

opening brief, the proposed class has never been certified in accordance with Rule 23,[4] and the putative class representatives and their counsel are acting in a manner adverse to the movants' interests by seeking to deprive them of their contractual right to arbitrate.

CenturyLink fails to identify any other exception to the constitutional prohibition on enjoining non-parties to the litigation. Instead, CenturyLink makes the remarkable assertion that a court may issue a *temporary* injunction against a nonparty to a lawsuit, even when the Due Process Clause would prevent the court from enjoining that nonparty in a final judgment. ECF No. 560 at 17–18. But the constitutional prohibition on *ex parte* injunctions is not limited to injunctions that appear in final judgments. *See Martin v. Wilks*, 490 U.S. 755, 762 (1989) ("A judgment *or decree* among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." (emphasis added)). And CenturyLink cites no authority that sustains a "temporary" *ex parte* injunction of this sort over the objections of an absent class member. *Bank of America, N.A. v. UMB Financial Services, Inc.*, 618 F.3d 906 (8th Cir. 2010), is no help to CenturyLink because the anti-arbitration injunction in that case was directed at UMB — a *party* to the lawsuit. *See id.* 914–15; *see also id.* at 915 ("The district court did not err in temporarily enjoining *the parties* from participating in binding arbitration on a matter which UMB was attempting simultaneously to litigate in district court." (emphasis added)). And the *ex parte* injunctions in *Zurn* and *Uponor* were

---

4.   The parties assert that courts regularly use "provisional" certification in order to begin administration of a settlement process. But that asserted practice does not provide any support for what the parties request here: that the Court purport to *bind* absent class members without the procedural protections that Rule 23(c)(2)(B) requires before absent class members can be bound.

never challenged by an absent class member who raised a due-process objection to the court's actions.

The plaintiffs barely address the movants' due-process objections. They appear to be claiming that the movants are bound to obey the district court's order under the class-action exception recognized in *Hansberry*. *See* ECF No. 563 at 8–9 ("[A] Court may bind Class Members . . . . There is no dispute that Movants are bound by the Order."). But the movants clearly explained in their opening brief why the class-action exception is inapplicable: (1) No class has been certified in accordance with the requirements of Rule 23; and (2) The putative class representatives and class counsel do not represent the interests of the movants, who wish to arbitrate rather than litigate their claims. *See Hansberry*, 311 U.S. at 42–43 ("[M]embers of a class not present as parties to the litigation may be bound by the judgment *where they are in fact adequately represented by parties who are present*" (emphasis added)). The plaintiffs have no answer to any of this.

## III.   Movants Will Suffer Irreparable Harm Absent a Stay

A denial of constitutional rights qualifies as irreparable harm *per se*,[5] and neither Century nor the plaintiffs dispute this proposition. So the movants need nothing more than to show that the *ex parte* injunction violated their due-process rights, and a finding of irreparable harm ineluctably follows.

CenturyLink tries to contend that mere delay fails to qualify as "irreparable harm," but the entire point of arbitration is provide a quick and efficient means of resolving disputes and to do so at whatever time the movant chooses to bring his or her claims. That right will be irreparably lost if the preliminary-approval order

---

5.   *See D.M. by Bao Xiong v. Minnesota State High School League*, 917 F.3d 994, 1004 (8th Cir. 2019).

is not stayed, and there is no prospect of monetary recovery that will compensate the movants if the anti-arbitration injunction remains in effect.

## IV.    The Proposed Class Members Will Not Be Harmed By A Stay

Both CenturyLink and the plaintiffs note that the proposed class members will benefit from the settlement, but class members will already have to wait months before receiving any compensation (and then, most will receive nothing, some will receive $30, and a few will receive slightly more). A short delay to a $30 payment so that the Court can ensure that it complies with federal law and protects the rights of class members who wish to pursue arbitration is entirely reasonable. That is particularly true where the conflict between the Order and the FAA could easily have been avoided if the parties had informed the Court of controlling precedent when seeking approval of the settlement.

## V.    A Stay of the Ex Parte Injunction Is in the Public Interest

CenturyLink claims the public has an interest in the "speedy resolution of this dispute," but the public has an even stronger interest in the enforcement of contracts—and CenturyLink is attempting to breach its contractual obligations on a massive scale by depriving *each* of its customers of their contractual right to arbitrate. The public also has an interest in the enforcement of the Federal Arbitration Act, despite CenturyLink's refusal to acknowledge or discuss that statute in its briefing. *See Berman v. Parker*, 348 U.S. 26, 32 (1954) ("Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive.").

## CONCLUSION

The motion for stay pending appeal should be granted.

Dated: February 19, 2020                    Respectfully submitted.

                                             /s/ Jared D. Shepherd
                                            Jared D. Shepherd
                                            Hoff Barry, P.A.
                                            100 Prairie Center Drive, Suite 200
                                            Eden Prairie, Minnesota 55344
                                            (952) 941-9220 (phone)
                                            (952) 941-7968 (fax)
                                            jshepherd@hoffbarry.com

                                            Ashley C. Keller
                                            Warren D. Postman
                                            Keller Lenkner LLC
                                            150 N. Riverside Plaza, Suite 4270
                                            Chicago, Illinois 60606
                                            (312) 741-5220 (phone)
                                            (312) 971-3502 (fax)
                                            ack@kellerlenkner.com
                                            wdp@kellerlenkner.com

                                            *Counsel for Movants Edwin Miller,
                                            Vonita Taylor, and Patrick West*