# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

IN RE: CENTURYLINK SALES
PRACTICES AND SECURITIES
LITIGATION

MDL No. 17-2795 (MJD/KMM)

This Document Relates to:
Civil File No. 18-296 (MJD/KMM)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 4

    A.    Plaintiffs Seek Highly Relevant Discovery and the Identity of Relevant Custodians .............................................................................................. 5

    B.    Defendants Refuse to Provide Highly Relevant Information About Other Pending Investigations and Admit They Destroyed Custodial Documents They Previously Agreed to Produce ......................................................... 11

    C.    Defendants Should Be Required to Search CenturyLink's "Integrity Line" Using the Parties' Agreed-Upon Search Terms ........................................ 13

ARGUMENT .......................................................................................................... 14

    A.    Defendants Should Produce the Documents Responsive to the Requests in the Minnesota Attorney General's Third Motion to Compel ..................... 15

    B.    Defendants Should Provide Complete and Accurate Responses to Plaintiffs' Attorney General Interrogatory and Produce Highly Relevant Documents Identified by the Agreed-Upon Search Terms ........................................... 18

    C.    Defendants Should Be Required to Run and Produce Cramming Complaints Reported Through CenturyLink's "Integrity" Tips Line ........ 20

CONCLUSION ....................................................................................................... 21

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*Ad Astra Recovery Servs., Inc. v. Heath,*
    2019 WL 2448569 (D. Kan. June 12, 2019) .............................................................. 15

*Axcan Scandipharm Inc. v. Ethex Corp.,*
    2008 WL 11349882 (D. Minn. Dec. 31, 2008) ......................................................... 20

*Beseke v. Equifax Info. Servs.,*
    2018 WL 6040016 (D. Minn. Oct. 18, 2018) ............................................................ 15

*Capital Ventures Intern. v. J.P. Morgan Mortg. Acquisition Corp.,*
    2014 WL 1431124 (D. Mass. Apr. 14, 2014) ............................................................ 20

*In re CenturyLink Sales Practices & Sec. Litig.,*
    403 F. Supp. 3d 712 (D. Minn. 2019).................................................................. *passim*

*In re CenturyLink Sales Practices and Sec. Litig.,*
    No. 17-MD-2795-MJD-KMM (D. Minn.) .................................................................... 2

*Costa v. Wright Medical Tech.,*
    2019 WL 108884 (D. Mass. Jan. 4, 2019).................................................................. 16

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
    2017 WL 10775410 (S.D. Fla. Mar. 14, 2017) ......................................................... 17

*In re Hardieplank Fiber Cement Siding Litig.,*
    2014 WL 5654318 (D. Minn. Jan. 28, 2014) (Davis, J.) ........................................... 15

*Hofer v. Mack Trucks, Inc.,*
    981 F.2d 377 (8th Cir. 1992) .................................................................................... 15

*Munoz v. PHH Corp.,*
    2013 WL 684388 (E.D. Cal. Feb. 22, 2013) ............................................................. 16

*Shukh v. Seagate Tech., LLC,*
    295 F.R.D. 228 (D. Minn. 2013) ............................................................................... 15

*U.S. Bank Nat. Ass'n v. Merrill Lynch Mortg. Lending, Inc.,*
    2014 WL 6453787 (N.Y. Sup. Ct. Nov. 13, 2014)............................................... 12, 20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) ................................................................................................. 15

Plaintiffs respectfully move pursuant to Rule 37 to compel (i) documents previously produced to the Minnesota Attorney General in response to the requests at issue in the Attorney General's Third Motion to Compel, (ii) supplemental disclosures to Plaintiffs' Interrogatory No. 2 concerning the other state attorney general investigations into CenturyLink's billing misconduct, (iii) production of documents previously produced to other state attorneys general identified by the parties' agreed-upon search terms, and (iv) a proper search of CenturyLink's "Integrity Line." This highly relevant discovery is proportional to the needs of the case, can be produced with minimal to no burden, and is consistent with the "broad and liberal scope of discovery" under Rule 26.[1]

## INTRODUCTION

CenturyLink recently resolved four proceedings by state attorneys general that were investigating the very billing misconduct that gave rise to this action, and another ███ ████████████████████████████████████████████. In announcing the resolution of these investigations in settlement agreements that required the Company to pay tens of millions of dollars and fundamentally reform its sales practices, CenturyLink and those government investigators made clear that these investigations were directly relevant to Plaintiffs' claims and the core allegations cited by the Court in sustaining Plaintiffs' Complaint.    As those state attorneys general concluded, CenturyLink

---

[1] All defined terms have the meanings ascribed to them in Plaintiffs' Complaint (ECF No. 143) and opposition to Defendants' motion to dismiss (ECF No. 162), and all emphasis is added and citations omitted unless otherwise noted. References to the Minnesota Attorney General Action are related to the Minnesota state court case, *State of Minnesota v. CenturyTel,* No. 02-CV-17-3488 (Minn. Dist. Ct., 10th Jud. Dist., Anoka Cty.).

"systematically and deceptively overcharged consumers for services," "broke the law by fraudulently overbilling," and "deceived consumers by telling them they would pay one price, and then charging them more." *See, e.g., In re CenturyLink Sales Practices & Sec. Litig.*, 403 F. Supp. 3d 712, 720-22 (D. Minn. 2019); *see also* Ex. A; Ex. B; Ex. C.[2]

Despite the undeniable overlap between these investigations and Plaintiffs' claims, CenturyLink has refused to provide basic information about the investigations to Plaintiffs—even though Plaintiffs requested this information in an interrogatory served at the outset of discovery in September 2019, and in spite of the unquestionable relevance of this information to Plaintiffs' claims and discovery in this case. *See In re CenturyLink*, 403 F. Supp. 3d at 730 (knowledge of attorney general investigations supports scienter). Defendants should be ordered to provide complete responses to Plaintiffs' interrogatory, and should also produce documents previously produced to those agencies that are identified using the search terms the parties extensively negotiated and agreed would capture documents responsive to Plaintiffs' other requests.

Further, Defendants have also refused to produce documents that constitute core underlying evidence of CenturyLink's strategy to "keep the price point low but add fees" and refusing to honor quoted contract terms that are at the core of Plaintiffs' claims. *Id.* at 721. This narrow set of documents, which were previously produced to the Minnesota Attorney General and were the subject of a motion to compel brought by the Attorney

---

[2] Citations to "Ex.__" are to the accompanying Declaration of Michael D. Blatchley. All references to "D. Minn. MDL Action" are to *In re CenturyLink Sales Practices and Sec. Litig.*, No. 17-MD-2795-MJD-KMM (D. Minn.). Unless otherwise noted, all other ECF references are to *Craig v. CenturyLink, Inc.*, No. 18-CV-296-MJD-KMM (D. Minn.).

General in that case, should be produced to Plaintiffs.  These documents can be produced in this case with minimal if any burden, and constitute highly relevant evidence revealing that CenturyLink imposed certain fees—███████████████████████████████ ██████████████, using those fees as "███████████████████████████████ ██████████████████████████" Ex. D at CTLMNSEC00015392 (██████████ ████████████).

Last, Defendants should be required to include CenturyLink's Integrity Line email address—the email that which CenturyLink employees are directed to use to report instances of cramming to management—as a document custodian, and to search that custodian using search terms agreed to by the parties.  In seeking to dismiss Plaintiffs' claims, Defendants themselves highlighted the Integrity Line as a critical vehicle to report the cramming misconduct cited by Plaintiffs' witnesses (even though CenturyLink wrongly argued that none of those witnesses did so).  Including a proper search of this custodian is all the more important given Defendants' recent revelation that it destroyed the custodial files of five of the nine sales employees cited in Plaintiffs' Complaint, despite representing months ago that these individuals would be included as custodians and that their documents had already been collected.[3]

Defendants' only argument against producing the concededly relevant discovery above has been to mischaracterize the Court's comments at the October 1, 2019 pretrial

---

[3] While Defendants informed Plaintiffs yesterday that they would agree to include this email as a custodian, they have proposed to unilaterally determine search terms and only inform Plaintiffs of those terms after-the-fact—an approach to developing search criteria this Court has already rejected.

conference and to manufacture unsupported and contradictory claims of burden and disproportionality. But Defendants have not and cannot support those arguments with any actual facts or evidence, and the critical nature of this discovery precludes them from doing so under the law.

## FACTUAL BACKGROUND

On July 30, 2019, Judge Davis denied in full Defendants' motion to dismiss, sustaining Plaintiffs' claims alleging that "for a number of years, CenturyLink engaged in systemic 'cramming' of customer accounts[] by adding services to customers' accounts without authorization, deceiving customers about the prices they would be charged, and misquoting prices by failing to disclose that 'bundles' included fees for optional services that the customers did not need or authorize." *In re CenturyLink*, 403 F. Supp. 3d at 720. As set forth in Judge Davis's opinion, the Complaint alleges that these practices came to light following the disclosures of a whistleblower complaint revealing that the Company was engaged in a "Wells Fargo-like scheme" and a lawsuit by the Minnesota Attorney General that followed a year-long investigation into the Company's billing practices— disclosures that triggered substantial investor losses. *Id.* at 721-22, 735-36; ¶¶152-71.

Since the denial of Defendants' motion, CenturyLink's misconduct has been corroborated by the investigations of numerous state attorneys general, and the tens of millions of dollars in payments—and changes to CenturyLink's sales practices that the Company implemented—to resolve them. As those state attorneys general concluded, CenturyLink "systematically and deceptively overcharged consumers for services," "broke the law by fraudulently overbilling," and "deceived consumers by telling them they would

pay one price, and then charging them more." *See* Ex. A (Colorado AG Press Release); Ex. B (Minnesota AG Press Release); Ex. C (Washington AG Press Release).

Among other things, Defendants' scheme involved two improper companywide billing practices: ███████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████.

With respect to the latter, discovery in Minnesota AG Action revealed that CenturyLink imposed these fees ██████████████████████████████████████

███████████████████████████████████—*i.e.*, the very facts supporting Plaintiffs' claims of companywide, systematic cramming that the Court upheld. *See In re CenturyLink*, 403 F. Supp. 3d at 720-23.

### A.   Plaintiffs Seek Highly Relevant Discovery and the Identity of Relevant Custodians

Following denial of Defendants' motion to dismiss, Plaintiffs sought to quickly and collaboratively work with Defendants to streamline discovery, including by identifying relevant custodians and obtaining documents that CenturyLink had already gathered and produced to other agencies investigating its misconduct. On August 19, 2019, Defendants requested an extension of the August 26 deadline to serve initial disclosures, ███████████

████████████████████████████████████████████████████████████

████████████ Ex. E (P. Gibbs Aug. 19 Email). With the understanding that the additional time would permit Defendants to produce more informative disclosures, Plaintiffs agreed to the extension.

In the meantime, Plaintiffs served their first set of document requests on Defendants on September 4, 2019. Among other things, those requests sought:



Ex. F (Pls.' First Request for Production of Documents to Defendant CenturyLink, Inc. ("Pls.' Doc. Reqs.")).

At the same time, because Defendants refused to discuss the numerous then-pending government investigations into CenturyLink's billing practices absent a formal discovery request, Plaintiffs issued interrogatories asking Defendants to identify ████████████—as those facts would not only help to identify relevant discovery in this case, but also, as the Court held, support Defendants' scienter. *See* Ex. G at Interrog. No. 2 (Pls.' First Interrogatories to Defendant CenturyLink, Inc.); *In re CenturyLink*, 403 F. Supp. 3d at 720-22, 731-32.

On September 17, 2019, the parties exchanged Rule 26 initial disclosures. Consistent with the requirements of the Federal Rules, Plaintiffs identified ██████████

████████████████████████████████████. Ex. H (Pls.' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)). By contrast, even though they had obtained an extension in order to provide more fulsome disclosures, Defendants identified ████████ ████████████████████████████████████—despite CenturyLink having itself interviewed over 200 employees in connection with its internal investigation into the misconduct underlying this lawsuit and ██████████████████████████ ████████████████████████████████████, and the fact that there were plainly dozens of other CenturyLink employees (beyond the numerous others explicitly mentioned in the Court's opinion by name) who were "likely to have discoverable information." Ex. I (Defs.' Rule 26(a)(1) Initial Disclosures); Ex. J at CTLMNSEC00015418-422 (Defs.' Suppl. Rule 26.01(a) Initial Disclosures, Minnesota AG Action); Ex K (press release re CenturyLink's internal investigation); *see also In re CenturyLink*, 403 F. Supp. 3d at 719-20, 732 (rejecting Defendants' argument concerning relevance of lower-level employees who did not personally interact with Defendants).

At the initial status conference on October 1, 2019, Magistrate Judge Menendez considered whether to order production of the documents CenturyLink had previously produced to the Minnesota Attorney General. Concerned that CenturyLink had repeatedly stonewalled the Minnesota Attorney General, and had even been sanctioned for refusing to provide court-ordered discovery in that case, Plaintiffs sought to avoid the prejudice that would arise from similar delays and obstruction here. *See* Ex. L at CTLMNSEC00020868 (Order Enforcing Prior Discovery Order & Granting Sanctions); Ex. M at

CTLMNSEC00132141 (Order on State's Motion for Sanctions).[4] Noting that it was a close call, however, the Court declined to require the identical production of those documents to Plaintiffs, but explained Plaintiffs could be entitled to documents relating to topics both the Minnesota Attorney General and Plaintiffs requested. Ex. N at 8:18-20, 13:14-16; 75:13-14 (Oct. 1 Hr'g Tr.).

Consistent with the Court's instruction, Plaintiffs then sought a limited production of documents that were previously produced in response to just eight document requests (out of hundreds) that the Attorney General had issued, and which were the subject of the Attorney General's Third Motion to Compel. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ The requests also sought documents concerning ████████████████████

---

[4] As Defendants belatedly revealed during the parties' conference with the Court yesterday, these very delays have already come to pass, underscoring the need for the requested documents now. *See* Ex. O (M. Blatchley Feb. 25 Email).

[REDACTED]

These documents go to the core of the improper pricing strategies described by the former employees cited in the Complaint and by the Court—who recounted how CenturyLink's strategy was to "keep the price point low but add fees," like the ICR (¶70)—and constitute evidence that customers were routinely denied the prices they were offered. *See, e.g.*, ¶¶44, 63-64, 88-94; *In re CenturyLink*, 403 F. Supp. 3d at 720-21, 732 (citing allegations that "CenturyLink charged low prices and then tacked on fees…to recover revenue" as a marketing strategy that misled consumers). They are plainly relevant to the falsity, materiality, and scienter elements of Plaintiffs' claims.

During the meet and confer when Plaintiffs proposed Defendants reproduce this narrow subset of documents, [REDACTED]

Contrary to Defendants' claim, however, CenturyLink repeatedly assured the ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Then, in another shift, Defendants agreed to produce the documents that were

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ However, Defendants

continued to refuse to produce the documents CenturyLink had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ The result is that Defendants sole basis for withholding concededly relevant

documents is based on an unsupported claim that Defendants themselves ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

In all events, these documents are indisputably relevant to Plaintiffs' claims. For

example, the documents Defendants are withholding would include, among others,

documents related to and similar to those cited in the summary judgment briefing—which

Plaintiffs only received because they were provided with Defendants' unsealed summary

judgment filings—such as internal emails explaining that CenturyLink ███████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████ These documents go to the core of Plaintiffs' allegations that

Defendants engaged in systemic customer cramming, and are highly relevant here.

### B. Defendants Refuse to Provide Highly Relevant Information About Other Pending Investigations and Admit They Destroyed Custodial Documents They Previously Agreed to Produce

In addition, Defendants have yet to provide key information about several state

attorney general investigations in response to interrogatories that Plaintiffs served at the

outset of discovery despite their clear relevance to the allegations at issue in this case.

These investigations are focused on the core misconduct at issue in this case, are otherwise

relevant to numerous elements of Plaintiffs' claims (including falsity, materiality, and

scienter), and have resulted in CenturyLink paying tens of millions of dollars and agreeing

to drastically reform its business practices to resolve them. ████████████████████

███████████████████████████████████████████████████████████████████████

██████████████ they have still not agreed to provide any of the other information sought

by the interrogatory—including the ██████████████████████████████████████████

██████████████████████████.

Again adhering to the Court's direction to seek tailored discovery, Plaintiffs

proposed that Defendants run the search terms the parties agreed (following months of

negotiation) would target documents responsive to Plaintiffs' requests here, and use those terms to identify and produce relevant materials that had been produced in the state attorney general actions. Ex. W (M. Blatchley Feb. 3 Ltr.).  This approach is routinely used by parties and approved by courts as a way to avoid any concerns about "over-inclusive[ness].". *See* Ex. N (Oct. 1 Hr'g Tr.) at 75:13-76:4; *U.S. Bank Nat. Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, 2014 WL 6453787, at *3 (N.Y. Sup. Ct. Nov. 13, 2014) (ordering defendant to produce documents produced in other government investigations that hit upon agreed-upon search terms).

Defendants have responded by categorically asserting that key discovery that was produced in the related ████████████████████████████████████████ ████████████████████████████████████████████████████ must not be produced here, wrongfully contending that doing so would constitute "cloned discovery." Ex. X (Koch Feb. 14 Ltr.) at 2-3.  But Plaintiffs are not seeking cloned discovery at all—they are requesting only those documents identified by the very search terms the parties agreed would capture documents responsive to Plaintiffs' requests.

Defendants' refusal to produce this information took on heightened significance when Plaintiffs learned that CenturyLink ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████Contrary to those representations, CenturyLink ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████



In other words, just one day after the Court ordered an informal discovery conference, Defendants revealed ▮▮▮▮▮

heightens Plaintiffs' need for documents and information concerning ▮▮▮▮▮.

### C.   Defendants Should Be Required to Search CenturyLink's "Integrity Line" Using the Parties' Agreed-Upon Search Terms

Finally, despite its obvious relevance to a case that concerns allegations of fraudulent practices, violations of corporate commitments to integrity, and internal reporting of complaints, ▮▮▮▮▮

▮▮▮▮▮. *See, e.g.,* *CenturyLink*, 403 F. Supp. 3d at 720-21, 726-27.   Defendants' refusal to appropriately search this custodian is particularly surprising given that it sought to dismiss Plaintiffs' Complaint, in part, by attacking the former employees cited in Plaintiffs' Complaint on the basis that none of them reported the cramming they witnessed to the "internal hotline that

CenturyLink maintained for that purpose." ECF No. 156 at 5-6, 9. Although Defendants were incorrect as a factual matter—as the employees in fact made repeated internal reports about cramming, including through the tips line (¶¶97-98, 147)—their argument concedes the relevance of the "Integrity Line."

Nevertheless, —an approach that is inconsistent with how the parties have treated every other custodian and contradicts the Court's requirement for transparency and cooperation on search terms.

## ARGUMENT

Rule 26(b) of the Federal Rules of Civil Procedure "authorizes a broad and liberal scope of discovery." *Beseke v. Equifax Info. Servs.*, 2018 WL 6040016, at *3 (D. Minn. Oct. 18, 2018) (Menendez, M.J.); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Generally, any matter "relevant and reasonably calculated to lead to the discovery of admissible evidence" is discoverable. *Hofer*, 981 F.2d at 380; *see also Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013) ("Information is generally discoverable 'unless it is clear that the information sought has no bearing upon the subject matter of the action'").

Pursuant to Rule 26, parties may obtain discovery that is "relevant to any party's claim or defense and proportional to the needs of the case," considering, among other things, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, and importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1).

The burden is on the party resisting discovery to establish the discovery is not proportional. *See, e.g., Ad Astra Recovery Servs., Inc. v. Heath*, 2019 WL 2448569, at *4 (D. Kan. June 12, 2019). For obvious reasons, courts routinely find that reproduction of documents previously produced in parallel or related litigation is appropriate and proportional to the needs of the case where the subject matter of the cases overlap. *See In re Hardieplank Fiber Cement Siding Litig.*, 2014 WL 5654318, at *2-3 (D. Minn. Jan. 28, 2014) (Davis, J.). Specifically, "[m]aterials produced and deposition testimony given in other litigation is generally discoverable upon a showing of substantial similarity between the prior and current actions," and courts routinely order such production recognizing that doing so can "reduce the burden and expense of obtaining relevant information." *Costa v. Wright Medical Tech.*, 2019 WL 108884, at *1 (D. Mass. Jan. 4, 2019).

### A. Defendants Should Produce the Documents Responsive to the Requests in the Minnesota Attorney General's Third Motion to Compel

Defendants should be ordered to produce the narrow set of documents Defendants produced in response to the document requests at issue ████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████that directly bear on Plaintiffs' claims.

As set forth above, these documents are plainly responsive to Plaintiffs' requests. *See, e.g.,* Ex. F at Request Nos. 6-7, 28 (Pls.' Doc. Reqs.). Indeed, they constitute substantial evidence underlying the allegations cited in the Court's opinion. *See In re CenturyLink,* 403 F. Supp. 3d at 720-22, 731-32. They should be produced in this case.

Defendants' only argument is that this discovery is somehow off-limits because the Court declined to issue a "blanket" reproduction of the Minnesota Attorney General production at the initial pretrial conference. This is wrong. The particularized and narrow set of documents sought by Plaintiffs here constitute the core discovery that this Court recognized ***should*** be produced in this case—as they involve topics that both Plaintiffs and the Minnesota Attorney General requested. Ex. N (Oct. 1 Hr'g Tr.) at 8:18-20. Indeed, they are the kind of documents that even courts that have taken the most stringent view of "cloned" discovery have ordered produced—as they are responsive to nearly identical document requests at issue in both cases. *See, e.g., Munoz v. PHH Corp.,* 2013 WL 684388, at *5 (E.D. Cal. Feb. 22, 2013) (ordering production of documents related to specific requests in a related investigation, noting that "Defendants cannot have it both ways" and "on one hand resist Plaintiffs discovery as over broad, but simultaneously resist Plaintiffs' efforts to limit the scope of their request as unduly burdensome"); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 2017 WL 10775410, at *2 (S.D. Fla. Mar. 14, 2017) (ordering discovery where there was substantial relationship with government case).





In any event, even if true,



[5] This failure is hardly surprising given that Defendants themselves have argued

the opposite.[6]  Thus, ordering production of this plainly relevant limited set of documents

---

[5]

[6] For example, when Defendants sought to centralize the consumer and securities actions, they claimed they would involve the "same discovery," given that the "securities actions address the same predicate conduct as the consumer actions." J.P.M.L. MDL Action, ECF No. 27 at 4 (describing the "obvious overlap" with the securities case).  And when they sought to stay the Minnesota AG Action due to the consumer settlement in this MDL, Defendants described the Minnesota Attorney General's case as "*identical*" to the consumer cases.  *See* D. Minn. MDL Action, ECF No. 423 at 1 (emphasis in original).

would at least hold Defendants to their word.[7]

**B.   Defendants Should Provide Complete and Accurate Responses to Plaintiffs' Attorney General Interrogatory and Produce Highly Relevant Documents Identified by the Agreed-Upon Search Terms**

Although Plaintiffs have sought highly relevant discovery concerning ▮▮▮▮▮



Defendants have refused to provide basic information about these investigations.

Plaintiffs asked Defendants to ▮▮▮▮▮

Indeed, it was only in December 2019, when CenturyLink entered into several significant settlements with these same state attorneys general, that Plaintiffs began to obtain information about them. *See* Ex. C (Washington AG Press Release); Ex. AA (CenturyLink's Jan. 16, 2020 Form 8-K). As information released about those settlements

---

7 ▮▮▮▮▮

shows, those investigations concerned the very core underlying misconduct at the heart of Plaintiffs' claims. *See, e.g.,* Ex. C (CenturyLink "added additional charges to customer bills without accurately disclosing those fees"); Ex. A (CenturyLink "unfairly and deceptively charging hidden fees, falsely advertising guaranteed locked prices, and failing to provide discounts and refunds it promised"); Ex. BB ("deceptive billing practices, undisclosed fees, and failing to apply promised discounts to customer accounts"); Ex. B ("CenturyLink broke the law by fraudulently overbilling").

Thus, while Plaintiffs understand Defendants have participated in significant discovery in the attorney general actions—as it would appear implausible that CenturyLink would agree to pay tens of millions of dollars and change its business practices without an exchange of documents and other evidence— ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Plaintiffs are plainly entitled to this and the other information they seek, and Defendants have not meaningfully articulated any burden in providing it.

CenturyLink should also be required to produce those documents ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓. Defendants' sole basis for refusing to produce these documents is that doing so would somehow constitute "cloned" discovery. But applying the search terms negotiated in a case to the set of documents previously produced in another avoids concerns about potential overbreadth, as even the courts that prohibit "cloned" discovery recognize. *See, e.g., Merrill Lynch Mortg. Lending, Inc.,* 2014 WL 6453787, at *2-3; *Capital Ventures Intern. v. J.P. Morgan Mortg. Acquisition Corp.,* 2014 WL 1431124, at *2 (D. Mass. Apr.

14, 2014) (declining full productions from related investigations because Defendants would produce documents "agreed-upon search terms over their productions to the SEC and the New York Attorney General"); *Axcan Scandipharm Inc. v. Ethex Corp.*, 2008 WL 11349882, at *3-5 (D. Minn. Dec. 31, 2008) (noting one party's offer to run and produce search terms on prior production, with court ordering that documents produced in prior litigation responsive to requests in instant case be produced).

Adopting such an approach here would impose practically no burden at all, avoid any concerns about "over-inclusiveness," and streamline production of documents responsive to Plaintiffs' other requests.[8]

### C.   Defendants Should Be Required to Run and Produce Cramming Complaints Reported Through CenturyLink's "Integrity" Tips Line

In seeking to dismiss Plaintiffs' case on the (factually incorrect) ground that none of the former employees cited in Plaintiffs' Complaint reported CenturyLink's sales employee cramming to the Integrity Line, Defendants conceded the relevance ▮▮▮▮▮ ▮▮▮▮▮ Indeed, searching that email box will be critical to Plaintiffs' allegations that FE-7 reported cramming but the Company never addressed them (¶98) and FE-9's account



8

that he/she repeatedly "ding[ed]" and reported sales representatives for cramming but no action was ever taken.  ¶97.

Recognizing that their repeated refusal to collect documents from this custodian lacked merit,



This unilateral approach to discovery is all the more concerning given that Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and specifically those who reported that sales quotas were "ridiculous" and "impossible to hit unless you were engaged in shady practices" (¶73), were terminated for failing to meet sales quotas after being named to CenturyLink's Circle of Excellence, (¶71), and discussed how the sales culture at CenturyLink was "totally toxic" because "CenturyLink only cared about profits." ¶80.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request the Court order that

---

9

Defendants (i) produce the documents previously produced to the Minnesota Attorney General in response to the requests at issue in the third motion to compel, (ii) supplement and provide complete and accurate information in response to Plaintiffs' Interrogatory No. 2, (iii) run the parties' agreed-upon search terms on the documents Defendants produced to other state attorneys general, (iv) require Defendants to conduct a search of CenturyLink's "Integrity Line" as set forth above, and (v) grant such other relief as the Court may deem just and proper.

DATED:     February 25, 2020          **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Michael D. Blatchley*
Michael D. Blatchley, NYS Bar No. 4747424
Michael M. Mathai, NYS Bar No. 5166319
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
michaelb@blbglaw.com
michael.mathai@blbglaw.com

Keith S. Dubanevich, OSB No. 975200
Timothy S. DeJong, OSB No. 940662
Keil M. Mueller, OSB No. 085535
Lydia Anderson-Dana, OSB No. 166167
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kdubanevich@stollberne.com
tdejong@stollberne.com
kmueller@stollberne.com

*Special Assistant Attorneys General and Counsel for Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund, Counsel to Plaintiff Fernando Alberto Vildosola, as trustee for the AUFV Trust U/A/D 02/19/2009, and Lead Counsel for the Class*

Gregg M. Fishbein, MN No. 202009
Kate M. Baxter-Kauf, MN No. 392037
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4044
Facsimile: (612) 339-0981
gmfishbein@locklaw.com
kmbaxter-kauf@locklaw.com

*Liaison Counsel for Lead Plaintiff the State of Oregon by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board, on behalf of the Oregon Public Employee Retirement Fund and Plaintiff Fernando Alberto Vildosola, as trustee for the AUFV Trust U/A/D 02/19/2009*

23