# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION**<br><br>This Document Relates to:<br>17-2832, 17-4613, 17-4614, 17-4615, 17-4616, 17-4617, 17-4618, 17-4619, 17-4622, 17-4943, 17-4944, 17-4945, 17-4947, 17-5001, 17-5046, 18-1573, 18-1572, 18-1565, 18-1562 | **MDL No. 17-2795 (MJD/KMM)**<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOVANTS' MOTION TO INTERVENE, COMPEL ARBITRATION, AND STAY PROCEEDINGS** |

Plaintiffs respond with their opposition to the Motion to Intervene, Compel Arbitration, and Stay Proceedings, and related papers (ECF Nos. 596 to 608, "Motion"), filed by Keller Lenkner law firm on behalf of Movants Keisha Covington, Daniel Sokey, Tiffany Van Riper, James Watkins, Jaclyn Finafrock, and Kelly Johnson's ("Movants"). Based upon the arguments set out below, Plaintiffs respectfully ask that the Court deny Movants' motion in its entirety

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ii

I.      INTRODUCTION ...........................................................................................1

II.     WHILE MOVANTS COULD OPT OUT OF THE CLASS AT ANY POINT AND
        BE RELIEVED OF ALL SETTLEMENT TERMS, INCLUDING THE
        INJUNCTION, MOVANTS HAVE INSTEAD—AND INEXPLICABLY—
        CHOSEN TO REMAIN IN THE SETTLEMENT. ...........................................3

III.    THE COURT SHOULD NOT ALLOW MOVANTS TO INTERVENE ...................4

        A.  THE TEMPORARY INJUNCTION BARS INTERVENTION AT THIS TIME. ......................5

        B.  THE MOVANTS HAVE NOT MET THEIR BURDEN TO SHOW THEY ARE
            ENTITLED TO INTERVENE BY RIGHT OR PERMISSION. ...............................................8

            1.  The Movants' Attempt to Intervene is Untimely. ................................9

            2.  Intervention By Right Is Improper Because Movants' Interests Are
                Adequately Protected. .........................................................................12

            3.  Permissive Intervention is Inappropriate Because It Would
                Needlessly Delay Justice and Prejudice 17.2 Million People's
                Rights...................................................................................................15

IV.     ANY STAY GRANTED UNDER FAA § 3 SHOULD ONLY PERTAIN TO
        DISPUTES BETWEEN CENTURYLINK AND MOVANTS ...............................16

V.      CONCLUSION .............................................................................................20

# TABLE OF AUTHORITIES

## Cases

*ACLU of Minn. v. Tarek Ibn Ziyad Acad.*,
643 F.3d 1088 (8th Cir. 2011) .................................................................. 9, 10

*AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
242 F.3d 777 (8th Cir. 2001) ............................................................ 17, 18, 19

*Air Line Pilots Assoc. v. Miller*,
523 U.S. 866 (1998) ....................................................................................... 18

*Alaniz v. California Processors, Inc.*,
73 F.R.D. 269 (N.D. Cal. 1976) .................................................................... 13

*Bernhardt v. Polygraphic Co. of America*,
350 U.S. 198 (1956) ....................................................................................... 17

*Busch v. Bluestem Brands, Inc.*,
No. 16-cv-0644 WMW/HB, 2019 WL 1976147 (D. Minn. May 3, 2019) ...................... 6

*Bush v. Viterna*,
740 F.2d 350 (5th Cir. 1984) ........................................................................ 15

*Davis v. J.P. Morgan Chase & Co.*,
775 F. Supp. 2d 601 (W.D.N.Y. 2011) .......................................................... 14

*Dean Witter Reynolds Inc. v. Byr*d,
470 U.S. 213 (1985) ....................................................................................... 18

*DSMC, Inc. v. Convera Corp.*,
273 F. Supp. 2d 14 (D.D.C 2002) .................................................................. 20

*EEOC v. Westinghouse Elec. Corp.*,
675 F.2d 164 (8th Cir. 1982) ........................................................................ 10

*Farinella v. PayPal, Inc.*,
611 F.Supp.2d 250 (E.D.N.Y. 2009) .................................................. 12, 14, 16

*Fath v. Am. Honda Motor Co., Inc.*,
No. 18-cv-1549 NEB/LIB, 2019 WL 6799796 (D. Minn. Dec. 13, 2019) ...................... 6

*FTC v. Johnson,*
    800 F.3d 448 (8th Cir. 2015) .......................................................................... 12

*Grilli v. Metropolitan Life Ins. Co., Inc.,*
    78 F.3d 1533 (11th Cir. 1996) ....................................................................... 14

*In re: Diet Drugs Prods. Liab. Litig.,*
    282 F.3d 220 (3d Cir. 2002) ............................................................................ 5

*In re: Hops Antitrust Litig.,*
    655 F.Supp. 169 (E.D. Mo. 1987) ................................................................. 18

*In re: Nissan Motor Corp. Antitrust Litig.,*
    552 F.2d 1088 (5th Cir. 1977) ....................................................................... 20

*In re: Painewebber Ltd. P'ships Litig.,*
    No. 94-cv-8549, 1996 WL 374162 (S.D.N.Y. July 1, 1996 ) .......................... 5

*In re: Pet Food Products Liability Litig.,*
    629 F.3d 333 (3d Cir. 2010) .......................................................................... 13

*In re: Piper Funds, Inc. Institutional Gov't Income Portfolio Litig.,*
    71 F.3d 298 (8th Cir. 1995) ................................................................. 2, 6, 7, 8

*In re: Uponor, Inc. F1807 Plumbing Fittings Prod. Liab. Litig.,*
    No. 11-md-2247, 2012 WL 13065005 (D. Minn. Jan. 19, 2012) ..................... 5

*In re: Warfarin Sodium Antitrust Litig.,*
    212 F.R.D. 231 (D. Del. 2002) ...................................................................... 14

*In re: Wholesale Grocery Prods. Antitrust Litig.,*
    849 F.3d 761 (8th Cir. 2017) ........................................................................... 9

*In re: Zurn Pex Plumbing Liab. Litig.,*
    No. 08-md-1958 ADM/AJB, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) .............. 5, 6

*Klay v. Pacificare Health Sys., Inc.,*
    389 F.3d 1191 (11th Cir. 2004) ..................................................................... 19

*Landis v. North American Co.,*
    299 U.S. 248 (1936) ...................................................................................... 18

*Little Rock School Dist. v. North Little Rock School Dist.*,
    378 F.3d 774 (8th Cir. 2004) .................................................................. 13

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995) ................................................................................. 17

*Mille Lacs Band of Indians v. Minnesota*,
    989 F.2d 994 (8th Cir. 1993) .................................................................. 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) .......................................................................... 18, 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................... 18

*N. Dakota ex rel. Stenehjem v. U.S.*,
    787 F.3d 918 (8th Cir.2015) ................................................................... 12

*Planned Parenthood of the Heartland v. Heineman*,
    664 F.3d 716 (8th Cir. 2011) .................................................................... 9

*Reid v. Doe Run Res. Corp.*,
    701 F.3d 840 (8th Cir. 2012) ............................................................. 18, 19

*S.D. ex rel. Barnett v. U.S. Dep't of Interior*,
    317 F.3d 783 (8th Cir. 2003) ............................................................. 15, 16

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    542 F.3d 354 (2nd Cir. 2008) ................................................................. 19

*Stott v. Capital Fin. Servs. Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011).............................................................. 5

*United States Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) ................................................................... 16

*United States v. N.Y. Tel. Co.*,
    434 U.S. 159 (1977) ................................................................................. 6

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) .................................................................. 11, 15

*United States v. Ritchie Special Credit Invs. Ltd.,*
  620 F.3d 824 (8th Cir. 2010) ........................................................................ 9

*United Steelworkers v. Warrior & Gulf Navigation Co.,*
  363 U.S. 574 (1960) .................................................................................... 17

*Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.,*
  474 F.3d 966 (7th Cir. 2007) ...................................................................... 19

**Statutes**

28 U.S.C. §1651(a) ............................................................................................ 6
9 U.S.C. §1 ...................................................................................................... 17
9 U.S.C. §2 ...................................................................................................... 17
9 U.S.C. §3 ...................................................................................................... 17

**Rules**

Fed. R. Civ. P. 24(a)(2) ............................................................................. 9, 12
Fed. R. Civ. P. 24(b)(1)(B) ............................................................................ 15
Fed. R. Civ. P. 24(b)(3) .................................................................................. 15

## I.   INTRODUCTION

Movants ask this Court to delay the rights of 17.2 million people, so that six people—who refuse to opt-out of the Class Plaintiffs' Settlement—can both stay in the class while, at the same time, see if they can get a better deal in arbitration.  Movants must choose their forum.  They cannot "try out" two proceedings simultaneously to see where they fare better.

Further, Movants' approach would not provide for justice, equity, or efficiency in this MDL.  Movants are represented by one law firm, Keller Lenkner ("Keller"), that also purports to represent 22,000 additional class members and has been well-apprised of the developments in this litigation since early 2019.  But regardless of the volume of clients Keller purports to represent, they deliberately sat on the sidelines until after the settlement was preliminarily approved.  The Motion they bring now should be denied for at least four reasons.

First, in bringing their Motion, Movants argue that Plaintiffs have "actively attempted to thwart [Movants'] rights by proposing the anti-arbitration injunction[.]"  This is patently false.  Plaintiffs have actively protected Movants' alleged right to arbitrate.  The injunction issued by the Court only applies to "Releasing Parties" which, under the terms of the Settlement, are only those who are within the class and ***have not opted out.***  The Movants can opt-out of the Settlement at any time and be relieved from the constraints of the temporary injunction at any time. Plaintiffs' counsel and others repeatedly reminded Movants' counsel with that fact at the hearing, and yet Keller and its clients refuse to opt out.

Second, the Court has duly ordered a temporary injunction, which comports with the All Writs Act and the Eighth Circuit's *Piper Funds* decision, and which prevents intervention in this action until a Final Approval Order is entered. Thus, Movants are prohibited from intervening at this time. But again, while intervention is not permissible at this time, Movants are free to exclude themselves from the Settlement at any time, which adequately protects their right to arbitrate.

Third, Movants have failed to meet the "threshold" timeliness requirement for intervention, and in any event, intervention by right or permission is inappropriate here. This action is at an advanced stage—it is preliminarily settled—and Movants and their counsel had knowledge of their claimed right to arbitrate, the terms of the settlement, and the language of the injunction that issued well before the Preliminary Approval Hearing. Yet, Movants failed to object or even attend that hearing. Their belated entry into this litigation now would needlessly prejudice the rights of the other 17.2 million Class Members and risk the Settlement, which outweighs any self-inflicted prejudice caused by Movants' refusal to opt-out. But for Movants' strategic refusal to opt out of the Settlement, their claimed right to arbitrate is not impaired or impeded.

Fourth, any stay granted would have to be narrowly applied only to Movants and no one else. This is because the Plaintiff Class Representatives and Settlement Class Members have asserted and demonstrated that there is no binding arbitration agreement between them and CenturyLink. Thus, any stay under FAA § 3 cannot apply to them and could only pertain to the individual Movants' claims, if the Court determines they are arbitrable. The Court should deny Movants' Motion for at least these four reasons, as set forth in

2

greater detail below.

## II.    WHILE MOVANTS COULD OPT OUT OF THE CLASS AT ANY POINT AND BE RELIEVED OF ALL SETTLEMENT TERMS, INCLUDING THE INJUNCTION, MOVANTS HAVE INSTEAD—AND INEXPLICABLY— CHOSEN TO REMAIN IN THE SETTLEMENT.

In arguing that Plaintiffs have not protected their right to arbitrate, Movants ignore the fact that the Preliminary Approval Order[1] affords Movants the ability to opt-out of the Settlement and the temporary injunction at any time.  According to the Order, "Settlement Class Members may elect to not be part of the Class and to not be bound by this Settlement Agreement."  ECF No. 528 at ¶ 6.  This provision provides Movants an easy way to immediately avoid any strategic decisions made by Court-appointed co-lead counsel on behalf of all plaintiffs in the MDL. Movants may simply opt-out and exclude themselves.

Despite the clear language of the Preliminary Approval Order, Movants' have chosen to interpret this provision as requiring that the injunction first be lifted before Movants may proceed to arbitration.[2]  However, there is no requirement that the injunction first be lifted.  As ordered, the injunction only applies to "Releasing Parties":

Pending the Final Approval Hearing and issuance of the Final Approval Order and Final Judgment, *Releasing Parties* are hereby enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as

---

[1] Capitalized terms in this Response, unless otherwise defined, have the same definitions as those terms as used in the Preliminary Approval Order (ECF No. 528) and the "Settlement Agreement and Release" (ECF No. 469-1).

[2] At the February 20, 2020, hearing before the Court on "Movants Edwin Miller, Vonita Taylor, and Patrick West's Motion for Stay Pending Appeal" (Dkt. No. 554)" Keller indicated that "movants had to file very quickly to attack the injunction. I think, I expect, that when we talk to them and say if the injunction is lifted you can go forward with arbitration, they will opt out." Mot. Hr'g Tr., dated Feb. 20, 2020, at 31:11-15, attached as Exhibit A to Declaration of Brian Gudmundson.

> class members or otherwise), or receiving any benefits from any class action or other lawsuit, arbitration, or administrative, regulatory, or other proceeding in any jurisdiction based on or relating to the Released Claims.

ECF No. 528, at ¶ 10 (emphasis added). "Releasing Parties" are defined as "[t]he Settlement Class Representatives, all Settlement Class Members, and their respective heirs, executors, administrators, representatives, agents, lawyers, partners, successors, and assigns." ECF No. 469-1 at ¶ 1.35. "Settlement Class Members" are "[a]ll persons or entities who fall within the Settlement Class." *Id.* at ¶ 1.41. "***Excluded from the [Settlement Class] are . . . persons who timely and validly request exclusion from the Settlement Class.***" *Id.* at ¶1.39 (emphasis added).

Under the plain language of the Preliminary Approval Order and Settlement Agreement, once Movants request to exclude themselves from the Settlement Class, they are no longer "Settlement Class Members" or "Releasing Parties" and are no longer enjoined from pursuing their claims. That means the Movants can opt out of the Settlement right now and pursue their claims. It also means that any alleged prejudice the Movants contend the Settlement inflicts on them is the direct result of their own inaction, not any failure of Plaintiffs or Settlement Class Counsel to protect Movants' rights.

## III.   THE COURT SHOULD NOT ALLOW MOVANTS TO INTERVENE.

Movants contend they "easily satisfy the invention standard under Rule 24," but they ignore three important reasons for disallowing intervention here. ***First***, Movants are temporarily enjoined from intervening in this action until they exclude themselves from the Settlement or a Final Approval Order issues. ***Second***, the Movants have known about this litigation for months, they strategically decided to wait to intervene, and that decision

has prejudiced the Settlement Class Members. These facts cause Movants to fail the threshold test of timeliness required for both rightful and permissive intervention. ***Third***, intervention by right is improper here because the Movants' interests as Settlement Class Members are adequately represented by Settlement Class Counsel and the Movants' interests are not impaired; they are free to exclude themselves from the Settlement and injunction at any time. ***Fourth***, permissive intervention is also inappropriate because, if Movants' requested relief was granted, intervention will indefinitely delay resolution of the other 17.2 million Settlement Class Members' rights and prejudice them in the process.

## A.   THE TEMPORARY INJUNCTION BARS INTERVENTION AT THIS TIME.

The Court should deny the Motion because it already issued a temporary injunction under the All Writs Act and related authority[3] that prohibits intervention now. The All

---

[3] District courts may use their authority under the All Writs Act to enjoin parallel, and potentially detrimental, proceedings because "an extensive body of federal caselaw recognizes that complex, multidistrict litigation like this one implicates special considerations under the All Writs Act [where] 'it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.'" *In re: Uponor, Inc. F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-md-2247, 2012 WL 13065005, at *10 n.2 (D. Minn. Jan. 19, 2012) (quoting *In re: Diet Drugs Prods. Liab. Litig.,* 282 F.3d 220, 236 (3d Cir. 2002)). This authority includes enjoining parallel arbitrations. *See In re: Zurn Pex Plumbing Liab. Litig.*, No. 08-md-1958 ADM/AJB, 2012 WL 5055810, at *12 (D. Minn. Oct. 18, 2012) ("Federal courts' broad authority under the All Writs Act encompasses the power to enjoin both subsequent and parallel arbitration proceedings."); *In re: Painewebber Ltd. P'ships Litig.*, No. 94-cv-8549, 1996 WL 374162, at *4 (S.D.N.Y. July 1, 1996 ) ("it would be incongruous if the Court had the authority to stay pending litigation, but not to enjoin arbitration, 'in aid of its jurisdiction' even before judgment is entered."); *Stott v. Capital Fin. Servs. Inc.,* 277 F.R.D. 316, 341 (N.D. Tex. 2011) ("The Court is well aware of oft-noted 'federal policy favoring arbitration,' . . . nonetheless, the Court would feel very uncomfortable endorsing a legal structure . . . [that] abridges one's constitutional right to a jury trial, but renders a court powerless to abridge one's contractual right to arbitration under the exact same circumstances.")

Writs Act ("AWA") authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. §1651(a).  In the class action context, the AWA empowers district courts to "control conduct by absent class members that affects management or disposition of the class." *In re: Piper Funds, Inc. Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 300 n.2 (8th Cir. 1995).  The AWA extends a court's authority "to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompass those who have not taken any affirmative action to hinder justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977).

The Preliminary Approval Order issued by the Court in this action temporarily enjoined putative Settlement Class Members from "filing," "commencing," and "intervening" in "any class action or other lawsuit, arbitration, or administrative, regulatory, or other proceeding in any jurisdiction based on or relating to the Released Claims." ECF No. 528, at ¶ 10.  The Court found this injunction "necessary and appropriate in aid of the Court's jurisdiction over this action."  *Id.*[4]  Some of Keller's other clients recently appealed the Preliminary Approval Order based on that injunction and filed a

---

[4] Courts in this Circuit regularly enjoin class members from arbitrating the claims resolved in a pending settlement.  *In re: Zurn Pex Plumbing*, 2012 WL 5055810 at *12; *see also Busch v. Bluestem Brands, Inc.*, No. 16-cv-0644 WMW/HB, 2019 WL 1976147, at *3 (D. Minn. May 3, 2019) (enjoining arbitration in a preliminary approval order); *Fath v. Am. Honda Motor Co., Inc.*, No. 18-cv-1549 NEB/LIB, 2019 WL 6799796, at *9 (D. Minn. Dec. 13, 2019) (preliminary approval order enjoying arbitration).

motion to stay with this Court testing its propriety.  *See* ECF No. 554.  The Court denied

that motion, finding that the injunction "did not run afoul of the Eighth Circuit's holding

in *Piper Funds*, and that Movants are unlikely to succeed on their claim on appeal that the

Court's preliminary injunction violated the FAA." ECF No. 569 at 18 (the "Order"). This

Court held that "*Piper Funds* does not stand for the proposition that a settlement class

member cannot be temporarily enjoined from arbitration during the notice and opt-out

period." *Id.* at 18.  It found that *Piper Funds* only prohibited such injunctions when a class

member is represented by separate counsel, had an immediate right to arbitrate, had

submitted a claim with an arbitrator, and had sought to irrevocably opt out of the settlement.

*Id.* at 18-20 (citing *In re: Piper Funds,* 71 F.3d at 302-4).

Just as was the case with Keller's first group of motion-filing clients Edwin Miller,

Vonita Taylor, and Patrick West, the new Movants here have not provided evidence to

bring them within the rule of *Piper Funds.* **First**, five of the six Movants (Daniel Sokey,

Tiffany Van Riper, James Watkins, Jaclyn Finafrock, and Kelly Johnson) have failed to

show an immediate right to arbitrate. These five Movants indicate that they have an

agreement to arbitrate with CenturyLink by citing to Exhibit 1 to the Motion, which appears

to be a CenturyLink agreement that is dated September 18, 2019.  *See* Dkt. 599-1

(indicating at the bottom left of each page that it is "V52.091819"[5] of the "CenturyLink®

High-Speed Internet Subscriber Agreement") (the "Agreement").  However, each of these

---

[5] Based on Plaintiffs' prior briefing in the Motion to Compel Arbitration, the last six digits
of the version number indicates the date that particular version of the Agreement was rolled
out to its users.

five Movants terminated service with CenturyLink before the date this Agreement came into existence (*see* ECF Nos.601-605, ¶ 3), so there has been no showing of an immediate right to arbitrate. **Second**, two of the six Movants (Jaclyn Finafrock and Kelly Johnson) have failed to submit a claim with an arbitrator. *See* Movants' Memorandum of Law in Support of the Motion, at 3 (ECF No. 598, "Movants' Mem."). **Third**, none of the Movants have irrevocably opted out of the Settlement, despite their ability to do so now under the terms of the Settlement. They simply refuse to do it.

The Movants are enjoined from intervening in this action right now, and the injunction barring intervention comports with the All Writs Act, *Piper Funds*, and other relevant authority. The Court should deny the Motion for these reasons. Notably, denying the Motion will not negatively impact the Movants' rights, because they can opt-out from the Settlement and injunction right now and proceed as they wish. *See, infra,* Section III.B.2.

### B. THE MOVANTS HAVE FAILED TO MEET THEIR BURDEN TO SHOW THEY ARE ENTITLED TO INTERVENE BY RIGHT OR PERMISSION.

In addition to being barred from intervening, the facts of this case favor rejecting Movants' belated attempt to intervene by right or permission. At the outset: (1) Movants' attempt to intervene is untimely, which is fatal to their Motion, (2) intervention by right is improper because Movants' arbitration rights are protected, not impeded, and (3) permissive intervention is inappropriate due to the delay and prejudice that would befall the other 17.2 million Settlement Class Members.

## 1.     The Movants' Attempt to Intervene is Untimely.

The Motion is untimely.  Intervention under either Rule 24(a) or 24(b) must be timely.  *See Planned Parenthood of the Heartland v. Heineman*, 664 F.3d 716, 718 (8th Cir. 2011). Timeliness is a "threshold issue" determined by the Court prior to deciding whether mandatory or permissive intervention is proper. *See id.* (citation omitted).  The timeliness of a motion to intervene is determined from all circumstances and is within this Court's discretion. *Id.*; *see also United States v. Ritchie Special Credit Invs. Ltd.*, 620 F.3d 824, 831-32 (8th Cir. 2010) ("No ironclad rules govern this determination.") (citation omitted).  Courts apply several factors to determine timeliness: "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *In re: Wholesale Grocery Prods. Antitrust Litig.*, 849 F.3d 761, 767 (8th Cir. 2017) (*quoting ACLU of Minn. v. Tarek Ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011)). Each of these factors render Movants' bid to intervene untimely.

*First*, this litigation has progressed to an advanced stage—it is preliminarily settled. The case has been active since October 2017. *See* ECF No. 1.  In the two and a half years it has been pending, Plaintiffs have: conducted substantial discovery on the issue of arbitrability, including the briefing and arguing of several motions; fought multiple substantive motions, including motions to compel arbitration, to dismiss under Rule 12(b), and to intervene; engaged in hard fought mediation; and conducted substantial confirmatory discovery related to and leading to the Settlement Agreement. *See* ECF No.

9

468, at 5-10.  The stage of this action weighs against intervention.  *C.f., Tarek Ibn Ziyad Acad.*, 643 F.3d at 1094-95 (holding the district court did not abuse its discretion in finding a motion to intervene was untimely where, in addition to other factors, the original parties had engaged in significant motion practice, commenced written discovery, and had begun taking depositions).

*Second*, Movants and their counsel had knowledge of Movants' claimed right to arbitrate since early 2019 (*see* ECF Nos. 599-2 and 569, at 5), have been aware of the terms of the Settlement Agreement since August of 2019 (*see* ECF No. 569, at 6), and have known the exact language proposed for the injunction at issue since October of 2019 (*see* ECF No. 469-1).  Keller even knew the Preliminary Approval Hearing was set for January 20, 2020, and that an injunction enjoining arbitrations would likely issue at that hearing. *See* ECF No. 569, at 8-9.  Keller and Movants have long been aware of this action and its potential effects on their clients' rights. *C.f.*, *EEOC v. Westinghouse Elec. Corp.*, 675 F.2d 164, 165-66 (8th Cir. 1982) (holding the proposed intervenor had sufficient knowledge of pending action because the proposed intervenor was given notice of the existence of the action on several occasions).

*Third*, before now, Movants delayed and made no attempt to intervene "to ensure their statutory and contractual rights to arbitration are protected."  Movants Mem., at 5. Movants strategically declined to object to the Preliminary Approval Order. They failed to make an appearance at the January 22, 2020 hearing and they entirely neglected to identify the injunction as problematic to Settlement Class Counsel prior to the entry of the Preliminary Approval Order.  Movants proffer no explanation for their delay in seeking to

intervene or their failure to attend the Preliminary Approval Hearing to protect the rights of the Movants (or their other 22,000 clients). *See* Ex. A, at 6:2-9 (Keller providing no explanation for their absence at that hearing). Nor do Movants explain why they waited until six weeks after the Preliminary Approval Order and until Notice to the Class was underway to seek intervention.

*Fourth*, if the Court allowed the Movants to intervene now, that would undoubtedly prejudice the rights of 17.2 million other Settlement Class Members. For instance, the Movants' position that their claims are arbitrable directly contradicts the Plaintiffs' position that they are not. If the Court were to allow these allegations into the case now—after the immense discovery and briefing on exactly that issue—it would undoubtedly prejudice Plaintiffs and create risk for the Settlement. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 72 (2d Cir. 1994) ("jeopardizing a settlement agreement causes prejudice to the existing parties to a lawsuit.").

Additionally, the Settlement Administrator has already begun notice, including: publishing the Settlement Website; operating the toll-free telephone line, the email address, and P.O. Box for the Settlement; starting the Publication Notice Plan; providing Email Notice and Postcard Notice to former CenturyLink customers; and implementing the necessary steps to provide Bill Notice to current customers. *See* ECF No. 528, at 9-10. If intervention were allowed and Movants' goal of overturning the injunction in its entirety was realized, for instance, that would present the risk that Class Members were wrongly informed of their rights. *See* ECF No. 469-1, Exs. 2-6 (each of the Notice forms including language of the injunction). That could call into question the sufficiency of notice, which

11

raises the specter of a costly supplemental notice. A stay of the case would indefinitely extend the time that the Settlement Administrator would be engaged, which would also dramatically increase administration costs and risk the Settlement. *Id.*

If Movants had attempted to intervene before the Preliminary Approval Hearing, these risks could have been avoided. Although the Movants' belated attempt to intervene creates risk for the Settlement Class Members, there is conversely no prejudice to the Movants if their Motion was denied. *See, e.g., Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250, 258 (E.D.N.Y. 2009) (movant "is not prejudiced because she had the opportunity to opt out of the litigation and pursue her own claim against the defendants"). For these reasons, the Court should deem intervention untimely, which is within its sound discretion.

### 2. Intervention By Right Is Improper Because Movants' Interests Are Adequately Protected.

Movants are not entitled to intervene of right because Plaintiffs have adequately represented Movants' interests, including their right to exclude themselves from the Settlement and temporary injunction, and the Movants can opt-out at any time. A party is only permitted to intervene as a matter of right in an action if it demonstrates "that it: (1) has a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties." *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015) (*quoting N. Dakota ex rel. Stenehjem v. U.S.*, 787 F.3d 918, 921 (8th Cir.2015)); *see also* Fed. R. Civ. P. 24(a)(2).

***First***, Plaintiffs have adequately represented the Movants' interests in this action. *See Mille Lacs Band of Indians v. Minnesota*, 989 F.2d 994, 1000 (8th Cir. 1993)

(recognizing that the intervenor bears a heavier burden on this factor when a party already in the suit has an obligation to represent the interests of the party seeking to intervene); *see also In re: Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) (presumption that class members' interests are adequately represented by the settling plaintiffs and their counsel, and the burden is on the proposed intervenors to rebut that presumption); *see also Little Rock School Dist. v. N. Little Rock School Dist.*, 378 F.3d 774, 780 (8th Cir. 2004) ("It is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests.").

As noted in Section II, *supra*, Plaintiffs and Settlement Class Counsel specifically preserved and protected the Movants' alleged right to arbitrate by providing a straightforward means for them to opt out of the Settlement and pursue their claims without being affected by any decisions made by the Settlement Class Counsel.  The plain terms of the Preliminary Approval Order and Settlement Agreement provide that once the Movants request to exclude themselves from the Settlement Class, they are no longer "Settlement Class Members" or "Releasing Parties" and may freely pursue their claims.  In other words, Plaintiffs specifically protected the rights of persons like Movants who have decided they do not want to accept the Settlement and want to pursue their claims individually.  *See Alaniz v. Cal. Processors, Inc.*, 73 F.R.D. 269, 277 (N.D. Cal. 1976) (an "'opt-out' procedure . . . insures the adequacy of representation of the class interests by the named plaintiffs").

**Second**, Movants have certainly not "prove[n] beyond any doubt that the current proceedings may 'impair or impede' Movants' contractual right to arbitrate their claims."

13

Movants' Mem., at 7.  At the outset, Movants Daniel Sokey, Tiffany Van Riper, James Watkins, Jaclyn Finafrock, and Kelly Johnson have not demonstrated that an agreement to arbitrate exists between them and CenturyLink in the first place.  *See*, *supra*, Section III.A. Moreover, Movants' arbitration rights are not impaired—all they must do is opt-out.  *See, e.g., Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536-38 (11th Cir. 1996) (district court did not abuse discretion in denying motion to intervene, based on court's conclusions that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and, if they thought the proposed settlement was unfair, by objecting to it); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 605-06 (W.D.N.Y. 2011) ("the proposed intervenors' interests in this action can be fully protected at the fairness hearing" and "any class members who do not want to be bound by the settlement will be given an opportunity to opt out and pursue their own claims separately."); *Farinella*, 611 F. Supp. 2d at 258 (movant failed "to show that whatever interest she has would be impaired by the disposition of the action" because she had "the opportunity to opt out of the settlement if she wished to pursue her own claim"); *In re: Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 263-64 (D. Del. 2002) (denying motion to intervene, and noting that "the court provided every class member who did not opt out with the opportunity to present argument or evidence of the unfairness of the settlement in writing and/or orally at the fairness hearing").  For these reasons, the Court should not allow Movants to intervene as of right.

**3.**     **Permissive Intervention is Inappropriate Because It Would Needlessly Delay Justice and Prejudice 17.2 Million People's Rights.**

The Movants also wrongly contend they are entitled to permissive intervention under Rule 24(b).  The decision to grant or deny a motion for permissive intervention is wholly discretionary. *S.D. ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003) (citations omitted).  "Reversal of a decision denying permissive intervention is extremely rare, bordering on nonexistent." *Id.* (*citing Pitney Bowes, Inc.*, 25 F.3d at 73); *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (same); *see also* 7C Wright, Miller & Kane, Federal Practice and Procedure § 1923, at 515-16 (concluding that in light of the great deference given in this context, coupled with the scarcity of cases reversing a denial under Rule 24(b), "it would seem sounder to dismiss out of hand appeals from a denial of permissive intervention.").

Movants' argument here focuses exclusively on whether their claims share a "common question of law or fact" with this action under Fed. R. Civ. P. 24(b)(1)(B).  However, "[t]he principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *S.D. ex rel. Barnett*, 317 F.3d at 787; *see also* Fed. R. Civ. P. 24(b)(3) ("the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights").

Intervention here would certainly cause delay.  The Movants are asking that the entirety of the litigation be stayed pending their arbitrations with CenturyLink, which would take years. This delay is unjustified if the Court balances the interests of the six

Movants with those of the 17.2 million Settlement Class Members, especially in light of the fact that the Movants intend to remain Settlement Class Members and leave open the option of filing a claim in the Settlement while arbitration proceeds. *C.f., Farinella*, 611 F. Supp. 2d at 258 (existing parties would be prejudiced by intervention as it "delays the payment of compensation to eligible class members"). Moreover, the case is at an advanced stage, as noted in Section III.B.1, *supra*, and Movants' intervention now would cause prejudice. *See Tarek Ibn Ziyad Acad.*, 643 F.3d at 1095 ("when the discovery schedule is set, written discovery has commenced, and some depositions have been taken in a lawsuit, the addition of new parties often results in some prejudice to the existing parties").

Finally, "adequacy of representation is a relevant factor in permissive intervention analysis[.]" *S.D. ex rel. Barnett*, 317 F.3d at 787 (citing *United States Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)). As noted in Sections II and III.B.2, *supra*, the Plaintiffs and Settlement Class Counsel have adequately protected the Movants' ability to opt-out and pursue their claims in arbitration. The Movants should not be allowed to permissively intervene.

## IV.    ANY STAY GRANTED UNDER FAA § 3 SHOULD ONLY PERTAIN TO DISPUTES BETWEEN CENTURYLINK AND MOVANTS

Even if the Court allows the Movants to intervene, and it should not, the only disputes that should be stayed are those between the Movants and CenturyLink, not the entirety of the MDL. *See e.g.,* Movants' Mem., at 1 (asking the Court to "stay this proceeding," referring to the entirety of this MDL). This broad request for a stay of the

16

entire MDL is legally and factually unjustified. The MDL Plaintiffs, via Co-Lead Counsel, have specifically disputed any arbitration agreement exists between them and CenturyLink, and these parties have agreed to resolve this litigation in Court through the Settlement Agreement. Keller may not make an end run around the Court's order appointing Co-Lead Counsel, who are tasked with determining the litigation strategy of consumer plaintiffs in this MDL, so that it may impose its own preferred views.

Again, the MDL Plaintiffs to date have expended considerable resources fighting the notion that they are obligated to arbitrate and the Court has not determined the issue of whether their claims are "referable to arbitration," (9 U.S.C. §3). They cannot, therefore, be compelled to arbitration simply because Keller says so. In cases where arbitrable and non-arbitrable claims are co-pending in a single action, the FAA does not compel the Court to stay the non-arbitrable claims. That is because the stay provided in 9 U.S.C. §3 reaches only those disputes covered by §§ 1 and 2 of Arbitration Act (9 U.S.C. §§ 1 *et seq.*). *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 202 (1956). Notwithstanding the federal policy favoring it, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 782 (8th Cir. 2001) ("'[A]rbitration under the [Federal Arbitration] Act is a matter of consent, not coercion[.]'") (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)).

Where arbitrable and non-arbitrable claims exist in a single action, the decision to stay the non-arbitrable claims is not governed by the FAA.  It is soundly vested in the court's discretionary authority to control its docket. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983) (decision to stay litigation among the non-arbitrating parties "is one left to the district court . . . as a matter of its discretion to control its docket."); *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *AgGrow Oils, L.L.C.*, 242 F.3d at 782.

Courts generally proceed with non-arbitrable claims in their ordinary course even if other claims are sent to arbitration. *See, e.g., Dean Witter Reynolds Inc. v. Byr*d, 470 U.S. 213, 225 (1985) (J. White concurring) (stating that "the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course"); *Air Line Pilots Assoc. v. Miller*, 523 U.S. 866, 879-80 (1998) (holding that a union must proceed in federal court against union objectors who were not bound to arbitrate and in arbitration with those objectors that were); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 620 and n.7 (1985) (noting the district court retained jurisdiction over some claims while requiring arbitration of other claims); *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 845-48 (8th Cir. 2012) (district court properly denied mandatory stay of non-arbitrable claims under 9 USC § 3); *In re: Hops Antitrust Litig.*, 655 F. Supp. 169, 173 (E.D. Mo. 1987) ("the fact that the proceedings may be complex when arbitration and litigation are pursued contemporaneously is not alone a sufficient basis on which to require arbitration

of all disputes") (citing *Byrd,* 470 U.S. at 221 and *Mitsubishi Motors Corp.*, 473 U.S. at 620 n.7); *see also Klay v. Pacificare Health Sys., Inc.*, 389 F.3d 1191, 1203-04 (11th Cir. 2004); *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.,* 474 F.3d 966, 971-72 (7th Cir. 2007); *Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 681 (5th Cir. 1976); *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 363 (2nd Cir. 2008).

In deciding whether to grant a discretionary stay pending arbitration, courts in this Circuit consider "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays." *AgGrow Oils, L.L.C.*, 242 F.3d at 783; *Reid*, 701 F.3d at 845 (citing "*AgGrow* factors"). **First**, the risk of inconsistent rulings is minimal because if Movants opted out and were allowed to proceed to arbitration, any substantive rulings there would have no precedential value in a court of law. **Second**, the MDL Plaintiffs could not be bound by any arbitrator's decision because Movants here assert entitlement to an arbitration provision that contains a waiver of class action or representative claims. According to Movants, only they will be bound by any arbitrator's rulings. *See* ECF No. 599-1, ¶ 17(b)). **Third**, the delay caused by a stay of the entire MDL proceedings would greatly prejudice the Settlement Class Members. *See*, *supra*, Sections III.B.1 and III.B.3 (detailing the prejudice to Settlement Class Members).

A discretionary stay is not warranted under the facts of this case. As one court aptly observed:

> [J]udicial economy will not be served by granting a stay. It is unclear how long the arbitration proceeding will take to complete. Postponing the resolution of the issues raised in this case for some indefinite time does not

> comport with the efficient and timely judicial resolution of matters before the federal courts. Allowing a case to languish for years on this [c]ourt's docket would not serve the interest of this [c]ourt or the parties involved."

*DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 31 (D.D.C 2002). Although not explicitly a factor in deciding whether to institute a discretionary stay, there are also practical considerations that should inform the decision in this case. Particularly, the Movants' motives in seeking a stay of the entire litigation should be scrutinized. In seeking this stay, the Movants appear to seek the benefit of both worlds. They want both the right to arbitrate their claims and the right to fall back on the Settlement should their venture fail. This type of hedging is improper, especially when it puts the rights of 17.2 million Settlement Class Members at risk. *See, e.g., In re: Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977) (emphasizing the need to "preclude[] class members from delaying their decisions about whether to join the action until the case reaches judgment" because "[s]uch 'sideline sitting' would enable them to receive the benefits of a judgment in their favor and to avoid the res judicata effect of a decision against interests.") (citations omitted). That concern is magnified here because Keller purports to represent over 22,000 Class Members and has already submitted over 1,000 claims in arbitration. ECF No. 599-4, at 1. The Court should not impose a discretionary stay in these circumstances.

## V.   CONCLUSION

For the foregoing reasons, the Court should deny the Movants' Motion to Intervene, Motion to Compel Arbitration, and Motion to Stay Proceedings in its entirety.

Dated: March 27, 2020

Respectfully submitted,

*s/ Brian C. Gudmundson*
**ZIMMERMAN REED LLP**
Carolyn G. Anderson (MN 275712)
Brian C. Gudmundson (MN 336695)
Bryce D. Riddle (MN 398019)
Michael J. Laird (MN 398436)
1100 IDS Center,
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 641-0844
carolyn.anderson@zimmreed.com
brian.gudmundson@zimmreed.com
bryce.riddle@zimmreed.com
michael.laird@zimmreed.com

**ZIMMERMAN REED LLP**
Hart L. Robinovitch
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
Telephone: (480) 348-6400
Facsimile: (480) 348-6415
hart.robinovitch@zimmreed.com

*Plaintiffs' Interim Co- Lead and Liaison Counsel*

**O'MARA LAW GROUP**
Mark M. O'Mara
Alyssa J. Flood
Caitlin H. Reese
221 NE Ivanhoe Blvd., Suite 200
Orlando, FL 32804
Telephone: (407) 898-5151
Facsimile: (407) 898-2468
mark@omaralawgroup.com
alyssa@omaralawgroup.com
caitlin@omaralawgroup.com

**GERAGOS & GERAGOS, APC**
Mark J. Geragos
Benjamin J. Meiselas
Historic Engine Co.  No.  28
644 South Figueroa Street
Los Angeles, CA 90017-3411
Telephone: (231) 625-3900
Facsimile: (231) 232-3255
mark@geragos.com
meiselas@geragos.com

*Plaintiffs' Interim Co-Lead Counsel*

**GUSTAFSON GLUEK PLLC**
Daniel C. Hedlund (#258337)
Michelle J. Lobby (#388166)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@ gustafsongluek.com

*Plaintiffs' Executive Committee Chair*

**HENINGER GARRISON DAVIS, LLC**
James F. McDonough, III
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Telephone: (404) 996-0869
Facsimile: (205) 326-3332
jmcdonough@hgdlawfirm.com

**HELLMUTH & JOHNSON, PLLC**
Richard M. Hagstrom (MN 039445)
Anne T. Regan (MN 333852)
Nicholas S. Kuhlmann (MN 33750)
Jason Raether (MN 394857)
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Facsimile: (952) 941-2337

rhagstrom@hjlawfirm.com
aregan@hjlawfirm.com
nkuhlmann@hjlawfirm.com
jraether@hjlawfirm.com

**ROXANNE CONLIN & ASSOCIATES, PC**
Roxanne Barton Conlin
3721 S.W 61st St.
Des Moines, Iowa, 50321
Telephone: (515) 283-1111
roxlaw@aol.com

**HENINGER GARRISON DAVIS, LLC**
Francois M.  Blaudeau
W. Lewis Garrison, Jr.
Christopher B.  Hood
2224 1st Ave North
Birmingham, AL 35203
Telephone: (205) 326-3336
Facsimile: (205) 380-0145
francois@southernmedlaw.com
lewis@hgdlawfirm.com
chood@hgdlawfirm.com

*Plaintiffs' Executive Committee*

**HODGE & LANGLEY LAW FIRM, P.C.**
T. Ryan Langley
229 Magnolia St.
Spartanburg, SC 29306
Telephone: (864) 585-3873
Facsimile: (864) 585-6485
rlangley@hodgelawfirm.com

**FERNALD LAW GROUP LLP**
Brandon C. Fernald
6236 Laredo Street
Las Vegas, NV 89146
Telephone: (702) 410-7500
Facsimile: (702) 410-7520
brandon.fernald@fernaldlawgroup.com

**OLSEN DAINES PC**
Michael Fuller, OSB No.  09357
Olsen Daines PC
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
Telephone: (503) 201-4570
michael@underdoglawyer.com

**WALSH PLLC**
Bonner C. Walsh
PO Box 7
Bly, OR 97622
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

**ATTORNEY ALFRED M.  SANCHEZ**
Alfred M. Sanchez
400 Gold Ave.  SW, #240
Albuquerque, NM 87102
Telephone: (505) 242-1979
lawyeralfredsanchez@gmail.com

**GARDY & NOTIS, LLP**
Orin Kurtz
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Fax: (212) 905-0508
okurtz@gardylaw.com

*Counsel for Plaintiffs and the Proposed Class*