UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **In re: CenturyLink Sales Practices and Securities Litigation**<br><br>This document relates to ALL ACTIONS, including:<br><br>17-2832, 17-4613, 17-4614, 17-4615, 17-4616, 17-4617, 17-4618, 17-4619, 17-4622, 17-4943, 17-4944, 17-4945, 17-4947, 17-5046, 18-1562, 18-1572, 18-1565, 18-1573 | Case No. 0:17-md-02795-MJD-KMM |

**MOVANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE, COMPEL ARBITRATION,
AND STAY PROCEEDINGS**

## TABLE OF CONTENTS

I.   Movants' Motion to Intervene Should Be Granted ................................................ 1

    A.   The Preliminary-Approval Order Does Not Enjoin Movants From Intervening In This Case ............................................................................ 1

    B.   The Motion To Intervene Is Timely ........................................................ 2

    C.   The Plaintiffs Do Not Adequately Represent Movants' Interests ............ 3

    D.   Permissive Intervention Is Appropriate .................................................. 4

II.   Movants' Motion To Compel Arbitration Should Be Granted .............................. 5

    A.   Movants Followed Their Contracts With CenturyLink To The Letter And Never Breached Any Provision In The Agreement ............... 5

        1.   The Contract Does Not Require Movants To Present CenturyLink With Anything Beyond A "Written Notice" Of The "Claim Or Dispute" ..................................................... 8

        2.   Movants Have Not Pursued Their Claims On A "Consolidated" Basis ....................................................................... 9

        3.   A Party To A Contract Does Not Act In "Bad Faith" By Attempting To Resolve A Dispute ................................... 11

        4.   CenturyLink Has No Right To Have Movants' Claims Heard In Small-Claims Court ................................................ 13

        5.   It Is Impossible For Ms. Finafrock and Ms. Johnson To Have "Breached" The Contract When They Have Not Filed An Arbitration Demand ........................................... 14

    B.   It Is For The Arbitrator And Not This Court To Decide Whether Movants "Breached" The Agreement And Whether CenturyLink May "Revoke" The Arbitration Clause ................................................. 16

    C.   Colorado Law Does Not Permit The Defendants To Revoke The Arbitration Clause In Response To Movants Alleged "Breach" ............. 18

    D.   The Court Has No Authority To Deny The Motion To Compel Without Prejudice .................................................................................. 19

III.   The Motion To Stay Proceedings Should Be Granted .......................................... 20

Conclusion ............................................................................................................ 21

# TABLE OF AUTHORITIES

**CASES** PAGE(s)

*Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
  272 F.R.D. 26 (D.D.C. 2010) .................................................................. 4

*Buchet v. ITT Consumer Fin. Corp.*,
  845 F. Supp. 684 (D. Minn.), *amended,* 858 F. Supp. 944 (D. Minn.
  1994) ....................................................................................................... 4

*Bushley v. Credit Suisse First Bos.*,
  360 F.3d 1149 (9th Cir. 2004) ............................................................. 19

*Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*,
  861 P.2d 711 (Colo. 1993) ............................................................. 9, 12

*Clementi v. Nationwide Mut. Fire Ins. Co.*,
  16 P.3d 223 (Colo. 2001) ...................................................................... 9

*Coors v. Sec. Life of Denver Ins. Co.*,
  112 P.3d 59 (Colo. 2005) ..................................................................... 18

*Cullan & Cullan LLC v. M-Qube, Inc.*,
  No. 8:13CV172, 2014 WL 347034 (D. Neb. Jan. 30, 2014).................... 4

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ............................................................................. 20

*EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*,
  900 P.2d 113 (Colo. 1995) ................................................................... 18

*Fallo v. High-Tech Institute*,
  559 F.3d 874 (8th Cir. 2009) ............................................................... 17

*Green v. SuperShuttle Int'l, Inc.*,
  653 F.3d 766 (8th Cir. 2011) ............................................................... 17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ........................................................................... 21

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) ............................................................................... 20

*Midland Funding, LLC v. Brent*,
  No. 3:08 CV 1434, 2011 WL 1882507 (N.D. Ohio May 17, 2011) ....... 2

**CASES (cont.)**                                                                 **PAGE(s)**

*Mille Lacs Band of Chippewa Indians v. State of Minn.*,
    989 F.2d 994 (8th Cir. 1993) ................................................................ 3

*Murphy v. Smith*,
    138 S. Ct. 784 (2018) ...................................................................... 20

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ........................................................................ 16

*Scientific Packages, Inc. v. Gwinn*,
    134 Colo. 233, 301 P.2d 719 (1956) ................................................ 18

*Smith v. SEECO, Inc.*,
    865 F.3d 1021 (8th Cir. 2017) .......................................................... 4

*In re Wholesale Grocery Prods. Antitrust Litig.*,
    849 F.3d 761 (8th Cir. 2017) ............................................................ 3

## STATUTES

9 U.S.C. § 2 ...................................................................................... 19

9 U.S.C. § 3 .................................................................................. 20, 21

9 U.S.C. § 4 .................................................................................. 19, 20

## RULES

American Arbitration Association Consumer Arbitration Rules, Rule
    14(a) ........................................................................................... 17

Fed. R. Civ. P. 24(a) ....................................................................... 1, 2

Fed. R. Civ. P. 24(b) ......................................................................... 4

## I.   Movants' Motion to Intervene Should Be Granted

CenturyLink concedes that Movants may intervene in this action. CenturyLink's Br. (ECF No. 627). And although the plaintiffs make several arguments against intervention, none of their objections have merit.

### A.   The Preliminary-Approval Order Does Not Enjoin Movants From Intervening In This Case

The plaintiffs first contend that Movants have been enjoined from intervening by the preliminary-approval order of January 24, 2020, which states:

> Pending the Final Approval Hearing and issuance of the Final Approval Order and Final Judgment, Releasing Parties are hereby enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any class action or other lawsuit, arbitration, or administrative, regulatory, or other proceeding in any jurisdiction based on or relating to the Released Claims.

ECF No. 528 at ¶ 10. The plaintiffs believe that the phrase "any class action" includes *this* class action, and that Movants are therefore enjoined from "intervening" in this lawsuit.

That is not a tenable interpretation of the Court's order. If the phrase "any class action" encompasses this lawsuit, then every absent class member is in contempt of court because they are each "participating in" this case "as class members." *See id.* (enjoining "Releasing Parties" from "participating in (as class members or otherwise) . . . any class action"). The order purports to grant "provisional" certification of the proposed class, which makes the relevant customers "class members" and therefore participants in this lawsuit.

In addition, a court has no authority to suspend Rule 24 and deny intervention to a movant who meets the criteria for intervention as of right. *See* Fed. R. Civ. P. 24(a) ("The court *must* permit anyone to intervene who [satisfies the requirements

of Rule 24(a).]" (emphasis added)). And adopting the plaintiffs' interpretation would further exacerbate the due process issues created by the Court's injunction. It is one thing to say that Movants can be enjoined from pursuing arbitration when they were not parties to this action; it is yet another to say that, having already been subjected to this Court's injunctive power, Movants are not even allowed to seek redress from the Court. The more reasonable interpretation of the Court's preliminary-approval order is that it enjoins releasing parties from intervening (or participating) in class actions other than this lawsuit.

## B.    The Motion To Intervene Is Timely

Movants seek to intervene for the sole purpose of protecting their right to arbitrate their claims against CenturyLink. They moved to intervene on March 6, 2020, only six weeks after this Court enjoined them from arbitrating their claims in its order of January 24, 2020. There was never any reason for Movants to intervene before that because they still enjoyed their contractual right to arbitrate and this Court had taken no action that implicated that right.

Intervention became necessary only on account of the preliminary-approval order of January 24, 2020, which enjoins Movants from arbitrating their claims and threatens them with contempt if they continue to pursue arbitration with CenturyLink. Movants had no reason to intervene before that time, because they have no desire to litigate their claims in court; their only interest is in pursuing arbitration. Now that the preliminary-approval order purports to interfere with Movants' right to arbitrate, Movants have quickly sought intervention in an effort to protect that right. They have not "delayed" their intervention at all. *See Midland Funding, LLC v. Brent*, No. 3:08 CV 1434, 2011 WL 1882507, at *4 (N.D. Ohio May 17, 2011)

("There can be little doubt that Herring's [intervention] motion is timely, as it was filed mere weeks after the [preliminary-approval] order was issued.").

Finally, the plaintiffs complain that they will be "prejudiced" by Movants' intervention, but they will not be prejudiced on account of *any delay* by Movants. *See In re Wholesale Grocery Prods. Antitrust Litig.*, 849 F.3d 761, 767 (8th Cir. 2017) (listing "whether *the delay in seeking intervention* may prejudice the existing parties" as a factor in the timeliness inquiry (emphasis added)); *see also Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 999 (8th Cir. 1993). Movants filed for intervention shortly after the Court issued its preliminary-approval order, and there would be no less prejudice to the plaintiffs had Movants sought to intervene a few days or a few weeks earlier.

## C.    The Plaintiffs Do Not Adequately Represent Movants' Interests

Movants wish to arbitrate their claims with CenturyLink—and four of Movants have already filed arbitration demands with the AAA. Yet the plaintiffs asked for and obtained an injunction that forbids Movants to engage in any arbitration proceedings against CenturyLink on pain of contempt. It is hard to imagine a course of action more at odds with the interests of Movants, who have steadfastly attempted to arbitrate their claims against CenturyLink for the better part of a year.

The plaintiffs try to mitigate the obstacle they have placed in Movant's path by observing that Movants can opt out of the proposed settlement and then resume their arbitration efforts. *See* Plaintiffs' Br. (ECF No. 625) at 10 ("Plaintiffs and Settlement Class Counsel specifically preserved and protected Movants' alleged right to arbitrate by providing a straightforward means for them to opt out of the Settlement"). But the ability to opt out is *required* by Rule 23; it provides *no* basis to find an absent

class member's interests are adequately protected for purposes of intervention. *Smith v. SEECO, Inc.*, 865 F.3d 1021, 1024 (8th Cir. 2017) ("Although some district courts, like the district court here, have ruled that class members are not entitled to intervene because they can protect their interests by opting out of the class, we think this reasoning is flawed."). And the fact the plaintiffs have placed *any* obstacle in the path of Movants' arbitration efforts is enough to show that the interests of Movants and the plaintiffs diverge. *See Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2014 WL 347034, at *8 (D. Neb. Jan. 30, 2014) (holding that absent class member was entitled to intervene in class action because class representatives and counsel did not adequately protect his divergent interests); *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 689 (D. Minn.), *amended,* 858 F. Supp. 944 (D. Minn. 1994) (holding that absent class members were entitled to intervene where their interests were "at odds" with the interests of the class counsel); *see also Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010) (granting motion to intervene so proposed intervenor could "enforce [an] arbitration clause").

### D.    Permissive Intervention Is Appropriate

The plaintiffs do not deny that Movants have satisfied the statutory requirements for permissive intervention. *See* Fed. R. Civ. P. 24(b). But they argue that the Court should exercise its discretion to deny permissive intervention because intervention (in the plaintiffs' view) would "'unduly delay or prejudice the adjudication of the parties' rights.'" Plaintiffs' Br. (ECF No. 625) at 15 (quoting *S.D. ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003)).

None of the "delays" or "prejudice" that the plaintiffs fear would result from a decision to grant intervention; they would result from a decision to grant the *other* relief sought by Movants: an order compelling arbitration and staying proceedings. *See, e.g.*, Plaintiffs' Br. (ECF No. 625) at 15 ("Movants are asking that the entirety of the litigation be stayed pending their arbitrations with CenturyLink, which would take years."). The Court can consider these concerns when deciding how to rule on the other motions to the extent they are legally relevant. But the plaintiffs' prejudice argument amounts to the suggestion that the Court should deny Movants the right to be heard in this case for fear that Movants may actually convince the Court they have a right to relief. Respectfully, that is not a legitimate reason to deny Movants their day in court.

## II.    Movants' Motion To Compel Arbitration Should Be Granted

CenturyLink is trying to escape its contractual obligation to arbitrate by claiming that it has "revoked" the arbitration clause, in response to Movants' alleged "breach" of the arbitration agreement. CenturyLink's argument fails for multiple independent reasons — each of which, standing alone, defeats CenturyLink's attempt to avoid arbitration.

### A.    Movants Followed Their Contracts With CenturyLink To The Letter And Never Breached Any Provision In The Agreement

The written language of the arbitration clause unambiguously compels CenturyLink to arbitrate Movants' claims. *See* Keller Decl., Ex. 1, ECF No. 599-1 at 24. ("You agree that any dispute or claim arising out of or relating in any way to the Services, Equipment, Software or this Agreement (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory), will be resolved by bind-

ing arbitration."). But CenturyLink is pinning its hopes on the idea that it has uni-

laterally "revoked" the arbitration clause because the plaintiffs' "breached" the

agreement. The first problem with this argument is that Movants never breached

anything in their contract with CenturyLink — and CenturyLink fails to identify any

language in the contract that even remotely suggests that Movants breached the

terms of their agreement.

CenturyLink quotes the following language from the arbitration clause:

> Before commencing arbitration you must first present any claim or
> dispute to CenturyLink in writing to allow CenturyLink the oppor-
> tunity to resolve the dispute. If the claim or dispute is not resolved
> within 60 days, you may request arbitration.

CenturyLink's Br. (ECF No. 627) at 3 (quoting Keller Decl., Ex. 1, ECF No. 599-1

at 24). But Movants have followed these requirements to the letter. Each of the Mo-

vants presented their claims to CenturyLink in writing at least 60 days before the

arbitration demands were filed.[1] *See* Keller Decl., Ex. 1, ECF No. 599-1 at 24; *id.

see also id.*, Ex. 2, ECF No. 599-2. And none of those claims or disputes were re-

solved within that 60-day window, which opened the door for Movants to demand

arbitration from the AAA. The claim that Movants somehow "breached" this provi-

sion by filling their arbitration demands after providing written notice and waiting

for the 60-day clock to expire is meritless.

CenturyLink claims that Movants "failed to submit their individual claims in

writing to CenturyLink" and "offer[ed] no facts showing that they tried to do so."

CenturyLink's Br. (ECF No. 627) at 4–5. But the Keller Declaration states:

---

1. Ms. Finafrock and Ms. Johnson did not file an arbitration demand with the
   AAA, so they were not even required to submit their claims in writing to Cen-
   turyLink under the terms of the arbitration clause. They did anyway.

5. On May 14, 2019, Movants' counsel informed CenturyLink that it represented thousands of clients who intended to arbitrate their claims for consumer deception against CenturyLink. Attached as Exhibit 2 is a true and correct copy of that letter.

6. Movants were on client lists that their counsel provided to CenturyLink on May 14, 2019, June 3, 2019, June 12, 2019, and September 24, 2019.

Keller Decl., ECF No. 599 ¶¶ 5–6. And Exhibit 2 of the Keller Declaration contains an example of the "written notice" that Movants provided to CenturyLink on May 14, 2019—more than 60 days before they filed their arbitration demands. Movants provided further notice on June 3, 2019, June 12, 2019, and September 24, 2019. CenturyLink does not deny these claims in the Keller Declaration, and it does not dispute the authenticity of the letter that appears in Exhibit 2. If CenturyLink wants to get mileage out the fact that Movants presented written notice through their attorney rather than drafting and signing the letter themselves, Movants agree that is what happened. That observation is both true and entirely irrelevant. As CenturyLink recognizes in its brief, the conduct of an attorney is imputed to his clients. *See* CenturyLink's Br. (ECF No. 627) at 28 ("[C]ounsel's conduct is imputed to Movants under the law."). And any argument that Movants are not allowed to retain an attorney to advance their claims in arbitration or the pre-arbitration process finds no support in the parties' contract or basic fairness.

So Movants fully complied with the 60-day notice requirement by presenting written notice on multiple occasions. And CenturyLink cannot identify *any* other language in the contract that Movants have breached. Although CenturyLink attempts to concoct a "breach" by complaining about certain aspects of Movants' conduct, none of these grievances have anything to do with what the contract says. And

none of the conduct that CenturyLink describes violates anything that can be found in the terms of the written agreement.

>    **1.    The Contract Does Not Require Movants To Present Centu-ryLink With Anything Beyond A "Written Notice" Of The "Claim Or Dispute"**

CenturyLink does not deny that it received Mr. Keller's letter of May 14, 2019, and it does not deny that this letter "presents" the relevant "claims" and "disputes." Instead, CenturyLink complains that Movants failed to "engage in pre-arbitration dispute resolution" after presenting CenturyLink with written notice of their claims. *See* CenturyLink's Br. (ECF No. 627) at 26 ("Movants breached both the letter and spirit of the arbitration contracts by refusing to engage in pre-arbitration dispute resolution"). The contract requires no such thing.

There is *nothing* in the contract that requires Movants to negotiate with Cen-turyLink or attempt to settle their claims during the 60-day window. The contractual language bears repeating:

> Before commencing arbitration you must first present any claim or dispute to CenturyLink in writing to allow CenturyLink the oppor-tunity to resolve the dispute. If the claim or dispute is not resolved within 60 days, you may request arbitration.

Keller Decl., Ex. 1, ECF No. 599-1 at 24. The only requirements are that Movants: (1) present their claim or dispute to CenturyLink in writing; and (2) wait 60 days after providing written notice before requesting arbitration. Movants are not re-quired to engage in *any* pre-arbitration dialogue after providing written notice, and it is entirely up to the claimant whether to negotiate with CenturyLink pre-arbitra-tion or hold out for a better deal after arbitration begins.

CenturyLink appears to recognize that the text of the arbitration clause offers no support for the idea of mandatory pre-arbitration negotiations; hence, it accuses

Movants of contravening the "purpose" and "spirit" of the arbitration clause. CenturyLink's Br. (ECF No. 627) at 26. But one does not "breach" a contract by undermining the goals or aspirations held by the other party. A breach occurs only when there is a violation of the agreement's *terms*, and CenturyLink cannot identify any provision of this contract that required Movants to negotiate with CenturyLink or cooperate with CenturyLink's pre-arbitration resolution efforts. Movants were required only to present their claims to CenturyLink in writing and then wait 60 days before filing an arbitration demand. They did both, and they have fulfilled their obligations under the contract.

Finally, CenturyLink never disputes Movants' claim that ambiguities in contracts must be construed against the drafter. *See Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 716 (Colo. 1993) ("In case of doubt, a contract is construed most strongly against the drafter."); *see also* Mem. in Support of Mot. to Compel (ECF No. 598) at 12 n.2 ("This doctrine has particular force where, as here, the drafter is a sophisticated party and the counterparty is a consumer who is deemed to have accepted the contract through constructive notice. *Cf. Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 229 (Colo. 2001)."). So CenturyLink cannot impose contractual duties on Movants that do not appear in the clear language of the agreement.

### 2. Movants Have Not Pursued Their Claims On A "Consolidated" Basis

CenturyLink also accuses Movants of breaching language in the agreement that "waive[s] any right to pursue any claims on a class or consolidated basis or in a representative capacity." CenturyLink's Br. (ECF No. 627) at 27 (quoting Keller Decl., Ex. 1, ECF No. 599-1 at 24. But Movants have never filed any class-action

lawsuit against CenturyLink, and they have never sought to "consolidate" the individual arbitration proceedings that they have filed. And none of the Movants have ever attempted to act as a "representative" of any of the other claimants—either in arbitration or litigation.

CenturyLink complains that Movants' lawyers have threatened to "simultaneously" file thousands of individual arbitration demands. *See* CenturyLink's Br. (ECF No. 627) at 6. But that is exactly what the arbitration clause requires—each claim must be resolved in individualized arbitration proceedings rather than through class-action litigation.[2] CenturyLink may regret its decision to require individualized arbitration now that it facing 22,000 individuals who are prepared to arbitrate, but it cannot accuse Movants of *breaching* the contract when they are threatening to do exactly what the contract requires. And CenturyLink cannot claim that Movants are threatening to pursue "consolidated" proceedings against CenturyLink; what they are threatening is the exact *opposite* of a "consolidated" proceeding.

CenturyLink also complains that Movants' attorneys offered to settle the individual claims with CenturyLink en masse before filing their arbitration demands. *See* CenturyLink's Br. (ECF No. 627) at 6. If by that CenturyLink is referring to undersigned counsels' offer to conduct a mediation, then it is true. A voluntary, global mediation (that CenturyLink was open to participating in) does not convert a yet-to-be-filed individual arbitration into a "consolidated" proceeding. There is nothing that can be "consolidated" when the claims have not even been filed, and a voluntary settlement process does not breach a contractual obligation. The fact that

---

2.  *See* Keller Decl., Ex. 1, ECF No. 599-1 at 24 ("You agree that any dispute or claim arising out of or relating in any way to the Services, Equipment, Software or this Agreement (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory), will be resolved by binding arbitration.").

Movants retained the same law firm to pursue their claims does not violate anything in the contract either, and there is no contractual prohibition against "coordinated" individual proceedings. CenturyLink's Br. (ECF No. 627) at 27.

### 3.    A Party To A Contract Does Not Act In "Bad Faith" By Attempting To Resolve A Dispute

CenturyLink's also argues that Movants have acted in "bad faith." *See* CenturyLink's Br. (ECF No. 627) at 28–29. But a party to a contract acts in "bad faith" only when it behaves dishonestly, and there is nothing in CenturyLink's brief that even remotely suggests fraudulent or disingenuous conduct by Movants or their counsel.

CenturyLink complains that Movants' counsel waited to sign up 9,000 claimants before attempting to resolve those claims with CenturyLink. *Id.* How this qualifies as "bad faith" is unexplained, and a party to a contract has no implied duty to file its claims at the earliest possible moment. More importantly, counsel for Movants determined that it was in their clients' interest to pursue these claims simultaneously, and lawyers are *supposed* to pursue the best possible outcome for their clients even if that imposes discomfort on the opposing party. That does not produce a breach of their clients' contractual duties of good faith.

CenturyLink also criticizes Movants' counsel for threatening CenturyLink with 22,000 simultaneous arbitrations, which "overwhelmed CenturyLink's dispute resolution system" and made it impossible for CenturyLink to resolve those claims pre-arbitration. CenturyLink's Br. (ECF No. 627) at 29. But counsel was simply following the requirements of the contract, which require that a claimant provide written notice to CenturyLink more than 60 days before demanding arbitration. And it is hardly impossible to resolve 22,000 individual claims in 60 days. CenturyLink

pretends it needed to have an individual conversation about each individual's demand, and *that* is most certainly impossible on the contractual timeline. But nothing about the opportunity to resolve factually similar claims requires the sort of inefficiency CenturyLink now insists upon as a contractual precondition to arbitrate. The contract CenturyLink wrote contains no our-systems-were-overwhelmed escape hatch to arbitration.

CenturyLink's remaining grievances are complaints about the contract that it drafted rather than the conduct of Movants. Movants did not provide CenturyLink with detailed information about their claims and the extent of their damages because the contract did not require them to do so. *See* section I.A, *supra*. The contract required only that Movants present the "claim or dispute" to CenturyLink in writing, and CenturyLink cannot create *ex post* contractual roadblocks to arbitration because it now wishes to insist upon a more cumbersome pre-arbitration process. *See Cheyenne*, 861 P.2d at 716.

The offer by Movants' counsel to mediate globally or arbitrate individually is not evidence of "bad faith." *See* CenturyLink's Br. (ECF No. 627) at 29. It is the consequence of CenturyLink's decision to require individualized arbitration of *every* claim arising from the contracts with its customers. Movants have every right to demand individualized arbitration under the terms of their contracts, no matter how "costly" or "unnecessary" it might seem to CenturyLink. *See* CenturyLink's Br. (ECF No. 627) at 30. Movants' decisions to pursue individualized arbitration rather than other options cannot be regarded as "bad faith" when it is explicitly authorized—indeed, required—by the language of the contract that they signed.

CenturyLink thought that individualized arbitration proceedings would be preferable to class-action litigation, and it drafted its contracts to foreclose any possibility of consolidated proceedings by forcing everyone into individualized arbitration. But CenturyLink never anticipated the possibility that 22,000 victims of its alleged fraud would choose to retain counsel to pursue claims in arbitration. And counsel's efforts to maximize recovery for its clients in these circumstances is not "bad faith" of any sort; it is the zealous representation that every lawyer is duty-bound to provide. CenturyLink's accusations of "bad faith" are nothing more than an attempt to cover up its own choice to draft an arbitration clause that was always intended to shield the company from liability rather than to provide a true, efficient alternative to class-wide litigation.

### 4.   CenturyLink Has No Right To Have Movants' Claims Heard In Small-Claims Court

CenturyLink repeatedly says that the contract gives it the right to have Movants' claims decided by a small-claims court. *See, e.g.*, CenturyLink's Br. (ECF No. 627) at 9. But the contract says nothing of the sort. The relevant provision says:

> The sole exceptions to arbitration are that *either party may pursue claims*: (1) in small claims court that are within the scope of its jurisdiction, provided the matter remains in such court and advances only individual (non-class, non-representative, non-consolidated) claims; and (2) in court if they relate solely to the collection of any debts you owe to CenturyLink.

Keller Decl., Ex. 1, ECF No. 599-1 at ¶ 24 (emphasis added). The party that *pursues* the claim has the right to decide whether to file in small-claims court. CenturyLink is not "pursuing" any claims against Movants, so it has no right to tell Movants

where they should pursue their claims. Movants did not breach anything in the contract by filing an arbitration demand and ignoring CenturyLink's preference for small-claims court.

And CenturyLink does not allege "bad faith" when it accuses Movants of intentionally crafting their damages claims to exceed the jurisdictional limits of a small-claims court. *See* CenturyLink's Br. (ECF No. 627) at 9. Virtually every defendant in every civil case believes that the plaintiff has overstated its right to damages. But counsel for a plaintiff serves their client's interests, not the defendant's, and it is entirely appropriate to state the maximum potential liability in a demand or complaint. In all events, CenturyLink has no right to transfer Movants' proceedings to small-claims court, regardless of the amount of damages claimed. The party that is "pursuing" the claim decides whether to go to arbitration or to small-claims court—and it is Movants who hold that unfettered prerogative.

### 5.   It Is Impossible For Ms. Finafrock and Ms. Johnson To Have "Breached" The Contract When They Have Not Filed An Arbitration Demand

The final problem for CenturyLink is that Ms. Finafrock and Ms. Johnson have never even filed an arbitration demand, so it is impossible for them to have "breached" the provision that requires 60 days written notice before commencing arbitration. CenturyLink tries to get around this problem by accusing Ms. Finafrock and Ms. Johnson of an "anticipatory repudiation of contract," but the fact remains that no "breach" has occurred—let alone a "substantial breach" that could warrant revocation of the arbitration clause. More importantly, CenturyLink tries to concoct an "anticipatory repudiation" by accusing Ms. Finafrock and Ms. Johnson of the

same behavior that it has complained about with respect to the other movants, and none of that establishes a "breach" of *anything* in the contact.

* * *

The irony in all of this is that it is CenturyLink that is breaching its contractual obligations on a massive scale—not only with Movants but with every one of its customers—by attempting to resolve the pending claims in a class-action settlement. CenturyLink agreed with each of its customers that their disputes "will be resolved by binding arbitration," and CenturyLink explicitly waived its right to proceed in court. *See* Keller Decl., Ex. 1, ECF No. 599-1 at 24 ("[B]oth you and CenturyLink are waiving rights to litigate claims or disputes in court"). Yet CenturyLink is trying to run from these contractual obligations, now that it has discovered that a class-action settlement is more attractive than the prospect of facing 22,000 individual arbitrations. Indeed, it used the *threat* of compelling arbitration to extract a pennies-on-the-dollar settlement for the class, and now has the gall to say that claimants who are actually willing to arbitrate individually are the ones proceeding in bad faith.

CenturyLink is attempting to convert a contract that imposes a pre-dispute requirement of individualized arbitration into a contract that empowers CenturyLink to choose the dispute-resolution mechanism after a dispute arises, and it has even gone so far as to obtain an injunction that prevents its customers from exercising their contractual right to arbitrate. That is not what CenturyLink's contract says.

15

**B.    It Is For The Arbitrator And Not This Court To Decide Whether Movants "Breached" The Agreement And Whether CenturyLink May "Revoke" The Arbitration Clause**

Movants have responded to CenturyLink's allegations in detail because it is important to show the degree to which CenturyLink has gone to avoid its contractual obligations. But, in fact, the assertions that Movants have "breached" their contract with CenturyLink or that CenturyLink has "revoked" the arbitration clause in response to the alleged breach  are not valid grounds for avoiding arbitration *even if true*. The contract's delegation clause provides that:

> [T]he arbitrator, and not any court, shall have exclusive authority to resolve any dispute or claim arising under or relating to (among other subjects) the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any dispute or claim that all of this Agreement, or any part of this Agreement other than this arbitration provision, is void, voidable, lacking in consideration, illusory, invalid, unconscionable, or for any reason unenforceable.

Keller Decl., Ex. 1, ECF No. 599-1 at 24. This clearly and unambiguously states that questions regarding the "enforceability" of the agreement are for the arbitrator to resolve — including questions regarding the "enforceability" of the arbitration clause. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

CenturyLink seizes on language in the "including" clause, which provides a non-exhaustive list of issues for the arbitrator to decide. CenturyLink observes that the "including" clause specifically excludes claims involving the enforceability of the arbitration provision, and it asserts that claims regarding enforceability have therefore been "carve[d] out" from the entire delegation clause. *See* CenturyLink's Br. (ECF No. 627) at 17–18. But that is not what the delegation clause says. The first half of the sentence provides that any claim relating to the "enforceability" of

the Agreement is for the arbitrator to decide—and issues surrounding the "enforce-ability" of the arbitration clause unquestionably relate to the "enforceability" of the Agreement. The subsequent "including but not limited to" clause can only *add* to the claims already described in the first half of the sentence; it cannot diminish the scope of the first half of the sentence even if it explicitly omits a claim from its safe harbor. CenturyLink must also contend with the fact that its contract incorporates the rules of the AAA, which specifically provide that all issues of arbitrability will be decided by the arbitrator:

> The arbitrator shall have the power to rule on his or her own jurisdic-tion, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

Consumer Rule 14(a).[3] This language is fatal to CenturyLink's efforts to have the courts resolve arbitrability, and CenturyLink makes no attempt to reconcile its stance with the language of Rule 14(a). Nor does CenturyLink have any answer to the Eighth Circuit's binding pronouncement in *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766 (8th Cir. 2011), which states:

> By incorporating the AAA Rules, the parties agreed to allow the arbi-trator to determine threshold questions of arbitrability.

*Id.* at 769; *see also Fallo v. High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009) ("[A]n arbitration provision's incorporation of the AAA Rules—or other rules giv-ing arbitrators the authority to determine their own jurisdiction—is a clear and un-mistakable expression of the parties' intent to reserve the question of arbitrability

---

3.   https://www.adr.org/sites/default/files/Consumer Rules.pdf.

for the arbitrator and not the court."). CenturyLink does not deny that the enforcea-bility of the arbitration clause is a question of "arbitrability," so it has no way of escaping this binding language from *Green* and *Fallo*.

### C.   Colorado Law Does Not Permit The Defendants To Revoke The Arbi-tration Clause In Response To Movants Alleged "Breach"

Even if one were to assume that Movants "breached" their contracts (and they did not), and even if one were to assume that the Court rather than arbitrator can decide whether a breach occurred (it cannot), that still does not permit CenturyLink to *revoke* the arbitration agreement. *See* CenturyLink's Br. (ECF No. 627) at 8 ("CenturyLink revoked and terminated movants' arbitration contracts"). Colorado law allows rescission of a contract only when "the facts show a substantial breach, that the injury caused by the breach is irreparable, and that damages are inadequate, difficult or impossible to assess." *EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*, 900 P.2d 113, 118 (Colo. 1995). CenturyLink does not even attempt to argue that this standard has been met. More importantly, Colorado law does not give Cen-turyLink the option of revoking only the arbitration clause while leaving the rest of the contract in place. A remedy of rescission would require CenturyLink to restore Movants to their pre-contract positions by refunding all money that it had previously collected. *See id.*; *see also* Mem. in Support of Mot. to Compel (ECF No. 598) at 15–16.

CenturyLink does not dispute any of this. Instead, it invokes the "material breach" doctrine, which does not trigger revocation of a contract but merely pre-vents the breaching party from claiming any benefits under the contract that it vio-lated. *See Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 64 (Colo. 2005) ("Un-der contract law, a party to a contract cannot claim its benefit where he is the first

to violate its terms."); *see also Scientific Packages, Inc. v. Gwinn,* 134 Colo. 233, 237, 301 P.2d 719, 722 (1956) ("The party who commits the first substantial breach of a contract is also deprived of the right to complain of a subsequent breach by the other party."). But of course it is CenturyLink—and not Movants—that has materially breached its contract with every one of its customers by seeking to resolve their claims in a class-action settlement. *See supra*, at 15. And in doing so CenturyLink has forfeited its right to claim any benefits under those contracts, not only with respect to Movants but also with respect to any other customer. Movants have not breached the contract at all, let alone committed a "material" breach that prevents them from enforcing their contractual rights. *See* Section I, *supra*.

### D.   The Court Has No Authority To Deny The Motion To Compel Without Prejudice

CenturyLink suggests that this Court should deny the motion to compel "without prejudice," which would allow Movants to refile their motion after final approval of the class settlement. *See* CenturyLink's Br. (ECF No. 627) at 1, 13–15. The Federal Arbitration Act does not permit this maneuver. Agreements to arbitrate must be treated as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Court cannot render an arbitration agreement temporarily unenforceable by refusing to rule on a motion to compel. *See Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1153 (9th Cir. 2004) ("The Federal Arbitration Act represents Congress's intent 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'").

Finally, Movants are not asking this Court to reconsider or modify its preliminary-approval order. They are simply asking the Court to compel arbitration under

9 U.S.C. § 4. An order compelling CenturyLink to arbitrate its claims with Movants is not an amendment of the preliminary-approval order, and the order will continue to say exactly what it did before.

### III.   The Motion To Stay Proceedings Should Be Granted

CenturyLink contends that this Court should deny the motion to stay proceedings *even if* it decides to compel arbitration under 9 U.S.C. § 4. *See* CenturyLink's Br. (ECF No. 627) at 36. But the text of section 3 of the Federal Arbitration Act bears repeating:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. If the Court grants Movants' intervention and determines that any issue in these proceedings is arbitrable under the terms of CenturyLink's contracts, then it has no choice but stay the proceedings. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The statute says that the Court "shall" stay the trial until arbitration is completed. *See Murphy v. Smith*, 138 S. Ct. 784, 787 (2018) ("[T]he word 'shall' usually creates a mandate, not a liberty"); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion"). This does not leave any wiggle room for a Court to deny a stay of proceedings after granting a motion to compel arbitration.

The only escape hatch in the statute is when the applicant for the stay is "in default in proceeding with such arbitration." 9 U.S.C. § 3. But CenturyLink does not contend that this exception is applicable. Instead, CenturyLink offers a series of policy arguments for denying a stay of proceedings. None of that can authorize a court to countermand an unambiguous statutory text. *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) ("[W]e may not rewrite the statute simply to accommodate that policy concern.").

The plaintiffs argue that this Court should limit its stay of proceedings to the claims between Movants and CenturyLink. *See* Plaintiffs' Br. (ECF No. 625) at 16. But this proposal likewise finds no support in the statutory text. Section 3 says that if "any issue" is "referable to arbitration," then the Court shall "stay the trial of the *action*." 9 U.S.C. § 3 (emphasis added). And it especially inappropriate to allow the action to proceed when *each* of CenturyLink's contracts with the class members contains the same arbitrability clause — and when CenturyLink is breaching its contractual obligations by attempting to resolve these claims through a class-action settlement.

## CONCLUSION

The motion to intervene, the motion to compel arbitration, and the motion to stay proceedings should be granted.

Dated: April 14, 2020               Respectfully submitted.

                                     /s/ *Ashley C. Keller*
                                    Ashley C. Keller
                                    Keller Lenkner LLC
                                    150 N. Riverside Plaza, Suite 4270
                                    Chicago, Illinois 60606
                                    (312) 741-5220 (phone)
                                    (312) 971-3502 (fax)

ack@kellerlenkner.com

Warren Postman
Keller Lenkner LLC
1300 I Street, N.W.
Suite 400E
Washington, D.C. 2005
(202) 749-8334 (phone)
wdp@kellerlenkner.com

Jared D. Shepherd
Hoff Barry, P.A.
100 Prairie Center Drive, Suite 200
Eden Prairie, Minnesota 55344
(952) 941-9220 (phone)
(952) 941-7968 (fax)
jshepherd@hoffbarry.com

*Counsel for Proposed Intervenors and Movants Keisha Covington, Daniel Sokey, Tiffany Van Riper, James Watkins, Jaclyn Finafrock, and Kelly Johnson*

## CERTIFICATE OF SERVICE

I certify that on April 14, 2020, I electronically filed this document with the clerk of court using the CM/ECF system, which will electronically notify the parties listed on the Court's service list.

/s/ *Ashley C. Keller*
Ashley C. Keller

*Counsel for Proposed Intervenors and Movants Keisha Covington, Daniel Sokey, Tiffany Van Riper, James Watkins, Jaclyn Finafrock, and Kelly Johnson*

23