# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION | MDL No. 17-2795 (MJD/KMM) |

| This Document Relates to | | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CENTURYLINK, INC.'S MOTION TO ENFORCE PRELIMINARY APPROVAL ORDER** |
|---|---|---|
| 0:17-cv-02832 | 0:17-cv-04943 | |
| 0:17-cv-04613 | 0:17-cv-04944 | |
| 0:17-cv-04614 | 0:17-cv-04945 | |
| 0:17-cv-04615 | 0:17-cv-04947 | |
| 0:17-cv-04616 | 0:17-cv-05046 | |
| 0:17-cv-04617 | 0:18-cv-01562 | |
| 0:17-cv-04618 | 0:18-cv-01565 | |
| 0:17-cv-04619 | 0:18-cv-01572 | |
| 0:17-cv-04622 | 0:18-cv-01573 | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 3

I.     THE COURT REQUIRED EACH CLASS MEMBER TO SIGN AN
OPT OUT AND TO PROVIDE IMPORTANT IDENTIFYING
INFORMATION ...................................................................................... 3

II.    THE MASS OPT OUT IGNORES THE COURT'S
REQUIREMENTS ................................................................................... 5

III.   THE MASS OPT OUT WAS PROCURED THROUGH
MISLEADING MASS COMMUNICATIONS FROM KELLER TO
ITS CLIENTS........................................................................................... 6

STANDARD OF REVIEW ........................................................................................ 7

ARGUMENT.............................................................................................................. 8

I.     THE COURT SHOULD REJECT THE MASS OPT OUT
BECAUSE IT FAILS TO MEET THE COURT'S
REQUIREMENTS ................................................................................... 8

    A.    The Right to Opt Out Is Highly Individualized and Not
Permitted on a Mass Basis ............................................................ 8

    B.    The Court Should Reject the Mass Opt Out for Lack of
Individual Signatures.................................................................... 10

    C.    The Court Should Reject the Mass Opt Out for Lack of
Required Identifying Information ................................................. 13

    D.    The Court Should Reject Keller's Failed Attempt to Replicate
the Individualized Opt Out In *Piper Funds*.................................... 15

II.    THE MASS OPT OUT WAS PROCURED THROUGH
MISLEADING AND DISPARAGING ATTACKS ON THE
SETTLEMENT ...................................................................................... 17

III.   THE COURT CANNOT ORDER AN OPT-IN CLASS AS
KELLER HAS PREVIOUSLY SUGGESTED ......................................... 19

IV.   ANY POTENTIAL OBJECTIONS KELLER'S CLIENTS RAISE
TO THE PRELIMINARY APPROVAL ORDER ARE UNTIMELY...... 21

CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ................................................................. 21

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins.*
   *Litig.)*,
   770 F.2d 328 (2d Cir. 1985) ..................................................................... 13

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act*
   *(ERISA) Litig.*,
   2013 WL 6504801 (S.D.N.Y. Dec. 11, 2013) ........................................... 14

*Clark v. Universal Builders, Inc.*,
   501 F.2d 324 (7th Cir. 1974) ................................................................... 20

*In re Deepwater Horizon*,
   819 F.3d 190 (5th Cir. 2016) ......................................................... 10, 11, 18

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods.*
   *Liab. Litig.*,
   282 F.3d 220 (3d Cir. 2002) ................................................................ 10, 12

*Enter. Wall Paper Mfg. Co. v. Bodman*,
   85 F.R.D. 325 (S.D.N.Y. 1980) ............................................................... 20

*In re Equifax Customer Data Sec. Breach Litig.*,
   2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ............................................ 18

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.*,
   268 F.3d 627 (8th Cir. 2001) ................................................................ 7, 12

*Hallie v. Wells Fargo Bank, N.A.*,
   2015 WL 1914864 (N.D. Ind. Apr. 27, 2015) ....................................... 10-11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................... 7, 9

*Henderson v. Gen. Am. Life Ins. Co.*,
   536 U.S. 919 (2002) .................................................................................. 7

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ..................................................................... 9

## TABLE OF AUTHORITIES
## CONTINUED

**Page(s)**

*Kern v. Siemens Corp.*,
393 F.3d 120 (2d Cir. 2004)........................................................ 20

*Larson v. AT&T Mobility LLC*,
2009 WL 10689759 (D.N.J. Jan. 16, 2009) ................................ 10

*In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*,
2004 WL 2931352 (D. Minn. Dec. 16, 2004)............................. 14

*Massey v. On-Site Manager, Inc.*,
2013 WL 3149452 (E.D.N.Y. June 19, 2013) ............................ 22

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009) ............................................... 12, 18

*In re Nat'l Football League Players' Concussion Injury Litig.*,
2019 WL 95917 (E.D. Pa. Jan. 3, 2019) ...................................... 9

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex.*,
910 F. Supp. 2d 891 (E.D. La. 2012).......................................... 18

*Olson v. Citibank (New York)*,
2012 WL 1231808, at *3 (D. Minn. Mar. 28, 2012) ................... 14

*Olson v. Citibank (New York)*,
2012 WL 1231787 (D. Minn. Apr. 12, 2012)............................. 14

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)...................................................................... 8

*In re Piper Funds, Inc. Institutional Gov't Income Portfolio Litig.*,
71 F.3d 298 (8th Cir. 1995) ...............................................2, 15-16

*Saenz v. Lowe's Home Ctrs., LLC*,
2019 WL 3456810 (C.D. Cal. July 31, 2019).......................20-21

*Scott v. Chipotle Mexican Grill, Inc.*,
2020 WL 1541069 (2d Cir. Apr. 1, 2020) ................................. 20

*Sharp Farms v. Speaks*,
917 F.3d 276 (4th Cir. 2019) ....................................................... 9

## TABLE OF AUTHORITIES
## CONTINUED

**Page(s)**

*Smith v. SEECO, Inc.*,
    2017 WL 4570804 (D. Ark. Jan. 18, 2017) ................................................ 11, 12, 14, 18

*In re Syngenta Ag MIR 162 Corn Litig.*,
    2018 WL 1726345 (D. Kan. Apr. 10, 2018) ................................................................ 12

*Tennille v. W. Union Co.*,
    785 F.3d 422 (10th Cir. 2015) .................................................................................... 20

*Wilson v. Tesla, Inc.*,
    2018 WL 4616358 (N.D. Cal. Sept. 26, 2018) ........................................................... 21

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    2012 WL 5055810 (D. Minn. Oct. 18, 2012) ......................................................... 9, 14

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................................ 19, 20

5 James Wm. Moore, et al., *Moore's Fed. Prac. - Civil* § 23.104[2][a][ii]
    (3d ed. 2004) ............................................................................................................. 20

1 McLaughlin on Class Actions § 5:78 (16th ed.) ............................................................. 9

3 Newberg on Class Actions § 9:47 (5th ed.) ............................................................... 9-10

3 Newberg on Class Actions § 9:48 (5th ed.) ................................................................. 20

# INTRODUCTION

Once again Keller Lenkner LLC ("Keller") has ignored the plain language of this Court's orders.  Instead of following the Preliminary Approval Order's express requirements for opt outs from the class settlement, Keller has attempted a prohibited "mass opt out" for nearly 2,000 class members.  ECF No. 631 (the "Mass Opt Out").  For both procedural and substantive reasons, the Court should reject the Mass Opt Out.

Keller's Mass Opt Out is its third direct challenge to this Court's orders implementing the class settlement.  Keller first moved unsuccessfully on behalf of three class members to stay the proceedings pending appeal.  Next, Keller filed combined motions for six other class members to compel arbitration and stay proceedings.  This time, Keller has not even sought Court approval, but instead has attempted to unilaterally accomplish 2,000 opt outs through an unauthorized letter to the Court.  The Court should reject Keller's Mass Opt Out because it fails to satisfy the Preliminary Approval Order's mandatory opt-out requirements.

First, the Mass Opt Out lacks an individual signature from each class member.  Individual signatures are a well-recognized and critically-important requirement in class settlements, intended to avoid exactly what Keller is doing here—a mass opt out of many class members at once, with no personal indicator of any individual class member's informed consent.  Second, the Mass Opt Out provides no required account or other identifying numbers for each class member.  Such information is important to validate class members and identify their claims.  These flaws are fatal to the Mass Opt Out.

The Mass Opt Out also does not fit the Eighth Circuit's substantive and procedural requirements for allowing an immediate, individualized opt out as set forth in *In re Piper Funds, Inc. Institutional Government Income Portfolio Litigation*, 71 F.3d 298 (8th Cir. 1995).  Keller's clients have not proven any legal right to arbitrate immediately, much less any right to opt out before final approval.

Beyond this, the Court should reject ***any*** opt-out request from a Keller client before the Court resolves CenturyLink's pending motion to disqualify counsel, and before the Court sends corrective notice to Keller's clients.  The record shows that Keller mischaracterized and disparaged the class settlement to its clients ***before class notice ever issued***, in an effort to persuade its clients to opt out *en masse*.  Keller's generic and misleading communications have so confused its clients that at least ***11 clients purporting to opt out also submitted claims to the Settlement Administrator***.  To remedy the confusion Keller's communications have created, the Court should disqualify Keller, require corrective notice be sent to Keller's clients, and allow the clients an informed opportunity to consider if they will opt out.

Finally, the Court should reject as untimely Keller's objections to the Court's opt-out requirements.  Such a challenge is merely an (untimely) attempt to reconsider or amend the Court's Preliminary Approval Order.  As the Court recognized, Keller's clients strategically chose to remain silent rather than lodging any objections before the Court entered the Order.

For these reasons, CenturyLink respectfully requests that the Court enforce its Preliminary Approval Order and reject the attempted Mass Opt Out.

- 2 -

# BACKGROUND

## I. THE COURT REQUIRED EACH CLASS MEMBER TO SIGN AN OPT OUT AND TO PROVIDE IMPORTANT IDENTIFYING INFORMATION

The Settlement Agreement provides that class members are not subject to the class settlement if they "timely and validly request to be excluded." *See* Settlement Agreement § 6.2 (attached as Exhibit A to Gudmundson Decl. i/s/o Mot. for Prelim. Approval of Class Action Settlement) (ECF No. 469-1)).  The Court approved these procedural requirements and directed class members to comply with them.  Preliminary Approval Order, Jan. 24, 2020, at 3-5 (ECF No. 528).  In its order denying Keller's motion to stay proceedings pending appeal, the Court reaffirmed these requirements, explaining the "careful" selection of these procedures:

> Before the Court is a complex, multi-district action involving a Settlement Class of more than 17 million consumers spread across dozens of states that was settled after substantial motion practice, extended negotiations, and extensive confirmatory discovery. . . .  The Court's Order set forth an orderly, efficient manner for class members to opt out . . . .  The Court's chosen process was carefully crafted considering the practicality of efficiently managing a class of more than 17 million consumers and, thus, the possibility of millions of opt-out requests.

Mem. of Law & Order, Feb. 21, 2020, at 14 (ECF No. 569) ("Stay Denial").

To opt out, class members "must *each separately and individually* comply with the requirements of this Section 6.2." Settlement Agreement § 6.2 (emphasis added).  A valid opt out can take any form, but must include at least the following information:

1. The case name and number;

2. The class member's full name and *either* a ***CenturyLink account number*** or the ***unique identification number*** assigned by the Settlement Administrator;

3. Address;

4. A "clear and conspicuous statement indicating that [the class member] wish[es] to be excluded" from the settlement; and

5. The request must "***be signed personally by the Settlement Class Member***."

*Id.* § 6.2.1 (emphases added).[1]

The requirement that a class member must ***individually sign*** is important. It ensures that the class member is individually consenting to opt out, and avoids a third party or lawyer representing that it has that person's authority, without the class member making an informed, individual decision.

The requirement to include either an ***account number or identification number*** is also critical. As the Court is aware from previous briefing, customers over time might change their names, addresses, or contact information.[2] Some customers also have

---

[1] These are not hypertechnical requirements. CenturyLink uses unique account numbers for a customer, and some customers have multiple account numbers (for different products and services, or for different locations). *See* Declaration of Scott Belka ("Belka Decl.") ¶¶ 3-4, filed concurrently herewith. CenturyLink provided the Settlement Administrator with the account numbers for all class members. The Settlement Administrator then created a unique identification number for each account in the class. Each notice sent by the Settlement Administrator includes the unique identification number. *Id.* ¶¶ 6-7.

[2] These changes occurred for some of the named Consumer Plaintiffs. Some moved from the address where the CenturyLink service was received (e.g., named plaintiff Sara Young-Buck), some changed their names (e.g., named plaintiff Christina Scott), and

multiple accounts over time (such as for different services or products).  Declaration of Elizabeth M. Wright ("Wright Decl.") ¶¶ 6-11, filed concurrently herewith.  Because the account number and identification number do not change for a class member, it provides immediate and certain identification of the class member.  Furthermore, for customers with multiple accounts, the account number identifies which account is being opted out of the settlement.  *Id*. ¶¶ 17-19.

## II.     THE MASS OPT OUT IGNORES THE COURT'S REQUIREMENTS

Keller filed its clients' purported Mass Opt Out through a letter to the Court on April 7, 2020.  The letter states that an attached list of Keller's clients, all alleging to be class members, are not participating in the settlement, and instead want to arbitrate their claims.  The list provides the names and contact information of 1,933 individuals.

CenturyLink compared the Mass Opt Out list to three other databases:  (1) Keller's previous lists of clients, (2) CenturyLink's list of class members, and (3) the Settlement Administrator's list of class members who have already submitted claims or requests for exclusion.  Based on any information in the Mass Opt Out list matching any two points of data for class members (e.g., name and contact information), CenturyLink found that, of the 1,933 individuals in the Mass Opt Out list:

- *11* submitted flat ($30) claims to the Settlement Administrator;

- *1,769* have never filed an arbitration demand at the AAA; and

- *29* were not previously disclosed to CenturyLink by Keller.

---

some submitted claims in their own name when the service had been opened in the name of a parent or child (e.g., named plaintiff Maria Ochoa).  *See* Wright Decl. ¶¶ 8-10.

Wright Decl. ¶¶ 22-24.  More than 800 of Keller's clients who did file arbitrations with the AAA in November 2019 do not appear in the Mass Opt Out list.  *Id*. ¶ 24.

The Mass Opt Out also omits critical information that § 6.2.1 requires.  First, the Mass Opt Out is not signed by any class member, as required by § 6.2.1.5.  The Court therefore does not have the required confirmation that each class member individually and knowingly consents to the opt out.[3]

Second, the Mass Opt Out does not provide account numbers or identification numbers for any class member, as required by § 6.2.1.2.  CenturyLink and the Court thus have no way of validating that the names and contact information on the list are the class members represented.  Similarly, for class members with multiple account numbers, CenturyLink has no way of knowing if the class member is opting out of the settlement for certain accounts but not others, or preventing class members from obtaining an intentional or inadvertent double recovery, at the expense of the rest of the class.

## III.   THE MASS OPT OUT WAS PROCURED THROUGH MISLEADING MASS COMMUNICATIONS FROM KELLER TO ITS CLIENTS

In two previous briefs, CenturyLink provided detailed evidence showing material misrepresentations and omissions by Keller to its clients.  *See* Mem. DQ at 5-9; Def. & Intervenors' Suppl. Br. i/s/o Pls. Mot. for Prelim. Approval of Class Action Settlement &

---

[3]   To the extent Keller purports to have signed on its clients' behalf by purportedly exercising the Power of Attorney included in its form Retainer Agreement, that Power of Attorney is illegal under Illinois law (the law chosen to govern the Retainer Agreement), because it was neither notarized nor witnessed.  *See* Mem. i/s/o Mot. to Disqualify Counsel & Require Corrective Not., Apr. 7, 2020, at 11 & 31 (ECF No. 636) ("Mem. DQ").

Prov. Class Certif., Jan. 10, 2020, at 11-16 (ECF No. 509) ("Supp. Br.").  Those briefs

and supporting evidence show that Keller:

- Misrepresented and omitted material information during its enrollment process to sign up clients over the internet;

- Provided misleading and generic advice that the settlement is a "bad deal" that will result in an average payment of $1 per class member;

- Advised clients to opt out of the settlement and pursue arbitration, without identifying the risks of arbitration including time-barred claims, substantial counterclaims, and valid affirmative defenses CenturyLink has against many class members; and

- Failed to disclose conflicts of interest, particularly regarding Keller's significant financial interest in its clients opting out of the class and attempting to pursue arbitration *en masse*.

Mem. DQ at 1-2, 5, 9-11, 19-20, 24; Supp. Br. at 6-7, 9, 11-14, 21-24.  The record also

shows that Keller has not provided individual advice to each client based on the client's

specific circumstances.  Mem. DQ at 11-12.

## STANDARD OF REVIEW

The Court has broad discretion to reject opt-out requests.  *See In re Gen. Am. Life*

*Ins. Co. Sales Practices Litig.*, 268 F.3d 627, 635 (8th Cir. 2001) (district court has

discretion whether to accept or reject opt-out request in the "interests of justice"), *vacated*

*sub nom. Henderson v. Gen. Am. Life Ins. Co.*, 536 U.S. 919 (2002); *accord Hanlon v.*

*Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) (recognizing court's "authority and

discretion to protect the interests and rights of class members and to ensure its control

over the integrity of the settlement approval process"), *overruled on other grounds by*

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

## **ARGUMENT**

The Court should reject the Mass Opt Out for two reasons. First, it fails to provide a required signature or identifying information for each class member, both of which are critical to protect class members' and CenturyLink's interests. Second, Keller's generic and misleading communications to its clients prevent the Court from knowing if Keller's clients made informed, individualized decisions about opting out.

## I.   **THE COURT SHOULD REJECT THE MASS OPT OUT BECAUSE IT FAILS TO MEET THE COURT'S REQUIREMENTS**

Keller cannot deny that its Mass Opt Out fails to meet the clear and explicit requirements of § 6.2 of the Settlement Agreement, requirements which this Court approved (twice). The Court should reject any challenge to these requirements. The requirements for individual signatures and account or identification numbers are critically important to prove each class member's informed consent to the opt out and to identify the class members and their claims. As many courts have done in the past, this Court should reject opt-out requests that lack these critical requirements.

### A.   **The Right to Opt Out Is Highly Individualized and Not Permitted on a Mass Basis**

The specific requirements for opt outs that the Court ordered here reflect fundamental Due Process concerns in class action litigation.

Each class member has a Due Process right to opt out of a class settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Settled and uniform authorities from courts all around the country hold that the exercise of that right ***must*** be made on an ***individual*** basis, and not *en masse* for a multitude of class members at once.

- 8 -

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 WL

5055810, at \*9 (D. Minn. Oct. 18, 2012) ("The decision to opt out of a class action

settlement is an individual decision and may not be made . . . on a mass or representative

basis."); *accord In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-

md-02323-AB, 2019 WL 95917, at \*5 (E.D. Pa. Jan. 3, 2019) ("The right to opt out of a

class action is one that must be exercised individually," because "individual class

members . . . have the right to intelligently and individually choose whether to continue

in a suit as class members."); 1 McLaughlin on Class Actions § 5:78 (16th ed.) ("Due

process requires that the right to opt out is an individual one which must knowingly be

exercised on a class-member-by-class-member basis.").

Mass opt outs infringe on these Due Process rights by removing individual

decisions from class members.

> There is no class action rule, statute, or case that allows a
> putative class plaintiff or counsel to exercise class rights en
> masse, either by making a class-wide objection or by
> attempting to effect a group-wide exclusion from an existing
> class. Indeed, to do so would infringe on the due process
> rights of the individual class members, who have the right to
> intelligently and individually choose whether to continue in a
> suit as class members.

*Hanlon*, 150 F.3d at 1024; *accord Sharp Farms v. Speaks*, 917 F.3d 276, 298-99 (4th Cir.

2019) ("the Due Process clause prohibits classwide opt-outs"); *In re Hyundai & Kia Fuel*

*Econ. Litig.*, 926 F.3d 539, 564-65 (9th Cir. 2019) (denying class representative's opt-out

request on behalf of certain members because decision is individual and representatives

have "no right to do so on behalf of anyone else"); 3 Newberg on Class Actions § 9:47

(5th ed.) ("class members' right to opt out is individual, and thus, a group cannot be opted out by a representative or attorney").

Courts thus regularly reject opt outs that are done by lawyers on a mass basis for their clients, and do not reflect informed, individual decisions by class members. *E.g.*, *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 282 F.3d 220, 241 (3d Cir. 2002) ("The District Court had earlier determined that lawyers could not effect mass opt outs of all of their clients with the filing of a single notice, holding that opting out is an individual right and it must be exercised individually." (internal quotations omitted)); *Larson v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2009 WL 10689759, at *3 (D.N.J. Jan. 16, 2009) (noting "overwhelming amount of law denying mass opt-outs" because they "violate the right of an individual to make the opt-out decision").

### B.    The Court Should Reject the Mass Opt Out for Lack of Individual Signatures

As proof that an individual class member desires to opt out, this Court employed a common requirement:  the opt-out request must be ***signed*** by the class member.  Keller's Mass Opt Out attempts to escape this critical requirement.  Following the lead of many other courts, this Court should reject the Mass Opt Out.

It is a "common and practical requirement" "that an opt out be signed by the class member, not the attorney, in order to ensure that the exclusion was with the client's express consent."  *In re Deepwater Horizon*, 819 F.3d 190, 197 (5th Cir. 2016) (internal quotations omitted); *accord Hallie v. Wells Fargo Bank, N.A.*, No. 2:12-CV-00235-PPS-

APR, 2015 WL 1914864, at *4 (N.D. Ind. Apr. 27, 2015) (individual-signature

requirement has become a "standard requirement in class actions" and is not "onerous").

Some courts have said the individual-signature requirement is "not only reasonable, but

necessary." *Smith v. SEECO, Inc.*, No. 4:14-cv-00435 BSM, 2017 WL 4570804, at *7

(D. Ark. Jan. 18, 2017) (requiring ***notarization*** of opt-out requests), *appeal dismissed*,

922 F.3d 398 (8th Cir. 2019).[4]

Courts have discretion to reject requests that lack required signatures.  *E.g.*, *In re*

*Deepwater Horizon*, 819 F.3d at 197 (affirming rejection of opt-out request because

district court "reasonably concluded" that a class member had not submitted an effective

opt out in part because the class member did not sign the submission).  Another court

rejected an unsigned opt out from a class member for the same reason:

> The purpose of requiring the class member to actually sign
> the opt out—as opposed to allowing a lawyer to sign it for
> her—is to give assurance to the defendants that the class
> member does not wish to be bound by the settlement. The
> requirement of a personally signed, individual opt-out notice
> is rational given the court's interest in avoiding mass or large
> sub-class opt outs.

*Hallie*, 2015 WL 1914864, at *4.

For the same reasons, courts reject opt-out requests that are submitted by class

members' lawyers but not signed by class members.  In *SEECO* the court was presented

with the same kind of opt-out notice as here:  a request from a lawyer with 187 clients.

---

[4]      For instance, the Long Form Notice exemplar from the Federal Judicial Center
provides that a request for exclusion must "***include*** your name, address, telephone
number, and ***your signature***."  Federal Judicial Center, Products Liability Class Action
Certification and Settlement: Full Notice (2002) (emphases added).

The court rejected that opt-out notice because it lacked signatures from the clients, a requirement the court had imposed "to ensure that the individual class members were deciding to exclude themselves." 2017 WL 4570804, at *6-7.  Other cases have similarly rejected mass opt outs by class members' lawyers.  *E.g.*, *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 348, 355 (6th Cir. 2009) (affirming rejection of attorney-signed opt-out forms for hundreds of class members because they lacked individual signatures); *In re Diet Drugs*, 282 F.3d at 241 ("it was clearly within the court's discretion to turn away attempts by lawyers to opt out class members en masse").  Court have similarly refused to relax the individual-signing requirement for the convenience of class members' lawyers.  For instance, a lawyer for about 9,000 class members said the signature requirement was too onerous, but the Court rejected that plea, holding that it was a necessary precaution.  *In re Syngenta Ag MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2018 WL 1726345, at *7 (D. Kan. Apr. 10, 2018) ("To ensure that those who actually may possess a potential claim are in fact the decision-makers, it is more than reasonable to require that they take the very minimal effort required to sign and mail an opt out.").[5]

The Court should enforce its Order and reject the Mass Opt Out because it lacks signatures of the class members.

---

[5]     To be clear, the Court has discretion to accept a lawyer-signed opt-out; the Eighth Circuit affirmed that such a decision is within the district court's authority.  *In re Gen. Am.*, 268 F.3d at 635.  But there clearly is no rule that the district court ***must*** accept a lawyer-signed opt-out.  *Moulton*, 581 F.3d at 355 (discussing *General American* and explaining that no law "*requires* district courts to accept opt-out forms signed by attorneys") (emphasis in original).

**C.    The Court Should Reject the Mass Opt Out
       for Lack of Required Identifying Information**

The Mass Opt Out's failure to provide account numbers or identification numbers
is another sound reason to reject it.

The Court's requirement that opt outs include this information is both reasonable
and appropriate.  CenturyLink and the Settlement Administrator need this identification
information to confirm that a person opting out is a class member, and to identify the
claim being opted out of the settlement.  The identifying information for each Keller
client in the Mass Opt Out—name, address, and contact information—can change over
time, and does not distinguish between multiple accounts for a single class member.
Without such identification information, Keller's clients purportedly participating in the
Mass Opt Out could also be filing claims, knowingly or unknowingly, and could be
siphoning funds away from participating class members, while simultaneously trying to
proceed with an individual claim.

Additionally, CenturyLink's release of class members would be ambiguous and
subject to later attacks that certain individuals' claims were not actually released.  This
would defeat the fundamental purpose of the settlement.  *In re Baldwin-United Corp.
(Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985)
("certaint[y] about the finality" is a critical purpose for a class action settlement, and
"[a]ny substantial risk" of creating ambiguity in the scope of the release "would threaten
all of the settlement efforts . . . and destroy the utility of the multidistrict forum otherwise
ideally suited to resolving such broad claims").

Courts regularly require class members to submit identifying information with an opt out so the claims excluded from the class release are clear. *E.g.*, *SEECO*, 2017 WL 4570804, at *3 (opt out must include specific information identifying product at issue); *In re Zurn Pex*, 2012 WL 5055810, at *9 (opt outs must include specific information about the product used and a "good faith estimate of the amount of damages"); *Olson v. Citibank (N.Y.)*, No. 10-2992 PAM/JJG, 2012 WL 1231808, at *3 (D. Minn. Mar. 28, 2012), *report and recommendation adopted*, No. 10-2992 (PAM/JJG), 2012 WL 1231787 (D. Minn. Apr. 12, 2012) (approving class settlement order that required opt out to include account number for which exclusion is being requested); *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, No. 99-MDL-1309 PAM/JCL, 2004 WL 2931352, at *11 (D. Minn. Dec. 16, 2004) (written requests for exclusion "must specify the particular Policy or Policies the Class member wishes to exclude from the Class").

The Mass Opt Out's failure to include the required identification information is a proper basis to reject it. Courts regularly reject opt outs that fail to follow the requirements ordered by the court. *E.g.*, *SEECO*, 2017 WL 4570804, at *6 (rejecting opt outs from multiple categories of class members where those requests did not comply with established opt out procedures); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MD 2058 (PKC), 2013 WL 6504801, at *8-9 (S.D.N.Y. Dec. 11, 2013) (explaining that plaintiffs did not opt out of related class action because they did not comply with "explicit instructions as to its opt-out procedure," noting that "[p]ermitting plaintiffs' claims to carve out an alternative opt-out procedure

would encourage wait-and-see gamesmanship and introduce uncertainty in the class settlement process").

### D.     The Court Should Reject Keller's Failed Attempt to Replicate the Individualized Opt Out In *Piper Funds*

Keller's Mass Opt Out seeks to avoid the Court's chosen procedures by attempting to mimic Park Nicollet's individualized opt out in *Piper Funds*.  *See* 71 F.3d at 300. Keller will likely argue that its clients here can be opted out based on its similar letter to this Court.  Besides being substantively wrong, the Court has already rejected this argument.

The critical difference is that—unlike here—Park Nicollet was a sophisticated, institutional investor with its own separate counsel and a multi-million-dollar claim.  *See id.* at 299-300.  Park Nicollet did not need the heightened procedural protections that the thousands of affected consumers need here.  Based on that record, no one in *Piper Funds* questioned the adequacy or knowing basis of Park Nicollet's opt-out request.  By contrast, Keller's Mass Opt Out lacks required signatures and required identifying information, and raises substantial fairness concerns that were not at issue in *Piper Funds*.  The requests are facially inadequate to confirm individual consent and to identify the class members and their claims.[6]

The Court also should reject Keller's reliance on *Piper Funds* for the same reasons the Court stated in its Stay Denial.  *See* Stay Denial at 18-20.  In *Piper Funds*, Park

---

[6]     As discussed below in Part II, concerns about representations being made to Keller's clients justify the Court's careful review of its clients' opt-out requests.  These concerns were not present for Park Nicollet.

Nicollet's arbitration contract and the applicable NASD arbitration rules granted class members a right to ***immediate*** arbitration and exclusion from the class action.  71 F.3d at 302-303.  Keller's clients have not provided proof that each one has an arbitration contract with CenturyLink.  None of CenturyLink's arbitration contracts provides an "immediate" right to arbitrate.[7]  Furthermore, only about 160 of the class members identified in the Mass Opt Out filed an arbitration demand at the AAA before asking to opt out.

This Court has already rejected the use of an opt-out letter similar to Park Nicollet's.  At the February 20, 2020 hearing, Mr. Postman held up a sheet of paper while at the podium, claiming it was a copy of the letter Park Nicollet submitted to the district court.  Hearing Tr., Feb. 20, 2020, at 38:11-14.  He requested that Keller's clients be permitted to submit similar letters here.  *Id.* at 38:23-39:2.  The Court implicitly rejected this request when, the next day, it ordered that all class members follow the opt-out procedures in the Preliminary Approval Order.  Stay Denial at 14, 18-20.

For all of these reasons, the Court should enforce the Preliminary Approval Order's requirements for opt outs, and not allow Keller to avoid or modify them by using a letter facially similar to, but substantively distinct from, Park Nicollet's.

---

[7]     CenturyLink has also terminated the arbitration contracts for breach of the pre-filing requirements.  *See* CenturyLink Combined Opp. to, Mar. 31, 2020, at 1-5, 8, 34 (ECF No. 627) ("CTL Opp.").

## II.     THE MASS OPT OUT WAS PROCURED THROUGH MISLEADING AND DISPARAGING ATTACKS ON THE SETTLEMENT

Keller's Mass Opt Out presents even more fundamental problems.  Given Keller's misinformation to class members over many months, the Court cannot have confidence that these opt outs are the product of fully-informed, affirmative decisions by Keller's clients.  *See* Background, Part III, *supra*.  The Court therefore should reject the Mass Opt Out.

The record contains substantial evidence that Keller's miscommunications have confused its clients.  Despite the Mass Opt Out representing that none of Keller's identified clients want to participate in the settlement, at least ***11 of these supposedly opting out class members also submitted claims to the Settlement Administrator***.  Wright Decl. ¶ 22.  This discrepancy has no ***reasonable*** explanation—other than, Keller's clients are receiving misleading, generic (and not individualized) advice, and are either ignoring or likely confused by the misinformation Keller provided them.

Moreover, over 800 of Keller's clients who previously filed arbitrations with the AAA—the most likely clients who would opt out—are conspicuously absent from the Mass Opt Out.  *Id.* ¶ 24.  This further suggests that Keller is unable to adequately represent its clients' individual best interests with respect to the class settlement.  Keller's miscommunications are sufficiently misleading or confusing and potentially undermine any opt out its clients might submit.  *See* DQ Mem. at 14.

In other cases, courts have rejected opt-out requests where the record suggested that lawyers exercised undue influence or control over the opt outs, or tainted the opt outs through misrepresentations.  As some examples:

- *In re Deepwater*, 819 F.3d at 197 (attorney had not discussed opt-out option with client and "had not followed a court-ordered procedure");

- *Moulton*, 581 F.3d at 348, 355 (affirming rejection of attorney-signed opt-out forms because of the "real risk that the attorney-signed opt out forms did not reflect the wishes of class members");

- *In re Equifax Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *26, n.39 (N.D. Ga. Mar. 17, 2020) ("Here, where the technology allowing class members to object or opt out is coupled with misinformation about what the settlement actually provides, the dangers of accepting mass, unsigned objections or opt outs are even more acute.");

- *SEECO*, 2017 WL 4570804, at *4, *6 (rejecting lawyer-signed opt-outs that raise the "concern that lawyers, rather than the class members themselves, may be making decisions [such that] extra protections must be in place to ensure the class members made the opt-out decision"); and

- *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex.*, 910 F. Supp. 2d 891, 939 (E.D. La. 2012) (mass opt outs "are highly indicative of a conclusion that such counsel did not spend very much time evaluating the merits of whether or not to opt-out in light of the individual circumstances of each of their clients and in consultation with them"), *aff'd*, *In re Deepwater Horizon*, 739 F.3d 790, 808 (5th Cir. 2014).

This Court should similarly reject the Mass Opt Out based on the record of Keller's misleading and conflicted information provided to its clients, at least some of whom were unquestionably confused.[8]

---

[8]    This problem so infects the Mass Opt Out that the Court should reject Keller's position even if Keller produces signatures and identifying information for each of its clients.

Going forward, Keller's clients must, of course, have an opportunity to decide whether to opt out—but only after they receive untainted information to make their individual decisions.  Before considering any more opt outs from Keller's clients, the Court should first determine what remedies are appropriate to address Keller's misconduct.  CenturyLink's Motion to Disqualify requests that the Court disqualify Keller so that its clients can proceed without misleading advice from conflicted counsel. DQ Mem. at 5, 14-20, 27-30.  In addition, the Court should order the Settlement Administrator to send corrective notice to Keller's clients.  *Id.* at 2-3, 27-33.  After Keller's clients receive corrective notice, the Court should allow Keller's clients to submit opt outs if they choose.  *Id.* at 31-33.

## III.  THE COURT CANNOT ORDER AN OPT-IN CLASS AS KELLER HAS PREVIOUSLY SUGGESTED

Keller may also repeat an argument that Mr. Postman made to the Court at the February 20, 2020, hearing advocating an opt-in class, not an opt-out class.  Because Keller's clients agreed to class-action waivers in the arbitration contracts, Mr. Postman argued that a failure to respond to a class notice should not waive a right to arbitrate.  He argued instead that a Keller client should not be subject to a class settlement unless he or she "takes an affirmative step" by agreeing to participate.  Hearing Tr., Feb. 20, 2020, at 7:24-8:4.

This argument flies in the face of federal practice that bars the use of opt-in classes under Rule 23.  As a leading treatise on class actions said, "no court has ever certified an opt-in class under 23(b)(3), and courts have denied certification of classes for which

plaintiffs request an opt-in provision." 3 Newberg on Class Actions § 9:48 (5th ed. 2019). An opt-in class is not authorized by Fed. R. Civ. P. 23. *Kern v. Siemens Corp.*, 393 F.3d 120, 124 (2d Cir. 2004) (discussing authorities); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974) ("the requirement of an affirmative request for inclusion in the class is contrary to the express language of Rule 23(c)(2)(B)"); *Enter. Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980) ("Rule 23(c)(2)(B) calls for a notice that enables prospective members to opt-out, in language strongly suggesting the impropriety of opt-in requirements . . . ."); 5 James Wm. Moore, et al., *Moore's Fed. Prac.* § 23.104[2][a][ii] (3d ed. 2004) ("There is no authority for establishing 'opt-in' classes in which the class members must take action to be included in the class. Indeed, courts that have considered 'opt-in' procedures have rejected them as contrary to Rule 23.").[9]

Furthermore, the premise of Keller's position—that the class-action waiver in a contract bars the use of opt-out classes—is simply not true either. Courts routinely approve opt-out class settlements even where the customers' contracts include class-action waivers. *E.g.*, *Tennille v. W. Union Co.*, 785 F.3d 422, 431 (10th Cir. 2015) (affirming class settlement where class members' contracts included class-action waivers); *Saenz v. Lowe's Home Ctrs., LLC*, No. 2:17-cv-08758-ODW (PLA), 2019 WL

---

[9]     Congress authorized opt-in classes for claims under the Fair Labor Standards Act, which highlights the lack of opt-in classes under Rule 23. *Scott v. Chipotle Mex. Grill, Inc.*, No. 17-2208-CV, 2020 WL 1541069, at *12 (2d Cir. Apr. 1, 2020) (explaining that, while FLSA has opt-in classes, Rule 23 does not permit them).

3456810, at *4 (C.D. Cal. July 31, 2019) (same); *Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2018 WL 4616358, at *6 (N.D. Cal. Sept. 26, 2018) ("majority" of class members had signed contracts with class-action waivers); *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 344 n.4 (N.D. Ill. 2010) (certifying class despite underlying agreements having class-action waivers).

The Court should therefore reject any argument that Keller's clients are not subject to the opt-out procedures.

## IV.   ANY POTENTIAL OBJECTIONS KELLER'S CLIENTS RAISE TO THE PRELIMINARY APPROVAL ORDER ARE UNTIMELY

The Court should also reject as untimely Keller's objections to the opt-out requirements in the Preliminary Approval Order.  Any challenge to the requirements is an untimely attempt to reconsider or amend the Court's Order.

If the Court were to allow Keller to proceed by Mass Opt Out based on Keller's objections to the Preliminary Approval Order, the Court would be effectively reconsidering or modifying the requirements of its Order.  For the same reasons CenturyLink demonstrated in its Opposition to the combined motion, Keller's clients have not provided a basis to reconsider or modify the substantive requirements of the Preliminary Approval Order.  *See* CTL Opp. at 10-15.

CenturyLink recognizes that the Court can revisit its previous orders based on new facts that were not previously known to or knowable by the Court or the parties.  *Id.* at 14.  Here, however, Keller cannot show any change in circumstances after the Court issued the Preliminary Approval Order that potentially could justify reconsideration or

modification of that Order.  The only circumstances that have changed—Keller's more recent efforts to mislead its clients and disparage the class settlement from January through March—strongly support the Court's rejection of the Mass Opt Out.

Furthermore, the Court found that Keller had notice of the proposed Preliminary Approval Order, and opportunity to be heard, but declined to object.  *Id.* at 12 & 14 (citing Stay Denial at 21).  Keller therefore cannot be heard to ask for reconsideration or modification.  CTL Opp. at 14-15

If the Court were to accept Keller's objection to these requirements, the ramifications would be extreme.  That would open the floodgates to any class member disregarding any of the Order's requirements and create chaos in the administration of this settlement.  *Cf. Massey v. On-Site Manager, Inc.*, No. 11 CIV. 2612 BMC, 2013 WL 3149452, at *3 (E.D.N.Y. June 19, 2013) ("Defendant, on the other hand, would be prejudiced if the Court were to grant Perez's exclusion request as it would set a precedent for other class members to seek late exclusion based solely on their statements that they did not receive the settlement notice.").

## CONCLUSION

For all of these reasons, the Court should reject the Mass Opt Out and (as argued in CenturyLink's pending motion) disqualify Keller and order corrective notice to its clients.

Dated:  April 16, 2020                    Respectfully Submitted,

                                          /s/ *Douglas P. Lobel*
                                          Douglas P. Lobel (VA Bar No. 42329)

David A. Vogel (VA Bar No. 48971)
COOLEY LLP
11951 Freedom Drive
Reston, Virginia 20190
Tel.: (703) 456-8000
Fax: (703) 456-8100
Email:     dlobel@cooley.com
               dvogel@cooley.com

Jeffrey M. Gutkin (CA Bar No. 216083)
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Tel.: (415) 693-2000
Fax: (415) 693-2222
Email:     jgutkin@cooley.com

William A. McNab (MN Bar No. 320924)
WINTHROP & WEINSTINE, P.A.
Capella Tower, Suite 3500
225 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 604-6400
Fax: (612) 604-6800
Email:     wmcnab@winthrop.com

Carolyn J. Fairless (CO Bar No. 30214)
Michael T. Williams (CO Bar No. 33172)
Andrew M. Unthank (CO Bar No. 36832)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email:     williams@wtotrial.com
               unthank@wtotrial.com
               benz@wtotrial.com

Jerry W. Blackwell (MN Bar No. 186867)
Blackwell Burke P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Tel.: (612) 343-3200

Fax: (612) 343-3205
Email: blackwell@blackwellburke.com

*Attorneys for Defendant CenturyLink, Inc.*

223862996