UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

**In re: CenturyLink Sales Practices
and Securities Litigation**

This document relates to ALL
ACTIONS, including:

17-2832, 17-4613, 17-4614,
17-4615, 17-4616, 17-4617,
17-4618, 17-4619, 17-4622,
17-4943, 17-4944, 17-4945,
17-4947, 17-5046, 18-1562,
18-1572, 18-1565, 18-1573

Case No. 0:17-md-02795-MJD-KMM

**ARBITRATION CLAIMANTS' MEMORANDUM OF LAW
IN OPPOSITION TO CENTURYLINK'S MOTION TO ENFORCE
PRELIMINARY APPROVAL ORDER**

# TABLE OF CONTENTS

Introduction .................................................................................................... 1

I.   *Piper* Requires This Court To Immediately Opt Out Arbitration Claimants Who Wish To Arbitrate Their Claims Against CenturyLink ................. 4

II.  CenturyLink's Insistence On Individual Signatures From Each Arbitration Claimant Violates *Piper* And The FAA, And Is Unnecessary When Counsel Have Been Retained To Act On Arbitration Claimants' Behalf ........................................................................................................... 10

III. CenturyLink's Insistence That Arbitration Claimants Provide Their Account Numbers Or Identification Numbers Violates *Piper* And The FAA, And Is Unnecessary To Process An Opt-Out Request ...................................................... 16

IV.  The Proposed Settlement Violates The Rules Enabling Act By Depriving Arbitration Claimants Of Their Substantive Right To Arbitrate Without Obtaining Their Affirmative Consent ............................................................... 20

V.   Arbitration Claimants Are Not Asking The Court To "Amend" Or "Reconsider" Its Preliminary-Approval Order .................................................... 21

Conclusion ..................................................................................................... 22

# TABLE OF AUTHORITIES

**CASES**                                                                                                       **PAGE(s)**

*Anheuser-Busch, Inc. v. Local Union No. 744, Int'l Bhd. of Teamsters*,
   280 F.3d 1133 (7th Cir. 2002) .................................................................................... 8

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................... 18

*Close v. Sotheby's, Inc.*,
   909 F.3d 1204 (9th Cir. 2018) ............................................................................... 21

*De Leon v. Bank of Am.*,
   No. 6:09-CV-1251-ORL-28, 2012 WL 2568142 (M.D. Fla. Apr. 20,
   2012)........................................................................................................................ 19

*Galloway v. Kan. City Landsmen, LLC*,
   No. 4:11-1020-CV-W-DGK, 2012 WL 4862833 (W.D. Mo. Oct. 12,
   2012)........................................................................................................................ 19

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.*,
   268 F.3d 627 (8th Cir. 2001), *vacated on other grounds sub nom.*
   *Henderson v. Gen. Am. Life Ins. Co.*, 536 U.S. 919 (2002) .................................... 2, 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................... 12

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ................................................................................. 12

*In re Nat'l Football League Players' Concussion Injury Litig.*,
   No. 2:12-md-02323-AB, 2019 WL 95917 (E.D. Pa. Jan. 3, 2019) .......................... 12

*In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*,
   71 F.3d 298 (8th Cir. 1995) ............................................................................*passim*

*Rucho v. Common Cause*,
   139 S. Ct. 2484 (2019) ............................................................................................. 8

*Sharp Farms v. Speaks*,
   917 F.3d 276 (4th Cir. 2019) ................................................................................. 12

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810 (D. Minn. Oct. 18,
   2012)....................................................................................................................11, 12

**STATUTES**

9 U.S.C. § 1 ............................................................................................................. 20

28 U.S.C. § 2072(b) ................................................................................................ 20

**RULES**

Fed. R. Civ. P. 23 ........................................................................................2, 4, 7, 20

Fed. R. Civ. P. 23(c)(2)........................................................................................4, 6, 14

Fed. R. Civ. P. 8(b)(6) ............................................................................................ 9

**OTHER AUTHORITIES**

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933,
    953 (2018)........................................................................................................... 21

Paul N. Cox, *Reflections on Ex Ante Compensation and Diversification of
    Risk As Fairness Justifications for Limiting Fiduciary Obligations of
    Corporate Officers, Directors, and Controlling Shareholders*, 60 TEMP.
    L.Q. 47, 90 (1987) ................................................................................................ 8

4 Phillip Areeda & Donald F. Turner, *Antitrust Law* 21 (1980)........................................ 8

## INTRODUCTION

On April 7, 2020, Keller Lenkner LLC submitted a letter informing the Court that 1,933 of its clients (the "Arbitration Claimants") had exercised their due process right to opt out of the proposed class settlement. ECF No. 631. The letter also informed the Court that these individuals have a statutory and contractual right to arbitrate their claims with CenturyLink, and that they are opting out to preserve those rights to arbitrate. *See id.* The letter included a spreadsheet that provides the names, addresses, phone numbers, and e-mail addresses of each of these individuals. ECF No. 631-1.

Referring to this letter as a "mass opt out," CenturyLink insists that the Court should disregard the wishes of the Arbitration Claimants and leave each of these 1,933 individuals in the class. But contrary to CenturyLink's rhetoric, each Arbitration Claimant made an individual choice that she did not want to participate in the class. And that choice was fully informed. Specifically, every Arbitration Claimant was included in the Court-approved class notice process. CenturyLink believes this process sufficiently informs class members that their legal rights can be released entirely, even if a class member takes no action at all and receives no compensation in exchange; it follows *a fortiori* that the Court-approved notice process provides sufficient notice to Arbitration Claimants. Moreover, every Arbitration Claimant was directly provided the Court-approved class notice in the very first communication from Keller Lenkner. And every Arbitration Claimant received the frank advice of their counsel, whom they individually retained to represent their interest with regard to claims covered by the proposed settlement.

In short, the Arbitration Claimants have made a fully informed and individual decision to opt out of the class settlement. Indeed, while counsel for class plaintiffs

has not hesitated to criticize Arbitration Claimants' counsel in other respects, they agree on this point. ECF No. 675 at 4–6. Rule 23 provides no basis to override Arbitration Claimants' informed, individual choices and force them to be members of a class against their established wishes. CenturyLink's contrary stance is incompatible with *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298 (8th Cir. 1995) and the Federal Arbitration Act ("FAA"), which hold that courts should immediately honor opt-out requests submitted by counsel on behalf of class members who wish to arbitrate their claims. *See id.* at 303–04. And even apart from *Piper* and the FAA, this Court has inherent authority to recognize the opt-outs where it concludes that doing so is in the interests of justice. *See In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 268 F.3d 627, 635 (8th Cir. 2001), *vacated on other grounds sub nom. Henderson v. Gen. Am. Life Ins. Co.*, 536 U.S. 919 (2002).

Both controlling authority and the interests of justice call for recognizing Arbitration Claimants' opt outs, and CenturyLink's contrary arguments are unavailing. First, there is no basis for demanding that Arbitration Claimants submit an individual signature in order to opt out. CenturyLink has not disputed that the Arbitration Claimants have individually retained counsel to represent their interests. And each Arbitration Claimant made an individual, affirmative statement to counsel that she wishes to be excluded from the class. Just as CenturyLink's counsel is permitted to act on behalf of CenturyLink in this Court, Arbitration Claimants should be treated similarly. Counsel for class plaintiffs agree on this point. ECF No. 675 at 2–4.

Second, CenturyLink's insistence that each Arbitration Claimant provide her "CenturyLink account number" or her "unique identification number assigned by the Settlement Administrator," ECF No. 656 at 4, is an artificial and unnecessary barrier that should not interfere with a claimant's unambiguous right to opt out. The purpose of opting out is to avoid the consequences of a judgment in a proceeding the party did not initiate or control. That should require nothing more than identifying information and a manifestation of intent. Each Arbitration Claimant has been uniquely identified by name, address, phone number, and email address, which sufficiently allows him to be accurately excluded from the class. Every class member who submits a claim to the settlement administrator will have her account identified and her claims released. And every class member who fails to opt out of the settlement will have her claims released regardless of any information about their account. CenturyLink is all too happy to have the claims associated with countless accounts released even if CenturyLink does *not* possess current contact information for, and never provides actual notice to, the class members. And no doubt CenturyLink will assert *res judicata* over any future claim brought by a claimant who does not opt out, regardless of whether that claimant provides an account number or unique identification number. Fairness demands that it should be as easy for a claimant to exercise her right to opt out of the class as it will be for CenturyLink to extinguish her future claim if she fails to do so.

Finally, it should not be lost on the Court that CenturyLink does not have (and should not be expected to have) any genuine interest in maximizing the amount of compensation that the Arbitration Claimants will receive for their claims. To the contrary, CenturyLink's interest is in ensuring that the settlement sum it has agreed

upon will result in as many class members as possible releasing their claims. There is nothing necessarily improper about CenturyLink's desire to further its economic interests. But it *is* improper for CenturyLink—while claiming that it is concerned about the interests of Arbitration Claimants—to ask this Court to disregard the relationship between Arbitration Claimants and their individually retained counsel and to erect unlawful and unjustified roadblocks to Arbitration Claimants retaining their legal rights. That is doubly true where CenturyLink's arbitration agreement has promised each Arbitration Claimant that she will not have to deal with the hurdles and complexity inherent in the administration of a class action. And it is triply true where CenturyLink has told this Court that it could enjoin Arbitration Claimants from pursuing arbitration because Arbitration Claimants retain the *unimpeded* ability to pursue arbitration simply by opting out of the class. Rule 23 creates a procedure for resolving the claims of individuals who have *chosen* to participate in a class (or who, for the sake of expediency, are at least deemed to have made such a choice). Neither due process nor basic fairness supports CenturyLink's attempt to dragoon into this proceeding individuals who have made a clear and informed choice not to participate in it.

## I.    *Piper* **Requires This Court To Immediately Opt Out Arbitration Claimants Who Wish To Arbitrate Their Claims Against CenturyLink**

The holding of *Piper* is clear: When an absent class member is represented by separate counsel and informs the Court that she wishes to arbitrate his claims, the Court should allow that absent class member to opt out—even if the class member seeks to opt out outside the formal notice process adopted by the court under Rule 23(c)(2). *See Piper*, 71 F.3d at 304. To deny an opt out when a class member asserts her right to arbitrate is an abuse of discretion and a violation of the FAA.

The *Piper* Court explained:

> [T]he unique question presented is whether an unwilling class member's right to arbitrate may be held hostage in this manner to the class action settlement process.
>
> We have no quarrel with the usual practice of not allowing class members to opt out until after the formal Rule 23(c)(2) notice to the class. That practice is administratively efficient, and it helps the court ensure that class members make informed decisions whether to opt out. *However, the usual practice is not appropriate in this case.* Although the court supervising a class action has wide discretion to control a class action, including the opt-out process, *that discretion must be exercised consistent with the policies and principles of the FAA when a class member with an immediate right to arbitrate its claim seeks to opt out.*
>
> In this case, by its March 2, 1995, letter to the district court, Park Nicollet made an unrefuted showing that it (i) was represented by separate counsel; (ii) had a contractual right to arbitrate any claim encompassed by the class action; (iii) had submitted a claim to the NASD along with a declaration under § 12(d)(2) of the NASD Code that it elected not to participate in the class action; and (iv) now elected irrevocably to opt out of the class action. In our view, proper regard for the FAA required that the court promptly take one of three actions: it could stay the class action while Park Nicollet's claim is arbitrated; it could deny the request to opt out (for example, because Park Nicollet's arbitration claim is not arbitrable or its request to opt out was too late); or it could grant the request to opt out, in which case Park Nicollet's motion to stay the class action becomes moot. The district court did not stay the class action, and it is conceded that Park Nicollet is entitled to opt out. In these circumstances, the court abused its discretion in refusing to enter an order excluding Park Nicollet from the class.

*Piper*, 71 F.3d at 304 (emphasis added). *Piper* holds that the statutory right to arbitrate must be respected notwithstanding any process that the Court or the parties may have established for handling opt-out requests. *See id.* (rejecting the notion that "an unwilling class member's right to arbitrate" may be "held hostage . . . to the

class action settlement process"). It does not matter whether a preliminary-approval order or a proposed class settlement requires opt outs to wait until formal notice has issued under Rule 23(c)(2). And it does not matter whether a preliminary-approval order or a proposed class settlement requires opt outs to include a client signature or a CenturyLink account number. Court-approved procedural requirements cannot be used to deny opt-out requests from class members who assert their right to arbitrate under the FAA.

CenturyLink eventually gets around to acknowledging the holding of *Piper*, ECF No. 656 at 15–16, but tries to escape it by offering a host of factual distinctions that are not relevant or material to the analysis or holding of that case.[1] First, CenturyLink tries to avoid *Piper* by observing that Park Nicollet "was a sophisticated, institutional investor with its own separate counsel and a multi-million dollar claim." ECF No. 656 at 15. *Piper*'s holding, however, did not in any way turn on the sophistication of Park Nicollet or the size of its claim. *Piper*'s holding was based on the fact that Park Nicollet had a right to arbitrate that was protected by the FAA, and the FAA protects the rights of all parties to an arbitration agreement, regardless of whether they are "sophisticated," and regardless of whether they have a large or small claim.

CenturyLink also tries to distinguish *Piper* by claiming that its holding is limited to class members with an "immediate" right to arbitrate. ECF No. 656 at 15–16; *see also Piper*, 71 F.3d at 304. CenturyLink appears to mean that, because its contract requires parties to provide notice of a claim 60 days before filing their

---

1.   CenturyLink also states that "the Court has already rejected this argument." ECF No. 656 at 15. But no class member had previously attempted to opt out of the class, so it is difficult to see how the Court's prior order reached this issue.

demand, CenturyLink customers can be required to participate in a class settlement process, even if a party who was not required to wait 60 days to file their demand could not be required to do so. As a threshold matter, the overwhelming majority of Arbitration Claimants *have* an "immediate" right to arbitrate, because they have provided the 60-day notice required by the arbitration contract. *See, e.g.,* Keller Decl. ¶¶ 5–6, ECF No. 599. But in all events, CenturyLink's distinction is inconsistent with the logic of *Piper. Piper* did not require that Park Nicollet's opt out should be recognized simply because a failure to do so would cause delay; rather Piper reasoned that Rule 23 cannot be used to add additional hurdles to a party exercising her rights under the FAA. *Piper*, 71 F.3d at 304. And it would be perverse if CenturyLink's imposition of a 60-day waiting period before a party can pursue arbitration means that it can impose *further* obstacles to a party pursuing arbitration as part a class proceeding that is expressly prohibited by the arbitration agreement.

CenturyLink also claims that *Piper* does not apply because Arbitration Claimants need "heightened procedural protections" that prevent them from opting out with a letter from counsel—even though Park Nicollet was allowed to opt out in the exact same manner. ECF No. 656 at 15. But CenturyLink never establishes *what* Arbitration Claimants need "protection" from. It is CenturyLink that is attempting to strip them of their statutory and contractual rights to arbitrate without their consent. It is CenturyLink that is attempting to force Arbitration Claimants to accept a class settlement that pays them less than they believe they can obtain in individualized arbitration proceedings. And it is CenturyLink that is subverting the attorney–client relationship between Arbitration Claimants and their individually-retained counsel, by negotiating a class settlement with class counsel even though

these clients had retained Keller Lenkner to arbitrate their claims before the class-action settlement was signed, let alone approved. It takes considerable chutzpah for CenturyLink to pose as the guardian and protector of Arbitration Claimants when its economic interest is directly adverse to the interest of Arbitration Claimants and it is determined to eliminate their statutory and contractual rights to arbitrate, undermine the representation of their chosen attorneys, and place procedural obstacles in the path of those who exercise their due process right to opt out of the class settlement. Arbitration Claimants need "protections" from CenturyLink's attempt to force them into a settlement they do not want to participate in, not from their own attorneys—who are attempting to secure a better deal for them than what CenturyLink is offering in this class settlement.

Relatedly, CenturyLink tries to get around *Piper* by claiming that this case raises "substantial fairness concerns that were not at issue" in the *Piper* litigation—although CenturyLink never bothers to explain what it means by the word "fairness."[2] ECF No. 656 at 15. But it is hard to understand what could be "fair" about allowing CenturyLink to breach its contractual obligations to arbitrate on a massive scale, and then tell Arbitration Claimants that they must submit

---

2.  *See Rucho v. Common Cause*, 139 S. Ct. 2484, 2499–2500 (2019) ("'Fairness' does not seem to us a judicially manageable standard." (citation and internal quotation marks omitted)); 4 Phillip Areeda & Donald F. Turner, *Antitrust Law* 21 (1980) ("'[F]airness' is a vagrant claim applied to any value that one happens to favor."); Paul N. Cox, *Reflections on Ex Ante Compensation and Diversification of Risk As Fairness Justifications for Limiting Fiduciary Obligations of Corporate Officers, Directors, and Controlling Shareholders*, 60 TEMP. L.Q. 47, 90 (1987) ("[F]airness is an empty concept given meaning only by reference to conceptions outside fairness."); *see also Anheuser-Busch, Inc. v. Local Union No. 744, Int'l Bhd. of Teamsters*, 280 F.3d 1133, 1148 (7th Cir. 2002) (Easterbrook, J., dissenting) ("Avoiding the 'f' word in both contemplation and exposition promotes clear thought and accurate decision.").

individualized signatures to preserve the contractual terms that CenturyLink had agreed to. Nor is there anything "fair" about allowing CenturyLink to put mandatory arbitration clauses in its contracts, but then back out of those contracts as soon as it discovers that a class-action settlement is more attractive than the prospect of paying for individual arbitrations. CenturyLink may regret its decision to mandate individualized arbitration proceedings in the contracts with its customers—and it never foresaw the possibility that thousands of customers that it wronged would retain counsel to arbitrate their claims. But there are no "fairness concerns" with enforcing the terms of a contract that CenturyLink agreed to but now regrets. The only "fairness concerns" in this case arise from CenturyLink's efforts to escape its contractual obligations and subvert the statutory commands of the FAA.

Finally, CenturyLink complains that counsel has not submitted copies of each of its clients' arbitration agreements with CenturyLink. ECF No. 656 at 16 ("Keller's clients have not provided proof that each one has an arbitration client with CenturyLink."). But tellingly, CenturyLink never denies that it *has* arbitration contracts with Arbitration Claimants. And it has refused counsel's repeated requests to identify any individual clients of Keller Lenkner whom it contends are not subject to an arbitration agreement. Declaration of Warren Postman ("Postman Decl.") ¶¶ 7–8. Because CenturyLink has not actually *disputed* the existence of the arbitration agreements between the parties, there is no need for Arbitration Claimants to submit additional "proof" before opting out of the class. *Cf.* FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). *Piper* holds that this Court should honor the Arbitration Claimants' opt-out letter—regardless of

whether it comports with the specific opt-out procedures described in the proposed settlement or preliminary-approval order. As in *Piper*, it is uncontested that Arbitration Claimants:

> (i) are represented by separate counsel;

> (ii) are parties to a contract that gave them a right to arbitrate any claim encompassed by the class action and to avoid the complexities and burdens of class proceedings;

> (iii) have asserted their intent to arbitrate their claims rather than participate in the class action; and

> (iv) have individually elected to opt out of the class action and proposed settlement.

*Piper*, 71 F.3d at 304. Arbitration Claimants are entitled to immediately opt out and arbitrate their claims just as Park Nicollet was. And procedural roadblocks to their doing so is a violation of the FAA.

## II. CenturyLink's Insistence On Individual Signatures From Each Arbitration Claimant Violates *Piper* And The FAA, And Is Unnecessary When Counsel Have Been Retained To Act On Arbitration Claimants' Behalf

CenturyLink argues that each Arbitration Claimant must provide an individually signed opt-out form, and that Arbitration Claimants cannot opt out through counsel by having Keller Lenkner inform the Court of their wishes. ECF No. 656 at 8–12. CenturyLink derives this requirement from section 6.2 of the proposed settlement, but *Piper* makes clear that class members who opt out under the FAA do not need to comply with opt-out procedures imposed by the parties' settlement agreement. *See Piper*, 71 F.3d at 304 ("an unwilling class member's right to arbitrate may [not] be held hostage in this manner to the class action settlement process").

Remarkably, CenturyLink appears to suggest that the Fourteenth Amendment's Due Process Clause—which in fact *requires* that absent class members be freely allowed to opt out of a class—somehow *limits* Arbitration Claimants' ability to opt out. ECF No. 656 at 8 ("The specific requirements for opt outs that the Court ordered here reflect fundamental Due Process concerns in class action litigation."). But none of the cases that CenturyLink cites even remotely suggest that the Due Process Clause forbids absent class members to retain counsel to act on their behalf—or that the Due Process Clause prevents counsel from opting out multiple clients who have individually chosen to be excluded from the class. The quotation from *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810, at *9 (D. Minn. Oct. 18, 2012),[3] is part of a decision analyzing whether the settlement at issue had sufficient protections to avoid affecting the rights of absent class members without notice and consent; it does not in any way reflect a decision that parties should be limited in their ability to opt out of a class. Indeed, Judge Montgomery's opinion approved of the settlement procedures in that case after noting that absent class members had "the right to opt out or appear through an attorney." *Id.* at 10. And *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB, 2019 WL 95917, at *5 (E.D. Pa. Jan. 3, 2019), merely rejected the notion that a class member's decision to opt out of a settlement

---

3.   *See In re Zurn Pex Plumbing Prods. Liability Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810, at *9 (D. Minn. Oct. 18, 2012) ("The completed letter or opt-out form must be signed by the potential Settlement Class member having a legal interest in the property being opted out, even if represented by counsel. If the Settlement Class member has entered into a written or oral agreement to be represented by counsel, the opt-out form must also be signed by the attorney. The decision to opt out of a class action settlement is an individual decision and may not be made on behalf of a certified or putative class or on a mass or representative basis").

opted out the claims of his ex-wife, who had never submitted an opt-out form as required by the terms of the settlement agreement.[4] Neither of these cases holds or even suggests that absent class members cannot retain counsel to opt them out of a class-action lawsuit, or that counsel is forbidden to opt out multiple clients who have individually chosen to be excluded.[5]

None of the other cases that CenturyLink cites have any relevance to Arbitration Claimants' opt-out letter. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998), and *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 565 (9th Cir. 2019), hold (correctly) that a putative class representative or class counsel who files a rival class-action lawsuit cannot opt out the members of its proposed class from the separate class action. *Sharp Farms v. Speaks*, 917 F.3d 276, 298–99 (4th Cir. 2019), extended this holding to classes that have already been certified. It is of course true that a putative or certified class representative—or a lawyer who purports to represent a putative or certified class—cannot decide to opt out its class members from a separate class-action lawsuit. The absent class members have never retained that lawyer, and they never authorized the lawyer or the class representative

---

4.  *See In re Nat'l Football League Players' Concussion Injury Litig.*, No. 14-1995, 2019 WL 95917, at *5 (E.D. Pa. Jan. 3, 2019) ("Martin argues that her ex-husband, Christopher Martin's, act of opting out of the Settlement 'had the effect of opting out [Martin's] claim.' Pl.'s Opp. at 4-5. This is incorrect. The right to opt out of a class action is one that must be exercised individually. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998). *See also* William B. Rubenstein, *Newberg on Class Actions* § 9:49 (5th ed. 2013) ('The right to opt out in a Rule 23(b)(3) class action is considered an *individual* right.'").

5.  CenturyLink at times appears to suggest that it is problematic that counsel notified the Court of its clients' wishes in a single filing. ECF No. at 8–10. But CenturyLink cannot genuinely be suggesting that counsel should remedy this by filing 1,933 separate letters instead of a single one, which would be neither legally relevant nor a reasonable approach to communicating with the Court.

to act on their behalf. Allowing a stranger to make the opt-out decision for an absent

class member is a quintessential due-process violation.

That is not the situation here. Arbitration Claimants have *retained* Keller

Lenkner to act as their attorney in all CenturyLink–related matters, and Keller

Lenkner is fully authorized to act on their behalf. More importantly, each of the

Arbitration Claimants has *affirmatively instructed* Keller Lenkner to do so. *See*

Postman Decl. ¶¶ 3, 6, 8–10.[6] CenturyLink's suggestion that counsel is making the

opt-out decision for its clients without their knowledge or input is baseless and

false.[7] Each of these clients has made an individual decision to opt out, and their

---

6. A substantial number of clients have also indicated that they want to participate in the settlement and no longer wish to pursue arbitration. When Keller Lenkner receives such a response from a client, it terminates its engagement with that client and does not charge that client any fee.

7. CenturyLink has exhibited a regrettable pattern in this case of making assertions about the conduct of Keller Lenkner that, at best, it has no factual basis to support and, at worst, knows are materially misleading. These inaccurate statements will be addressed in more detail in response to CenturyLink's disqualification motion. But counsel will note two illustrative examples here. First, CenturyLink repeatedly tells the Court that Keller Lenkner has proposed a "mass opt out" and has violated the requirement that opt-out decisions "must be made on an individual basis, and not en masse for a multitude of class members at once." ECF No. 656 at 14. But every Arbitration Claimant made an affirmative, individual decision to opt out, and because CenturyLink is not a party to those attorney-client communications between Arbitration Claimants and their counsel, it has no basis to assert otherwise. Postman Decl. ¶¶ 10–11. Second, CenturyLink previously submitted materials to this Court asserting that Keller Lenkner misleadingly "solicited" class members to retain Keller Lenkner without informing them that the parties in this case had already reached a settlement. *See* ECF No. 508 at 7. That was false—Keller Lenkner did not conduct advertising for or otherwise solicit any new clients after the parties signed a settlement agreement on October 15, 2019. Postman Decl. ¶ 4. Moreover, even though undersigned counsel informed CenturyLink's counsel weeks ago that this accusation was false, CenturyLink submitted further fillings to this Court that expressly incorporate those allegations without correcting

decisions must be honored and implemented. Neither the Due Process Clause nor any other source of law prohibits absent class members from communicating their desire to opt out through counsel that they have individually retained. And there is no case holding that due process (or any other source of law) prohibits a law firm from opting out more than one of its clients at the same time.

CenturyLink falls back on the fact that the proposed settlement requires an individual signature from each class member who wishes to opt out. ECF No. 656 at 10–12. But *Piper* holds that the opt-out procedures established in a settlement or preliminary-approval order are irrelevant when a class member opts out to arbitrate its claims under the FAA. *See Piper*, 71 F.3d at 304. The statutory rights conferred by the FAA prevail over any court-approved process for handling opt-out requests, and neither CenturyLink nor this Court may burden those statutory rights by requiring Arbitration Claimants to submit an individual signature before exercising their right to arbitrate. *See id.* (holding that the district court abused its discretion and violated the FAA by requiring opt-out requests to wait until formal notice had been sent to the class under Rule 23(c)(2)). None of the cases that CenturyLink cites on pages 10–12 of its brief have any bearing on this situation, because the none of the opt-out requests in those cases were attempting to vindicate the right to arbitrate that the FAA protects. The only relevant precedent is *Piper*, which requires courts to subordinate their opt-out procedures when a class member asserts his rights under the FAA.

---

CenturyLink's misstatements. *See* ECF No. 565 at 7; ECF No. 637 at 2–3; ECF No. 636 at 5–6.

Moreover, even if *Piper* were not controlling on this issue, additional binding precedent makes clear that (1) an attorney may opt out his clients from a class action settlement by submitting a letter signed by the attorney on behalf of his clients, and (2) this Court retains inherent authority to recognize opt opts that depart from formal notice requirements. Indeed, the Eight Circuit has held that "whatever the merit of [a defendant's] technical objection [to an opt-out] may be, the legal propriety of attorneys signing their clients' opt-out requests cannot be impugned." *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 268 F.3d at 635. Moreover the Eight Circuit further added that "even if . . . class members violated the [district] court's order by failing personally to sign their opt-out requests, . . . the district court acted within its sound discretion in overlooking the violations in the 'interests of justice.'" *Id.*

Even apart from the FAA, the interests of justice plainly support recognizing Arbitration Claimants' opt outs. Each Arbitration Claimant has made a fully informed choice that she does not want to participate in the settlement. Each Arbitration Claimant has retained counsel and provided them with power of attorney. Counsel for each Arbitration Claimant has asked the Court for exclusion. And counsel for the proposed class agrees that counsel for Arbitration Claimants should be allowed to act on their behalf in this regard. ECF No. 675 at 2–6. The only reason offered for demanding a signature from Arbitrations Claimants is that their *adversary* claims this is necessary *to protect Arbitration Claimants*. Respectfully, Arbitration Claimants' individually retained counsel, having recently communicated with each Arbitration Claimant and having received her specific instructions, are better positioned to speak to the interests of Arbitration Claimants than is CenturyLink.

### III. CenturyLink's Insistence That Arbitration Claimants Provide Their Account Numbers Or Identification Numbers Violates *Piper* And The FAA, And Is Unnecessary To Process An Opt-Out Request

CenturyLink also claims that the Court must reject Arbitration Claimants' opt-out letter because it does not provide the account number or identification number of each Arbitration Claimant. ECF No. 656 at 13–15.

CenturyLink claims that Arbitration Claimants must provide this information because the settlement agreement's opt-out procedures require the provision of a CenturyLink account number or an identification number assigned by the settlement administrator. ECF No. 656 at 1 ("The Court should reject Keller's Mass Opt Out because it fails to satisfy the Preliminary Approval Order's mandatory opt-out requirements."); *id.* at 14 ("Courts regularly reject opt outs that fail to follow the requirements ordered by the court."). But CenturyLink's efforts to bind Arbitration Claimants to these opt-out procedures conflict with *Piper* and the FAA. *Piper* holds that the FAA requires courts to promptly honor an opt-out request from class members who assert an immediate right to arbitrate — regardless of whether the opt-out request comports with procedures established in a settlement agreement or preliminary-approval order. *See Piper*, 71 F.3d at 304; *see also* Parts I–II, *supra*. CenturyLink's attempt to deny Arbitration Claimants an arbitral forum unless they provide account or identification numbers is a clear violation of the FAA and *Piper*.

CenturyLink also makes a pragmatic argument, suggesting that the provision of an account number (or the provision of a claims-identification number) is needed to effectively implement the opt-out request. ECF No. 656 at 13–14. But this argument does not withstand scrutiny. To implement an opt-out request, one needs only to know the identity of the *person* who is opting out. And Arbitration Claimants have provided more than enough information by furnishing their names, addresses,

16

phone numbers, and e-mail addresses. There is no need to tie the identity of a person to any CenturyLink account. All that is needed is a way to identify the person so that she cannot be bound by the settlement going forward.

A person who is opting out is not seeking damages or any type of court-ordered relief from CenturyLink; she is simply trying to extricate herself from a class action. So there is no need for an account number to determine the "claims" she might have against CenturyLink. *See, e.g.*, ECF No. 656 at 13 ("CenturyLink and the Settlement Administrator need this identification information to confirm that a person opting out is a class member, and to identify the claim being opted out of the settlement."). *All* of her claims—whatever they may be—will be opted out of the settlement. And there is no need for CenturyLink to "confirm" that the person is a class member, because she is opting *out* of the class and not into it. There is also no need for CenturyLink to concern itself with class members with multiple accounts. *See* ECF No. 656 at 13 ("The identifying information for each Keller client in the Mass Opt Out . . . does not distinguish between multiple accounts for a single class member."). *All* of the individual's accounts—and all claims associated with those accounts— will be opted out of the class action.

CenturyLink raises the prospect that Arbitration Claimants might double dip by filing claims with the settlement administrator despite opting out of class. *See* ECF No. 656 at 13 ("Keller's clients purportedly participating in the Mass Opt Out could also be filing claims, knowingly or unknowingly"). But Arbitration Claimants do not dispute, and hereby stipulate, that if they submit a claim and receive payment under the settlement, all their claims will be released. To the extent such a Claimant

attempts later to bring a claim against CenturyLink, they will be subject to a defense in the same manner as any other class member who participated in the settlement.[8]

Moreover, despite CenturyLink's pleas that it needs account or identification numbers to identify Arbitration Claimants, CenturyLink's own papers make clear that this is normally not true. CenturyLink has repeatedly described the accounts of Arbitration Claimants and other Keller Lenkner clients when it believes doing so advances its interests. *See, e.g.*, ECF No. 656 at 17; ECF No. 636 at 9–11; ECF No. 627 at 8–9; ECF No. 512-21; ECF No. 508 at 12. Moreover, Keller Lenkner has repeatedly urged CenturyLink to identify the names of any parties whose accounts it cannot identify, so that Keller Lenkner can work with CenturyLink to identify those accounts. Postman Decl. ¶ 8. But CenturyLink has steadfastly refused to identify a single Keller Lenkner client whose account it cannot locate. *Id.* Even if the Court were to require that an Arbitration Claimant's identity be matched to a

---

8.  CenturyLink appears to suggest that every Arbitration Claimant's decision to opt out should be called into doubt because 11 Arbitration Claimants have submitted claim forms with the settlement administrator. *See* ECF No. 656 at 17. This is neither surprising nor pernicious, but simply reflects that, when thousands of individuals receive multiple communications from different sources, some of them may be confused. The settlement in this case itself acknowledges this potential. *See* ECF No. 469-1 at § 6.2.3 ("if a settlement Class Member submits a Claim Form and request for exclusion, the last submitted document will control"). But this issue is a direct result of CenturyLink violating its arbitration agreement with Arbitration Claimants. That agreement promised that CenturyLink would not attempt to resolve Arbitration Claimants' claims in a class action. *See* Keller Decl., Ex. 1 at 23–24; ECF No. 599-1. As the Supreme Court has observed, one of the primary reasons for class action wavers is to avoid the complexities that arise from class action notices. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 349 (2011) (explaining that class proceedings undermine the benefits of individual arbitration because they require procedural formality, including opt-out procedures for absent class members).

CenturyLink account before they can opt out, there would be no basis to deny an opt-out where CenturyLink has already identified, or with a modicum of good faith cooperation could easily identify, an opt-out's account.

Not only is the account or identification number requirement facially unnecessary for Arbitration Claimants, but it is also a material obstacle to opting out. Arbitration Claimants, many of whom no longer hold active accounts with CenturyLink, should not have to re-review their records for account numbers for services they may have ended many years ago or try to procure a settlement administration number that they may not have even received. This is especially true when *CenturyLink* has this information for many Arbitration Claimants at its fingertips and could easily supply it to the Court or Arbitration Claimants. *See De Leon v. Bank of Am.,* No. 6:09-CV-1251-ORL-28, 2012 WL 2568142, at *21 (M.D. Fla. Apr. 20, 2012) (denying preliminary approval of a proposed class action settlement in part because the opt out provision requiring a class member was overly burdensome where it required class members to search for and submit account numbers that defendants could access), *report and recommendation adopted,* No. 6:09-CV-1251-ORL-28, 2012 WL 2543586 (M.D. Fla. July 2, 2012); *see also Galloway v. Kan. City Landsmen, LLC*, No. 4:11-1020-CV-W-DGK, 2012 WL 4862833, at *6 (W.D. Mo. Oct. 12, 2012) (finding opt-out provision that required both emailing and mailing opt-out forms to be "unnecessarily onerous"). And the undue burden stemming from these requirements was no mistake: CenturyLink hopes that by erecting this unnecessary barrier it can hinder Arbitration Claimants' ability to opt out and bind them to settlement release for no compensation. *See De Leon*, 2012 WL 2568142, at *21. The Court should not require that Arbitration

Claimants' identities be linked to a CenturyLink account when this information is not necessary to exclude them from the class and, at a minimum, it should not refuse to recognize opt outs where CenturyLink has already identified or could easily identify a corresponding account.

## IV.   The Proposed Settlement Violates The Rules Enabling Act By Depriving Arbitration Claimants Of Their Substantive Right To Arbitrate Without Obtaining Their Affirmative Consent

The right to arbitrate is purely a matter of contract. Contracts create substantive rights, including the right to control the manner in which other contractual rights will be changed. And unlike most contractual entitlements, the substantive rights associated with agreements to arbitrate are guaranteed as a matter of federal law. *See* 9 U.S.C. § 1 et seq. Any argument that Rule 23 can be used to alter Arbitration Claimants' rights—including by extinguishing their right to arbitrate through mere silence rather than mutual, written assent—violates the Rules Enabling Act. The Federal Rules of Civil Procedure are true to their name; they are procedural only. They may not be used to "abridge, enlarge or modify" a federally protected right. *See* 28 U.S.C. § 2072(b) ("Such rules shall not abridge, enlarge or modify any substantive right."). If Arbitration Claimants affirmatively consent to a class settlement that extinguishes their right to arbitrate, then there is no problem under the Rules Enabling Act because they freely relinquished their substantive federal rights in exchange for something they value more. But if a class-action settlement deprives Arbitration Claimants of their right to arbitrate *without* obtaining their affirmative consent, then this will effectively rewrite their federally protected contract, which sets forth the manner by which its provisions can change.

**V.      Arbitration Claimants Are Not Asking The Court To "Amend" Or "Reconsider" Its Preliminary-Approval Order**

CenturyLink claims that allowing Arbitration Claimants to opt out would "effectively" amend the Court's preliminary-approval order. ECF No. 656 at 21–22. Not at all. *Piper* holds that the commands of the FAA and the need to accommodate a class member's desire to arbitrate trump the opt-out procedures described in a settlement agreement or preliminary-approval order. That does not "amend" or "modify" the preliminary-approval order; it merely recognizes that the order must yield to a federal statutory command. It is no different from acknowledging that a state statute must give way to a preemptive federal law. That does not change or alter the state statute in any way; it simply recognizes that federal law must be given effect in case of conflict. *See Close v. Sotheby's, Inc.*, 909 F.3d 1204, 1209–10 (9th Cir. 2018); Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 953 (2018).

CenturyLink is equally wrong to say that allowing Arbitration Claimants to opt out would "open the floodgates to any class member disregarding any of the Order's requirements and create chaos in the administration of this settlement." ECF No. 656 at 22. Arbitration Claimants have relied directly on the clear holding of circuit authority that authorizes parties to an arbitration agreement to opt out of a class settlement independently of the Rule 23 process. And far from attempting to circumvent the Court, Arbitration Claimants have submitted this request to the Court for its consideration and approval. If the Court applies *Piper* and recognizes Arbitration Claimants' right to opt out in this manner, that in no way will allow class members to disregard the Court's orders more broadly.

## CONCLUSION

CenturyLink's motion to enforce the preliminary approval order should be denied.

Dated: April 30, 2020                    Respectfully submitted.

                                         /s/ *Warren Postman*
                                         Warren Postman
                                         Keller Lenkner LLC
                                         1300 I Street, N.W.
                                         Suite 400E
                                         Washington, D.C. 2005
                                         (202) 749-8334 (phone)
                                         wdp@kellerlenkner.com

                                         Ashley C. Keller
                                         Keller Lenkner LLC
                                         150 N. Riverside Plaza, Suite 4270
                                         Chicago, Illinois 60606
                                         (312) 741-5220 (phone)
                                         (312) 971-3502 (fax)
                                         ack@kellerlenkner.com

                                         Jared D. Shepherd
                                         Hoff Barry, P.A.
                                         100 Prairie Center Drive, Suite 200
                                         Eden Prairie, Minnesota 55344
                                         (952) 941-9220 (phone)
                                         (952) 941-7968 (fax)
                                         jshepherd@hoffbarry.com

                                         *Counsel for Proposed Intervenors and*
                                         *Movants Keisha Covington, Daniel*
                                         *Sokey, Tiffany Van Riper, James*
                                         *Watkins, Jaclyn Finafrock, and Kelly*
                                         *Johnson*