# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION<br><br>This Document Relates to:<br>17-2832, 17-4613, 17-4614, 17-4615, 17-4616, 17-4617, 17-4618, 17-4619, 17-4622, 17-4943, 17-4944, 17-4945, 17-4947, 17-5001, 17-5046, 18-1573, 18-1572, 18-1565, 18-1562 | MDL No. 17-2795 (MJD/KMM)<br><br>DECLARATION OF BRIAN C. GUDMUNDSON IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS |

1.      I, Brian C. Gudmundson, am a partner at the law firm of Zimmerman Reed, LLP and am a member in good standing of the state Bar of Minnesota.  I am duly licensed to practice law before this Court and am one of the attorneys of record representing Settlement Class Representatives in this matter.  This Court appointed Zimmerman Reed as Co-Lead Class Counsel and Liaison Counsel to the Court.

2.      I submit this Declaration in support of Settlement Class Representative's Motion for Attorneys' Fees, Reimbursement of Costs and Expenses, and Service Payments for Settlement Class Representatives.  I have knowledge of the facts presented in this Declaration because I have been extensively involved in the prosecution of this litigation from inception to settlement and from preliminary approval through providing class notice, claims administration, and moving for final approval and an award of attorneys' fees and expense reimburse and service payments to Settlement Class Representatives.

3.      On January 4, 2018, the Court appointed Zimmerman Reed LLP as Plaintiffs' Interim Lead Counsel and Liaison to the Court, and additionally, appointed Geragos &

Geragos, APC and O'Mara Law Group as Plaintiffs' Interim Co-Lead Counsel.  The Court further appointed Gustafson Gluek PLLC, Henninger Garrison LLC, Hellmuth & Johnson, PPLC, and Roxanne Conlin & Associates, LLC, as members to the Plaintiffs' Interim Executive Committee (collectively, "Plaintiffs' Counsel") (ECF No. 25).

4.      In addition to these law firms, which the Court appointed to formal leadership positions, several other law firms contributed to the prosecution of this matter.  These firms include, Hodge & Langley Law Firm; Gardy & Notis, LLP; Attorney Alfred M. Sanchez; Walsh PLLC; Olsen Daines PC; and Fernald Law Group.

5.      Plaintiffs' Counsel worked cooperatively and efficiently in litigating what was a complex class action case.  Through the Settlement Agreement, Plaintiffs' Counsel obtained significant monetary and non-monetary relief for a nationwide Class of current and former CenturyLink customers that included approximately 17.2 million individuals and small businesses.  This Declaration provides the Court with information describing our efforts to bring this matter to a successful conclusion.

**Plaintiffs' Consolidated Class Action Complaint**

6.      On February 15, 2018, thirty-eight current or former CenturyLink customers, five of whom were later voluntarily dismissed without prejudice, filed a consolidated complaint against CenturyLink alleging systematic sales and billing practices that resulted in customers being charged amounts higher than promised during the sales process and imposing a variety of improper charges and fees.  Consolidated Class Action Complaint ("CCAC"), ¶ 5 (ECF No. 38).

7.      In the CCAC, Plaintiffs alleged that CenturyLink purposefully created a sales system designed to quote prices it would not honor. *Id.* at ¶¶ 71-72, 74, 77. According to the CCAC, CenturyLink relied on a labyrinth of customer databases that lacked sufficient capacity to track quoted prices, a sales methodology designed to encourage hyperaggressive sales tactics, including promising undeliverable prices to secure customers, and a myriad of exceptions, conditions, exclusions, and hidden fees undisclosed to customers. *Id.* at ¶¶ 68, 70, 81-84, 87, 92-95, 99-100, 108.

8.      Those tactics led to meaningless quoted costs of services and customers being billed for services at a higher rate than what CenturyLink had quoted. *Id.* at ¶¶ 80, 83, 88, 100. As a result, Plaintiffs asserted CenturyLink increased its customer base but many were charged and paid more than the amount they were promised. *Id.* at ¶¶ 80, 83. When customers called to validly cancel their services due to their overpayments, CenturyLink often charged them early termination fees. *Id.* at ¶¶ 84, 102, 116.

9.      Plaintiffs brought eight claims against CenturyLink: (1) violation of 47 U.S.C. §§ 201, et seq. and 47 C.F.R. § 64.2401, the Truth in Billing requirements, (2) Breach of Contract, (3) Breach of Duty of Good Faith and Fair Dealing, (4) Violation of State Consumer Protection Statutes in Colorado, Minnesota, Florida, Washington, Oregon, Missouri, New Mexico, Iowa, Nevada and Idaho, (5) Violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, (6) Negligent Misrepresentation, (7) Fraudulent Inducement, and (8) Unjust Enrichment. *Id.* at ¶¶ 422-544.

10.     All of these claims, except for the state-specific consumer protection statutes and breach of duty of good faith and fair dealing, were asserted on behalf of a proposed

nationwide Class of current and former CenturyLink customers. Id. at ¶¶ 415, 422-445, 483-544. Plaintiffs' brought a breach of duty of good faith and fair dealing claim on behalf of five subclasses made up of CenturyLink customers residing in Arizona, Minnesota, North Carolina, Oregon, and Wisconsin. Finally, Plaintiffs' brought ten consumer protection claims on behalf of their respective state subclasses.

**Management of Time and Expenses**

11.     After the Court appointed them, Co-Lead Counsel established measures to ensure the matter was litigated efficiently and advanced the best interests of the Plaintiffs and proposed Class.

12.     Co-Lead Counsel required all Plaintiffs' counsel to submit monthly time reports to Co-Lead Counsel and to provide guidelines and directives for case staffing, time keeping , cost reimbursement, and common benefit attorney time and expenses.

13.     Co-Lead Counsel mandated that only reasonable time and expenses expressly authorized by Co-Lead Counsel and performed for the common benefit of the Plaintiffs and Class would be included in any application for an award of attorneys' fees and expenses. Co-Lead Counsel detailed the type of authorized and unauthorized work that would appropriately be included or excluded on the monthly time submissions, and described the types of information and level of detail required for time entries, including the firm name, attorney name, attorney's title and years of experience, a description of the task performed, the amount of time performed on the task, the authorizing attorney, the billing rate of the timekeeper, and a code describing the purpose of the task.

14.     Co-Lead Counsel also established harmonized hourly rates approved in the District of Minnesota.  The hourly rates were capped according to the years of experience of the timekeeper in the following manner:

| Years of Practice | Hourly Rate |
|---|---|
| *For Partners:* | |
| 1-2 years | Up to $450 |
| 3-5 years | Up to $495 |
| 6-10 years | Up to $625 |
| 11-20 years | Up to $725 |
| 21-30 years | Up to $795 |
| 30+ years | Up to $895 |
| *For Associates:* | |
| 1-6 years | Up to $495 |
| 6+ years | Up to $625 |
| *For Paralegals and Law Clerks* | |
| Any amount | Up to $300 |

15.     Co-Lead Counsel also provided guidelines on the types of expenses that would be appropriately included in a request for reasonable expense upon successful completion of this litigation.  These included reasonable limitations on expenses expected to be incurred during the court of litigation.

16.     Co-Lead Counsel closely reviewed the submitted time and expense reports.

**Case Development and Litigation Strategy**

17.     Plaintiffs' Counsel undertook extensive research into the facts and conduct giving rise to the claims, and developed a strategy to pursue claims on a nationwide basis that would include all current and former purported Class Members who were injured because of CenturyLink's alleged misconduct.  Plaintiffs' Counsel believed the broad scope of individual complaints consolidated in the MDL, actions from two Attorneys

5

General in Minnesota and Arizona, and a Whistleblower Complaint discussing CenturyLink's billing and sales practices suggested CenturyLink's misconduct occurred on a largescale, nationwide basis. Plaintiffs' Counsel devoted significant time and effort to analyzing the legal and factual issues of seeking and obtaining relief for a nationwide class.

18.     Seeking certification of a nationwide class required significant legal and factual research. CenturyLink's alleged violation of the Truth in Billing Act was important to that strategy because it provided a federal claim that applied uniformly to all class members. Indeed, a previous class action against CenturyTel was certified for a nationwide class claiming a violation of Truth in Billing Laws. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (2007). While that case considered just a single alleged misconduct, Class Counsel here pursued numerous types of overbilling and sales misconduct that stemmed from what Class Counsel alleged was a deliberate pattern of misconduct designed to obtain illicit financial benefits at its customers' expense.

19.     Class Counsel also brought a claim under the Louisiana Unfair Trade Practices Act which could apply to a nationwide class under a choice-of-law analysis because CenturyLink was headquartered in Louisiana and its primary billing and sales decisions occurred there. Finally, Plaintiffs brought several other state law claims which, due to similar state laws, would apply on a nationwide basis because no conflict of interest. In analyzing these claims, Class Counsel performed surveys of each relevant state's laws concerning breach of contract, unjust enrichment, breach of the duty of good faith and fair dealing, negligent misrepresentation and fraudulent inducement.

20.     In addition to a nationwide class, Class Counsel sought ten state subclasses pursuing claims under their respective state consumer protection statutes and, in some instances, a claim of breach of the duty of good faith and fair dealing.  The states chosen – Arizona, Colorado, Florida, Idaho, Iowa, Minnesota, Missouri, Montana, Nevada, New Mexico, North Carolina, Oregon, Washington, and Wisconsin – represented a significant portion of CenturyLink's customers.

21.     Plaintiffs' Counsel also committed substantial time to vetting the named Plaintiffs, their factual circumstances and potential claims, and their commitment to the litigation and representing the interests of the Class.

**Litigation History**

22.     On April 2, 2018, soon after Plaintiffs filed the CCAC, ten entities, which CenturyLink termed the "Operating Companies," filed a Motion to Intervene for the Limited Purpose of Moving to Compel Arbitration and Enforce Class-Action Waivers and to Join in Defendant CenturyLink Inc.'s Motion for Temporary Stay of Discovery ("Motion to Intervene").  Mot. to Intervene, Apr. 2, 2018 (ECF No. 80).

23.     CenturyLink, Inc. and the Operating Companies asserted CenturyLink, Inc. was not the proper defendant in this action and that the Operating Companies, who supposedly contracted with the Plaintiffs and provided their services, were the proper defendants.  *See* Mem. In Supp. of Mot. to Intervene, Apr. 2, 2018 (ECF No. 82).  The Operating Companies sought to intervene to enforce certain arbitration and class-action waiver provisions that CenturyLink argued governed Plaintiffs' service agreements.  *Id.*

24.     Also, on April 2, 2018, CenturyLink filed a Motion to Temporarily Stay Discovery Pending Resolution of Forthcoming Motion to Compel Arbitration and Enforce Class Action Waivers.  CenturyLink asserted that because, in its view, it had "substantial grounds" to assert certain arbitration provisions and class action waivers applied to Plaintiffs, the Court should stay all discovery related to Plaintiffs' claims.  *See* Mem. of L. In Supp. of Mot. to Temporarily Stay Discovery, Apr. 2, 2018 (ECF No. 89).

25.     On April 23, 2018, Plaintiffs' submitted their Opposition to the Motion to Temporarily Stay Discovery, Apr. 23, 2018 (ECF No. 119).   Plaintiffs' asserted CenturyLink's position on the arbitration provisions and class action waivers was unfounded and that the provisions at issue were invalid and unenforceable.  Additionally, Plaintiffs asserted CenturyLink's delay of discovery was a tactical decision to undermine the consolidated proceedings in the MDL and that, regardless of whether CenturyLink succeeded in enforcing arbitration provisions and class action waivers, Plaintiffs would ultimately take discovery concerning its sales and billing practices.

26.     On April 28, 2018, CenturyLink additionally moved to Compel Arbitration and Enforce Class Action Waivers ("Mot. to Compel Arb."). (ECF No. 122).  CenturyLink asserted the named Plaintiffs agreed to arbitrate claims against CenturyLink and the Operating Companies and waived their rights to bring a class action.  Mem. in Supp. of Mot. to Compel Arb. 7-8 (ECF No. 124).

27.     CenturyLink claimed that 37 of the 38 Named Plaintiffs assented to the arbitration and class action waiver provisions multiple times, including by: (1) "clicking" to accept contract terms when installing internet services; (2) "clicking" to accept contract

8

terms in order to use online payment features; (3) receiving mail and email confirmation of the terms; (4) "clicking" to accept contract terms prior to activating television services; (5) "clicking" to accept contract terms prior to completing an online purchase; and, (6) continuing services after a 2017 contract amendment.  *Id.* at 2-3, 7-8.

28.     Also, on April 28, 2018, CenturyLink filed an Alternative Motion to Dismiss under Rules 12(b)(2) and 12(b)(6) ("Mot. to Dismiss"). (ECF No. 132).   CenturyLink asserted because CenturyLink, Inc. was merely a holding company that had no interaction with the Plaintiffs, the Court had no personal jurisdiction over it. Mem in Supp. of Mot. to Dismiss 10-22 (ECF No. 134).  CenturyLink also argued Plaintiffs' federal Truth in Billing claim should be dismissed because the harms supposedly did not fall within the proscriptions of the law.  *Id.* at 23-24.

29.     On May 8, 2018, the Court permitted Plaintiffs to conduct reasonable discovery related to CenturyLink's Motion to Compel Arbitration and Motion to Dismiss, but stayed all other discovery.  (ECF No. 145).

30.     The Parties proceeded through extensive discovery on these issues. Plaintiffs responded to 730 written discovery requests and CenturyLink deposed 25 Plaintiffs. Plaintiffs served CenturyLink with requests for production of documents and interrogatories and reviewed tens of thousands of pages of documents.  Plaintiffs took seven depositions of CenturyLink, including both Rule 30(b)(1) and 30(b)(6) depositions. The Parties also briefed and argued several discovery disputes.

31.     On August 23, 2018, after completing discovery related to CenturyLink's motions, Plaintiffs filed their memoranda in opposition to the Motion to Intervene (ECF

No. 216), Motion to Compel Arbitration (ECF No. 253), and Motion to Dismiss (ECF No. 229). In their oppositions to the Motion to Intervene and the Motion to Dismiss, Plaintiffs contended that CenturyLink, Inc. was the appropriate Defendant because, among other things, it controlled and centralized the billing practices, policies, and systems for all of the Operating Companies through the use of Affiliated Interests Services Agreements ("AISAs"). *See* Opp. to Mot. to Intervene 8-9 (ECF No. 216).

32.     Plaintiffs asserted CenturyLink used a three-tiered system where: (1) CenturyLink, Inc.'s directors and officers oversaw the Service Companies, (2) the Service Companies fulfilled all functions related to management, sales, billing, customer service, and collections on behalf of the Operating Companies, and (3) the Operating Companies contracted with and provided customers with access to CenturyLink's networks. Opp. to Mot. to Dismiss 6-11 (ECF No. 229). CenturyLink, Inc. owned 100% of the Operating Companies and was the sole member of each of the Service Companies. *Id.* at 12. Plaintiffs asserted this system enabled CenturyLink to retain control over all aspects of the CenturyLink enterprise while attempting to insulate itself from liability. *Id.* at 6. Therefore, Plaintiffs asserted, CenturyLink, Inc. was the proper defendant.

33.     Plaintiffs also opposed CenturyLink's Motion to Compel Arbitration. *See* Mem. In Opp. to Mot. to Compel Arb. (ECF No. 253). Among other things, Plaintiffs argued the discovery showed CenturyLink's asserted arbitration provisions were invalid for a number of reasons, including but not limited to: (1) they were never presented to certain Plaintiffs at all; (2) they were presented after an agreement was reached, were hidden, or otherwise inconspicuous in violation of the law; and (3) they contained

conflicting directives, including requiring disputes be brought "in court" while simultaneously requiring arbitration. *Id.* at 11-14, 20-23, 46-48, 50-62. Plaintiffs asserted these infirmities undermined fundamentally all the arbitration provisions CenturyLink asserted applied to Plaintiffs.

34.     On November 21, 2018, the Operating Companies filed a Reply to Plaintiffs' Opposition to their Motion to Intervene (ECF No. 296), and CenturyLink, Inc. filed Replies to Plaintiffs' Opposition to its Motions to Dismiss (ECF No. 305) and to Compel Arbitration (ECF No. 295).

35.     The Parties submitted additional briefing on the Motion to Intervene, with Plaintiffs filing a Sur-Reply on January 18, 2019 (ECF No. 360) and the Operating Companies filing a response on March 22, 2019 (ECF No. 396).

36.     All three motions are still pending before this Court.

**Settlement Negotiations and the Settlement Agreement**

37.     Following the extensive discovery and briefing on Defendant's initial motions, the Parties agreed to mediate. They met on May 20, 2019 before the Hon. Layn R. Phillips in New York City.

38.     Prior to mediation, the parties drafted extensive mediation statements summarizing Plaintiffs' claims, CenturyLink's defenses, the procedural posture of the case, information about similar cases against CenturyLink, and analyses of CenturyLink's billing systems and business operations. Additionally, the Parties provided all briefing on CenturyLink's pending motions.

39.     Despite extensive, arms-length negotiations, the Parties did not come to an agreement during mediation but continued to negotiate in consultation with Judge Phillips' office.

40.     On May 24, 2019, the Parties agreed to the terms of a potential settlement and signed an initial term sheet.

41.     Acceptance of the terms of the agreement was made contingent upon confirmatory discovery that would test CenturyLink's representations and warranties given during the mediation process and the signing of a final, master Settlement Agreement.

42.     Plaintiffs pursued extensive and iterative confirmatory discovery of CenturyLink, focused largely on the scope of class damages. Plaintiffs served a total of 39 interrogatories, eight requests for admission, and took CenturyLink's Rule 30(b)(6) deposition.  CenturyLink responded to all requests.

43.     Additionally, on October 3, 2019, Plaintiffs' Counsel observed the deposition of CenturyLink's expert, David Hall, which was conducted by the Office of the Minnesota Attorney General.  *Id*.

44.     Among other things, confirmatory discovery indicated that:

(a) CenturyLink had approximately 17.2 million customers from January 1, 2014 to the present date ("Relevant Time Period");

(b) Of the 17.2 million customers, approximately 6.6 million were current customers and 10.6 million were former customers;

(c) CenturyLink had not performed any analyses or audits to determine the total number of customers overbilled or the amount overbilled on a Classwide basis;

(d) To determine the number of overbilled customers or the amount overbilled on a Classwide basis would require CenturyLink to review the individual records of each of its customers;

(e) CenturyLink has a Customer Advocacy Group ("CAG") that responds to escalated and unresolved complaints;

(f) During the Relevant Time Period, the CAG received complaints from less than 1% of CenturyLink's customers;

(g) Less than half of the complaints received by the CAG were related to overbilling or overpayment;

(h) The CAG provided less than $2.5 million in adjustments during the Relevant Time Period to resolve the complaints, including some related to overbilling;

(i) The average adjustment amount made by the CAG over the Relevant Time Period was $68;

(j) Apart from the CAG, CenturyLink's customer care agents issued tens of millions of dollars annually to resolve customer complaints; and,

(k) CenturyLink had reimbursed, or was in the process of reimbursing, all customers affected by systematic billing issues, including certain specific issues identified by the Minnesota AG and others.

45.    Based on confirmatory discovery and the litigation of this case, Co-Lead Counsel believe the Settlement to be fair, adequate, and reasonable.

**Terms of the Settlement Agreement**

46.    Under the Settlement, the Settlement Class is defined as:

All persons or entities in the United States who are identified by CenturyLink as a residential or small business customer and who, during the Class Period, had an account for local or long distance telephone, internet, or television services with one or more of the Operating Companies.

47.    The Settlement Class excludes the Court, the officers and directors of CenturyLink, Inc. or any of the Operating Companies, and persons who timely and validly request exclusion from the Settlement Class.

48.    Of the approximately 17.2 million Class Members, approximately 6.6 million are current customers and 10.6 million are former customers.

49.    CenturyLink agreed to pay $15.5 million to create a non-revisionary, capped Primary Fund, plus $3 million to pay for a Notice and Settlement Administration Fund; and, if those costs exceed $3 million, CenturyLink will pay half of any additional costs for the next million.  Settlement Agreement and Release ("SAR") §§ 1.25, 1.30, 2.2.1., Oct. 16, 2019 (ECF No. 469-1).

50.    The Net Primary Fund – the amount of the Primary Fund remaining after deducting the costs of proposed Service Payments to Settlement Class Representatives and the Fee, Cost, and Expense Award – will be distributed by the Settlement Administrator, Rust Consulting Co., to Settlement Class Members who make valid Claims pursuant to the Distribution Plan.  *See id*. at § 3.

51.    Pursuant to the Distribution Plan, Settlement Class Members may submit a claim to be payed from the Net Settlement Fund by submitting either: (1) a Flat Payment Claim or (2) a Supported Document Claim.  *Id*. at §§ 3.2.1, 3.2.2.  For both types of Claims Claimants must submit a timely Claim Form to the Settlement Administrator.  *Id*. at §§ 1.6, 5.2, Ex. 7.

52.    When submitting a Claim Form, Settlement Class Members must assert they paid CenturyLink for unauthorized, undisclosed, or otherwise improper charges, and were

not previously compensated for their overpayment.   The types of compensable overpayments include: (1) promised one rate during the sales process but paid a higher rate; (2) paid for services or equipment not ordered; (3) paid for nonexistent or duplicate accounts; (4) paid for services ordered but never delivered or not delivered as promised; (5) paid for services that were previously and appropriately cancelled; (6) paid for equipment that was previously returned; (7) paid for an unwarranted early termination fee; (8) incurred costs resulting from an account being improperly sent to collections.  *Id.* at Ex. 7 (Claim Form).

53.     The Claim Form requires all Claimants to provide: (a) their name and basic contact information, including current address, email, and phone number; (b) either their Claimant Identification Number as indicated on the Claimant's notice, or their CenturyLink account number, (d) the types of services received from CenturyLink, (e) the state in which services were received, (e) the timeframe during which the Claimant received services, and (f) preferred manner of payment.  *Id*. at Ex. 7.

54.     For a Flat Payment Claim, a Class Member submitting a Flat Payment Claim need not provide any documentation supporting the fact or amount of the overpayment beyond the information required in the Claim Form.  *Id*.  The Claimant must instead indicate on the Claim Form that they were injured by selecting the type of compensable overcharge they assert.  The Claimant must also confirm under penalty of perjury that the statements provided are truthful and that neither the Claimant, nor anyone on his or her behalf, previously accepted reimbursement or other compensation for the overcharges asserted.  *Id.*

55.    A Class Member submitting a Supported Document Claim must submit a completed Claim Form and provide a narrative of their injury and documents evidencing the amount the Claimant overpaid to CenturyLink.  *Id*.  Supporting documents may include chat transcripts, correspondence, or other communications with CenturyLink, contemporaneous notes, and copies of billing statements or payment receipts.  *Id*.  The Settlement Administrator will review all submitted Claims for completeness, validity, accuracy, and timeliness, and will implement reasonable measures designed to prevent fraudulent claims.  *Id*. at §§ 5.1-5.4.

56.    Any Claim determined by the Settlement Administrator to be timely and valid will receive a payment from the Net Settlement Fund.  *Id*. at §§ 5.2, 3.2.1, 3.2.3.

57.    A Flat Payment Claim will result in an award of $30 multiplied by the Pro Rata Multiplier, which may increase or decrease the award based upon how many valid claims are made.  *Id*. at §§ 3.2.1, 3.3.2.

58.    A successful Supported Document Claim will permit the Claimant to receive the amount of his or her overpayment multiplied by a Litigation Risk Factor of 40% and by the Pro Rata Multiplier.  *Id*. at §§ 3.2.2, 3.3.3. If the amount of the Supported Document Claim is less than the amount of a Flat Payment Claim, the Claimant will receive the amount of the Flat Payment Claim instead.  *Id*. at § 3.2.3.

59.    The Settlement also provides non-monetary relief, under which CenturyLink must certify its compliance for three years with several business practices in all states where it does business. *Id*. at § 2.1.  These business practice requirements are designed to

16

prevent instances of future systematic, intentional overbilling and misleading sales practices, and include prohibitions on false statements and omissions during sales. *Id*.

60. In consideration of the monetary and non-monetary relief, the Settlement Class includes a release of claims. *Id*. at § 2.3

61. The Settlement also sets forth a Notice Plan that contains substantial direct and indirect notice to proposed Settlement Class Members. *Id*. at § 4.

62. The Settlement Agreement provides direct notice to current CenturyLink customers through Bill Notice. *Id*. at §§ 4.3.1., 4.3.2, 4.3.3. For Settlement Class Members who receive their billing statements from CenturyLink by U.S. Mail, CenturyLink will issue the Bill Notice in billing statements mailed to Settlement Class Members. *Id*. at § 4.3.1. For those who receive their billing statements electronically, CenturyLink will include a link to the Bill Notice in the email sent to Settlement Class Members that lets them know their billing statement is ready to be viewed. *Id*. at § 4.3.2. Additionally, CenturyLink's website will include a link to the Bill Notice. *Id*. at § 4.3.3.

63. For Settlement Class Members who are former CenturyLink customers, the Settlement Agreement provides direct notice through either Email Notice or Postcard Notice. *Id*. at § 4.4. The Settlement Administrator will send an Email Notice to those for whom CenturyLink possesses an email address and to those for whom an email address was identified through the email appends process. *Id*. at §§ 4.4.1, 4.4.2. Former customers who do not receive an Email Notice or for whom the Settlement Administrator receives a notification that the Email Notice was undeliverable will receive a Postcard Notice sent to

the U.S. postal address provided by CenturyLink, subject to any corrected addresses identified through the National Change of Address Database. *Id*. at §4.4.3.

64.     In addition to direct notice, the Settlement Administrator will issue indirect notice  through four weeks of ads using the Google Display Network, which reaches millions of websites, news pages, blogs, and Google sites, and creating "keyword searches" that display ads when users search specific keywords in common search engines.

65.     The Court-approved notices contain information about the reason for the notice, the subject matter of the litigation, the criteria to be a Settlement Class Member, the relief provided by the Settlement, rights and requirements to object or opt out of the Settlement, and deadlines for all actions. *Id.* at § 4.5.

66.     The Long-Form Notice posted on the Settlement Website also provided additional information on the legal rights and options available to the Settlement Class, including how to submit a claim, how to opt out, how to object, the date, location, and time of the Fairness Hearing, how to contact Settlement Class Counsel, and attorneys' fees, costs, and expenses and Service Payments. *Id.* at § 1.24, Ex. 2.

67.     The Settlement allows Settlement Class Counsel to make a reasonable request for fees up to 33 1/3 percent of the total value of the Settlement Funds plus reasonable costs and expenses to the Court.  *Id*. at §§ 1.15, 2.2.4.   It also allows CenturyLink to respond as it deems appropriate. *Id*.

68.     Any attorneys' fees, costs and expenses awarded by the Court will be paid by the Settlement Administrator from the Primary Fund. *Id*. at § 2.2.4.  The finality or

effectiveness of the Settlement will not be dependent on the Court awarding Plaintiffs' Counsel any particular amount on their petition.  *Id.*

69.     The Settlement also permits Settlement Class Counsel to apply to the Court for an award of Service Payments to the Settlement Class Representatives not to exceed two thousand five hundred dollars ($2,500.00) each, to reward the Settlement Class Representatives for their substantial effort to respond to discovery, provide personal documents, be deposed, and otherwise assist in the prosecution of the action.

70.     The Court Preliminarily Approved the Settlement on January 24, 2020, conditionally certifying the Settlement Class and appointing Settlement Class Counsel and Settlement Class Representatives and ordering notice to be issued to the Settlement Class. (ECF No. 528).

**Post Settlement Work**

71.     In addition to usual work to effect the approval process, this case has included substantial post-Settlement work due to efforts by the law firm Keller Lenkner, LLC ("Keller Lenkner"), to undo parts or all of the Preliminarily Approval Order.

72.     Specifically, Keller Lenkner appealed the Preliminary Approval Order to the Eighth Circuit asserting that it prevented Class Members from immediately arbitrating their Claims against CenturyLink.  (ECF No. 534) (notice of appeal).  Keller Lenkner filed a Motion to Stay Preliminary Approval Order Pending Appeal in this Court, which Settlement Class Counsel opposed, and which the Court denied.  Pls.' Opp. to Movants Mot. for Stay Pending Appeal (ECF No. 563); Mem. of L. & Ord. (ECF No. 569).

73.     Subsequently, Keller Lenkner filed a Motion to Intervene and Compel Arbitration (ECF No. 598) and has sought to opt out 1,978 of its purported 22,000 clients through a letter to the Court.  (ECF No. 631).  The validity of that "mass" opt out is the subject of motion practice and has not been resolved.  *See* CenturyLink, Inc.'s Mot. to Enforce Prelim. Approval Order (ECF No. 655); Arbitration Claimants' Opp. to Mot. to Enforce Prelim.  Approval Order (ECF No. 690); MDL Consumer Pls.' Resp. to Mot. to Enforce Prelim. Approval Order (ECF No. 675).

74.     CenturyLink, Inc. and the Operating Companies have also filed a Mot. to Disqualify Counsel and Require Corrective Notice related to Keller Lenkner's conduct. (ECF No. 634).  Both Keller Lenkner (ECF No. 714)  and Plaintiffs (ECF No. 726) have responded to this motion.  Keller Lenkner's Motion to Intervene and Compel Arbitration and CenturyLink's Motion to Disqualify Counsel and Require Corrective Notice are ongoing.

**Settlement Administration**

75.     Following preliminary approval, CenturyLink and the Settlement Administrator, Rust, endeavored to provide notice to the Settlement Class as set forth in the Notice Plan.

76.     On May 27, 2020, CenturyLink informed Settlement Class Counsel that a query CenturyLink ran to identify all customers in the Class did not execute properly.  Due to this error, information for approximately 6% of Settlement Class Members was inadvertently not provided to the Settlement Administrator, and therefore, those former customers have not yet received notice of the Settlement.  CenturyLink is currently

undertaking research to confirm the exact scope of the issue, and the Administrator will promptly issue Notice to these Settlement Class Members, who will be provided 60 days to submit a claim, object, or opt out.

77.     As of the date of this Declaration, the Settlement Administrator has received four objections and 206 requests for exclusion.

78.     Based on current claim rates, the Parties expect the Pro Rata Multiplier to increase the value of the Flat Payment Claims and Supported Document Claims.

**Services of Settlement Class Representatives Benefiting the Class**

79.     The Settlement allows Settlement Class counsel to seek up to $2,500 for Class Representative service awards to Settlement Class Representatives for work performed in advancing the litigation.  The Primary Fund will fund any service awards the Court orders.

80.     Settlement Class Counsel seek awards for thirty-four individuals, comprised of the thirty-three Settlement Class Representatives, and plaintiff Frank Carrillo, who served as a class representative in the underlying Florida action, *Carrillo, et al. v. CenturyLink, Inc., et al.*, 17-cv-1309 (M.D. Fla.).  While Mr. Carrillo was not named as a Plaintiff in the CCAC, he participated in providing information and assisting in the investigation of this matter, which provided significant assistance to Plaintiffs' Counsel and their assessment of the case.  His effort, like the Settlement Class Representatives, merits inclusion in Settlement Class Counsel's request for service awards.

81.     The Settlement Class Representatives spent considerable time and effort assisting Plaintiffs' Counsel by: (1) signing their names to publicly filed lawsuits and

documents; (2) searching their records and providing relevant documents and information responsive to CenturyLink's 730 written discovery requests to the CCAC's named Plaintiffs; (3) consulting with and advising Plaintiffs' Counsel throughout the litigation; (4) preparing for and sitting for depositions (in the case of 25 Plaintiffs); (5) advocating on behalf of the class members; and/or (6) assisting Plaintiffs' Counsel with securing a favorable settlement by providing factual information and reviewing and approving the Settlement's terms.

**The Request for Attorneys' Fees and Expenses is Reasonable**

82.    Plaintiffs' Counsel invested significant time and effort advancing this heavily litigated and complex case.  From its inception to present, Plaintiffs' Counsel incurred $9,239,660.75 in lodestar after harmonizing the timekeeper rates of Plaintiffs' counsel's attorneys and staff.  In all, Plaintiffs' Counsel expended 17,877.58 hours on behalf of the Plaintiffs and Class.

83.    Although the total lodestar exceeds $9 million, which continues to rise through post-Settlement efforts, including to address motions involving Keller Lenkner, Settlement Class Counsel seek only $6,166,667 in attorneys' fees.  If awarded in full, the requested attorneys' fees will represent a substantial negative multiplier.

84.    Total expenses incurred by Plaintiffs' Counsel to date in this matter are $325,608.54.

85.    Co-Lead Counsel mandated and collected monthly time submissions from Plaintiffs' Counsel, conducted a multi-layered review of those time submissions, and excluded time and expenses deemed non-compensable.  Should the Court desire to review

any of time or expense records, Settlement Class Counsel will provide them in any form the Court deems appropriate.

86.     Should the Court award attorneys' fees and expense reimbursement, Co-Lead Counsel will distribute any such award on a fair and reasonable basis applying factors courts typically consider in awarding fees in class action litigation. These factors include each firm's contribution to the litigation for the benefit of the Settlement Class, the risks borne by counsel in litigating this complex case on a contingency-fee basis, leadership and other roles assumed, lodestars, the quality of the work performed, contributions made, the magnitude and complexity of the assignments executed, and the time and effort expended by counsel.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 2, 2020                                 */s/ Brian C. Gudmundson*
                                                    Brian C. Gudmundson