**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **IN RE: CENTURYLINK SALES PRACTICES AND SECURITIES LITIGATION**<br><br>This Document Relates to:<br>17-2832, 17-4613, 17-4614, 17-4615,<br>17-4616, 17-4617, 17-4618, 17-4619,<br>17-4622, 17-4943, 17-4944, 17-4945,<br>17-4947, 17-5001, 17-5046, 18-1573,<br>18-1572, 18-1565, 18-1562 | **MDL No. 17-2795 (MJD/KMM)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 3

I.     Review of the MDL Proceedings ......................................................... 3

II.    The Settlement ......................................................................................... 5

      A.     The Settlement Class ................................................................. 6

      B.     The Settlement Benefits ............................................................ 6

            1.     Non-Reversionary Primary Fund. ................................ 6

            2.     Notice and Administration Fund. ................................ 6

            3.     Consumer Business Practices. ...................................... 7

      C.     The Notice and Claims Program ........................................... 7

      D.     Claims, Objections, and Opt Outs ....................................... 9

      E.     Attorney's Fees and Expenses and Service Awards ........................................... 10

      F.     Release of Claims ..................................................................... 11

ARGUMENT ............................................................................................................... 11

I.     The Court Should Finally Approve the Settlement. ....................... 11

      A.     The Class Was Adequately Represented. ........................... 12

      B.     The Proposed Settlement Was Negotiated at Arm's Length. ............................. 13

      C.     The Relief is Fair, Reasonable, and Adequate. ................. 14

            1.     *The Settlement is Fair When Weighed Against the Merits of Plaintiffs' Case.* ........................................ 14

                a.     <u>The Settlement's benefits.</u> ........................... 15

        b.    The risk of continued litigation .............................................. 16

        c.    The range of potential recoveries. ......................................... 17

    2.    *The Amount of Opposition to the Settlement.* .................................... 18

        a.    Objectors Sparks, Koehler, and Pumphrey. ......................... 19

        b.    Objectors McDonald, Suppes, and Poetz. ............................ 20

        c.    Professional Objector Scheffler. ......................................... 21

        d.    Opt Out Requests. .............................................................. 25

    3.    *The Terms Relating to Attorney's Fees and Expenses are Reasonable.* .................................................................................. 26

  D.   Class Members Are Treated Equitably Relative to Each Other. ................. 26

II.   The Court Should Certify the Proposed Settlement Class. .................................... 26

  A.   The Settlement Class Meets the Requirements of Rule 23(a). ......................... 27

    1.    *Numerosity.* ...................................................................................... 27

    2.    *Commonality.* .................................................................................. 29

    3.    *Typicality.* ....................................................................................... 31

    4.    *Adequacy.* ........................................................................................ 33

  B.   The Settlement Class Meets the Requirements of Rule 23(b). ......................... 35

    1.  *Predominance.* ................................................................................. 35

    2.  *Superiority.* ..................................................................................... 38

III.   Notice to the Settlement Class Complied with Due Process and Rule 23. ........... 39

CONCLUSION ...................................................................................................... 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Nat'l Football League*,
No. 4-76-Civil-123, 1977 WL 1497 (D. Minn. Aug. 1, 1997)....................................15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................26, 27, 37, 38

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) ...............................................................................31, 35

*Beck v. Maximus, Inc.*,
547 F.3d 291 (3rd Cir. 2006)........................................................................32

*Briles v. Tiburon Fin. LLC*,
No. 15-cv-0241, 2016 WL 4094866 (D. Neb. Aug. 1, 2016) ...............................passim

*Caroline C. v. Johnson*,
174 F.R.D 452 (D. Neb. 1996) .....................................................................28

*Carter v. Forjas Taurus S.A.*,
2016 WL 3982489 (S.D. Fla. Jul. 22, 2019) ...................................................22

*Chaffin v. Rheem Mfg. Co.*,
904 F.2d 1269 (8th Cir. 1990) .....................................................................31

*Cortez v. Nebraska Beef, Inc.*,
266 F.R.D. 275 (D. Neb. 2010) ...............................................................32, 33

*Cullan & Cullan LLC v. M-Qube, Inc.*,
No. 13-cv-0172, 2016 WL 5394684 (D. Neb. Sep. 27, 2016) ..............................35

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995) .......................................................................29

*Dryer v. Nat'l Football League*,
No. 09-cv-2182, 2013 WL 5888231 (D. Minn. 2013) .....................................14, 17

*Grunin v. Int'l House of Pancakes*,
513 F.2d (8th Cir. 1975) ...........................................................................14, 15

*In re Apple iPhone 4 Prods. Liab. Litig.*,
   No. 5:10-md-2188 RMW, 2012 WL 3283432 (N.D. Cal. Aug. 10, 2012) .................. 40

*In re Employee Benefit Plans Sec. Litig.*,
   No. 92-cv-0708, 1993 WL 330595 (D. Minn. June 2, 1993) .................................. 13, 15

*In re Equifax Customer Data Sec. Breach Litig.*,
   No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .......................... 22, 25

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ........................................................................................ 17

*In re Livingsocial Mktg. and Sales Practices Litig.*,
   298 F.R.D. 1 (D.D.C. 2013) ...................................................................................... 40

*In re Mex. Money Transfer Litig.*,
   267 F.3d 743 (7th Cir. 2001) .................................................................................... 38

*In re Nat'l Football League Players Concussion Injury Litig.*,
   301 F.R.D. 191 (E.D. Penn. 2014) ........................................................................... 37

*In re Syngenta AG MIR 162 Corn Litig.*,
   357 F. Supp. 3d 1094 (D. Kan. 2018) ....................................................................... 24

*In re Uponor, Inc. F1807 Plumbing Fittings Prod. Liab. Litig.*,
   716 F.3d 1057 (8th Cir. 2013) ............................................................................. 15, 18

*In re Uponor, Inc. F1807 Plumbing Fittings Prod. Liab. Litig.*,
   No. 11-md-2247, 2012 WL 2512750 (D. Minn. June 29, 2020) .................................. 15

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   No. 08-md-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ............................... 13, 14

*Jonson v. Harley-Davidson Motor Co. Grp., LLC*,
   285 F.R.D. 573 (E.D. Ca. 2012) ............................................................................... 33

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ............................................................................... 39, 40

*Khoday v. Symantec Corp.*,
   No. 11-cv-0180, 2014 WL 1281600 (D. Minn. Mar. 13, 2014) ............................ passim

*Klug v. Watts Regulator Co.*,
   No. 15-cv-0061, 2016 WL 7156478 (D. Neb. 2016) ................................................ 28, 29

*LaGarde v. Support.com, Inc.*,
   No. C 12-0609 JSC, 2013 WL 1283325 (N.D. Cal. Mar. 26, 2013)............................ 40

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*,
   921 F.2d 1371 (8th Cir. 1990) ................................................................................ 11

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997) .................................................................................. 27

*Mund v. EMCC, Inc.*,
   259 F.R.D. 180 (D. Minn. 2009) ........................................................................ 32, 33

*Murphy v. Piper*,
   2017 WL 4355970 (D. Minn. 2017) ...................................................................... 28

*Palamara v. Kings Family Rests.*,
   No. 07-317, 2008 WL 1818453 (W.D. Pa. Apr. 22, 2008).......................................... 40

*Paxton v. Union Nat'l Bank*,
   688 F.2d 552 (8th Cir. 1982) .................................................................................. 29

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ....................................................................... passim

*Poertner v. Gillette Co.*,
   618 Fed. App'x. 624 (11th Cir. 2015) ...................................................................... 40

*Pollard v. Remington Arms Co.*, LLC,
   320 F.R.D. 198 (W.D. Mo. 2017) ............................................................... 39, 40, 41

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) .................................................................................. 16

*Roberts v. Source for Pub. Data*,
   No. 08-CV-04167-NKL, 2009 WL 3837502 (W.D. Mo. Nov. 17, 2009) .................... 38

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
   821 F.3d 992 (8th Cir. 2016) ............................................................................. 28, 35

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011).................................................................. 18

*Silver Buckle Mines, Inc. v. United States*,
    132 Fed. Cl. 77 (Fed. Cl. 2017)........................................................................ 38

*Snell v. Allianz Life Ins. Co. of N. Am.*, No.,
    97-2784, 2000 WL 1336640 (D. Minn. Sept. 8, 2000) ................................. 25

*Spillman v. RPM Pizza, LLC*,
    No. 10-349-BAJ-SCR, 2013 WL 2286076 (M.D. La. May 23, 2013) ........................ 40

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ............................................................................31, 36

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ......................................................................12, 14

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .................................................................................. 29

*White v. Nat'l Football League*,
    822 F. Supp. 1389 (D. Minn. 1993) ...........................................................11, 15, 39

**Rules**

Fed. R. Civ. P. 23(a)(1)-(4) ................................................................................ 27

Fed. R. Civ. P. 23(a)(4) ..............................................................................12, 33

Fed. R. Civ. P. 23(b)(3) ................................................................................... 27

Fed. R. Civ. P. 23(e) ....................................................................................... 12

Fed. R. Civ. P. 23(e)(2) ................................................................................... 11

Fed. R. Civ. P. 23(a) ..............................................................................27, 28, 29

Fed. R. Civ. P. 23(a)(3) ................................................................................... 31

Fed. R. Civ. P. 23(b) ..............................................................................27, 35

Fed. R. Civ. P. 23(e)(3) ................................................................................... 12

**Other Authorities**

Newberg on Class Actions § 3.05 .................................................................... 28

## INTRODUCTION

This Settlement concludes multi-district litigation between CenturyLink and a proposed Settlement Class of 17.2 million CenturyLink customers. The Settlement Class Representatives brought this action on behalf of themselves and a similarly situated class, alleging that CenturyLink engaged in a host of improper sales and billing practices, such as: (1) promising a discount that was never applied, (2) charging more than advertised or promised, (3) charging for services it did not provide, (4) charging for services customers did not request, (5) charging undisclosed fees, and (6) charging improper termination fees.

The Settlement Class has responded positively to the Settlement and its benefits. Settlement Class Members submitted 115,240 timely Flat Payment claims and 2,213 timely Supported Document claims. Only eight Class members have objected to the Settlement, and none of the objections undermine the appropriateness of final approval. The Administrator received 12,325 timely requests to opt out of the Settlement, of which 11,929 were submitted by separate counsel, Keller Lenkner, who has encouraged its clients to pursue individual arbitration against CenturyLink.

As detailed in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Provisional Class Certification ("Pls. Prelim. Approval Br.") (ECF No. 468), the Settlement provides significant benefits to the Class. Specifically, CenturyLink has agreed to pay $15.5 million to a non-reversionary Primary Fund and separately, up to $3 million (and half of any additional costs up to $4 million) to a Notice and Administration Fund. Class Members were eligible to make one of two types of claims for each eligible CenturyLink account the Class Member affirmed

had overpaid: a Flat Payment claim, which provides a flat payment (presumptively set at $30) per account held during the Class Period or a Supported Document claim, which provides up to 40% of documented losses that exceed $30. Claims will be paid out of the Primary Fund and both types of claims are subject to a pro rata multiplier that will increase or decrease the amount of the award depending upon the number and types of claims submitted. In this case, the pro rata multiplier will increase all claim values. While the final upward pro-rata multiplier is unknown pending the receipt of any final claims and resolution of claim deficiencies, the parties expect the Primary Fund, from which claims will be paid, will have an excess of more than $2 million dollars to distribute to claimants.

In addition, under the Settlement, CenturyLink has agreed to non-monetary relief, including to implement certain sales and billing practices in all states where it does business that address the allegations in Plaintiffs' complaint. CenturyLink will submit three annual, written reports to Plaintiffs' Counsel certifying their efforts to implement the agreed-upon business practices.

Because the Settlement meets and exceeds the requirements of Rule 23(e), Plaintiffs move for its final approval. In support of the motion, Plaintiffs submit the declarations of Brian C. Gudmundson ("Gudmundson Decl."), Jason Stinehart of Rust Consulting ("Stinehart Decl."), Shannon Wheatman of Kinsella Media ("Wheatman Decl."), Robert Beckman of CenturyLink, Inc. ("Beckman Decl."), and Charles Dawson of CenturyTel Service Group, LLC ("Dawson Decl.").

## BACKGROUND

### I. Review of the MDL Proceedings

Plaintiffs summarized the full legal proceedings in Pls.' Prelim. Approval Br., at 4–10. Plaintiffs further recap the relevant legal proceedings here.

Plaintiffs are current and former CenturyLink customers who sued Defendant CenturyLink, Inc. ("CenturyLink") on behalf of themselves and other similarly situated persons and small businesses, alleging it committed deceptive sales and billing practices related to its internet, telephone, and television services. *See, e.g.*, Consolidated Class Action Compl. ("CCAC"), Feb. 15, 2017 (ECF No. 38). In July 2017, CenturyLink moved to create a multidistrict litigation ("MDL") to consolidate numerous related actions filed against it, and the Judicial Panel on Multidistrict Litigation consolidated all pending and future actions in this Court. Transfer Order, Oct. 10, 2017 (ECF No. 1).

On February 15, 2018, thirty-eight consumer Plaintiffs (five of whom later voluntarily dismissed their claims without prejudice) filed the CCAC and brought three claims against CenturyLink on behalf of a nationwide class of CenturyLink customers and five additional claims on behalf of ten state sub-classes. CCAC, ¶ 416. Soon after Plaintiffs filed the CCAC, the Parties entered into extensive briefing and discovery on a series of motions brought by CenturyLink and ten entities that CenturyLink called the "Operating Companies,"[1] attempting to avoid liability and class proceedings in court.

---

[1] These Operating Companies were: Qwest Corporation; Embarq Florida, Inc.; Embarq Missouri, Inc.; Carolina Telephone and Telegraph Company LLC; Central Telephone Company; CenturyTel of Idaho, Inc.; CenturyTel of Larsen-Readfield, LLC; CenturyTel

First, on April 2, 2018, the Operating Companies filed a Motion to Intervene for the Limited Purpose of Moving to Compel Arbitration and Enforce Class-Action Waivers and to Join in Defendant CenturyLink Inc.'s Motion for Temporary Stay of Discovery ("Mot. to Intervene").  Apr. 2, 2018 (ECF No. 80).  Then, on April 28, 2018, CenturyLink filed a Motion to Compel Arbitration and Enforce Class-Action Waivers ("Mot. to Compel Arbitration") (ECF No. 122) and an Alternative Motion to Dismiss under Rules 12(b)(2) and 12(b)(6) ("Mot. to Dismiss") (ECF No. 124).

On May 8, 2018, the Court permitted Plaintiffs to conduct discovery related to CenturyLink's Motion to Compel Arbitration and Motion to Dismiss as to its assertion that it was not the proper defendant and stayed all other discovery.  (ECF No. 145).  The Parties proceeded through extensive discovery on these issues.  Plaintiffs, for example, responded to 730 written discovery requests and served CenturyLink with requests for production of documents and interrogatories.  CenturyLink deposed 25 Plaintiffs.  Plaintiffs' counsel reviewed tens of thousands of pages of documents and took seven depositions of CenturyLink witnesses, including both Rule 30(b)(1) and 30(b)(6) depositions.  The Parties also briefed and argued several discovery disputes.

On August 23, 2018, after completing discovery related to CenturyLink's motions, Plaintiffs filed their memoranda in opposition to the Motion to Intervene (ECF No. 216), Motion to Compel Arbitration (ECF No. 253), and Motion to Dismiss (ECF No. 229).  Among other things, Plaintiffs argued the discovery showed CenturyLink's purported

---

of Washington, Inc.; CenturyTel Broadband Services, LLC; and Qwest Broadband Services, Inc.

arbitration provisions were invalid for several reasons.   *Id.* at 11-14, 20-23, 46-48, 50-62. Plaintiffs also asserted evidence produced in discovery showed CenturyLink, Inc. was the proper Defendant because it controlled and centralized the billing practices, policies, and systems for all the Operating Companies.   *See, e.g.*, Opp. to Mot. to Intervene, 8–9 (ECF No. 216).

On November 21, 2018, the Operating Companies filed a Reply to Plaintiffs' Opposition to their Motion to Intervene (ECF No. 296), and CenturyLink, Inc. filed Replies to Plaintiffs' Opposition to its Motions to Dismiss (ECF No. 305) and to Compel Arbitration (ECF No. 295).   The Parties submitted additional briefing on the Motion to Intervene, with Plaintiffs filing a Sur-Reply on January 18, 2019 (ECF No. 360) and the Operating Companies filing a response on March 22, 2019 (ECF No. 396).

## II.   The Settlement

`     On October 15, 2019, the Parties entered into a Settlement Agreement after lengthy negotiations, including mediation before the Hon. Layn R. Phillips, and an extensive, months-long confirmatory discovery effort.   *See* Pls.' Prelim. Approval Br., at 9–10; Settlement Agreement and Release ("SAR") (ECF No. 469-1).   On October 16, 2019, Plaintiffs moved for preliminary approval of the Settlement.   ECF No. 466.   On January 24, 2020, after a hearing and oral argument, the Court granted Preliminary Approval. Prelim. Approval Ord. (ECF No. 528).   There were no objections to Preliminary Approval.[2]

---

[2] After the entry of the Preliminary Approval Order, clients represented by Keller Lenkner objected to one provision of the Settlement, the stay on arbitrating related claims.   *See, e.g.*, Mot. for Stay Pending Appeal (ECF No. 537).   That objection has been

### A.     The Settlement Class

The Preliminarily Approved Settlement Class[3] is defined as follows:

> All persons or entities in the United States who are identified by CenturyLink as a residential or small business customer and who, during the Class Period, had an account for local or long distance telephone, internet, or television services within one or more of the Operating Companies.

SAR § 1.39.   Excluded from the class are the Court, the officers and directors of CenturyLink, Inc. or any of the Operating Companies, and persons who timely and validly request exclusion from the Settlement Class.  *Id.*

### B.     The Settlement Benefits

Pursuant to the SAR, CenturyLink will provide a total of $18.5 million for class benefits, fees, expenses, service awards, and notice and administration costs as follows:

**1.     Non-Reversionary Primary Fund.**  Defendants will pay Class Members who submit valid and timely claims from a $15,500,000 non-revisionary, capped fund. SAR § 1.30.

**2.     Notice and Administration Fund.** CenturyLink agreed to pay up to $3,000,000 to create a fund for the payment of costs for notice and claims administration and to pay half of any additional notice and administration costs up to $4,000,000.  SAR § 1.25.   At the time of filing this brief, $3.823 million has been spent on Notice and

---

subject to further litigation in this Court and in the Eighth Circuit, which has not yet ruled on Keller's appeal of the Preliminary Approval Order.

[3] Capitalized terms in this Memorandum, unless otherwise defined, have the same definitions as those terms in the Settlement.

Administration.  Gudmundson Decl. ¶ 3.  The current and remaining administration costs are estimated to be $3.92 million.  *Id.* at ¶ 4.  Additionally, CenturyLink individually spent money and resources effecting notice to Class Members who are current CenturyLink customers.  Dawson Decl. ¶ 5.

**3.**     **Consumer Business Practices.** CenturyLink agreed to engage in specific, proper sales and billing business practices, and further agreed to submit a written report to Class Counsel annually for a period of three years. These reports will detail the efforts undertaken to implement the business practices, the status of implementation, a description of the oversight established to ensure compliance, and a certification that CenturyLink is in compliance or a detailed description of and efforts taken to remediate any noncompliance.  SAR § 2.1.  CenturyLink also agreed to implement additional procedures for conspicuously notifying consumers of any arbitration clauses in its contracts.  *Id.* at § 2.1.6.

**C.     The Notice and Claims Program**

The Notice Plan consisted of three methods of directly notifying Class Members who were current CenturyLink customers, two methods of directly notifying Class Members who were former CenturyLink customers, and additional methods of providing indirect notice to the Settlement Class.  *See generally* SAR § 4.

For current customers, the SAR required CenturyLink to: (1) mail a Paper Bill Notice to Class Members with their billing statements for those Class Members who received their statements through the mail; (2) email an Electronic Bill Notice to Class Members with their billing statements for those Class Members who received their

statements electronically; and (3) post a link to the Bill Notice on the Legal section of CenturyLink's website.[4]  *Id.* at § 4.3.  For former customers, the Administrator agreed to: (1) send an Email Notice to those Settlement Class Members for whom CenturyLink provided an email address; and (2) mail a Postcard Notice to those Settlement Class Members for whom CenturyLink did not have an email address, or for whom email addresses proved to be invalid.  *Id.* at § 4.4.  To reach Class Members indirectly, the Administrator agreed to issue a Publication Notice and conduct a paid and earned media campaign to reach Class Members through online advertising.  *Id.* at § 4.5.

Finally, the Administrator agreed to create a settlement website allowing Class Members to submit Claim Forms and including the following documents: (a) the CCAC, (b) the Settlement Agreement, (c) the Preliminary Approval Order, (d) the Long-Form Notice, (e) the list of Operating Companies, (f) a downloadable Claim Form, (g) the Claims Protocol, (h) a Frequently Asked Questions section based upon the Long-Form Notice, (i) Settlement Class Counsel's motion for a Fee, Cost, and Expense Award.  *Id.* at §§ 1.44, 4.2.

CenturyLink and the Administrator effectively carried out direct notice via email and U.S. Mail to the current and former CenturyLink customers in the Class.  CenturyLink sent notice to Class Members who are current CenturyLink customers[5] either by email or mail with the Class Member's billing statements.  Dawson Decl. ¶¶ 5–6; Beckman Decl.

---

[4] Available at https://www.centurylink.com/aboutus/legal.html

[5] CenturyLink sent direct notice to all its current customers who are Class Members except a small number of pre-paid internet and certain analog television customers, who were sent notice by the Administrator.  Stinehart Decl. ¶¶ 9–11; Beckman Decl. ¶¶ 8, 9.

¶¶ 4–6.  In addition to posting the notice on the Legal section of its website, CenturyLink also posted notice on its customers' "My Account" page.  Beckman Decl. ¶¶ 10–11.  With respect to former customers, the Class Notice reached an estimated 12,601,054 of 13,265,240 (or 94.99%) of Class Members.  Stinehart Decl. ¶ 17.

In addition to the effort to provide direct notice, the Administrator, through a hired media company, conducted digital media and earned media campaigns.  *See, e.g.,* Wheatman Decl. ¶¶ 14, 15.  The Administrator used Google Display Network and Google AdWords and Bing Microsoft to display advertisements when users searched specified, related terms or phrases.  *Id.* at ¶ 15.  These ads generated 4,873,359 gross impressions. *Id.*  On March 20, 2020, the Administrator distributed a nationwide press release on PR Newswire's US1 news circuit reaching 5,400 traditional media outlets and 4,000 national websites.  *Id.* at ¶ 16.

### D.  Claims, Objections, and Opt Outs

As of October 25, 2020, the Administrator has received: 115,240 Flat Payment claims and 2,213 Supported Document Claims.[6] Stinehart Decl. ¶ 26.  The Administrator also received 12,325 opt out requests, of which 11,929 are represented by Keller Lenkner, who, as the Court is aware, wishes to pursue individual arbitration on behalf of all its clients. *Id.* ¶ 18.  There were 8 objections.  *Id.* ¶ 19.

---

[6] Additionally, 369 claimants did not elect either the Flat Payment or Supported Document Claim type on their claim forms as is required.  Stinehart Decl. ¶ 26.  These claims will proceed through the process for curing claim deficiencies and are not included in the estimated claim numbers.  *Id.*

The estimated total value of the Flat Payment Claims, using the presumed $30 value prior to applying the pro-rata multiplier, is approximately $3,457,200.  The Documented Support Claims are subject to a final accounting and completion of any claim deficiency correction efforts and cannot be accurately estimated until that process is complete.  *Id.* ¶ 26.  However, even assuming the average value would be $1,000 per Supported Document claim, which the parties believe is well beyond the actual value given the parameters for allowable amounts in the SAR § 3.2.2, the value of these Supported Document Claims would be $2,213,000.   Therefore, even if: (1) all of the submitted Flat Payment and Supported Document Claims are deemed fully timely and valid per the parameters of the Settlement Agreement; (2) the Primary Fund pays half of the notice and administration costs between $3 and 4 million as required by SAR § 1.25; and (3) the Court grants in full Class Counsel's request for attorneys' fees ($6,166,667) and expenses ($325,609), and Class Representative Service Payments ($85,000 in total), this would amount to $12,747,476 of the $15,500,000 million Primary Fund.   Thus, there stands to be a positive multiplier added to all claims submitted by Class Members.

### E.    Attorney's Fees and Expenses and Service Awards

Pursuant to § 2.2.4 of the SAR, Class Counsel have applied separately for a fee of $6,166,667 million, reimbursement of $325,608.54 in litigation expenses, and service awards of $2,500 to 33 Plaintiffs.   Mem. in Supp. of Pls. Mot for Attorney's Fees, Reimbursement of Costs and Expenses, and Class Representative Service Awards (ECF No. 733).

### F.   Release of Claims

The Settlement requires a release of all claims that were or could have been asserted against CenturyLink in these consolidated proceedings.  SAR § 1.33.

## ARGUMENT

## I.   The Court Should Finally Approve the Settlement.

As a prerequisite to directing notice of the proposed settlement to the Class, the Court assessed the fairness, reasonableness, and adequacy of the Settlement Agreement and found that it fell within the range of reasonableness meriting possible final approval. Preliminary Approval Order, at 1 (ECF No. 528).  After now receiving the Class's reaction to the settlement, the Court should readily conclude that the Settlement is fair, reasonable, and adequate.

The Eighth Circuit has instructed that "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1148 (8th Cir. 1999) (citing *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990)).  A district court has broad discretion over the settlement approval process. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993).

The recent 2018 amendments to Rule 23 instruct that district courts reviewing class settlements should "[focus] on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Cmte. Notes.  Those considerations include whether:

11

(1) the class was adequately represented, (2) the settlement was negotiated at arm's length,

(3) the relief is adequate, taking into account the costs, risk, and delay of further litigation,

the effectiveness of distributing relief to the class, the terms of any proposed attorneys'

fees award, and any agreement required to be identified by Rule 23(e)(3), and whether (4)

Class Members are treated equitably relative to each other. Fed. R. Civ. P. 23(e).

The factors provided in the 2018 amendments align with the factors the Eighth

Circuit endorses when analyzing a class action settlement.  Specifically, courts should

consider "the merits of the plaintiff's case, weighed against the terms of the settlement; the

defendant's financial condition; the complexity and expense of further litigation; and the

amount of opposition to the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir.

1988).

Under any applicable factors, final approval of the Settlement is warranted here.

### A.     The Class Was Adequately Represented.

Adequacy of representation is an issue normally considered in connection with class

certification and requires the Court to consider whether the Class Representatives and their

counsel "fairly and adequately" protected the Class. Fed. R. Civ. P. 23(a)(4).  Plaintiffs

also address this factor below.  *See infra*, Sec. II.A.4.  Here, both the Class Representatives

and Class Counsel adequately represented the interests of the Class.

Typically, adequacy of representation examines whether the Class Representatives

had any conflicts with the Class.  *Khoday v. Symantec Corp.*, No. 11-cv-0180, 2014 WL

1281600, at *17 (D. Minn. Mar. 13, 2014).  Here, there are none.  The Class

Representatives share the same interests as absent Class members, assert the same claims,

and share the same injuries. Namely, each of the Settlement Class Representatives seek to recover amounts they paid due to CenturyLink's allegedly improper sales and billing practices. While the circumstances causing overpayments may differ amongst the Class, that factual distinction does not create a fatal conflict. *Id.* Indeed, regardless of the type of overbilling, Class members may make the same types of claims – a presumptive $30 flat claim, or a supported document claim that ties their recovery to the amount of their asserted overcharges, regardless of what type of overcharge it is.

Additionally, the Court has already recognized Class Counsel's experience and qualifications in appointing them to lead the consumer plaintiff track in this MDL. ECF No. 733, at 1, 21–23. Plaintiffs' Counsel have demonstrated that they have protected the interests of the class through their efforts to defend against CenturyLink's and the Operating Companies' serial motions to dismiss and limit the collective nature of the case, negotiate a class-wide Settlement benefiting 17.2 million Class Members, and conduct extensive confirmatory discovery to ensure the Settlement Agreement would sufficiently benefit the Class. *Id.* at 21–23.

### B. The Proposed Settlement Was Negotiated at Arm's Length.

Courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement. *See, e.g., In re Employee Benefit Plans Sec. Litig.*, No. 92-cv-0708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *In*

13

*re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-md-1958, 2013 WL 716088, at *6 (D.

Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid,

particularly where a settlement has been negotiated at arm's length, discovery is sufficient,

[and] the settlement proponents are experienced in similar matters . . . ." (internal

quotations omitted)).

Here, as Plaintiffs described in their Motion for Preliminary Approval, the Parties

negotiated the Settlement at arms-length in mediation before Judge Layn Phillips, and

continued negotiations over the course of several days following.  Pls.' Prelim. Approval

Br., at 9–10.  Before executing the agreement, Plaintiffs conducted significant confirmatory

discovery to assess CenturyLink's representations about the likely size of the Class and

scope of damages.  *Id.*  Plaintiffs' Counsel executed the Settlement Agreement only after

the confirmatory discovery supported CenturyLink's representations on the Class size and

scope of damages and determined that, in light of the scope of damages, the Settlement was

fair and reasonable.  *Id.*

### C.     The Relief is Fair, Reasonable, and Adequate.

#### 1.     *The Settlement is Fair When Weighed Against the Merits of Plaintiffs' Case.*

The "most important factor in determining whether a settlement is fair, reasonable,

and adequate is a balancing of the strength of the plaintiff's case against the terms of the

settlement." *Van Horn*, 840 F.2d at 607; *see also Dryer v. Nat'l Football League*, No. 09-

cv-2182, 2013 WL 5888231, at *4 (D. Minn. 2013).  The Court must balance the risks and

benefits of litigation against immediate recovery for class members.  *Grunin v. Int'l House*

of *Pancakes*, 513 F.2d at 124 (8th Cir. 1975); *Petrovic*, 200 F.3d at 1150.  In considering this factor, courts are "not to reach any conclusions as to the merits . . . nor . . . substitute [their] opinion" for that of counsel or the class members.  *In re Employee Benefit Plans*, 1993 WL 330595, at *4 (citation omitted); *see also Alexander v. Nat'l Football League*, No. 4-76-Civil-123, 1977 WL 1497, at *12-13 (D. Minn. Aug. 1, 1997) (stating that "the court does not have the responsibility of trying the case or ruling on the merits of the matters resolved by agreement . . . . [because] 'the very purpose of compromise is to avoid the delay and expense of such a trial.'" (quoting *Grunin*, 513 F.2d at 124)).  Rather, "courts give 'great weight' to and may 'rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.'"  *In re Uponor, Inc. F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-md-2247, 2012 WL 2512750, at *7 (D. Minn. June 29, 2020), *aff'd* 716 F.3d 1057 (8th Cir. 2013) (quoting *White*, 822 F. Supp. at 1417).

a.   The Settlement's benefits.

Here, the benefits of the Settlement are substantial in light of the risks of continued litigation.  The Settlement Agreement allowed any Class Member that CenturyLink overbilled and had not already compensated to submit either a Flat Payment Claim or a Supported Document Claim for each allegedly overbilled account.  SAR § 2.2.1.  The Flat Payment Claim required no proof of overpayment other than a claim form and provided a presumptive $30 to each claimant subject to a pro-rata multiplier.  *Id.* at § 3.2.1.  The Supported Document Claim allowed Class Members to receive up to 40% of their documented overpayments, also subject to a pro rata multiplier.  *Id.* at § 3.2.2.  These claims would be paid out of the $15.5 million Primary Fund.  *Id.* at § 3.1.

15

In addition to those monetary benefits, the Settlement provides significant non-monetary benefits. SAR § 2. For instance, CenturyLink has agreed to take measures to ensure customers receive accurate and clear billing information and to prevent overcharging customers. *Id.* These measures allow Class Members to better understand their bill from CenturyLink and to accurately compare CenturyLink's prices with its competitors' prices when purchasing internet, television, or local or long-distance phone services. CenturyLink will also make any arbitration provisions conspicuous. Therefore, the Settlement provides substantial monetary and non-monetary benefits to the Class.

b.   The risk of continued litigation.

Upon a motion for final approval, courts weigh the Settlement benefits against other potential outcomes in the case. *See Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 285 (7th Cir. 2002) (holding courts should evaluate a settlement's fairness by "estimating the range of possible outcomes and ascribing a probability to each point on the range."). That analysis here supports final approval of the Settlement because there is a real risk that continued litigation would result in significantly reduced or no monetary relief for Plaintiffs and the Class.

CenturyLink and the Operating Companies mounted early and vigorous defenses that challenged Plaintiffs' case and threatened dismissal of Plaintiffs' claims or the collective nature of this action. *See* ECF No. 80 (Operating Companies' Mot. to Intervene), ECF No. 122 (CenturyLink's Mot. to Compel Arbitration), ECF No. 124 (CenturyLink's Mot. to Dismiss). Had Plaintiffs cleared those initial motions, Plaintiffs would still face obstacles in certifying a class. As illustrated by CenturyLink's early attempts to stymie a

16

class action, CenturyLink would have heavily disputed any motion for class certification. Even if the Court eventually certified some class, it was not certain to include all CenturyLink customers over the Class Period as the Settlement Class does.

After class certification, Plaintiffs would face further risk during summary judgment briefing and trial. In all, CenturyLink's initial motions, forthcoming motions for class certification and summary judgment, and a potential trial all created a risk that Plaintiffs and the Class would recover less than the amount provided by the Settlement, or nothing at all. And this continued litigation would come at great cost in addition to the significant costs and resources already expended and a lengthy delay in any actual recovery, even had plaintiffs prevailed. *See Dryer*, 2013 WL 5888231, at *3 (approving class settlement where "[t]here [wa]s no doubt that further litigation in this matter would be both complex and extraordinarily expensive[.]"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (citing cases that favor settlement of a complex class action litigation because it minimizes litigation expenses).

### c.     The range of potential recoveries.

The Settlement also compares favorably to the potential recovery for Plaintiffs had they succeeded in every stage of this case. Here, given the risks of continued litigation, the Settlement would be fair even in light of the maximum damages that would likely be available to the Settlement Class. If Plaintiffs could prove the entire 17.2 million member Settlement Class had been damaged by an average of $68 (the average that confirmatory discovery showed CenturyLink's Customer Advocacy Group ("CAG") reimbursed to resolve escalated complaints, *see* Decl. of Brian C. Gudmundson in Supp. of Pls.' Mot for

Preliminary Approval, at ¶ 7 (ECF No. 469), the recoverable damages would be approximately $1.2 billion[7]. Even if this were the case, which it is not, the Settlement could still be finally approved as fair and reasonable. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 584 (N.D. Ill. 2011) ("[S]imply because the proposed settlement amounts to a fraction of a potential recovery does not render the proposed settlement inadequate or unfair. In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of potential recovery.").

Thus, even had Plaintiffs won at every stage of this litigation, a difficult challenge given CenturyLink's significant litigatory efforts early in the case, the Settlement compares favorably even to the best possible outcomes. The Settlement Agreement is fair and reasonable and should be finally approved.

## 2. *The Amount of Opposition to the Settlement.*

In total, only eight out of approximately 17.2 million Class members objected to the Settlement. One objector, Class Member Romano objected to the *litigation against CenturyLink* rather than to the Settlement because she had "never experienced any wrongdoing on the part of CenturyLink." *See* Gudmundson Decl., Ex. A, at 2 (Romano objection). With only eight objections out of a Class of 17.2 million, the substantial benefits provided to Class Members in this favorable Settlement should go forward. *See In re Uponor*, 716 F.3d at 1063 (finding that twenty-six objectors out of a class of 30,000

---

[7] This estimation also assumes that 100% of the approximately 17.2 million member Class has been overcharged and not already compensated by Settlement, which confirmatory discovery showed was not the case. ECF No. 469 at ¶ 8.

was "only token opposition"); *Petrovic,*, 200 F.3d at 1152 (8th Cir. 1999) (approving settlement where "fewer than 4 percent of the class members objected to the settlement.").

All eight of the objections are submitted herewith as Exhibits A-H to the Gudmundson Decl. and the Court should overrule each of them. Objectors Sparks, Koehler, Pumphrey, McDonald, and Suppes did not provide a declaration as required by the Preliminary Approval Order. *See* Gudmundson Decl., Exs. B-F. Similarly, Objector Scheffler did not provide the claimant ID from the Settlement Administrator or a correct CenturyLink account number. *Id.*, Ex. G; ¶ 7. But even if these objections were not deficient, they should be overruled for the additional reasons below.

a.   Objectors Sparks, Koehler, and Pumphrey.

Objectors Sparks, Koehler, and Pumphrey are clearly unhappy with CenturyLink. *See* Gudmundson Decl., Ex. B, C, D. Each of them claims that CenturyLink overcharged them, but they do not appear to object to any term of the Settlement itself. *See* Gudmundson Decl., Ex. B, at 2 (objector Sparks explaining he would "stay in the Settlement" but that CenturyLink "overcharged" and misrepresented "credit reporting falsely"); *id.*, Ex. C, at 3 (Koehler explaining he has "never received a bill with the same dollar amount twice," complaining about trouble accessing bills online, and outlining complaints he made to CenturyLink); *id.*, Ex. D, at 1 (Pumphrey stating he "has a much larger issue with CenturyLink than a paltry $30" and objecting "vigorously" but without further detail). None of these objections are directed to any provision of the actual Settlement. Moreover, the Settlement accommodates their frustrations with CenturyLink by providing the option to submit a Flat Payment Claim of $30 with no further evidence of

19

overpayment beyond a claim form or a Supported Document Claim for more. These objections do not explain why participating in the Settlement or opting out to pursue a larger or different recovery would be insufficient to satisfy their individual concerns, particularly when the Settlement affords them an opportunity to submit a claim tailored to their provable loses (*i.e.* the Supported Document claim). These objections, therefore, do not undermine the fairness of the Settlement.

b.    <u>Objectors McDonald, Suppes, and Poetz.</u>

While the objections of McDonald, Suppes, and Poetz appear to target the Settlement, each should be overruled. McDonald complains that he had trouble "joining the class action suit" and that the "automated form provided rejected" him and informed him that he was "not an eligible customer of CenturyLink[.]" Gudmundson Decl., Ex. E, at 1. He asserts that the "suit may have been deliberately written to exclude eligible parties." *Id.* However, the claims process was designed to include all Class Member and to provide alternative means of identifying Class Members—both the Settlement ID Number and the CenturyLink Account Number—and allowing them to sufficiently submit a claim form. Both Plaintiffs' Counsel and the Administrator attempted to reach McDonald by phone and email to assist him in completing a Claim Form. Gudmundson Decl., at ¶ 6However, McDonald did not respond to those attempts to reach him. *Id.* While the online Claim Form required Class Members to provide specific, accurate account information, McDonald is the only Class Member to have objected based on an inability to successfully complete the form. Furthermore, McDonald did not take advantage of assistance Class Counsel and the Administrator attempted to provide.

20

Objector Suppes complains that "the legal team is the only party that will be made whole" under the Settlement and that this would not "serv[e] justice when the majority of members of the class will receive a proposed $30." Gudmundson Decl., Ex. F, at 2. This objection lacks merit for two reasons. First, the Settlement provides Suppes with an opportunity to submit a Supported Document claim, providing him the opportunity to receive more than $30 and an amount tied to the level of damage he asserts he suffered. Second, Class Counsel will not be "made whole," but rather, is requested a fee that would result in a substantial negative multiplier. ECF No. 733, at 14.

Objector Poetz asserts that CenturyLink promised its internet would be enough "to handle basic home-office tasks, as well as gaming and television usage" but the "connection was ineffective at supporting very basic uploads, downloads, legal database searches, etc." Gudmundson Decl., Ex. H, at 1. Poetz started his services with CenturyLink in approximately October 2019. *Id.* Thus, Poetz's asserted overcharges fall largely outside of the Class Period, which ended on January 24, 2020. Prelim. Approval Ord., at 7. Poetz does not explain how the Settlement's relief is insufficient, or why his right to opt out to pursue more or different relief is insufficient. He points out no structural or substantive infirmities in the Settlement. The Court should overrule his objection.

c.    Professional Objector Scheffler.

Objector Scheffler is a professional objector.[8] His generic objection neither accurately portrays the Settlement nor provides any legal basis for upending it. *See*

---

[8] Scheffler has "previously objected to a number of class actions and at least one court has previously found that similar objections to the ones he makes here 'have no factual or legal

Gudmundson Decl., Ex. G (Scheffler objection).   Scheffler purports to object on four grounds.   Scheffler's "Objection #1" claims that the Settlement provides "inconsistent, arbitrarily determined remedies to class members without objective, verifiable data." Gudmundson Decl., Ex. G, at 3.   This complaint ignores the fact that the two forms of payment (Flat and Supported Document) are based on the $68 on average "CenturyLink reimbursed to remedy escalated and unresolved complaints during the Class Period," along with a Litigation Risk Factor that was applied consistently.   Pls.' Prelim. Approval Br., at 2–3, 10, 20, 23–26.   Nor are the remedies arbitrary. Plaintiffs based them directly on representations and warranties made in mediation that were verified with data obtained through substantial confirmatory discovery.   *Sed id.*

Scheffler's "Objection #2" claims he cannot "determine whether Defendant CenturyLink has actually overbilled him" and "has no means by which he can objectively determine the quantity, extent, kind, and service(s) by which CenturyLink has overbilled him since 2014."   Gudmundson Decl., Ex. H, at 3.   Putting aside the fact the overcharges covered by the Settlement are certainly of a kind of which a reasonable consumer would be independently aware (*see* Long Form Notice (listing types of covered overpayments) (ECF No. 469-1, at 68)), Scheffler is certainly capable of determining if he was overbilled. Moreover, in November 2014 he sued CenturyLink for overbilling him, asserting damages of $4,727.37 for alleged conduct into the future, extending through September of 2019 (61

---

merit.'" *In re Equifax Customer Data Sec. Breach Litig*., No. 1:17-md-2800, 2020 WL 256132, at *41–42 (N.D. Ga. Mar. 17, 2020) (quoting *Carter v. Forjas Taurus S.A.*, 2016 WL 3982489, at *13 (S.D. Fla. Jul. 22, 2019)).

months-worth of damages).  Gudmundson Decl., Ex. J.  Scheffler settled with CenturyLink over those claims.  Gudmundson Decl., Ex. K.  Scheffler offers no genuine objection regarding his and Class Members' purported inability to determine the fact of whether they have been overbilled.  Common sense dictates that if a person is overbilled they know it and if they have no objection to the amount they are charged, they generally do not feel they have been overbilled.  Not one other Class Member among the approximate 17.2 million objected on the grounds they could not determine the fact of whether they were overbilled by CenturyLink.

Scheffler's "Objection #3" claims he does not know if he was overbilled because "CenturyLink maintains records going back only one year from the date of any given customer record request."  Ex. G, at 3.  This is inaccurate.  Scheffler could have easily obtained bills from CenturyLink going back more than one year from the date of his request.  If Scheffler had called the claims administrator to request those records, he could have obtained the information he needed.  Stinehart Decl. ¶ 24; Beckman Decl. ¶ 12.  Not one other Class Member among the approximate 17.2 million objected on the grounds they could not obtain the documents they needed from CenturyLink or the Claims Administrator to submit a claim.

Scheffler's "Objection #4" ignores the record.  Gudmundson Decl., Ex. G, at 3–4.  Scheffler claims that Settlement Counsel requests "a clear, definite, and verifiable sum of 1/3 of the $15.5 million settlement, *i.e.*, $5,166,666.67, without objective manifestation of the reasonableness of this sum, nor any verification of the reasonableness of this attorney fee[.]"  *Id.* at 3.  Putting aside the inaccuracy regarding the amount of Plaintiffs' actual

23

request, this objection entirely ignores the motion for attorneys' fees and expenses, which Settlement Class Counsel publicly filed before Scheffler filed his objection via counsel. *See* ECF Nos. 731–735. Settlement Class Counsel fully outlined the bases for the reasonableness of the fee and expense request in their submission. *See* ECF Nos. 733, at 10–26; ECF No. 734, at ¶¶ 82–86.

In addition to finding Scheffler's objections substantively meritless, the Court should consider that his past serial objections to class action settlements were not made in the interests of the respective classes. *See In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1104 (D. Kan. 2018) ("The fact that the objections are asserted by a serial or professional objector . . . may be relevant in determining the weight to accord the objection, as an objection carriers more credibility if asserted to benefit the class and not merely to enrich the objector or her attorney."). Here, Scheffler has demanded $20,000 to withdraw his objection, despite purporting to be unable to identify any uncompensated overcharge he suffered. *See* Gudmundson Decl., Ex. I.

Where, as with Scheffler, an objection is made in the objector's own self-interest and not the interests of the class, the objection is afforded less weight. Indeed, Courts should "distinguish between meritorious objections and those advanced for improper purposes[,]" including where an objector is "motivated by self-interest rather than a desire to win significant improvements in the class settlement." Manual for Complex Litig., Fourth, § 21.643 (2004).

Just this year, the Hon. Thomas W. Thrash, Chief Judge of the Northern District of Georgia, found that Scheffler is a serial objector whose object carries less weight,

holding that "Objector Troy Scheffler has previously objection to a number of class actions" including an objection with "no factual or legal merit." *In re Equifax*, 2020 WL 256132, at \*41–42; *see also In re Experian Data Breach Litig.*, No. 15-cv-1592, ECF No. 335 (C.D. Cal. July 3, 2019) (approving payment of $10,000 to Mr. Scheffler and his counsel Peter Nickitas – the same counsel representing him here) preceding dismissal of this objection). Scheffler's plain goal is to personally enrich himself at the expense of the Class, and his history of serial objections to class action settlements indicate his objection here may not be in the best interests of the class. *In re Equifax*, 2020 WL 256132, at \*31. The Court should overrule Scheffler's objection.

d.    <u>Opt Out Requests.</u>

A total of 12,325 Class members have timely requested to opt out of the Class Settlement. Stinehart Decl. ¶ 18. Of these, 11,929 are represented by the Keller Lenker firm, who as the Court is aware, seeks to represent these individuals in arbitration elsewhere. *Id.* Neither the number of opt outs nor the reason they have determined to opt out weigh against the fairness and reasonableness of the Settlement. These opt outs provide neither commentary nor objection to the Settlement. *See Snell v. Allianz Life Ins. Co. of N. Am.*, No. 97-2784, 2000 WL 1336640, at \*6 (D. Minn. Sept. 8, 2000) (describing opt out of less than 0.75% of class as "miniscule"). Here, the 12,325 requests for exclusion represent 0.0012% of the Class.

### 3.     The Terms Relating to Attorney's Fees and Expenses are Reasonable.

In their fee application, Class Counsel demonstrated that their fee request is reasonable under both the lodestar and percentage-of-the-benefit analysis.  ECF No. 733, at 10–26.  In fact, Class Counsel's fee requests represents a negative multiplier on their total lodestar.  *Id.* at 14–15.  For the reasons set forth in that separate motion, Class Counsel's request is reasonable and should be approved.

### D.     Class Members Are Treated Equitably Relative to Each Other.

The Settlement treats Class Members equitably because, via the named Plaintiffs, all assert similar claims arising from the same nexus of facts regarding CenturyLink's alleged centralized, improper sales and billing practices.  While there are different types of overpayments arising from this alleged scheme, Class members can choose between a Flat Payment claim or a Supported Document claim that allows them to tie their recovery more closely to their level of asserted loss.  Thus, all Class members are treated fundamentally identically.  Types and amounts of claims are not available to only certain categories of Class members, but rather to all Class members.  This fair and equitable treatment of Class members respective to one another is another factor that weighs in favor of final approval.

## II.     The Court Should Certify the Proposed Settlement Class.

Federal courts have long regarded consumer claims as "particularly appropriate for class resolution."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997).  "[T]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting

his or her rights." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).  Class certification in this case achieves the "policy at the very core of the class action mechanism" because it would allow CenturyLink customers to receive compensation for alleged overcharges that, on their own, are in most instances insufficient to warrant an individual action.

In considering whether to certify a class, including a class for settlement purposes, courts must look to Rule 23 of the Federal Rules of Civil Procedure.  *Amchem*, 521 U.S. at 620-21.  Rule 23(a) creates four threshold requirements applicable to all class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  Fed. R. Civ. P. 23(a)(1)-(4); *see also Amchem*, 521 U.S. at 613.

In addition to Rule 23(a)'s requirements, the proposed settlement class must meet the requirements of Rule 23(b).  *Amchem*, 521 U.S. at 613.   Where, as here, a damages class is proposed, "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These requirements are generally referred to as "predominance" and "superiority."

### A.    The Settlement Class Meets the Requirements of Rule 23(a).

#### 1.    *Numerosity.*

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In the Eighth Circuit, "[a]s few as 40 class members should raise a presumption that joinder is impracticable."  *See Briles v. Tiburon*

*Fin. LLC*, No. 15-cv-0241, 2016 WL 4094866, at *2 (D. Neb. Aug. 1, 2016) (citing *Caroline C. v. Johnson*, 174 F.R.D 452, 456 (D. Neb. 1996)); *see also* Newberg on Class Actions § 3.05.  Where "the total number of class settlement members is . . . in the thousands[,]" numerosity is "easily satisfied." *Klug v. Watts Regulator Co.*, No. 15-cv-0061, 2016 WL 7156478, at *4 (D. Neb. 2016).

Encompassed within numerosity is a requirement that class members be identifiable by objective means. *See Murphy*, 2017 WL 4355970, at *3 ("The Eighth Circuit does not impose a separate ascertainability requirement for class certification, but 'adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class must be adequately defined and clearly ascertainable.'" (quoting *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016)).  Here, the class is both so numerous that joinder is impracticable and the class members are easily ascertainable using CenturyLink's records.

The proposed class here consists of current and former CenturyLink customers who, from January 1, 2014 to the date of the entry of the Preliminary Approval Order, purchased any combination of CenturyLink's television, internet, or local or long-distance phone services.  The class contains an estimated 17.2 million individuals, "easily satisfy[ying]" the requirements for numerosity. *Klug*, 2016 WL 7156478, at *4.  Even the thirty-three (33) Named Plaintiffs nears the threshold of "40 class members" necessary to raise the presumption that joinder is impracticable." *Briles*, 2016 WL 4094866, at *2.  As such, numerosity is easily met.

The class is also easily identifiable because CenturyLink keeps customer records, including the service address of current and former CenturyLink customers. This is demonstrated by the fact notice was directly sent by email or U.S. Mail to nearly all 17.2 million Class Members using CenturyLink records and through other efforts. Stinehart Decl. ¶ 17; Dawson Decl. ¶ 5–6; Beckman Decl. ¶¶ 4–6. The Class satisfies Rule 23(a).

### 2. *Commonality.*

Under Rule 23(a)(2), the class members must share questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The commonality requirement is not demanding. *See Klug*, 2016 WL 7156478, at *4 ("The commonality requirement imposes a very light burden on Plaintiff seeking to certify a class and is easily satisfied."). Plaintiffs need not show "that every question of law or fact . . . [is] common to every member of the class. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). Rather, commonality is achieved whenever "the question of law linking the class members is substantially related to the resolution of the litigation even though individuals are not identically situated." *Id.* at 561; *see also Klug*, 2017 WL 7156478, at *4 (holding commonality is met when "the legal question linking the class members is substantially related to the resolution of the litigation." (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). When examining commonality, "a court looks to 'the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Khoday*, 2014 WL 1281600, at *15 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

29

Here, the Class shares numerous common questions of law and fact.  To start, all members of the Class are or were CenturyLink customers, and each paid CenturyLink for some combination of internet, television, and local or long-distance phone services. Plaintiffs and the Class assert CenturyLink implemented sales and billing policies, procedures, and systems that charged customers more than they should have been.

Other common questions of fact and law facing the Class include:

1)      Whether CenturyLink implemented centralized sales and billing practices, systems, and policies that were used by each of the Operating Companies;

2)      Whether CenturyLink's sales and billing practices, systems, and policies resulted in overcharging customers for the services they received;

3)      Whether CenturyLink's customer sales policies resulted in promising customers inaccurate prices for services;

4)      Whether CenturyLink continued to use centralized sales and billing practices, systems, and policies despite knowing they resulted in customers across the company overpaying for the services they received;

5)      Whether CenturyLink reimbursed customers for amounts overbilled;

6)      Whether CenturyLink engaged in deceptive sales practices;

7)      Whether CenturyLink owed Plaintiffs and the Class duty of good faith and fair dealing;

8)      Whether CenturyLink's billing practices were deceptive, unfair, or misleading; and

9)      Whether CenturyLink was unjustly enriched as a result of its purported deceptive sales practices.

Additionally, CenturyLink has raised defenses to Plaintiffs' assertions that have class-wide applicability, including that the Class's claims are subject to arbitration and that CenturyLink is not the proper defendant, making them common legal issues.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ("That defense is itself common to the claims made by all class members" and the "'failure of proof on th[is] common question' would likely have ended 'the litigation and thus [would not have] cause[d] individual questions . . . to overwhelm common questions to the class.'" (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013)).

These numerous factual and legal issues have class-wide applicability, meaning the answers to these questions would affect each class members' claims against CenturyLink. Commonality is satisfied.

### 3.      *Typicality.*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The Eighth Circuit defines "typicality as requiring a demonstration that there are other members of the class who have same or similar grievances as the plaintiff." *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269 (8th Cir. 1990) (internal quotations and citations removed).  "The burden to establish typicality is fairly easily met so long as other class members have claims similar to the named plaintiff."  *Briles*, 2016 WL 4094866, at *3.  The "differences in the claimed damages or availability of certain defenses do not defeat typicality, so long as the class

31

claims are generally based on the same legal or remedial theory." *Id; see also Cortez v. Nebraska Beef, Inc.*, 266 F.R.D. 275, 290 (D. Neb. 2010). Typicality is satisfied where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Khoday*, 2014 WL 1281600, at *16 (internal quotations removed).

The proposed Settlement Class Representatives are typical of the Class because their claims and allegations result from a similar course of conduct, namely, CenturyLink's centralized sales and billing improprieties that resulted in Plaintiffs and Class Members overpaying for CenturyLink's services. *Khoday*, 2014 WL 1281600, at *16. Although Class Members interacted with various Operating Companies who are not a party to the litigation, each claim that they were overbilled due to billing systems, processes, and policies implemented centrally by CenturyLink. The fact that some circumstances may be specific to each Settlement Class Representatives, including the service, the promised price, the amount billed, and the amount overpaid, does not defeat typicality. *See Briles*, 2016 WL 4094866, at *3 ("[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." (citing *Beck v. Maximus, Inc.*, 547 F.3d 291, 296 (3rd Cir. 2006)).

Likewise, the number of opt outs, including those seeking to arbitrate their claims against CenturyLink in hopes of getting more, do not suggest Plaintiffs were not typical of the class. Indeed, Plaintiffs may satisfy typicality even where their damages differ from that of some Class Members, as long as the cause of the damages is similar. *See Mund v.*

*EMCC, Inc.*, 259 F.R.D. 180, 184 (D. Minn. 2009).   Although class members and Settlement Class Representatives may have some different circumstances, the alleged wrongdoing is common throughout the Class and therefore, "arise[] from the same event or practice . . . ." *Briles*, 2016 WL 4094866, at *3.   Typicality is met.

### 4.   *Adequacy.*

Fed. R. Civ. P. 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."   The "adequacy" requirement evaluates whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interest of the class through qualified counsel.   *Id.* (citing *Cortez*, 266 F.R.D. at 291).   "Challenges to adequacy are not relevant unless they bear on the existence of conflicts among class members or plaintiffs' ability to vigorously prosecute their case."   *Khoday*, 2014 WL 1281600, at *17 (quoting *Jonson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 578 (E.D. Ca. 2012)).

Plaintiffs' interests are aligned with those of the Settlement Class and there are no conflicts between them.   Plaintiffs and the members of the Class were CenturyLink customers during the Class Period and all have an interest in being compensated for CenturyLink's billing improprieties.   Although the means by which CenturyLink overbilled customers may vary throughout the Class, the Plaintiffs are commonly pursuing compensation for the amount overpaid to CenturyLink due to its centralized billing practices, policies, and systems.

Each of the Settlement Class Representatives and Class Members also have a common interest in preventing further overbilling by CenturyLink.  Although not all of the Representatives or Class Members are current CenturyLink customers, many still have the option to choose CenturyLink for their internet, telephone, and television services. Preventing further sales and billing improprieties allows the Class to accurately compare CenturyLink's costs of services versus competitors.  The interests of the Representatives and the Class members are aligned and no conflict exists.  *Khoday*, 2014 WL 1281600, at *17.

The Class Representatives also vigorously prosecuted the interests of the class through qualified counsel, including counsel with decades of experience in bringing consumer class actions.  Through their counsel, Plaintiffs sought, and obtained through the Settlement Agreement, relief for overbilling regardless of whether the overbilling resulted from fees, charges, misapplied discounts or promotions, allegedly incorrect monthly prices, or charges above the quoted price.  Moreover, the Settlement allows for two different methods of compensation, a Flat Payment claim and a Supported Document claim. Through the available claims types, the Settlement Agreement provides a process to compensate all Class Members who overpaid CenturyLink and received no or insufficient compensation.  Therefore, Plaintiffs and their counsel adequately represented the interest of the Class.

### B.     The Settlement Class Meets the Requirements of Rule 23(b).

#### 1.     Predominance.

A Rule 23(b)(3) settlement class must show that common questions "predominate

over any questions affecting only individual [class] members." *Amgen Inc. v. Conn. Ret.*

*Plans & Trust Funds*, 568 U.S. 455, 459 (2013). "At the core of Rule 23(b)(3)'s

predominance requirement is the issue of whether the defendant's liability to all plaintiffs

may be established with common evidence . . . . If the same evidence will suffice for each

member to make a *prima facie* showing, then it becomes a common question." *Sandusky*

*Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (internal citation

and quotation omitted). "It is not necessary to illustrate that all questions of fact or law are

common" but rather that the common questions "constitute a significant part of the

individual cases. *Briles*, 2016 WL 4094866, at *; *see also Cullan & Cullan LLC v. M-*

*Qube, Inc.*, No. 13-cv-0172, 2016 WL 5394684, at *5 (D. Neb. Sep. 27, 2016) ("Rule

23(b)(3) does not require a plaintiff seeking class certification to prove that each element

of his or her claim is susceptible to class wide proof. Rather, all that is required is that a

class plaintiff show that common questions predominate.") (internal citations and

quotations removed)).

While individual damages amongst class members may differ, this does not

preclude class certification. *See* Fed R. Civ. P. 23 advisory committee notes ("a fraud

perpetrated on numerous persons by the use of similar misrepresentations may be an

appealing situation for a class action, and it may remain so despite the need, if liability is

found, for separate determination of the damages suffered by individuals within the

class."); *Tyson*, 136 S. Ct. at 1045 ("When one or more central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages.").

Here, common issues predominate over any individual issues. To establish CenturyLink's liability, each Plaintiff and Class Member would rely on common evidence to show that the systematic billing practices, processes, and policies used by each Operating Company were fully under CenturyLink's creation and control. Facts establishing CenturyLink's control over the Operating and Service companies would thus be necessary in any individual Class Members' action against CenturyLink to establish CenturyLink's liability for the allegedly improper billing policies and procedures ultimately put in place by the Operating and Service Companies.

Additionally, each Class Member would seek to use common evidence to show that CenturyLink's billing practices, as implemented by its Operating Companies, led to instances where Plaintiffs and Class Members overpaid for the services, including through inappropriate fees, misapplied discounts and promotions, charges greater than the amount promised, or charges for services not requested or provided. Because CenturyLink's billing practices were centralized and commonly applied throughout its Operating Companies, Plaintiffs would rely on common evidence to show causation, because each class member would seek to show CenturyLink's unreasonable billing policies, practices, and systems caused Plaintiffs to receive bills charging more than they otherwise should have paid.

36

While the Settlement itself cannot create predominance, its existence is also relevant to class certification and the manageability of the case. *See Amchem*, 521 U.S. at 619-20 ("Settlement is relevant to class certification" and "with a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trail."). The Settlement here provides benefits to the Class by resolving otherwise potentially individual defenses on a class-wide basis. For instance, CenturyLink raised the defense that Plaintiffs and the class were subject to arbitration provisions and class-action waivers in their contracts with CenturyLink. By settling claims that include all CenturyLink's customers during the Class Period, Plaintiffs and the Class need not examine the various contracts and circumstances that occurred when each Plaintiff agreed to services that included those provisions.

Similarly, the Settlement permits Plaintiffs and the Class to submit claims without proving causation or damages by creating a Flat Fee Claim. *See In re Nat'l Football League Players Concussion Injury Litig.*, 301 F.R.D. 191, 197 (E.D. Penn. 2014) ("The Settlement does not require Settlement Class Members to prove that . . . [their] cognitive injuries were caused by NFL-related concussion or sub-concussive head injuries."). Under the flat payment claim, claimants need only attest, under penalty of perjury, to the fact of overpayment to CenturyLink and that they have not already received compensation, and need not show the cause of the overpayment or the amount of damages incurred. As a result, the Settlement allows for the resolution of causation and damages on a class-wide basis. Predominance exists.

37

### 2.    *Superiority.*

Rule 23(b)(3) also requires that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This case presents the "quintessential class action" because it "involves thousands of plaintiffs who were subjected to the same . . . wrongdoing and whose recovery is likely to be small" and "absent a class action . . . claimants would likely not seek legal redress." *See Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 103 (Fed. Cl. 2017).

Where a "large number of potential plaintiffs" share common claims, "certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would." *Roberts v. Source for Pub. Data*, No. 08-CV-04167-NKL, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009). In considering superiority, federal courts have long regarded "consumer claims" as "particularly appropriate for class resolution." *Amchem*, 521 U.S. at 625; *see In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Many opinions . . . give consumer fraud as an example of a claim for which class treatment is appropriate.").

Here, the Class contains millions of current and former CenturyLink customers. For most class members, the financial injury incurred (confirmatory discovery showed an average of $68) is insufficient to warrant individual action against CenturyLink. The class action mechanism affords the Class members an opportunity for recovery through the fair terms of the Settlement. Thus, the circumstances here present the "quintessential class action," and adjudication through class action is superior both because without a class action, the class members may have no other relief, and also because should class members

adjudicate their cases individually, the courts would be flooded with hundreds of thousands of individual litigants bringing similar factual claims and nearly identical legal ones. Superiority is met here.

## III.   Notice to the Settlement Class Complied with Due Process and Rule 23.

In its Preliminary Approval Order, the Court indicated that the Long-Form Notice, Email Notice, Bill Notice, Postcard Notice, Publication Notice and Claim Form, and their manner of transmission, complied with Rule 23 and due process and were intended to adequately apprise Class Members of the Settlement.  ECF No. 528.  The Notice Plan has been successfully implemented and direct notice reached nearly all CenturyLink's current customers who are Class Members and 94.99% of the Class who are former CenturyLink customers.  Dawson Decl. ¶¶ 5–6; Beckman Decl. ¶¶ 4–6; Stinehart Decl., ¶ 17; *see White*, 822 F. Supp. at 1400 (finding notice complied with Rule 23 and due process requirements where the settlement notices where "[m]ailed notice was directed to class members" and reached "almost eight-seven percent" of the class).

The response and claims rate from the Class members is also within the acceptable range for Final Approval.  The claims rate itself "does not dictate whether the notice provided was the best notice practicable under the circumstances" as required by Rule 23. *Pollard v. Remington Arms Co.*, *LLC*, 320 F.R.D. 198, 215 (W.D. Mo. 2017), *aff'd* 896 F.3d 900, 906 (8th Cir. 2018).  Moreover, the claims and response rates do not determine "whether the settlement is fair, reasonable, or adequate" when determining whether the dissemination of notice was satisfied under the requirements of Rule 23 for final approval. *Pollard*, 320 F.R.D. at 215*; see also Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017)

(noting that although a majority of the class did not submit a claim and exercise their right to a share of the settlement fund, "their opportunity to do so was a benefit to them" along with the additional injunctive relief). Even when courts have considered claims rates in the evaluation of final approval of a settlement, courts across the country have consistently approved settlements in consumer class cases with a response rate of less than 1%. *Pollard*, 320 F.R.D. at 214-15 (affirming the final claims rate of 0.29%); *see also In re Apple iPhone 4 Prods. Liab. Litig.*, No. 5:10-md-2188 RMW, 2012 WL 3283432, at *2 (N.D. Cal. Aug. 10, 2012) (finding settlement fair and adequate based on a claim rate between 0.16% and 0.28% for a $15 cash payment); *Poertner v. Gillette Co.*, 618 Fed. App'x. 624, 625-26 (11th Cir. 2015) (approving settlement with claims rate of 0.76% for a class size of 7.26 million); *LaGarde v. Support.com, Inc.*, No. C 12-0609 JSC, 2013 WL 1283325, at *6 (N.D. Cal. Mar. 26, 2013) (final settlement approved with "slightly below 0.2%" claims rate for a $10 settlement payment); *Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 WL 2286076, at *2 (M.D. La. May 23, 2013) (approving settlement in which "less than one percent of the total class" filed claims); *Palamara v. Kings Family Rests*., No. 07-317, 2008 WL 1818453, at *3 (W.D. Pa. Apr. 22, 2008) (approving final settlement with a claims rate of less than 1%); *In re Livingsocial Mktg. and Sales Practices Litig.*, 298 F.R.D. 1, 19 (D.D.C. 2013) (approving settlement with 26,830 claims out of a class of 10.9 million or approximately a claims rate of 0.25% ).

Here, the claims rate is deceptive because comparing the approximately 120,000 claims to the approximately 17.2 million class size would incorrectly assume that 100% of the Class suffered damages that were not already compensated. As noted above,

confirmatory discovery did not support this assumption. *See, e.g.*, ECF No. 469, at ¶ 8(f) (CenturyLink's CAG received escalated complaints from only 1% of CenturyLink's customers over the Class Period); at ¶ 8(h) (CAG provided $2.5 million in refunds to customers); at ¶ 8(j) (other CenturyLink customer service agents issued tens of millions of dollars to customers). However, even if 100% of the Class possessed uncompensated claims for overcharges, the approximate response rate of approximately 0.68%, is still within the margin of an acceptable claims rate in a consumer case. *See, e.g.*, *Pollard*, 320 F.R.D. at 214-15 (affirming the final claims rate of 0.29%). The Court should find that the methods, content, and mechanisms of the executed Notice Plan satisfies Rule 23 of the Federal Rules of Civil Procedure.

## CONCLUSION

Plaintiffs respectfully request the Court finally approve the Settlement, certify the Settlement Class, and enter final judgment in the form filed concurrently herewith.

Dated: November 5, 2020

Respectfully submitted,

*s/ Brian C. Gudmundson*
Carolyn G. Anderson (MN 275712)
Brian C. Gudmundson (MN 336695)
Michael J. Laird (MN 398436)
**ZIMMERMAN REED LLP**
1100 IDS Center,
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 641-0844
carolyn.anderson@zimmreed.com
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com

**ZIMMERMAN REED LLP**
Hart L. Robinovitch
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
Telephone: (480) 348-6400
Facsimile: (480) 348-6415
hart.robinovitch@zimmreed.com

*Plaintiffs' Interim Co- Lead and Liaison Counsel*

**O'MARA LAW GROUP**
Mark M. O'Mara
Alyssa J. Flood
Caitlin H. Reese
221 NE Ivanhoe Blvd., Suite 200
Orlando, FL 32804
Telephone: (407) 898-5151
Facsimile: (407) 898-2468
mark@omaralawgroup.com
alyssa@omaralawgroup.com
caitlin@omaralawgroup.com

**GERAGOS & GERAGOS, APC**
Mark J. Geragos
Benjamin J. Meiselas
Historic Engine Co.  No.  28
644 South Figueroa Street
Los Angeles, CA 90017-3411
Telephone: (231) 625-3900
Facsimile: (231) 232-3255
mark@geragos.com
meiselas@geragos.com

*Plaintiffs' Interim Co-Lead Counsel*

**GUSTAFSON GLUEK PLLC**
Daniel C. Hedlund (#258337)
Michelle J. Looby (#388166)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844

Facsimile: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

***Plaintiffs' Executive Committee Chair***

**HELLMUTH & JOHNSON, PLLC**
Richard M. Hagstrom (MN 039445)
Anne T. Regan (MN 333852)
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Facsimile: (952) 941-2337
rhagstrom@hjlawfirm.com
aregan@hjlawfirm.com

**ROXANNE CONLIN & ASSOCIATES, PC**
Roxanne Barton Conlin
3721 S.W 61st St.
Des Moines, Iowa, 50321
Telephone: (515) 283-1111
roxlaw@aol.com

**HENINGER GARRISON DAVIS, LLC**
James F. McDonough, III
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Telephone: (404) 996-0869
Facsimile: (205) 326-3332
jmcdonough@hgdlawfirm.com

**HENINGER GARRISON DAVIS, LLC**
Francois M.  Blaudeau
W. Lewis Garrison, Jr.
Christopher B.  Hood
2224 1st Ave North
Birmingham, AL 35203
Telephone: (205) 326-3336
Facsimile: (205) 380-0145
francois@southernmedlaw.com
lewis@hgdlawfirm.com
chood@hgdlawfirm.com

43

*Plaintiffs' Executive Committee*

**HODGE & LANGLEY LAW FIRM, P.C.**
T. Ryan Langley
229 Magnolia St.
Spartanburg, SC 29306
Telephone: (864) 585-3873
Facsimile: (864) 585-6485
rlangley@hodgelawfirm.com

**OLSEN DAINES PC**
Michael Fuller, OSB No.  09357
Olsen Daines PC
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
Telephone: (503) 201-4570
michael@underdoglawyer.com

**FERNALD LAW GROUP LLP**
Brandon C. Fernald
6236 Laredo Street
Las Vegas, NV 89146
Telephone: (702) 410-7500
Facsimile: (702) 410-7520
brandon.fernald@fernaldlawgroup.com

**WALSH PLLC**
Bonner C. Walsh
PO Box 7
Bly, OR 97622
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

**ATTORNEY ALFRED M.  SANCHEZ**
Alfred M. Sanchez
400 Gold Ave.  SW, #240
Albuquerque, NM 87102
Telephone: (505) 242-1979
lawyeralfredsanchez@gmail.com

**GARDY & NOTIS, LLP**
Orin Kurtz
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Fax: (212) 905-0508
okurtz@gardylaw.com

*Counsel for Plaintiffs and the Proposed Class*

44