## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: CenturyLink Sales Practices and Securities Litigation | Case No. 17-md-2795 (MJD/JFD) |
| This document relates to the following cases: Nos. 18-cv-2460, 18-cv-2833, 18-cv-2834, 18-cv-2835, 19-cv-263, and 19-cv-284 | **ORDER** |

This case came before the Court on Thursday, January 13, 2022 for a hearing on the question[1] of whether, under the law of Louisiana, Lead Plaintiff Tim Ault may obtain limited discovery from the Special Litigation Committee ("SLC") formed by the Board of Directors of CenturyLink, Inc.[2] ("Board") concerning the SLC's inquiry and conclusions, before Lead Plaintiff files a consolidated amended complaint and CenturyLink's forthcoming motion to dismiss is decided. The relevant Louisiana statute, La. Rev. Stat. § 12:1-744, has no express language on whether pre-motion to dismiss discovery is permitted, and there is no Louisiana case holding one way or the other. Neither the comments to the Louisiana statute, nor the comments to the Model Business Corporation Act ("Model Act"), on which the Louisiana statute is based, offer a definitive answer to

---

[1] As more fully explained below, there is no motion pending before the Court. Rather, in a November 15, 2021 telephone conference with the predecessor Magistrate Judge assigned to this case, the parties and the Court agreed that the question of the availability of limited discovery before the filing of the consolidated amended complaint would be briefed and decided by the Court. (Ct. Mins., Nov. 15, 2021, Dkt. No. 949.)

[2] CenturyLink is now known as Lumen. It is referred to as CenturyLink in this Order because that was the company's name at the time of the events in question in this litigation.

the question before the Court. The Court acknowledges that the initial Case Management Order (Dkt. No. 405) neither authorizes nor contemplates discovery before a motion to dismiss is filed. However, for the reasons set out below, the Court will exercise its discretion[3] and allow Lead Plaintiff to take some limited discovery, circumscribed as described below, after the consolidated amended complaint is filed, but before CenturyLink's anticipated motion to dismiss is filed.

## BACKGROUND FACTS AND PROCEDURAL POSTURE

CenturyLink sells cable television, internet, and telephone services. (*See* Lead Pl.'s Mem. Supp. Discovery at 1, Dkt. No. 954.) In late 2017, press reports alleged that CenturyLink had sold many of its customers services they did not ask for, a practice that is apparently known colloquially as "cramming." (*See id.*) The Attorneys General of Minnesota, Oregon, Washington, Arizona, Colorado, and Pennsylvania opened investigations. (*See id.*) Those investigations led to several lawsuits, which were eventually settled for an aggregate payment by CenturyLink of $33,000,000. (*See id.* at 2.)

Consumer fraud cases were filed against CenturyLink and related defendants in nine federal district courts, including the District of Minnesota, and transferred to Minnesota for consolidated proceedings by the Judicial Panel on Multidistrict Litigation ("JPML"). (Transfer Order, Oct. 10, 2017, Dkt. No. 1.) Four securities class actions were filed either in the Southern District of New York or the Western District of Louisiana, before the JPML transferred them here for inclusion in the MDL. (*See* Transfer Order, Feb. 1, 2018, Dkt.

---

[3] "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

No. 26; Order at 3–6, Apr. 20, 2018, Dkt. No. 115.) The plaintiffs asserted in the securities class actions that CenturyLink's public disclosures had been false and misleading as to the harm that could be done to CenturyLink's share price because of the company's illegal sales and marketing practices. The consumer fraud class action eventually settled for $15,500,000 and the securities fraud class action for $55,000,000. (*See* Lead Pl.'s Mem. Supp. Discovery at 2.)

On September 6, 2017, as required before filing a shareholder's derivative action by Louisiana Revised Statute § 12:1-742,[4] shareholder Tim Ault (who would later be appointed Lead Plaintiff) demanded in writing that CenturyLink's Board sue the directors and certain officers of CenturyLink for injunctive relief (barring future violations of fiduciary duty) and money damages. (Eagel Decl. Ex. B, Dkt. No. 952-2.) Mr. Ault's demand was made in a letter sent, through counsel, to Harvey P. Perry, Chairman and Lead Outside Director of CenturyLink. (*Id.*) The letter described the harm the practice of cramming had caused to CenturyLink and its customers and asserted that, in consequence, six corporate officers, described by name and title, should be sued, as should eight named directors, one of whom was Mr. Perry. (*Id.*) The letter accused the directors and officers of maintaining policies that encouraged unethical and fraudulent practices, making false

---

[4] The parties agree that Louisiana state law governs this shareholder derivative suit. The Court agrees. (*See* Mem. Law & Order at 9, Apr. 23, 2019, Dkt. No. 400 (referring to La. Rev. Stat. § 12:1-742 as the authority governing when a shareholder may commence a derivative action).) Further, CenturyLink is incorporated in Louisiana, and Louisiana corporate law governs this shareholder derivative action brought on behalf of CenturyLink. *See Burks v. Lasker*, 441 U.S. 471, 477–78 (1979).

3

statements about CenturyLink's policies and revenues, and breaching their duties of loyalty, due care, and good faith. (*Id.*)

Steven Usdin, counsel for the SLC, replied by letter dated April 13, 2018. (Eagel Decl. Ex. C, Dkt. No. 952-3.) Mr. Usdin stated that in response to Mr. Ault's demand, the Board had appointed a three-member SLC. The SLC's inquiry, stated Mr. Usdin, had lasted seven months and included review of numerous documents, interviews of 31 witnesses, and consultation with "independent experts and consultants." The SLC had met 20 times and had consulted with outside counsel throughout the inquiry. The letter concluded:

> The SLC found no evidence to support the allegations made in the demand letters. The SLC also considered the institutional changes and advancements at CenturyLink as well as the pending litigation and other regulatory matters CenturyLink now faces. In light of all the information and relevant considerations, and the legal standards set forth in La. R.S. 12:1-830 *et seq.* and La. R.S. 12:1-840 *et seq.*, as well as other relevant statutes, the SLC has determined that it is not in the best interest of CenturyLink to pursue litigation against any Directors, Officers, or employees of the company, or to act on any of the demands made on the company. Accordingly, pursuant to La. R.S. 12:1-740 et seq., the SLC is rejecting your demand.

(*Id.* at 2.) The letter mentioned demand letters filed by other shareholders, which presumably were also rejected.

After the demands were rejected, three shareholder derivative actions were filed against CenturyLink in the Western District of Louisiana and one in the District of Minnesota. (Transfer Order, Oct. 3, 2018, Dkt. No. 285.) The Louisiana cases were transferred here by the JPML and docketed as separate actions, and all four derivative cases were consolidated into the MDL. (*See* Order Granting Consol., Dec., 4, 2018, Dkt. No. 310.) Two later-filed shareholder derivative actions were also transferred and consolidated

4

in 2019.[5] (Transfer Order, Feb. 5, 2019, Dkt. No. 375; Transfer Order, Feb. 6, 2019, Dkt. No. 376; Order & Mem., Apr. 23, 2019, Dkt. No. 400.) Each of the six shareholder derivative actions alleges that CenturyLink officers and directors breached their fiduciary duties to CenturyLink by making false and misleading statements or by failing to disclose information about CenturyLink's business practices, operations, and revenues.

The MDL, including the six shareholder derivative actions, are assigned to the Honorable Michael J. Davis, United States District Judge. On April 23, 2019, Judge Davis appointed Lead Counsel and Lead Plaintiff for the Consolidated Derivative Action. (Order & Mem., Apr. 23, 2019, Dkt. No. 400.) On May 30, 2019, Judge Davis entered a Case Management Order, which directed that the first step in the Consolidated Derivative Action was to be the filing of a single, consolidated, amended complaint. (Case Management Order at 1, May 30, 2019, Dkt. No. 405.) The Case Management Order went on to direct that "[d]iscovery in the Consolidated Derivative Action shall not proceed until the parties agree or the Court orders it." (*Id.* at 2.) The parties agreed to meet and confer about discovery in the event CenturyLink's motion to dismiss was denied. (*Id.*)

Before Lead Plaintiff filed a consolidated amended complaint, however, the Consolidated Derivative Action was stayed pending the outcome of a motion to dismiss filed in the securities action. (Order at 1–2, July 24, 2019, Dkt. No. 419.) Meanwhile, Lead Plaintiff served 30 requests for production of documents on the SLC first in March 2021,

---

[5] The six shareholder derivative actions are *Tansey v. Post*, No. 18-cv-2460; *Flanders v. Post*, No. 18-cv-2833; *Ault v. Post*, No. 18-cv-2834; *Barbree v. Behar*, No. 18-cv-2835; *Inter-Marketing Group USA Inc. v. Storey*, No. 19-cv-263; and *Palkon v. CenturyLink Inc.*, No. 19-cv-284.

then served an identical set in October 2021. (*See* Lead Pl.'s Letter, Nov. 10, 2021, Dkt. No. 947.) Defendants[6] objected to providing any documents to Lead Plaintiff, and the only "evidence" of the SLC's formation and inquiry that Lead Plaintiff has in his possession is Mr. Usdin's April 13, 2018 demand-refusal letter. (*See* Lead Pl.'s Mem. Supp. Discovery at 3–4.) Lead Plaintiff has not seen any report the SLC may have prepared, and does not even know if the SLC wrote a report. (*Id.* at 8.)

After the motion to dismiss in the securities action was decided, and the securities and consumer actions settled, the stay of the Consolidated Derivative Action was lifted. In letters filed on November 10, 2021, the parties presented the issue of whether Lead Plaintiff should be allowed to obtain limited discovery from the SLC before filing a consolidated amended complaint. (Defs.' Letter, Dkt. No. 946; Lead Pl.'s Letter, Dkt. No. 947.) At the direction of the predecessor Magistrate Judge assigned to this case (*see* Dkt. No. 949), the parties filed their initial memoranda on December 8 (Defs.' Mem. Opp'n Discovery, Dkt. No. 953) and December 9 (Lead Pl.'s Mem. Supp. Discovery, Dkt. No. 954), and their reply memoranda on December 22, 2021 (Defs.' Mem. Further Opp'n Discovery, Dkt. No. 956; Lead Pl.'s Reply Further Supp. Discovery, Dkt. No. 957). The Court held a hearing on the question on January 13, 2022, and took the matter under advisement at the conclusion of the hearing.

---

[6] The Court uses the term "Defendants" generically to refer to the Defendants named in the six shareholder derivative actions, which includes the SLC members and CenturyLink.

## ANALYSIS

### The Initial Case Management Order Did Not Contemplate Discovery Before the Filing of a Consolidated Derivative Complaint.

More than a year ago, Judge Davis directed that the first step in this consolidated derivative case will be the filing of a single consolidated amended complaint by Lead Plaintiff. (Case Management Order at 1, Dkt. No. 405.) The Case Management Order further specified that "discovery in the Consolidated Derivative Action shall not proceed until the parties agree or the Court orders it." (*Id.* at 2.) The Case Management Order also instructed the parties to meet and confer about discovery *after* a ruling on CenturyLink's future motion to dismiss. (*Id.*) Thus, the Case Management Order contemplated that, before any discovery could occur, there must be, first, the filing of a single, consolidated amended complaint, and second, either agreement to discovery by the parties, or a court order directing that discovery proceed.

Since no consolidated amended complaint has yet been filed, discovery is not available under the Case Management Order. This is why Lead Plaintiff is now asking the Court to issue an order essentially modifying the Case Management Order and allowing for some discovery. But it is of some import that early discovery was neither requested nor contemplated when the shareholder derivative actions were first consolidated and the initial Case Management Order issued.

There are good reasons to require an operative complaint for the Consolidated Derivative Action before allowing discovery. First, though the six derivative shareholder actions have been consolidated, there is no unified pleading. Proceeding with discovery on

7

allegations and issues pleaded in six individual complaints would be inefficient and unnecessary. Second, Federal Rule of Civil Procedure 3 provides that "[a] civil action is commenced by filing a complaint with the court." Although the Consolidated Derivative Action was created some time ago, because of the stay there is no consolidated complaint in the case, and the conventional progression of civil cases begins with the filing of a complaint. Relatedly, the Federal Rules of Civil Procedure generally do not allow pre-complaint discovery. Lead Plaintiff has not shown that a departure from either of these rules is warranted here. Third, the named defendants, factual allegations, and claims in the consolidated amended complaint will affect the scope of relevant and permissible discovery and shape the arguments raised by CenturyLink in its anticipated motion to dismiss. Fourth, no discovery was requested or allowed before the complaints in the shareholder derivative actions were filed. Fifth, and finally, none of Lead Plaintiff's cited authority permitted discovery before the filing of an operative complaint. For all of these reasons, the Court declines to deviate from the initial Case Management Order's directive that the next step in the Consolidated Derivative Action will be the filing of a consolidated amended complaint.

### *Louisiana Law Is Silent on Whether Discovery Is Allowed Before a Motion to Dismiss Is Filed under Section 12:1-744.*

Louisiana public policy strongly disfavors shareholder derivative lawsuits as a means of corporate governance, particularly when the corporation's stock is publicly traded (as CenturyLink's is). *Atkins v. Hibernia Corp.*, 182 F.3d 320, 325 (5th Cir. 1999). Accordingly, Louisiana law provides corporations with heightened protections against

shareholder derivative actions. *E.g.*, La. Rev. Stat. § 12:1-744. Louisiana Revised Statute § 12:1-744 mandates the dismissal of a shareholder derivative action, upon motion filed by the corporation, when one of two groups "has determined in good faith, after conducting a reasonable inquiry upon which its conclusions are based, that the maintenance of the derivative proceeding is not in the best interests of the corporation." La. Rev. Stat. § 12:1-744(A). The two groups authorized to make the determination in Subsection A are: "(1) [a] majority vote of qualified directors present at a meeting of the board of directors if the qualified directors constitute a quorum"; or "(2) [a] majority vote of a committee consisting of two or more qualified directors appointed by majority vote of qualified directors present at a meeting of the board of directors, regardless of whether such qualified directors constitute a quorum." *Id.* § 12:1-744(B). "Qualified" directors are, essentially, directors who are free of conflicts of interest and are not in a close relationship with a person who has a conflict of interest. *See* La. Rev. Stat. §§ 12:1-143(A); 12:1-744(B).

In the case at hand, the derivative actions were filed after the CenturyLink Board rejected shareholders' demands to sue the officers and directors. In this circumstance "the petition[7] shall allege with particularity facts establishing either of the following: (1) That a majority of the board of directors did not consist of qualified directors at the time the determination was made"; or "(2) That the requirements of Subsection A of this Section have not been met." La. Rev. Stat. § 12:1-744(C).

---

[7] The Court understands "the petition" required by Louisiana statute to include a complaint in a federal civil action. Under Louisiana law, a petition is the equivalent of a complaint in a civil action. *See* La. Code Civ. Proc. art. 852; *Brown & Root Indus. Servs., LLC v. Nelson*, No. 17-cv-00361-BAJ-EWD, 2017 WL 5957100, at *1 n.1 (M.D. La. Dec. 1, 2017).

Whether the Board consisted of qualified directors when the determination was made dictates which party has the "burden of proving" the requirements of Subsection A. "If a majority of the board of directors consisted of qualified directors at the time the determination was made," then the plaintiff has the "burden of proving" that the Subsection A requirements were not met. *Id.* § 12:1-744(D). If, on the other hand, the majority of the board of directors was not qualified when the determination was made, "the corporation shall have the burden of proving that the requirements of Subsection A of this Section have been met." *Id.* Answering the preliminary question about the composition of the board is, of course, the issue in § 12:1-744(C)(1), which tasks the plaintiff with alleging with particularity facts establishing that a majority of the board did not consist of qualified directors.

The comment to § 12:1-744(C)(1) explains that "inquiry," rather than "investigation," is used "to make it clear the nature of the procedure used to consider the allegations made in the demand or complaint depend[s] on the nature of those allegations and the knowledge of the persons who conduct the inquiry." La. Rev. Stat. § 12:1-744 cmt. (2014 rev.). When the issues are simple and the knowledge of those inquiring is extensive, "little additional effort will be required to satisfy the statutory standard that the inquiry be conducted in good faith." *Id.* But where there are "serious allegations of misconduct . . ., a good faith inquiry ordinarily will require the preparation of a written report, with the assistance of independent legal counsel, in support of a recommendation either to reject the demand or to dismiss the suit." *Id.*

The comment to § 12:1-744 makes clear that the knowledge of the SLC members—a subjective consideration—is relevant to the question of good faith. The comment also makes clear that a good-faith inquiry should include the preparation of a written report when the allegations of misconduct are serious.

### *Section 12:1-744 Imposes a "Burden of Proving" on the Parties.*

The Louisiana shareholder derivative proceedings statute imposes a "burden of proving" that the Section A requirements either have been met (on the defendant) or have not been met (on the plaintiff), depending on whether a majority of the board of directors consisted of qualified directors when the determination not to proceed with suit was made. La. Rev. Stat. § 12:1-744(D). A burden of proof is an evidentiary burden. *See Black's Law Dictionary* (11th ed. 2019). A court must interpret words in a statute "as they are generally understood." *Kunath v. Gafford*, 330 So. 3d 161, 164 (La. 2021).

The "burden of proving" language may be contrasted with other language in § 12:1-744 that requires a plaintiff to "allege with particularity" certain facts. La. Rev. Stat. § 12:1-744. But the Louisiana legislature chose not to use the language of pleading—"allege"—in describing what the parties must do with respect to the requirements of Subjection A. Instead, the Louisiana legislature imposed a "burden of proving."

### *The Current Version of the Model Business Corporation Act and Its Comments Neither Prohibits Nor Permits Discovery.*

The Louisiana shareholder derivative proceeding dismissal statute is patterned upon the Model Act. *Compare* La. Rev. Stat. § 12:1-744 *with* Model Bus. Corp. Act § 7.44 (Am. Bar Ass'n 2016). *See also* Glenn G. Morris, *Model Business Corporation Act as Adopted*

11

*in Louisiana*, 75 La. L. Rev. 983 (2015) ("Effective January 1, 2015, Louisiana adopted a customized version of the Model Business Corporation Act.").

Comment 3 to a previous version of the Model Act said: "Discovery should be available to the plaintiff only after the plaintiff has successfully stated a cause of action by making either of the[] two showings" in § 12:1-744(C).[8] Model Bus. Corp. Act § 7.44 cmt. 3 (Am. Bar Ass'n 2010). Defendants rely on this comment to support their stance against discovery. But comment 3 was omitted from the most recent version of the Model Act. *See* Model Bus. Corp. Act § 7.44 (Am. Bar Ass'n 2016). Thus, the current version of the Model Act makes no comment about whether discovery is appropriate before a motion to dismiss. The removal of comment 3, if it means anything, means that the drafters of the Model Act have thought better of prohibiting discovery, even if they are not yet prepared to expressly permit discovery.

Comment 2 to the Model Act identifies the Subsection A issues for the court to examine as whether the determination not to maintain the derivative proceeding was made in good faith, whether the inquiry was made in good faith, and whether the conclusions followed logically from the inquiry. Model Bus. Corp. Act § 7.44 cmt. 2 (Am. Bar Ass'n 2016). A court does not review the reasonableness of the determination, however. *Id.* According to the Model Act, the good-faith inquiry "is a subjective one" and means

---

[8] Defendants contend that comment 3 was considered during the drafting of Louisiana Revised Statute § 12:1-744. (Defs.' Mem. Opp'n Discovery at 22 n.6.) Be that as it may, there is no similar comment to the Louisiana statute. As with the comment to the Model Act, if the Louisiana legislature considered a comment banning discovery, but then decided against its inclusion, that hurts, rather than helps, CenturyLink's position.

"honestly or in an honest manner." *Id.* The subjective nature of this factual inquiry favors allowing at least some discovery, because whether the SLC members acted honestly cannot be ascertained without some examination of the books and records of CenturyLink, the Board, and the SLC.

### *Non-Louisiana Case Authority Supports Allowing Limited Discovery.*

Connecticut has a statute nearly identical to Louisiana's. In *Sojitz America Capital Corp. v. Kaufman*, the Connecticut Appellate Court determined that the trial court's dismissal of a shareholder derivative complaint was a "mixed question of fact and law." 61 A.3d 566, 571 (Conn. Ct. App. 2013). The court therefore "depart[ed] from the well settled standard of review typically applied to motions to dismiss," given the "unique, heightened pleading standard and elements that must be either proven or disproven" set forth in the Connecticut statute. *Id.* at 572 (citing Conn. Gen. Stat. § 33-724). The court did not itself authorize discovery, but commented that other "jurisdictions have concluded that trial courts, in their discretion, may issue discovery orders." *Id.* In reviewing the lower court's decision, the appellate court considered the board of directors' report, affidavits from two directors and the plaintiff, correspondence, and corporate documents. *Id.* at 568 n.2, 569, 576, 577 (also noting the defendant had filed "several appendices" including the board meeting minutes). The court also considered "the record" of the board's retention and use of counsel in conducting its inquiry. *Id.* at 579. The trial court in *Sojitz* had also considered these materials when deciding the motion to dismiss in the first instance. *Sojitz Am. Cap. Corp. v. Kaufman*, No. HHDCV116018649S, 2011 WL 3795723, at *1 (Conn. Super. Ct.

13

July 14, 2011) (considering board minutes and "the findings and determination of the board").

Courts have described motions to dismiss filed pursuant to similar shareholder derivative proceeding dismissal statutes as "hybrid" motions, where the court must consider evidence submitted by the parties. *See Booth Family Trust v. Jeffries*, 640 F.3d 134, 139 (6th Cir. 2011) (applying Delaware law and describing the motion as sharing characteristics of motions to dismiss and motions for summary judgment); *Borchardt v. King*, No. 1:10CV261, 2015 WL 410408, at *6 (M.D.N.C. Jan. 29, 2015) (treating motion to dismiss as one for summary judgment); *Benfield v. Wells*, 749 S.E.2d 384, 385 (Ga. Ct. App. 2013) (describing motion as "a hybrid summary judgment motion for dismissal"). The Georgia Court of Appeals has advised it would be "incumbent" on a shareholder derivative plaintiff "to come forward with evidence to support his claim of lack of independence of the SLC members" when faced with a motion to dismiss supported by evidence. *Thompson v. Sci. Atlanta, Inc.*, 621 S.E.2d 796, 799 (Ga. Ct. App. 2005). In perhaps the most striking example located by this Court, the court in *Attianese v. Caliendo* "held an evidentiary hearing over several days, at which the parties presented testimony and submitted documentary evidence." No. CV176082169S, 2018 WL 4838442, at *5 (Conn. Super. Ct. Sept. 19, 2018).

Defendants have cited several cases in which courts declined to authorize discovery in connection with the Delaware shareholder derivative proceedings dismissal rule. *E.g.*, *Rosenblum ex rel. Amgen, Inc. v. Sharer*, No. CV 07-6140 PSG PLAX, 2008 WL 9396534, at *7 (C.D. Cal. July 28, 2008) (applying Delaware law); *In re Boston Sci. Corp. S'holders*

14

*Litig.*, No. 02 CIV 247 AKH, 2007 WL 1696995, at *5 (S.D.N.Y. June 13, 2007) (same); *Lewis v. Hilton*, 648 F. Supp. 725, 728 (N.D. Ill. 1986) (same). The Court finds this authority not persuasive for two primary reasons. First, the Delaware shareholder derivative rule, Chancery Rule 23.1, differs from Louisiana Revised Statute § 12:1-744 in that it does not impose a "burden of proving" on any party. Del. Ct. Ch. R. 23.1. Second, any stockholder may ask to inspect the books and records of a corporation under 8 Del. Code § 220, not just stockholders who have owned a certain percentage of stock for a certain length of time, as the Louisiana corollary statute provides, *see* La. Rev. Stat. § 12:1-1602(C) (limiting the ability to make so-called "books and records" demands upon a corporation to shareholders owning at least five percent of the corporation's shares for at least six months). The Delaware Supreme Court has identified this statutory "tool" as a reason to deny discovery to shareholder derivative plaintiffs. *Brehm v. Eisner*, 746 A.2d 244, 266 (Del. 2000). This statutory tool is not available to Lead Plaintiff, who owns far less than five percent of CenturyLink. (*See* Defs.' Mem. Opp'n Discovery at 25 (citing Ault Decl. ¶ 8, Dec. 27, 2018, Dkt. No. 344).)

There is other authority requiring a plaintiff to succeed on a motion to dismiss before obtaining discovery. *E.g., Burgess v. Patterson*, 188 So. 3d 537, 560 (Miss. 2016) (holding "the trial court's ruling that, in derivative proceedings you must have a legally sufficient Complaint in order to conduct discovery, was not erroneous") (cleaned up). A key distinction between *Burgess* and this case, however, is the plaintiff's ability to inspect books and records. Like the Delaware inspection statute, the Mississippi statute permits shareholders to inspect the books and records of the corporation, and does not contain a

15

minimum percentage ownership requirement. *See id.* at 558 n.13 (citing Miss. Code Ann. § 79-4-16.02(b)). Lead Plaintiff does not have this option. This distinction, in addition to the statutory burden of proof potentially imposed on Lead Plaintiff by the Louisiana statute, other authority summarized above authorizing or considering materials beyond the complaint, the Court's broad discretion in allowing and setting the parameters of discovery, Defendants' refusal thus far to produce *any* documents or information about the SLC's inquiry or conclusions, and the limited scope of discovery that will be allowed lead the Court to respectfully depart from *Burgess* and similar cases.

### *The Circumstances of This Case Compel the Court to Exercise Its Discretion to Permit a Short Period of Limited Discovery.*

Given the circumstances of this case, as summarized in the immediately preceding paragraph and detailed throughout this Order, the Court will permit Lead Plaintiff to obtain some very limited discovery between the filing of the consolidated amended complaint and CenturyLink's motion to dismiss. Specifically, Lead Plaintiff may obtain the corporate records related to the SLC's inquiry and determination, to which he would have been entitled under Louisiana Revised Statute § 12:1-1602(C) had he owned the requisite percentage of shares for the minimum amount of time and met the requirements of § 12:1-1602(D). Plaintiff may also obtain a copy of the SLC's written report, if one exists, if that report would not otherwise be within the scope of § 12:1-1602(C).

As Defendants pointed out in their initial memorandum, "[t]he core discovery sought by Lead Plaintiff are the 'books and records' of the SLC—resolutions, meeting minutes, and the like." (Defs.' Mem. Opp'n Discovery at 9.) The Court finds, generally,

16

that the so-called "books and records" relating to the SLC's inquiry and determination are relevant and proportional to the Subsection A issues likely to arise from CenturyLink's forthcoming motion to dismiss. To be clear, the Court is not finding that Plaintiff is entitled to obtain the books and records pursuant to § 12:1-1602(C) or ordering Defendants to produce documents under that statute. The Court refers to the statute only to aid in framing the scope of discovery that will be allowed in the Court's discretion.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Lead Plaintiff's request to engage in limited discovery is **GRANTED IN PART** and **DENIED IN PART**.

2. Lead Plaintiff shall file a consolidated amended complaint by March 16, 2022.

3. Within 14 days of the filing of the consolidated amended complaint, Lead Plaintiff shall identify to Defendants the records he wishes to obtain, the scope of which shall not exceed Louisiana Revised Statute § 12:1-1602(C), and which is further limited to documents relating to the SLC's inquiry and determination.

4. Defendants shall produce the requested records, as well as any report by the SLC (if that report would not otherwise be within the scope of Louisiana Revised Statute § 12:1-1602(C)), within 30 days of Lead Plaintiff's identification of the requested records.

5. The parties shall file a joint update on the status of the limited discovery no later than 14 days after the records and SLC report are produced. The parties should

advise the Court of any disputes and propose a framework (*i.e.*, a case management conference, informal dispute resolution, or motion practice) for resolution of any disputes.

6. Any answers to or motions to dismiss the consolidated amended complaint shall be filed no later than 90 days after the consolidated amended complaint is filed.

Date: February 17, 2022

                                               *s/ John F. Docherty*
                                               JOHN F. DOCHERTY
                                               United States Magistrate Judge